**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,**

Plaintiff,

v.

**U.S. CENTERS FOR DISEASE
CONTROL AND PREVENTION,** *et al.*,

Defendants.

Civil Action No. 25-01020 (TJK)

**HEARING REQUESTED**

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
AND PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................5

    I. Factual Background ........................................................................................................5

        A. HHS fires thousands of public health employees. ............................................5

        B. CDC closes its FOIA office without notice, planning, or explanation. ...........6

        C. Urgent issues of national importance surround the CDC FOIA office closure. ...........12

    II. Procedural Background ...............................................................................................16

LEGAL STANDARDS .......................................................................................................17

ARGUMENT ......................................................................................................................19

    I. CREW is likely to succeed on the merits. ...................................................................20

        A. CREW is entitled to expedited processing of its FOIA requests. .................20

        B. Defendants' closure of the CDC FOIA office amounts to a policy or practice of total FOIA noncompliance. .................................................................................24

        C. Defendants' abrupt closure of the CDC FOIA office was unlawful, arbitrary, and capricious in violation of the APA. ..................................................................30

           1. The sudden closure of the CDC FOIA office violated statute and agency regulations. ...............................................................................................30

           2. The sudden closure of the CDC FOIA office was arbitrary and capricious. ...........32

    II. CREW will suffer irreparable harm absent a preliminary injunction. ........................34

        A. CREW will suffer irreparable harm absent expedited processing of its requests. .......34

        B. CREW will suffer irreparable harm if CDC's FOIA functions remain inoperative. ....38

    III. The balance of equities and public interest favors granting a preliminary injunction. .......40

    IV. Partial summary judgment is appropriate to resolve Counts I–III....................................44

CONCLUSION....................................................................................................................45

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*American Civil Liberties Union v. U.S. Department of Justice*,
   321 F. Supp. 2d 24 (D.D.C. 2004) ................................................................. 21, 22, 24

*Al-Fayed v. Central Intelligence Agency*,
   254 F.3d 300 (D.C. Cir. 2001) ......................................................................... 20, 21

*American Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ............................................................................ 19

*American Center for Law and Justice v. U.S. Department of State*,
   249 F. Supp. 3d 275 (D.D.C. 2017) ....................................................................... 25

*American Immigration Council v. U.S. Department of Homeland Security*,
   470 F. Supp. 3d 32 (D.D.C. 2020) .................................................................... 35, 38

*American Wild Horse Preservation Campaign v. Perdue*,
   873 F.3d 914 (D.C. Cir. 2017) ............................................................................. 33

*Brennan Center for Justice at NYU School of Law v. Department of Commerce*,
   498 F. Supp. 3d 87 (D.D.C. 2020) .................................................................... 21, 23

*Campaign for Accountability v. U.S. Department of Justice*,
   278 F. Supp. 3d 303 (D.D.C. 2017) ....................................................................... 18

*Chaplaincy of Full Gospel Churches v. England*,
   454 F.3d 290 (D.C. Cir. 2006) ............................................................................. 18

*City of New Haven v. United States*,
   634 F. Supp. 1449 (D.D.C. 1986) .......................................................................... 44

*City of New Haven v. United States*,
   809 F.2d 900 (D.C. Cir. 1987) ............................................................................. 44

*CREW v. U.S. Department of Justice*,
   436 F. Supp. 3d 354 (D.D.C. 2020) ....................................................................... 27

*CREW v. U.S. Department of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) ............................................................................ 18

*CREW v. U.S. DOGE Service*,
   No. 25-cv-00511, 2025 WL 752367 (D.D.C. Mar. 10, 2025) ............... 3, 21, 23, 24, 36, 37, 39

*CREW v. U.S. Department of Justice*,
No. 24-cv-1497 (LLA), 2025 WL 879664 (D.D.C. Mar. 21, 2025) .......................................... 25

*Center for Biological Diversity v. Zinke*,
260 F. Supp. 3d 11 (D.D.C. 2017) ........................................................................................... 31

*Center for the Study of Services v. U.S. Department of Health & Human Services*,
874 F.3d 287 (D.C. Cir. 2017) ................................................................................................. 29

*Center to Advance Security in America v. U.S. Agency for International Development*,
No. 24-cv-3505, 2025 WL 763735 (D.D.C. Mar. 11, 2025) ........................................ 1, 13, 28

*Center to Prevent Handgun Violence v. U.S. Department of Treasury*,
49 F. Supp. 2d 3 (D.D.C. 1999) ............................................................................................... 41

*D.A.M. v. Barr*,
474 F. Supp. 3d 45 (D.D.C. 2020) ........................................................................................... 18

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ................................................................................................................. 30

*U.S. Department of Homeland Security v. Regents of the University of California*,
591 U.S. 1 (2020) ................................................................................................................ 32, 33

*Doctors for America v. U.S. Office of Personnel Management*,
No. 25-322 (JDB), 2025 WL 452707 (D.D.C. Feb. 11, 2025) ........................................... 35, 37

*Dunlap v. Presidential Advisory Commission on Election Integrity*,
286 F. Supp. 3d 96 (D.D.C. 2017) ........................................................................................... 34

*Electronic Privacy Information Center v. National Security Commission on A.I.*,
419 F. Supp. 3d 82 (D.D.C. 2019) ........................................................................................... 24

*\*Electronic Privacy Information Center v. U.S. Department of Justice*,
416 F. Supp. 2d 30 (D.D.C. 2006) ............................................................................... 17, 24, 38

*Encino Motorcars, LLC v. Navarro*,
579 U.S. 211 (2016) ................................................................................................................. 33

*FCC v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009) ............................................................................................................ 32, 33

*Frank LLP v. Consumer Financial Protection Bureau*,
288 F. Supp. 3d 46 (D.D.C. 2017) ........................................................................................... 29

*Greenpeace, Inc. v. U.S. Department of Homeland Security,*
    311 F. Supp. 3d 110 (D.D.C. 2018) ............................................................... 18

*Grundmann v. Trump,*
    No. 25-cv-425 (SLS), 2025 WL 782665 (D.D.C. Mar. 12, 2025) ........................... 44

*Hedgeye Risk Management, LLC v. Heldman,*
    196 F. Supp. 3d 40 (D.D.C. 2016) ................................................................. 44

*Hoai v. Superior Court of the District of Columbia,*
    473 F. Supp. 2d 75 (D.D.C. 2007) ................................................................. 44

*\*Judicial Watch v. U.S. Department of Homeland Security,*
    895 F.3d 770 (D.C. Cir. 2018) .............................................. 18, 25, 28, 29

*Khine v. U.S. Department of Homeland Security,*
    334 F. Supp. 3d 324 (D.D.C. 2018) ............................................................... 29

*Leadership Conference on Civil and Human Rights v. Gonzales,*
    404 F. Supp. 2d 246 (D.D.C. 2005) ............................................................... 24

*\*League of Women Voters of U.S. v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016) ......................................................... 34, 39, 43

*Loyola University Medical Center v. Becerra,*
    728 F. Supp. 3d 128 (D.D.C. 2024) ............................................................... 19

*Missouri Coalition for the Environment v. U.S. Army Corps of Engineers,*
    369 F. Supp. 3d 151 (D.D.C. 2019) ......................................................... 25, 29

*Motor Vehicle Manufacturers Association v. State Farm,*
    463 U.S. 29 (1983) .................................................................................. 32

*Muckrock, LLC v. Central Intelligence Agency,*
    300 F. Supp. 3d 108 (D.D.C. 2018) ......................................................... 27, 29

*Muttitt v. U.S. Central Command,*
    813 F. Supp. 2d 221 (D.D.C. 2011) ............................................................... 18

*Muttitt v. U.S. Department of State,*
    926 F. Supp. 2d 284 (D.D.C. 2013) ............................................................... 24

*National Archives and Records Administration v. Favish,*
    541 U.S. 157 (2004) ........................................................................... 23, 40

*National Association for Fixed Annuities v. Perez*,
  217 F. Supp. 3d 1 (D.D.C. 2016) ................................................................. 44

*National Labor Relations Board v. Robbins Tire & Rubber Company*,
  437 U.S. 214 (1978) ..................................................................................... 3

*National Treasury Employees Union v. Vought*,
  No. 25-cv-0381 (ABJ), 2025 WL 942772 (D.D.C. Mar. 28, 2025) ......................... 30

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................................................... 41

*Open Society Justice Initiative v. Central Intelligence Agency*,
  399 F. Supp. 3d 161 (S.D.N.Y. 2019) ................................................................ 30

*Payne Enters. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ....................................................................... 29

*Protect Democracy Project, Inc. v. U.S. Department of Defense*,
  263 F. Supp. 3d 293 (D.D.C. 2017) ................................... 21, 23, 24, 38, 41

*Protect Democracy Project, Inc. v. U.S. Department of Justice*,
  498 F. Supp. 3d 132 (D.D.C. 2020) ................................................................ 22

*Public Citizen, Inc. v. Lew*,
  127 F. Supp. 2d 1 (D.D.C. 2000) .................................................................... 18

*R.I.L-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) .................................................................. 43

*Students Against Genocide v. U.S. Department of State*,
  257 F.3d 828 (D.C. Cir. 2001) ....................................................................... 17

*Transactive Corp. v. United States*,
  91 F.3d 232 (D.C. Cir. 1996) ......................................................................... 32

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
  489 U.S. 749 (1989) .............................................................................. 39, 41

*Washington Post v. U.S. Department of Homeland Security*,
  459 F. Supp. 2d 61 (D.D.C. 2006) ............................................................ 17, 43

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ......................................................................................... 41

**Statutes**

5 U.S.C. § 552 ........................................................................................... 17, 20, 27, 28, 30

5 U.S.C. § 704 ....................................................................................................................... 18

5 U.S.C. § 706 ............................................................................................................... 30, 32

28 U.S.C. § 1657 ................................................................................................................. 44

**Rules**

Fed. R. Civ. P. 56 ............................................................................................................... 19

Fed. R. Civ. P. 65 ............................................................................................................... 44

**Regulations**

*45 C.F.R. § 5.2 ................................................................................................................. 31

*45 C.F.R. § 5.23 ............................................................................................................... 31

*45 C.F.R. § 5.27 ......................................................................................................... 20, 27

*45 C.F.R. § 5.3 ...................................................................................................... 7, 9, 28, 31

**Other Authorities**

*2025 Chief FOIA Officer Report, HHS (Mar. 10, 2025), https://www.hhs.gov/foia/statutes-and-
    resources/officers-reports/2025-introduction/index.html ...................................... 7, 8, 9, 11, 43

*CDC, Measles Cases and Outbreaks (last accessed Apr. 17, 2025),
    https://www.cdc.gov/measles/data-research/index.html...................................... 2, 15

*Freedom of Information Act (FOIA), CDC, https://foia.cdc.gov/app/Home.aspx (last visited
    Apr. 14, 2025) ................................................................................................................. 10

*Freedom of Information Act (FOIA), CDC, https://www.cdc.gov/foia/about/index.html (last
    visited Apr. 14, 2025) ................................................................................................... 10

FY25 February, CDC FOIA Office Request Logs, CDC,
    https://foia.cdc.gov/app/ReadingRoom.aspx ............................................................. 42

*HHS, Fact Sheet: HHS' Transformation to Make America Healthy Again (Apr. 2, 2025),
    https://www.hhs.gov/press-room/hhs-restructuring-doge-fact-sheet.html ................ 5

\*HHS, HHS Fiscal Year 2024 Freedom of Information Annual Report (updated Feb. 21, 2025),
https://www.hhs.gov/foia/reports/annual-reports/2024/index.html ..................................... 9, 11

Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't Reform Comm., to Robert F. Kennedy Jr., Sec'y of Health and Hum. Servs. (Mar. 20, 2025), https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-document/2025-03-20-gec-to-24-cfo-agencies-re-foia-staffing.pdf ................................................................................................................... 12, 13

Letter from Sens. Patty Murray et al., U.S. Senate, to Robert F. Kennedy, Jr., Sec'y of HHS (Mar. 31, 2025), https://www.appropriations.senate.gov/imo/media/doc/letter_to_hhs_re_reorganization_and_staffing_reductions_3-31-25.pdf ............................................................... 14

Letter from Sens. Ron Wyden et al., U.S. Senate, to Robert F. Kennedy, Jr., Sec'y of HHS. (Apr. 1, 2025), https://www.finance.senate.gov/imo/media/doc/040125_warner_wyden_sanders_letter_to_rfk_on_hhs_firings.pdf ............................................................................... 14

News Release, Tex. Dep't of State Health Servs., Texas announces second death in measles outbreak (Apr. 6, 2025), https://www.dshs.texas.gov/news-alerts/texas-announces-second-death-measles-outbreak ........................................................................................... 1

*Office of Information Policy*, U.S. Dep't of Just., https://www.justice.gov/oip (last visited Apr. 18, 2025) ................................................................................................................ 13

*PAL Popular Documents*, CDC, https://foia.cdc.gov/App/ReadingRoomPopularDocument.aspx (last visited Apr. 14, 2025) .............................................................................. 10, 11

\*Press Release, HHS, *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/about/news/hhs-restructuring-doge.html ....................... 2, 7, 12

*Press Release: Chair Cassidy, Ranking Member Sanders Invite Sec. Kennedy to Future Hearing on HHS Reorganization*, U.S. Senate Health, Education, Labor, and Pensions (HELP) Committee (Apr. 1, 2025), https://www.help.senate.gov/rep/newsroom/press/chair-cassidy-ranking-member-sanders-invite-sec-kennedy-to-future-hearing-on-hhs-reorganization ......... 14

*The Freedom of Information Act: Perspectives from Public Requesters Before the S. Comm. on the Judiciary*, 119th Cong. (2025) (statements of Sens. Dick Durbin & Senator Sheldon Whitehouse) (statements at 26:00; 53:00, 1:07:05), https://www.judiciary.senate.gov/committee-activity/hearings/the-freedom-of-information-act-perspectives-from-public-requesters (last visited Apr. 14, 2025) .................... 11, 13, 22, 24, 36

## INTRODUCTION

An agency cannot "avoid its obligations under FOIA—including the obligation to process a request in an efficient and prompt manner—by simply implementing a reduction-in-force that 'either [] terminate[s] or place[s] on administrative leave'" its FOIA personnel. *Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*, No. 24-cv-3505, 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025). Indeed, "FOIA's demand for expedition" and its "requirement that agencies release all non-exempt, responsive records . . . would be rendered meaningless if an agency could avoid these statutory obligations through the simple expedient of dismissing its FOIA staff." *Id.*

And yet, Defendants seek to do just that. Amid infectious disease outbreaks and other public health crises, Defendants abruptly fired the entire FOIA office of the U.S. Centers for Disease Control and Prevention ("CDC") on April 1, 2025. They did so without advance notice, reasoned decisionmaking, mechanisms in place to process the thousands of pending CDC FOIA requests or to accept new requests (including those of Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW")), or plans to promptly transition CDC's FOIA functions to other agency components. As a result, CDC's statutorily-mandated FOIA operations have come to a halt. And Americans have lost a critical avenue for transparency and accountability from our nation's leading public health agency.

Defendants' timing could not be worse. The country faces a worsening measles outbreak that has already claimed the lives of two children who were unvaccinated[1] and has spread to 25

---

[1] News Release, Tex. Dep't of State Health Servs., Texas announces second death in measles outbreak (Apr. 6, 2025), https://www.dshs.texas.gov/news-alerts/texas-announces-second-death-measles-outbreak.

states.[2] The federal government's response to this ongoing outbreak has been called into question,[3] with public reporting indicating that CDC political appointees suppressed the release of a forecast stressing the need for measles vaccinations.[4] Meanwhile, Defendants carried out mass layoffs across Department of Health and Human Services ("HHS") components on April 1, including the CDC FOIA office. Thousands of employees who perform a range of public health functions[5]— including responding to infectious disease outbreaks, regulating tobacco products, approving new drugs, and communicating information to the public[6]—were abruptly fired, some apparently by mistake.[7] More firings, and likely more mistakes, are in the offing.

This haphazard gutting of our public health infrastructure is being coordinated by the U.S. DOGE Service ("DOGE"),[8] a secretive new government entity that has rapidly shuttered

---

[2] CDC, *Measles Cases and Outbreaks* (last accessed Apr. 17, 2025), https://www.cdc.gov/measles/data-research/index.html.

[3] *See, e.g.*, Jessica Glenza, *RFK Jr says his response to measles outbreak should be 'model for the world'*, The Guardian (Apr. 9, 2025), https://www.theguardian.com/us-news/2025/apr/09/rfk-jr-measles-outbreak-texas; Julie Steenhuysen, *US measles battle hindered by confusion over health secretary response*, Reuters (Apr. 9, 2025), https://www.reuters.com/business/healthcare-pharmaceuticals/us-measles-battle-hindered-by-confusion-over-health-secretary-response-2025-04-09/.

[4] *See* Patricia Callahan, *The CDC Buried a Measles Forecast That Stressed the Need for Vaccinations*, ProPublica (Mar. 28, 2025), https://www.propublica.org/article/measles-vaccine-rfk-cdc-report.

[5] Press Release, HHS, *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/about/news/hhs-restructuring-doge.html

[6] *See* Carla K. Johnson, *Mass layoffs begin at HHS agencies responsible for research, tracking disease and regulating food*, PBS (Apr. 1, 2025), https://www.pbs.org/newshour/politics/layoffs-begin-at-hhs-agencies-responsible-for-research-tracking-disease-and-regulating-food; Rob Stein et al., *Widespread firings start at federal health agencies including many in leadership*, NPR (Apr. 1, 2025), https://www.npr.org/sections/shots-health-news/2025/04/01/g-s1-57485/hhs-fda-layoffs-doge-cdc-nih.

[7] *See* Cheyenne Haslett, *RFK Jr. announces HHS reinstating some programs, employees cut by mistake*, ABC News (Apr. 3, 2025), https://abcnews.go.com/Politics/rfk-jr-announces-hhs-reinstating-programs-employees-cut/story?id=120463293.

[8] Michael Ramsey, *RFK Jr. defends HHS job cuts, says 'We're not cutting scientists'*, News Nation (Mar. 28, 2025), https://www.newsnationnow.com/cuomo-show/rfk-defends-hhs-job-cuts/ (discussing DOGE assistance with agency reorganization and consolidation at 4:10-5:00 of

independent agencies established by Congress, slashed the federal workforce, seized control of government spending and data, and taken other destabilizing actions in the name of "government efficiency."[9]

At this perilous moment, where lives and livelihoods are on the line, transparency from our public health agencies is vital. And it is guaranteed by law. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But Defendants are openly subverting that purpose by refusing to comply with FOIA. In his first address to HHS personnel after being sworn in, Secretary Robert F. Kennedy Jr. proclaimed FOIA would be unnecessary during his tenure.[10] Weeks later, CDC's entire FOIA office was shuttered and FOIA staff at other HHS components were likewise purged.

Defendants' abrupt closure of the CDC FOIA office is actively harming CREW and other requesters. On April 1, CREW submitted five expedited requests to CDC for time-sensitive records relating to CDC's assessment of measles risks, the closure of its FOIA office, DOGE's

---

embedded video); *see also* George Chidi, *'No guidance and no leadership': chaos and confusion at CDC after mass firings*, The Guardian (Apr. 8, 2025), https://www.theguardian.com/us-news/2025/apr/08/hhs-mass-firings; Ellie Quinlan Houghtaling, *RFK Jr. Reveals DOGE Fired Some People by Mistake*, The New Republic (Apr. 4, 2025), https://newrepublic.com/post/193645/robert-f-kennedy-jr-doge-cuts-hhs-mistake.

[9] *CREW v. U.S. DOGE Serv.*, No. 25-cv-00511, 2025 WL 752367, at *3-4 (D.D.C. Mar. 10, 2025), *reconsideration denied*, No. 25-cv-00511, 2025 WL 863947 (D.D.C. Mar. 19, 2025). *See also* James FitzGerald & Holly Honderich, *What is Doge and why is Musk cutting so many jobs?*, BBC (Feb. 18, 2025), https://www.bbc.com/news/articles/c23vkd57471o; Rebecca Kern, *Project 2025 wanted to hobble the federal workforce. DOGE has hastily done that, and more*, Gov't Exec. (Apr. 9, 2025), https://www.govexec.com/transition/2025/04/project-2025-wanted-hobble-federal-workforce-doge-has-hastily-done-and-more/404390/.

[10] Berkeley Lovelace Jr. et al., *Widespread job cuts begin at health agencies*, NBC News (Apr. 1, 2025), https://www.nbcnews.com/health/health-news/widespread-job-cuts-begin-health-agencies-rcna198859.

involvement in that closure, and Defendants' plans (if any) to comply with their statutorily-mandated FOIA duties. CREW received automated email responses confirming that CDC's FOIA staff had been placed on administrative leave and could not respond to CREW's requests. Absent immediate intervention by this Court, all CDC FOIA requests will go unanswered, irreparably harming CREW and the public. CREW now seeks a preliminary injunction to prevent that outcome.

CREW readily meets each requirement for a preliminary injunction. First, CREW is likely to succeed on its claim (Count I) demanding expedited processing of its FOIA requests, which seek to inform vital and ongoing national debates about transparency, accountability, and measles preparedness at CDC. CREW is also likely to succeed on its claims (Counts II–IV) that the unexplained and unreasoned closure of the CDC FOIA office violates FOIA and the Administrative Procedure Act ("APA") in multiple respects. Second, CREW will suffer irreparable injury absent a preliminary injunction, both because the time-sensitive debates to which the requested records relate cannot be wound back, and because the total closure of the CDC FOIA office will frustrate CREW's mission-critical information dissemination functions. Third, because the public is likewise harmed by the closure of the CDC FOIA office, and because Defendants can suffer no cognizable harm from merely complying with the law, the public interest and balance of the equities weigh in CREW's favor.

Moreover, because the merits of Counts I through III of the Complaint are clear and raise no disputed factual issues, the Court should enter a final order granting partial summary judgment for CREW on those claims without delay.[11]

---

[11] CREW is not at this time moving for summary judgment on its arbitrary-and-capricious claim (Count IV), because final resolution of that claim will be based on the administrative record, which has not yet been produced.

The Court thus should issue an order (1) requiring Defendants to grant expedited processing of CREW's FOIA requests at issue in this case, and expeditiously and fully process and produce all non-exempt records responsive to these requests, along with a *Vaughn* index as soon as practicable; (2) requiring Defendants to assign sufficient personnel and resources to immediately comply with the requirements of FOIA and timely process FOIA requests directed to CDC; and (3) preliminarily and permanently enjoining Defendants from continuing to engage in unlawful actions that render the CDC FOIA office inoperative, as well as declaring that Defendants' closure of the CDC FOIA office is unlawful.

## BACKGROUND

I.    **Factual Background**

A.    **HHS fires thousands of public health employees.**

On February 11, 2025, President Trump issued an executive order entitled *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* ("DOGE RIF Initiative"), which instructed agency heads to promptly prepare to initiate large-scale reductions in force ("RIFs"). *See* Compl. for Decl. and Inj. Relief ("Compl.") ¶ 31, ECF No. 1. On March 27, 2025, HHS announced that, per the DOGE RIF Initiative, it planned to restructure and downsize its workforce by 20,000 employees, from 82,000 to 62,000 full-time employees. *See id.* ¶ 33.

The following week, on April 1, HHS commenced its RIF plan, cutting around 10,000 employees across its components. *See id.* ¶ 34. It fired over 2,000 employees at CDC. *See* Griffis Decl. ¶ 15; Doe Decl. ¶ 4.[12] A large number of these employees had job responsibilities that

---

[12] *See also* HHS, *Fact Sheet: HHS' Transformation to Make America Healthy Again* (Apr. 2, 2025), https://www.hhs.gov/press-room/hhs-restructuring-doge-fact-sheet.html; Apoorva Mandavilli & Roni Caryn Rabin, *C.D.C. Cuts Threaten to Set Back the Nation's Health, Critics

involved communicating information to the public, including media relations, digital communications, social media, and FOIA staff. *See* Griffis Decl. ¶ 16. DOGE was reportedly involved in these job cuts at CDC and other HHS components.[13] Just two days later, Secretary Kennedy stated that the DOGE-coordinated RIF initiative led to errors; by his estimate, 20 percent of the cuts, including the gutting of CDC's team handling lead surveillance, were "mistakes."[14] But neither he nor the other Defendants have thus far announced any action to reinstate employees terminated through the April 1 RIFs.[15]

**B.    CDC closes its FOIA office without notice, planning, or explanation.**

As part of the April 1 RIFs, Defendants placed each of the CDC FOIA office's approximately 23 employees on administrative leave pending their termination on June 2, 2025. Doe Decl. ¶ 4; Griffis Decl. ¶¶ 7, 15. CDC staff received no advanced notice of the RIF. Doe Decl. ¶ 6; Griffis Decl. ¶ 18. They lost access to their CDC office space on April 1, and to CDC computer systems on April 2. Doe Decl. ¶ 5. At the time of the RIFs, the CDC FOIA office was actively fulfilling its statutory obligations and processing FOIA requests; it was in regular contact with other FOIA offices across HHS and with HHS leadership to coordinate responses to FOIA requests, appeals, and litigation, including sending weekly reports to the Office of the Secretary. Griffis Decl. ¶ 11.

---

*Say*, N.Y. Times (Apr. 2, 2025), https://www.nytimes.com/2025/04/02/health/cdc-layoffs-kennedy.html.

[13] *See* Houghtaling, *supra* note 8; Ramsey, *supra* note 8; *see also* Alexander Tin, *CDC, NIH and more health agencies brace for layoffs with DOGE and RFK Jr.'s restructuring. Here's what we know.*, CBS News (Mar. 21, 2025), https://www.cbsnews.com/news/cdc-nih-hhs-layoffs-doge-rfk-jr-restructuring/; Kristina Fiore, *Musk, DOGE Created New HHS Org Chart*, MedPage Today (Apr. 1, 2025), https://www.medpagetoday.com/special-reports/features/114915.

[14] Haslett, *supra* note 7.

[15] *Id.*

But since April 1, all FOIA work at CDC has ceased. *Id.* ¶ 16; Doe Decl. ¶ 7. FOIA requests sent to FOIARequests@cdc.gov return an automated message that CDC's FOIA office has been placed on administrative leave and is unable to respond. Goldstein Decl. ¶ 14; Goldstein Decl. Ex. F. No one outside of CDC's FOIA office is publicly designated or trained to process CDC FOIA requests. Doe Decl. ¶ 10; Griffis Decl. ¶ 13 (similar). Making matters worse, the April 1 RIFs also targeted FOIA staff in other HHS components, Doe Decl. ¶ 8, including the Administration of Children and Families, Singh Decl. ¶ 3, and the Food and Drug Administration and National Institutes of Health.[16]

By regulation, each HHS component FOIA office operates independently as part of a "decentralized" FOIA apparatus. 45 C.F.R. § 5.3.[17] HHS purportedly plans to "centralize core functions"[18] and to "create a central place to handle FOIA requests" for CDC and other components across "the entire department," but the agency has not announced, nor does it appear

---

[16] Sydney Lupkin, *After promising transparency, RFK guts public records teams at HHS*, NPR (Apr. 3, 2025), https://www.npr.org/sections/shots-health-news/2025/04/03/g-s1-57888/hhs-fda-rfk-foia-public-records; Rachana Pradhan & Brett Kelman, *Firings at Federal Health Agencies Decimate Offices That Release Public Records*, KFF Health News (Apr. 7, 2025), https://kffhealthnews.org/news/article/hhs-firings-federal-health-agencies-foia-requests-public-records/; Nick Valencia et al., *'It's a bloodbath': Massive wave of job cuts underway at US health agencies*, CNN (Apr. 2, 2025) https://www.cnn.com/2025/04/01/health/staff-cuts-at-federal-health-agencies-have-begun/index.html; Rachana Pradhan, *RFK Jr.'s Purge of FOIA Staff at FDA Spares People Working on Covid Vaccine Lawsuits*, KFF Health (Apr. 10, 2025), https://kffhealthnews.org/news/article/fda-foia-staff-purge-spares-workers-covid-vaccine-lawsuits-aaron-siri/.

[17] *See also 2025 Chief FOIA Officer Report*, HHS (Mar. 10, 2025) ("2025 HHS Chief FOIA Officer Report"), https://www.hhs.gov/foia/statutes-and-resources/officers-reports/2025-introduction/index.html.

[18] Press Release, *supra* note 5.

to have implemented, any such centralization efforts.[19] As an HHS official confirmed, "no final decisions have been made on what exactly the new FOIA process will look like at HHS."[20]

Centralizing HHS's FOIA processing will be time-consuming and resource-intensive work. The agency will need to consolidate 12 freestanding FOIA offices—each responsible for different types of records tied to their component's specific subject-matter focus, different recordkeeping systems, and different review processes. As former CDC Communications Director Kevin Griffis explains, "[p]ersonnel at each HHS FOIA Office have specialized training, expertise, and institutional knowledge about their specific component's records systems and how to properly and timely direct requests to appropriate custodians of records." Griffis Decl. ¶ 13. "If the functions of CDC's FOIA Office are transitioned to [the Office of the Secretary's] FOIA Office or any other HHS component, the agency would need to swiftly develop and implement new information technology systems, processes, and protocols to ensure that FOIA requests for CDC records are processed promptly and in compliance with FOIA and HHS regulations." *Id.* ¶ 20.[21]

_____

[19] Alexander Tin, *RFK Jr. purges CDC and FDA's public records teams, despite "transparency" promises*, CBS News (Apr. 1, 2025), https://www.cbsnews.com/news/rfk-jr-purges-cdc-fda-records-transparency-teams/.

[20] *Id.*; *see also* Ben Johansen, *Kennedy shutters several FOIA offices at HHS*, Politico (Apr. 3, 2025), https://www.politico.com/news/2025/04/03/kennedy-shutters-several-foia-offices-at-hhs-00268646.

[21] For example, HHS's 12 different FOIA operations have their own independent webpages providing instructions to new and existing requesters, case management systems and processes, technological capabilities, training procedures for personnel, outreach processes to provide guidance to requesters for complex or voluminous requests, use of contractors and other initiatives to handle FOIA workload needs, backlogs for FOIA request and appeal, and processes to identify and post records subject to FOIA's proactive disclosure requirements to their respective agency reading rooms. These differences are detailed across each of the sections of HHS's 2025 Chief FOIA Officer Report. *See* 2025 HHS Chief FOIA Officer Report, *supra* note 17. HHS's 2024 Annual FOIA Report also illustrates the different FOIA work each HHS component does by capturing differences in, for example, the components' application of different nondisclosure statutes under FOIA Exemption 3 and applications of other exemptions, request and processing numbers, requests for expedited processing, and posting of records as part of their proactive disclosure obligations. *See* HHS, HHS Fiscal Year 2024 Freedom of Information Annual Report

The department's existing central FOIA office, known as the Office of the Secretary FOIA office ("OS FOIA"), *see* 45 C.F.R. § 5.3, is not equipped to take on all of HHS's FOIA obligations, including those of CDC. OS FOIA has its own FOIA processing systems that are separate from, and do not interact with, CDC's FOIA systems. *See* Griffis Decl. ¶ 4. Moreover, OS FOIA only handles initial FOIA requests for records in the custody of the Secretary's staff divisions, *see* 2025 Chief FOIA Officer Report, Introduction, which last fiscal year came out to roughly 2,800 requests out of 51,800 received department-wide, *see* 2024 Annual FOIA Report, Section V.A; *see also id.*, Section XII.D.(1) (showing that OS FOIA's requests had increased by 97%). And OS FOIA is currently experiencing a significant FOIA backlog, including hundreds of backlogged FOIA appeals from CDC alone, and reduced staffing. *See* Doe Decl. ¶ 9; Griffis Decl. ¶ 5. OS FOIA ended last fiscal year with 3,020 backlogged FOIA requests, the second most out of all HHS FOIA offices. *See* 2024 Annual FOIA Report, Section XII.A; *see also id.*, Section XII.D (showing that OS FOIA's backlog had increased by 46%). And it only had 31 employees (out of 336 total HHS FOIA employees), *see id.*, Section IX, and reported losing three of its most experienced FOIA analysts last year, *see* 2025 Chief FOIA Officer Report, Section V.C. HHS has not announced or initiated any plans to expand OS FOIA or take any other steps to enable the office to accommodate HHS-wide FOIA work. In recent years, HHS has cited the loss of staff, and in particular experienced staff, as a key factor in the increased backlog in processing FOIA requests and appeals.[22]

---

(updated Feb. 21, 2025) ("2024 Annual FOIA Report"), https://www.hhs.gov/foia/reports/annual-reports/2024/index.html.

[22] *See* 2025 Chief FOIA Officer Report, *supra* note 17, section V.C (discussing backlog and loss of staff).

The abrupt shuttering of the CDC FOIA office has provoked massive public concern, *see, e.g.*, Compl. ¶¶ 34-37 nn.5-8,[23] and understandably so: as CDC itself touts on its FOIA webpage, "information sharing" is "core" to its mission of "saving lives and protecting the health of Americans" and ensuring that its "science and research activities . . . comply with federal laws, regulations, and policies."[24] A critical part of CDC's ability to share information is its FOIA work. Again, as the agency's FOIA portal explains, FOIA provides "a standardized process for citizens to request documents in CDC's possession," and the agency "strongly endorses both the letter and the spirit of this Act."[25] CDC typically handles between 1,000 to 2,500 FOIA requests each year[26] on a range of important public health topics—including foodborne illness and toxic substance events and outbreaks of infectious diseases like Ebola and measles[27]—and provides "hundreds of thousands of pages of records to requestors."[28] And 2025 has reportedly been a remarkably active FOIA year for the agency, with the agency seeing a "massive" uptick in FOIA requests.[29] Those

---

[23] *See also* Kevin Griffis, *Decimation of HHS comms, FOIA offices will leave Americans in the dark about urgent health matters*, STAT (Apr. 2, 2025), https://www.statnews.com/2025/04/02/hhs-cuts-cdc-communications-foia-offices-gutted/; Lauren Harper, *RFK Jr. promises radical transparency, then closes FOIA shops*, Freedom of the Press Found. (Apr. 6, 2025), https://freedom.press/the-classifieds/rfk-jr-promises-radical-transparency-then-closes-foia-shops/; Miles Klee, *Health Secretary RFK Jr. Promised Radical Transparency. Now He's Closing FOIA Offices*, Rolling Stone (Apr. 1, 2025), https://www.rollingstone.com/politics/politics-news/rfk-jr-health-agencies-foia-offices-closing-1235308520/; *see also supra* notes 13-16.

[24] *Freedom of Information Act (FOIA)*, CDC, https://www.cdc.gov/foia/about/index.html (last visited Apr. 14, 2025).

[25] *Freedom of Information Act (FOIA)*, CDC, https://foia.cdc.gov/app/Home.aspx (last visited Apr. 14, 2025).

[26] *See* Johansen, *supra* note 20.

[27] *PAL Popular Documents*, CDC, https://foia.cdc.gov/App/ReadingRoomPopularDocument.aspx (last visited Apr. 14, 2025).

[28] CDC FOIA, *supra* note 25.

[29] Rachel Cohrs Zhang, *RFK Jr. Pushes Out Top Officials in Health Agency Overhaul*, Bloomberg (Apr. 1, 2025), https://www.bloomberg.com/news/articles/2025-04-01/us-health-agency-mass-firings-begin-as-kennedy-orders-10-000-cut.

requests have concerned, among other topics, the Trump administration's RIF plans for CDC, CDC communications with DOGE, and information on current infectious disease outbreaks, including the ongoing measles outbreak.[30] At the same time, CDC has received a high volume of media requests concerning these same issues. *See* Griffis Decl. ¶ 9.

During this exceptionally busy period for CDC and HHS,[31] the April 1 RIFs will make it significantly harder for the agencies to communicate with the public, and will lead to a massive slowdown in FOIA processing to disseminate public health information to requesters. *See* Griffis Decl. ¶ 19 ("I anticipate that the sudden closure of CDC's FOIA Office will drastically increase the processing times of current and future FOIA requests for CDC records. This is due to insufficient resources, staffing, training, and institutional knowledge among remaining HHS personnel, as well as the substantial backlog of FOIA requests across HHS components, including OS."); Doe Decl. ¶¶ 10, 11 (similar); Minovi Decl. ¶ 12 ("The request has yet to be fulfilled and we are unsure whether we will receive the requested records with the elimination of the CDC FOIA office."); Hao Decl. ¶ 15 (stating access to health information is "eliminated").[32] That includes members of Congress who have expressed concerns that the closure of the CDC FOIA office would "foil FOIA" and harm government transparency.[33]

---

[30] *See PAL Popular Documents, supra* note 27.

[31] Last fiscal year, HHS components collectively received over 50,000 FOIA requests and accrued a backlog of over 12,000 requests, numbers that represent greater than 10% spikes from the prior year. *See* 2024 Annual FOIA Report, *supra* note 21, Section XII.D.(1); 2025 Chief FOIA Officer Report, *supra* note 17, Section V.C.

[32] *See also* Johansen, *supra* note 20; Lupkin, *supra* note 16; Harper, *supra* note 23; Pradhan & Kelman, *supra* note 16; Griffis, *supra* note 21; Brett Kelman and Rachana Pradhan, *Firings at federal health agencies decimate offices that release public records*, Georgia Recorder (Apr. 8, 2025), https://georgiarecorder.com/2025/04/08/firings-at-federal-health-agencies-decimate-offices-that-release-public-records/.

[33] *The Freedom of Information Act: Perspectives from Public Requesters Before the S. Comm. on the Judiciary*, 119th Cong. (2025) (statements of Sens. Dick Durbin & Senator Sheldon Whitehouse) (statements at 26:00; 53:00, 1:07:05), https://www.judiciary.senate.gov/committee-

### C.    Urgent issues of national importance surround the CDC FOIA office closure.

Defendants' actions are at the intersection of multiple public debates of national importance. To begin, the CDC FOIA office shuttering is part of the broader DOGE initiative to slash the federal workforce.[34] DOGE's operations have been extensively covered and debated,[35] including its involvement at HHS and CDC[36] and the April 1 RIFs that eliminated CDC's FOIA staff.[37]

Defendants' closure of the CDC FOIA office is also part of a troubling pattern of FOIA staff purges across the government, which has raised significant alarm in the media and in Congress. In February, the Office of Personnel Management reportedly fired its entire FOIA staff.[38] That prompted Congressman Gerald E. Connolly, Ranking Member of the House Oversight and Government Reform Committee, to write a March 20, 2025, letter to HHS and 23 other agencies, warning them that they "must have appropriately staffed and functional processing

---

activity/hearings/the-freedom-of-information-act-perspectives-from-public-requesters (last visited Apr. 14, 2025).

[34] Press Release, *supra* note 5; *see also supra* note 11.

[35] *See supra* notes 5-9.

[36] *See* Chidi, *supra* note 8 (DOGE staffers fire CDC employees); Dan Diamond et al., *DOGE takes over federal grants website, wresting control of billions*, Wash. Post (Apr. 11, 2025), https://www.washingtonpost.com/politics/2025/04/11/doge-controls-federal-grant-postings/; Dan Diamond et al., *DOGE broadens sweep of federal agencies, gains access to health payment systems*, Wash. Post (Feb. 5, 2025), https://www.washingtonpost.com/health/2025/02/05/doge-health-agencies-labor/; Ed Cara, *Trump and DOGE Are Destroying U.S. Public Health Agencies From the Inside Out*, Gizmodo (Apr. 3, 2025), https://gizmodo.com/trump-and-doge-are-destroying-u-s-public-health-agencies-from-the-inside-out-2000584773; Apoorva Mandavilli, *Trump Administration Demands Additional Cuts at C.D.C.*, N.Y. Times (Apr. 4, 2025), https://www.nytimes.com/2025/04/02/health/cdc-tump-health.html.

[37] *See supra* notes 8, 13-14.

[38] *See* Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't Reform Comm., to Robert F. Kennedy Jr., Sec'y of Health and Hum. Servs., at 2 (Mar. 20, 2025), https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-document/2025-03-20-gec-to-24-cfo-agencies-re-foia-staffing.pdf.

offices" to comply with their FOIA obligations.[39] Defendants nonetheless proceeded to dismantle the CDC FOIA office. Other FOIA staff, including those at the U.S. Agency for International Development ("USAID"), and the Office of Management and Budget, have reportedly also been fired.[40] The Trump administration also fired the head of the Department of Justice's Office of Information Policy,[41] which is responsible for overseeing FOIA compliance across the government.[42] In response to these firings, journalists and others have expressed serious doubts about their ability to obtain government records,[43] including members of Congress during a recent hearing on the state of compliance with FOIA.[44]

The CDC FOIA office closure is also part of a broader effort to gut the CDC as a whole and cripple its vital public health functions. Defendants' mass firings included CDC staff reportedly focused on reproductive health, chronic disease, occupational safety, birth defects, smoking, tuberculosis, asthma and air quality, injury prevention, and the prevention of infectious

---

[39] *Id.*

[40] *See Ctr. to Advance Sec. in Am.*, 2025 WL 763735, at *1-2; Joint Status Rep. at 3, *CREW v. U.S. DOGE Serv.*, Case No. 25-cv-511 (D.D.C.), ECF No. 30; Harper, *supra* note 23.

[41] *Trump Justice Department fires more career officials*, Reuters (Mar. 10, 2025), https://www.reuters.com/world/us/trump-justice-dept-fires-head-pardon-office-2025-03-07/.

[42] *Office of Information Policy*, U.S. Dep't of Just., https://www.justice.gov/oip (last visited Apr. 18, 2025).

[43] Jason Leopold, *How Trump's Presidency Is Impacting the FOIA*, Bloomberg (Feb. 21, 2025), https://www.bloomberg.com/news/newsletters/2025-02-21/how-foia-is-affected-by-trump-administration-s-political-chaos-and-doge; Allie Maloney & Hans Kristensen, *How Government Cuts Could Impact Your Right to Information*, Federation of American Scientists (Mar. 10, 2025), https://fas.org/publication/foia-opm-doge/; Angela Fu, *Firing of FOIA officers leaves experts worried about public records access under Trump*, Poynter (Feb. 21, 2025) https://www.poynter.org/reporting-editing/2025/public-records-requests-trump-administration-federal-government-foia/; *BREAKING: EPIC Sues OPM for Records on OPM's Information Security and Employee Privacy Practices*, Elec. Priv. Info. Ctr. (Mar. 3, 2025), https://epic.org/breaking-epic-sues-opm-for-records-on-opms-information-security-and-employee-privacy-practices/.

[44] *See supra* note 33.

diseases, including HIV and viral hepatitis.[45] These widespread cuts as part of the DOGE RIF

Initiative have sparked bipartisan congressional concern and inquiry, including calls for Secretary

Kennedy to testify about the department-wide RIFs.[46] Concerns are mounting about how those

RIFs, including of CDC's FOIA office, will affect the public health agency's ability to inform the

American public about, and in turn protect the public from, all manner of health threats.[47]

Finally, Defendants shuttered the CDC FOIA office amid a serious and growing infectious

disease threat: a measles outbreak that has led to the first measles-related deaths in the U.S. in a

decade. *See* Compl. ¶ 38. Since the filing of this lawsuit, the measles outbreak has jumped to 800

---

[45] Chidi, *supra* note 8; Sophie Gardner, *Which jobs were cut at CDC? Here's a list.*, Politico (Apr. 3, 2025), https://www.politico.com/news/2025/04/03/which-jobs-were-cut-at-cdc-heres-a-list-00271509; Leah Feiger, et al., *The CDC Has Been Gutted*, Wired (Apr. 1, 2025), https://www.wired.com/story/cdc-gutted-rif/.

[46] *US Senator Cassidy calls on Kennedy to appear before Senate panel over health agency cuts*, Reuters (Apr. 1, 2025), https://www.reuters.com/business/healthcare-pharmaceuticals/us-senator-cassidy-calls-kennedy-appear-before-senate-panel-over-health-agency-2025-04-01/; *Press Release: Chair Cassidy, Ranking Member Sanders Invite Sec. Kennedy to Future Hearing on HHS Reorganization*, U.S. Senate Health, Education, Labor, and Pensions (HELP) Committee (Apr. 1, 2025), https://www.help.senate.gov/rep/newsroom/press/chair-cassidy-ranking-member-sanders-invite-sec-kennedy-to-future-hearing-on-hhs-reorganization; Letter from Sens. Ron Wyden et al., U.S. Senate, to Robert F. Kennedy, Jr., Sec'y of HHS. (Apr. 1, 2025), https://www.finance.senate.gov/imo/media/doc/040125_warner_wyden_sanders_letter_to_rfk_on_hhs_firings.pdf; Letter from Sens. Patty Murray et al., U.S. Senate, to Robert F. Kennedy, Jr., Sec'y of HHS (Mar. 31, 2025), https://www.appropriations.senate.gov/imo/media/doc/letter_to_hhs_re_reorganization_and_staffing_reductions_3-31-25.pdf.

[47] Feiger, et al., *supra* note 45; Mandavilli & Rabin, *supra* note 12; Valencia et al., *supra* note 16; Pradhan & Kelman, *supra* note 32; Lena H. Sun, *How the CDC's widespread layoffs cut lifesaving health programs*, Wash. Post (Apr. 5, 2025), https://www.washingtonpost.com/health/2025/04/05/cdc-job-cuts-health-issues/; Ariel Hart, *Critics say CDC 'secrecy' will slow vital info; agency pledges transparency*, Atlanta J.-Const. (Apr. 6, 2025), https://www.ajc.com/news/health-news/cdc-restructuring-pledges-transparency-critics-say-secrecy-will-slow-vital-info-to-public/DUX373NZHBA3VNBTUYR6SIESDM/.

confirmed cases across 25 states,[48] killing at least three people, including two children.[49] Public interest in the measles outbreak is predictably growing.[50] *See* Griffis Decl. ¶ 9 ("In 2025, the CDC received a high volume of media requests concerning . . . the measles outbreak").

Medical experts and others have questioned the federal government's response to the outbreak, citing Defendants' lack of forceful advocacy for, and mixed messaging on, the need for measles vaccinations.[51] CDC leadership reportedly barred release of a measles assessment from the agency's Center for Forecasting and Outbreak Analytics, which found that the risk of measles is high in areas near outbreaks where vaccination rates are low and, before it was suppressed, was going to be rolled out as part of an agency news effort to emphasize the importance of the measles vaccination. Compl. ¶¶ 39-40.[52]

---

[48] CDC, *Measles Cases and Outbreaks*, *supra* note 2; *see also, e.g.*, Sara Moniuszko & Taylor Johnston, *Map shows measles cases across U.S.*, CBS News (Apr. 18, 2025), https://www.cbsnews.com/news/measles-outbreak-us-map/.

[49] Erika Edwards, *Second measles death reported in Texas amid fast-growing outbreak*, NBC News (Apr. 6, 2025), https://www.nbcnews.com/health/health-news/second-measles-death-texas-child-kennedy-rcna199882; Devi Shastri, *U.S. measles cases surpass 700 with outbreaks in six states. Here's what to know*, LA Times (Apr. 14, 2025), https://www.latimes.com/world-nation/story/2025-04-14/us-measles-cases-surpass-700-with-outbreaks-in-six-states-heres-what-to-know.

[50] *See, e.g.,* Glenza, *supra* note 3; Steenhuysen, *supra* note 3; Callahan, *supra* note 4; Edwards, *supra* note 49; Moniuszko & Johnston, supra note 48; Jen Christensen, *US measles cases are undercounted, experts say, but real numbers are proving hard to pin down*, CNN (Apr. 15, 2025), https://www.cnn.com/2025/04/15/health/measles-undercount-public-health/index.html.

[51] Steenhuysen, *supra* note 3; Glenza, *supra* note 3; Aria Bendix, *Robert F. Kennedy Jr. falsely claims measles vaccine protection 'wanes very quickly'*, NBC News (Apr. 11, 2025), https://www.nbcnews.com/health/kids-health/health-secretary-rfk-jr-measles-vaccine-falsely-claims-wanes-rcna200636; Melody Schreiber, *Measles Is Spreading, and RFK Jr. Is Praising Quacks*, The New Republic (Apr. 11, 2025), https://newrepublic.com/article/193935/measles-cases-spreading-rfk-jr-vaccines; Catalina Jaramillo & Jessica McDonald, *RFK Jr. Misleads About Measles Vaccine in Hannity Interview*, FactCheck.org (Mar. 25, 2025), https://www.factcheck.org/2025/03/rfk-jr-misleads-about-measles-vaccine-in-hannity-interview/; Julianne McShane, *Don't Believe RFK Jr.'s Flip-Flop on the Measles Vaccine*, Mother Jones (Apr. 9, 2025), https://www.motherjones.com/politics/2025/04/rfk-jr-measles-flip-flop-is-never-coming/.

[52] *See also* Callahan, *supra* note 4.

As CDC's recently-departed Communications Director explains, "the elimination of CDC's FOIA office will significantly reduce agency accountability by shielding the nation's top health officials from public scrutiny, particularly during the early months of a new administration where new officials are taking over these roles." Griffis Decl. ¶ 21.

## II.    Procedural Background

On April 1, 2025, CREW submitted five expedited FOIA requests to CDC. The first sought records related to CDC's decision not to release the measles vaccination assessment by the agency's Center for Forecasting and Outbreak Analytics. Goldstein Decl. ¶ 8; Goldstein Decl. Ex. A. The second sought records related to the decision to place the entire CDC FOIA office on administrative leave on April 1, 2025. Goldstein Decl. ¶ 9; Goldstein Decl. Ex. B. The third sought records related to DOGE's involvement in the decision to place CDC FOIA's office on administrative leave. Goldstein Decl. ¶ 10; Goldstein Decl. Ex. C. The fourth sought records related to the CDC's plan to fulfill its FOIA obligations without its FOIA staff. Goldstein Decl. ¶ 11; Goldstein Decl. Ex. D. The fifth sought records related to the takedown of CDC's FOIA portal and response functions. Goldstein Decl. ¶ 12; Goldstein Decl. Ex. E. Per CDC instructions, CREW submitted each expedited FOIA request to FOIARequests@cdc.gov.  Goldstein Decl. ¶ 13; Goldstein Decl. Ex. F.

In response, CREW immediately received automated emails from FOIARequests@cdc.gov stating: "Hello, the FOIA office has been placed on admin leave and is unable to respond to any emails." Goldstein Decl. ¶ 14; Goldstein Decl. Ex. G, H. Other FOIA requesters reportedly received the same automated message. Compl. ¶ 52 & n.18.

On April 2, CREW received a follow-up email from FOIARequests@cdc.gov stating, "I cannot tell if our automated reply is functional, so I am responding while I am still able to access CDC systems. The entire CDC FOIA Office has been placed on administrative leave prior to a

mandated June 2 separation date." Goldstein Decl. ¶ 15; Goldstein Decl. Ex. I. On April 2 and

April 3, CREW contacted HHS headquarters' FOIA office by email (at HHS.ACFO@hhs.gov and

FOIARequest@hhs.gov) seeking clarification on whether HHS was processing CREW's

expedited FOIA requests. Goldstein Decl. ¶ 16; Goldstein Decl. Ex. J. As of this filing, CREW

has received no response. Goldstein Decl. ¶ 17.

On April 4, CREW filed this suit. The Complaint asserts four counts. Count I asserts that

Defendants wrongfully denied expedited processing of CREW's FOIA requests. Compl. ¶¶ 55-59.

Count II asserts that Defendants are engaged in an improper policy or practice of violating FOIA

by closing the CDC FOIA office. *Id.* ¶¶ 60-64. Counts III and IV assert that Defendants' closure

of the FOIA office was contrary to law, *id.* ¶¶ 65-70, and arbitrary and capricious agency action,

*id.* ¶¶ 71-76, in violation of the APA. CREW now seeks a preliminary injunction and partial

summary judgment.

## LEGAL STANDARDS

### FOIA and the APA

"FOIA requires federal agencies to disclose, upon request, broad classes of agency records

unless the records are covered by the statute's exemptions." *Students Against Genocide v. U.S.

Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001). Under FOIA, this Court "has jurisdiction to

enjoin [an] agency from withholding agency records and to order the production of any agency

records improperly withheld from the complainant," 5 U.S.C. § 552(a)(4)(B), which includes the

power to grant preliminary injunctive relief related to expedited processing, *see, e.g.*, *Wash. Post

v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006) (so holding and citing

cases); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (same).

This Court's jurisdiction also includes the power to grant injunctive relief against an agency's

"policy or practice that will impair the [plaintiff]'s lawful access to information in the future." *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777 (D.C. Cir. 2018) (cleaned up) (citation omitted). The FOIA statute provides this Court with "flexible" and "broad equitable authority" to enforce its mandates. *CREW v. U.S. Dep't of Just.*, 846 F.3d 1235, 1241-42 (D.C. Cir. 2017) (cleaned up) (citation omitted); *see also, e.g.*, *Campaign for Accountability v. U.S. Dep't of Just.*, 278 F. Supp. 3d 303, 316 (D.D.C. 2017).

Insofar as FOIA does not authorize any of CREW's requested relief, the APA fills the gaps. *See Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011); *Greenpeace, Inc. v. U.S. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018). The APA authorizes judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "FOIA actions outside the scope of § 552(a)(4)(B) . . . are reviewed under the standards set forth in § 706 of the APA." *Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, 9 (D.D.C. 2000).

### Preliminary Injunction

To "warrant preliminary injunctive relief, the moving party must show: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citations omitted). "When the movant seeks to enjoin the government, the final two . . . factors—balancing the equities and the public interest— merge." *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 67 (D.D.C. 2020) (citing *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

18

**Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For APA claims, however, the ordinary summary-judgment standard does not apply because "the district judge sits as an appellate tribunal" and the "'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote omitted) (collecting cases); *see also, e.g.*, *Loyola Univ. Med. Ctr. v. Becerra*, 728 F. Supp. 3d 128, 134 (D.D.C. 2024) (explaining that in an APA case "the Court has no factfinding role because the case presents a question of law," and judicial review is limited to asking "whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review" (quotation marks omitted)).

## ARGUMENT

CREW is entitled a preliminary injunction on each of its claims. CREW is likely to succeed in its claim that Defendants have violated FOIA by refusing to grant expedited processing of its FOIA requests to CDC (Count I) because there is an urgent need to inform the public about the government conduct that is the subject of CREW's expedited FOIA requests—Defendants' actions to abruptly shutter CDC's entire FOIA operation and defy basic transparency obligations when present events, including the worsening measles outbreak, make transparency critical. Irreparable harm will result if the records shedding light on this conduct are not promptly processed, and the balance of equities and public interest favor injunctive relief requiring expedited processing. CREW is also likely to succeed in its claims that Defendants are engaged in an unlawful policy or practice of violating FOIA writ large (Count II) and have engaged in unlawful and arbitrary-and-capricious agency action under the APA (Counts III and IV) by closing the CDC FOIA office.

Defendants' fundamental inability to comply with FOIA at CDC and action to dismantle CDC's FOIA function is irreparably harming CREW, other FOIA requesters, and the broader public each day, and the balance of equities and public interest support emergency relief to remedy these harms.

And because the merits of CREW's claims in Counts I–III are clear and involve no disputed factual issues, this Court should enter a final order granting partial summary judgment on those claims without delay.

**I.    CREW is likely to succeed on the merits.**

**A.    CREW is entitled to expedited processing of its FOIA requests.**

FOIA requires agencies to promulgate regulations "providing for expedited processing of requests for records . . . in which the person requesting the records demonstrates a compelling need." *Al-Fayed v. Cent. Intel. Agency*, 254 F.3d 300, 304 (D.C. Cir. 2001) (quoting 5 U.S.C. § 552(a)(6)(E)(i)). The statute defines "compelling need" for "a request made by a person primarily engaged in disseminating information" as "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II). HHS regulations adopt this statutory definition. *See* 45 C.F.R. § 5.27(b)(2).

CREW is entitled to expedited processing of each of its five FOIA requests, and CDC erred in denying expedited processing through its one-line automated response. CREW is entitled to expedited processing because (1) CREW is primarily engaged in disseminating information, and (2) there is a clear urgency to inform the American public about the topics of CREW's requests, which concern significant and unprecedented federal government activity affecting public health.

**Information Dissemination**: CREW clearly qualifies as a FOIA requester primarily engaged in disseminating information because "[i]nformation dissemination" is "the main [and not merely an incidental] activity" in which CREW engages. *Protect Democracy Project, Inc. v. U.S.*

*Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (alteration in original) (citation omitted). For the reasons set out in its requests, *see* Goldstein Decl. Exs. A-E, CREW "easily" demonstrates that it primarily disseminates information, as a court in this District recently held, *CREW v. U.S. DOGE Serv.*, No. 25-cv-00511 (CRC), 2025 WL 752367, at *13 (D.D.C. Mar. 10, 2025), *rec. denied*, No. 25-cv-511 (CRC), 2025 WL 863947, at *1 (D.D.C. Mar. 19, 2025); *see also, e.g.*, *Protect Democracy*, 263 F. Supp. 3d at 298 (similar); *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 98 (D.D.C. 2020) (similar).

**Urgency:** In determining whether a FOIA requester has demonstrated an "urgency" that warrants expedited processing, courts "must consider . . . (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed*, 254 F.3d at 310. Each factor is met here.

*First*, CREW's FOIA requests concern matters of urgent importance to the American public because they all directly relate to ongoing public debates and "currently unfolding stories" about the unprecedented shutdown of the CDC FOIA office and the ongoing measles outbreak that the agency is responsible for containing. *Brennan Ctr.*, 498 F. Supp. 3d at 98; *see also, e.g.*, *ACLU v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 30 (D.D.C. 2004) (citing *Al–Fayed*, 254 F.3d at 310). As reflected in CREW's FOIA requests (and reinforced by the citations to news articles in its pleadings, *see* Compl. ¶¶ 33-35; *see also supra* note 23), the shuttering of the CDC FOIA office has prompted prominent news coverage expressing serious concerns, and the same holds true for CDC's suppression of critical information regarding measles vaccinations, reflecting the exigency of CREW's records requests implicating both issues. *See* Callahan, *supra* note 4; *see, e.g.*, *CREW*, 2025 WL 752367, at *14 (relying on *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d

5, 11 (D.D.C. 2019)); *Protect Democracy Project, Inc. v. U.S. Dep't of Just.*, 498 F. Supp. 3d 132, 140 (D.D.C. 2020); *ACLU*, 321 F. Supp. 2d at 29-30.

The interplay between these two issues and their broader context underscores the need for expediency here. As discussed, neither the closure of the CDC FOIA office nor the agency's suppression of measles information has occurred in a vacuum. They are part of the controversial DOGE RIF Initiative across government and widespread cuts at CDC and other HHS components; attacks on FOIA offices at other HHS components and government agencies; and a surging measles outbreak across two dozen states, driven in large part by vaccination issues. *See supra* notes 1-7. HHS has shuttered other FOIA offices without warning, even to its own attorneys. *See* Singh Decl. ¶ 3 (quoting an email from an Assistant U.S. Attorney: "I had a good call with the Agency on Monday and was anticipating having answers for you shortly. However, I was just informed that [the Administration for Children and Families'] entire FOIA office is currently on administrative leave" (alterations in original)). That the Trump administration is closing and severely cutting the capacity of FOIA offices across the government, *see supra* note 43, poses an existential threat to FOIA itself.

These broader issues have likewise generated significant and ongoing news coverage and congressional inquiry—coverage and inquiry that, as discussed, dovetails with CREW's expedited FOIA requests in numerous ways. *See supra* Background I.C. To take just one example, consider a recent Senate committee's hearing on improving FOIA; there, as in CREW's expedited requests, Senators questioned how FOIA functions and basic transparency could continue at agencies like CDC when their FOIA offices have been gutted. *See supra* note 33.

CREW's expedition requests reinforce the stakes of this fundamental question. As CREW explained, at this critical moment for our country—where "structural changes to the federal

workforce" are upending basic government operations and the spread of measles has precipitated a public health crisis—the American people need information about whether the nation's leading public health agency will be "transparent under its FOIA obligations" or unlawfully seek to "evade" public scrutiny. *See* Goldstein Decl. Exs. A-E. These momentous circumstances at CDC parallel others where courts have found that a FOIA request is "central to a pressing issue of the day" and warrants emergency relief to compel prompt processing. *Protect Democracy*, 263 F. Supp. 3d at 299 (concerning missile strikes against Syria); *see also, e.g.*, *CREW*, 2025 WL 752367, at *13-14 (concerning DOGE).

*Second,* the same reasons showing CREW's FOIA requests are exigent also demonstrate that the requests should be processed without delay to avoid jeopardizing the interests of the American public. "The Supreme Court has observed that a public informed about its government's actions is 'a structural necessity in a real democracy,'" *Brennan Ctr.*, 498 F. Supp. 3d at 101 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)), and "timely awareness is equally necessary because 'stale information is of little value,'" *id.* (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). Here, the issues to which CREW's FOIA requests relate—the complete shuttering of the CDC FOIA office and abdication of its FOIA responsibilities, at the time of a worsening measles outbreak and public concerns that agency-wide DOGE cuts have hampered public health and transparency—are "of the highest national concern." *CREW*, 2025 WL 752367, at *14 (quotation marks omitted). Any delay in processing CREW's requests therefore will undermine its ability and the public's ability to be timely informed about these issues and participate in current debates about their legality. *See, e.g.*, *id.* at *13-14 (similar, regarding ongoing debates about DOGE's various activities, including its efforts to reduce staffing); *Protect Democracy*, 263 F. Supp. 3d at 299-300 (similar, regarding ongoing debates

regarding missile strikes against Syria); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 41 (similar, regarding ongoing debate about legality of Bush administration's warrantless surveillance program); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (similar, regarding ongoing debate about re-authorization of Voting Rights Act in a year); *ACLU*, 321 F. Supp. 2d at 29-30 (similar, regarding ongoing debates about renewal and/or amendment of the Patriot Act).[53]

*Third*, CREW's FOIA requests all clearly concern federal government activity because they each seek records about CDC, "a federal agency," and actions at the agency taken either as part of the DOGE RIF Initiative or its work related to measles. *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 419 F. Supp. 3d 82, 95 (D.D.C. 2019).

### B. Defendants' closure of the CDC FOIA office amounts to a policy or practice of total FOIA noncompliance.

Defendants' FOIA violations go beyond wrongly denying CREW's requests for expedited processing. By dissolving CDC's FOIA office and operations, Defendants are engaged in a policy or practice of violating the transparency statute's requirements across-the-board. If ever there was a meritorious FOIA policy-or-practice claim, this is it.

As courts in this Circuit have long recognized, a plaintiff may, "separate from claims seeking relief for specific FOIA requests, . . . also assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Muttitt*, 926 F. Supp. at 293

---

[53] The fact that those debates have reached Congress—with many members of Congress inquiring about the FOIA cuts at CDC and the other cuts across HHS functions without success, *see supra* note 33—reinforces that CREW's FOIA requests present a matter of exigency and cannot be delayed, *see, e.g.*, *CREW*, 2025 WL 752367, at *13-14 (similar, concerning congressional inquiry into DOGE activity); *Protect Democracy*, 263 F. Supp. 3d at 300-01 (similar, concerning congressional inquiry into military strikes in Syria). Because congressional hearings about the HHS-wide cuts are likely to occur in the coming weeks, *see supra* note 46, CREW's requests regarding the CDC FOIA cuts are especially important to process now.

(D.D.C. 2013) (quoting *Payne Enters.*, 837 F.2d at 491). A plaintiff can make such a claim by establishing "that an agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (cleaned up) (collecting cases); *see also, e.g.*, *CREW. v. U.S. Dep't of Just.*, No. 24-cv-1497 (LLA), 2025 WL 879664, at *4 (D.D.C. Mar. 21, 2025). That FOIA policy or practice may be "informal, rather than crystallized in regulation or an official statement," *Jud. Watch*, 895 F.3d at 778 (cleaned up), and may relate to a range of different FOIA violations—from unreasonable delays, *see, e.g., id.* at 780-84, to the improper invocation of FOIA exemptions, *see, e.g.*, *Missouri Coal. for the Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159-60 (D.D.C. 2019) (Kelly, J.). So long as those violations rise above the level of "isolated mistakes by agency officials," and instead "signal" that the agency is engaged in an ongoing conduct, "ignoring" one or more of "FOIA's requirements," a viable policy-or-practice claim lies. *Jud. Watch*, 895 F.3d at 778, 780 (citations omitted).

At issue here are more than just isolated FOIA mistakes by CDC officials or even ongoing violations of particular FOIA requirements. Defendants abruptly fired everyone in the CDC FOIA office and cut off the staff's access to CDC systems, halting all FOIA work at the agency on April 1 without advance notice, explanation, or planning. And Defendants do not appear to have done anything since April 1 to restart that work. They have not announced or implemented any staffing or procedures for handling CREW's outstanding FOIA requests to CDC, the outstanding CDC FOIA requests of any other parties, or the thousands of FOIA requests that the agency receives each year on a range of important public health and safety issues. *See* Griffis Decl. ¶ 17. Currently, there appear to be no FOIA officers remaining at HHS tasked with or trained on responding to FOIA requests directed to CDC. *See* Doe Decl. ¶ 10.

Insofar as HHS has claimed plans to centralize FOIA operations and take over the CDC FOIA office's workload, there is no evidence that this process is underway or feasible in the short-to-medium term. Griffis Decl. ¶ 20. Such a centralization plan has not been announced, nor to Plaintiff's knowledge finalized or implemented. Moreover, CREW has adduced evidence that any such plan will be quite difficult to effectuate for several reasons: (1) the CDC FOIA office, like the FOIA offices of the 11 other HHS components, has its own specialized training, expertise, and institutional knowledge about its independent records systems, technical and scientific work, and how to properly and timely handle FOIA requests regarding that work; (2) HHS's existing central FOIA office has its own processing systems that do not interact with CDC's systems; (3) the central office currently has a narrow focus on Secretary-office records, limited staff, and a substantial FOIA backlog of its own to handle; and (4) consolidating all FOIA work within HHS's central FOIA office or any other department component will require the development of new information technology systems, processes, and protocols. *See* Griffis Decl. ¶¶ 3-5, 13, 19-20; Doe Decl. ¶¶ 9-10. In other words, the transition of CDC's FOIA work to a central HHS office would be "highly resource intensive" in several respects. Griffis Decl. ¶ 20; *supra* Background I.B. And Defendants have not said *anything* publicly about if and how they will carry out this challenging endeavor. *See supra* Background I.B.

Defendants' conduct inescapably points to one conclusion: they have decided to abandon CDC's statutorily mandated FOIA duties altogether. They have done so even though the applicable regulations and website currently direct individuals to submit CDC-related FOIA requests to the CDC FOIA office. *See* Compl. ¶ 67.h; Goldstein Decl. ¶ 13 & Ex. F. By closing the CDC FOIA office, without any evident plan for handling the agency's current or future FOIA workload, Defendants are engaged in a policy or practice of *total* FOIA noncompliance at CDC.

Under this policy or practice of noncompliance, CDC immediately denied CREW's five FOIA expedited processing requests with a one-line automated message that the agency could not respond because its entire FOIA office had been closed. That single-sentence denial, which of course in no way considered CREW's articulated urgent need for the requested records, uniformly flouts the agency's expedited processing responsibilities under 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 45 C.F.R. § 5.27 and was erroneous for the reasons explained above. *See supra* Argument I.A.; *cf. CREW v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020) (holding that single-sentence denial of expedited processing request, which did not at all engage with requester's showing of the need for expedition, "does not stand up to judicial review"); *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 135-36 (D.D.C. 2018) (holding that uniform responses using a template evince a policy or practice).

And going forward, neither CREW nor any other FOIA requester can reasonably expect CDC to follow other critical FOIA requirements. Without any FOIA function for the foreseeable future, CDC lacks the ability to "make reasonable efforts to search for" records requested by CREW and others, 5 U.S.C. § 552(a)(3), make a determination on those record requests within the required time periods, *see id.* § 552(a)(6), "assign an individualized tracking number for each request" and "provide[] information about the status of a request," *id.* § 552(a)(7), or update its online FOIA reading room so that CREW and others can access CDC "final opinions," "statements of policy and interpretations," and "administrative staff manuals and instructions to staff that affect a member of the public," *id.* § 552(a)(2). Already, the FOIA office's regular proactive disclosures, which continued as recently as March 10, 2025, have ceased. *See* Goldstein Decl. ¶ 21; Goldstein Decl. Ex. L; *see also* Doe Decl. ¶ 7. And without any FOIA staff, CDC lacks a Chief FOIA Officer,

who is responsible for ensuring compliance with these and other FOIA requirements. *See* 5 U.S.C. § 552(j)(1); 45 C.F.R. § 5.3.

Defendants' "total disregard of the [FOIA] obligations mandated by Congress" is plainly unlawful and should be enjoined as an impermissible policy or practice. *Jud. Watch*, 895 F.3d at 782. Defendants cannot escape their FOIA obligations at CDC simply by gutting the agency's FOIA office. As another judge in this District recently explained when addressing the similar gutting of USAID's FOIA office: "FOIA's demand for expedition—and, indeed, more generally, FOIA's requirement that agencies release all non-exempt, responsive records—would be rendered meaningless if an agency could avoid these statutory obligations through the simple expedient of dismissing its FOIA staff." *Ctr. to Advance Sec. in Am.*, 2025 WL 763735, at *2 (expressing skepticism "that an agency can avoid its obligations under FOIA—including the obligation to process a request in an efficient and prompt manner—by simply implementing a reduction-in-force that 'either [] terminate[s] or place[s] on administrative leave'" its FOIA staff); *see also Jud. Watch*, 895 F.3d at 783 ("[A]s Congress's limited reaction in amending FOIA suggests, staffing shortages and work overload may not render injunctive relief inappropriate.").

Nor can Defendants simply adopt a wait-and-see approach to FOIA compliance at CDC, whereby they thwart any ability for the agency to handle FOIA requests pre-litigation and then choose to process requests and produce records only when, as CREW has done, a requester sues. The D.C. Circuit has stressed that "failures to adhere to FOIA's pre-litigation requirements," and FOIA noncompliance that regularly forces requesters to "vindicate[]" their FOIA rights by "judicial enforcement," is exactly the stuff of a policy-or-practice claim. *Jud. Watch*, 895 F.3d at 779-80. Indeed, "Congress did not intend for the agency to use the FOIA offensively to hinder the

release of non-exempt documents so as to force [requesters] to bring several lawsuits to obtain release of . . . documents." *Id.* at 781 (quoting *Payne Enters.*, 837 F.2d at 494).

Absent redress from this Court, Defendants' closure of the CDC FOIA office and continued abdication of CDC FOIA responsibilities impair CREW's "lawful access" to the agency's records, now and "in the future." *Payne Enters.*, 837 F.2d at 491. As an information disseminator that regularly submits FOIA requests to CDC and other agencies, and that has multiple pending FOIA requests with the agency and more in the works, *see* Goldstein Decl. ¶¶ 3-7, 19, CREW faces ongoing injury from Defendants' actions, which show no signs of stopping, *see, e.g.*, *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 332-33 (D.D.C. 2018), *aff'd*, 943 F.3d 959 (D.C. Cir. 2019); *Frank LLP v. Consumer Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 58 (D.D.C. 2017). Accordingly, CREW is entitled to prospective equitable relief.

The Court's remedial power in this arena is broad. "[D]istrict courts have ample authority to award declaratory and prospective injunctive relief to FOIA requesters who successfully sustain policy-or-practice claims." *Muckrock*, 300 F. Supp. at 121; *see also, e.g.*, *Payne Enters.*, 837 F.2d at 494 ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms."). Given Defendants' flagrant and unjustified violation of FOIA's basic guarantees at CDC, declaratory relief is appropriate here. *See Payne Enters.*, 837 F.2d at 494 (similar). And given the "likelihood of continued delinquent conduct by the agency" since CDC has no FOIA function, *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 874 F.3d 287, 293 (D.C. Cir. 2017), and the "cognizable danger of recurrent violation," *Mo. Coal. for the Env't*, 369 F. Supp. 3d at 162 (quoting *Jud. Watch*, 895 F.3d at 783), prospective injunctive relief is warranted as well, *see, e.g.*, *Jud. Watch*, 895 F.3d at 783 (explaining that courts may assess whether an "agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is

so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, *see* 5 U.S.C. § 552(a)(4)(B), would be inadequate to overcome an agency policy or practice"). To remedy the gutting of the CDC FOIA office and shutdown of the agency's FOIA work, the Court should order Defendants "to augment, temporarily or permanently, [CDC's] [FOIA] review resources." *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 169 (S.D.N.Y. 2019).

### C.  Defendants' abrupt closure of the CDC FOIA office was unlawful, arbitrary, and capricious in violation of the APA.

Defendants' sudden closure of the CDC's entire FOIA office also violates the APA's fundamental requirements that agency action be lawful and reasoned. *See Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019). Insofar as the Court finds that FOIA does not authorize relief against Defendants' conduct, CREW appropriately seeks such relief under the APA.

### 1.  The sudden closure of the CDC FOIA office violated statute and agency regulations.

The APA requires a court to "hold unlawful and set aside agency action" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C).

Here, Defendants have taken unlawful final action by firing everyone in the CDC FOIA office and leaving the agency with no staff or process to carry out its FOIA responsibilities. As a result of Defendants' conduct, CDC is not in compliance with numerous mandatory FOIA provisions, as set out *supra* Argument I.B. An agency's "wholesale cessation" of statutorily mandated functions is final agency action reviewable under the APA. *Nat'l Treasury Emps. Union v. Vought*, No. 25-cv-0381 (ABJ), 2025 WL 942772, at *12-13 (D.D.C. Mar. 28, 2025) (holding that the "final, concrete decision to shut down" the Consumer Financial Protection Bureau was reviewable agency action).

Moreover, Defendants' decision to eliminate CDC's FOIA operation is also unlawful because it violates HHS regulations on the structure of FOIA operations department-wide. For purposes of the APA, "the 'law' that generates a mandatory duty need not be a statute—it can also be an 'agency regulation[ ] that ha[s] the force of law[.]'" *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). Here, HHS regulations impose mandatory duties on CDC to maintain a functional FOIA office and FOIA office leadership as part of the department's "decentralized" FOIA operations. 45 C.F.R. § 5.3. The regulations bear this out in two ways.

First, HHS regulations expressly provide for the existence of "Operating Division" FOIA "Officers" who "serve as the principal resource and authority for FOIA operations and implementation within their respective" divisions. *Id.* These "Operating Division" FOIA "Officers" have mandated responsibilities under the regulations, including making proactive disclosures of and maintaining public accessibility to agency records as required under FOIA. *Id.* § 5.2(b). The regulations define an "Operating Division" as "any of the following divisions within HHS which are subject to this regulation" and list CDC as one of these divisions. *Id.* § 5.3.

Second, the regulations contemplate that CDC and all other divisions will maintain a "FOIA Requester Service Center," *i.e.*, a FOIA office that processes FOIA requests. *Id.* § 5.23. These regulations direct FOIA submissions "to the appropriate FOIA Requester Service Center that you believe would have the records you seek." *Id.* As of this filing, the "up-to-date listing" of "appropriate FOIA Requester Service Center[s] . . . maintained online at http://www.hhs.gov/foia/contacts/index.html," *id.*, still lists the CDC FOIA office's contact information, including its office address, contact email, phone number and the name of its FOIA Officer and name, email and phone number of its FOIA Public Liaison, Goldstein Decl. ¶ 20.

Because of Defendants' actions, CDC has no FOIA Officer to run the agency's FOIA operations, no staff for those operations, and thus no ability to carry out any of the agency's numerous obligations under the FOIA statute. HHS itself has not taken on any of these statutory and regulatory FOIA obligations or, for that matter, explained its legal basis or practical ability to do so. Defendants' decision to shutter CDC's FOIA operations was plainly unlawful.

### 2. The sudden closure of the CDC FOIA office was arbitrary and capricious.

The APA also directs courts to set aside "arbitrary" or "capricious" agency action. 5 U.S.C. § 706(2). This standard "requires agencies to engage in reasoned decisionmaking." *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quotation marks omitted). "The agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983) (quotation marks omitted). An agency acts arbitrarily or capriciously if, for example, it fails to provide any "reasoned basis for its decision," *Transactive Corp. v. United States*, 91 F.3d 232, 236 (D.C. Cir. 1996), "simply disregard[s] rules that are still on the books," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), or "entirely fail[s] to consider an important aspect of the problem," *State Farm,* 463 U.S. at 43. Defendants' conduct here checks all these boxes.

Defendants provided *no* explanation—let alone a reasoned one—for their decision to fire CDC's entire FOIA staff and thus eliminate the agency's FOIA functions. As discussed, media reporting suggests HHS is considering centralizing FOIA operations, but the department has not formally announced or finalized such plans. Nor have Defendants explained why FOIA centralization is necessary, how or when it will actually occur, and what, if any, CDC FOIA work will be performed while the agency's FOIA operation is shut down and while centralization plays

out. Defendants' failure to provide "even [a] minimal level of analysis" for their decisionmaking and radical shift in FOIA practice at CDC—contrary to binding regulations—is arbitrary and capricious. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *see also Fox Television*, 556 U.S. at 515 (arbitrary and capricious for an agency to "depart from a prior policy sub silentio or simply disregard rules that are still on the books"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 & n.3 (D.C. Cir. 2017) (explaining that if an agency "depart[s] from . . . official policies," it "must at a minimum acknowledge the change and offer a reasoned explanation for it").

Defendants also failed to consider important aspects of the problem. For instance, under their CDC FOIA shutdown, how will FOIA work at the agency get done going forward, and what are FOIA requesters like CREW, who obviously rely on the agency to have a functioning FOIA office, supposed to do if they want agency records? To these fundamental questions, Defendants give no answer. And Defendants' decision to abruptly "change[] course" without considering the "serious reliance interests" their "longstanding policies . . . have engendered" by FOIA requesters (like CREW) was arbitrary and capricious. *Regents of the Univ. of Cal.*, 591 U.S. at 30.

Defendants have also failed entirely to consider that slashing the CDC's FOIA staff (as well as FOIA staff across the department) will make it virtually impossible for the agency to meet its statutorily mandated FOIA obligations in the short-to-medium term. As discussed, the closure of the CDC FOIA office will substantially increase processing times for CDC records and create a substantial backlog, and a centralized HHS FOIA component will not be able to easily address that backlog and handle CDC and other agency FOIA requests because centralization will require a highly resource-intensive integration effort with new technology systems, processes, and

protocols. *See* Griffis Decl. ¶ 20. There is no evidence that Defendants have considered any of these basic issues, which reinforces the arbitrary and capricious nature of their decisionmaking.

## II.    CREW will suffer irreparable harm absent a preliminary injunction.

Defendants' unprecedented elimination of an agency's entire FOIA function, with no plan for how the agency will continue to comply with FOIA in the future, irreparably harms CREW and the American public. Each of Defendants' unlawful actions—denial of expedited processing and closure of the CDC FOIA office, in violation of FOIA and the APA—results in a common harm: the denial of information relevant to urgent, ongoing public debates to CREW and the public. Defendants' refusal and inability to comply with FOIA, currently and indefinitely, due to the shuttering of the CDC FOIA office and mass firings of FOIA-trained employees across the agency, means that there is no realistic possibility that CREW's injury will be remedied absent emergency judicial intervention.

### A.    CREW will suffer irreparable harm absent expedited processing of its requests.

"The party seeking a preliminary injunction must make two showings to demonstrate irreparable harm." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016). "First, the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminen[t]' that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Id.* at 7-8 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297). "Second, the harm 'must be beyond remediation.'" *Id.* at 8 (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297).

Courts in this Circuit have long "recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017). In other words, "informational injury can 'be

sufficient to establish irreparable harm if the information sought is time-sensitive.'" *Drs. for Am. v. Off. of Pers. Mgmt.*, No. 25-322 (JDB), 2025 WL 452707, at *9 (D.D.C. Feb. 11, 2025) (quoting *Sai v. TSA*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014)). And "[i]t is well-established that acts by [g]overnment agencies in derogation of statutory rights of the public or certain individual members of the public can constitute irreparable injury." *Gates v. Schlesinger*, 366 F. Supp. 797, 800-01 (D.D.C. 1973) (finding there would be irreparable harm if the defendant refused to "conform to the open meeting requirement imposed by statute" and the public lost its right to attend a public meeting).

Here, CREW's FOIA requests seek time-sensitive information of vital national importance, the deprivation of which is inflicting irreparable harm. First, the lack of access to records related to CDC's unvarnished analysis of the ongoing measles outbreak is creating grave harm *right now*. As in *American Immigration Council v. U.S. Department of Homeland Security*, where the court ordered expedited processing of a request concerning the ongoing COVID-19 pandemic, CREW need not "point to any concrete deadline by which it needs the records" because the fact that there "is an ongoing public health crisis . . . bolsters [its] claim of irreparable harm." 470 F. Supp. 3d 32, 38 (D.D.C. 2020); *see also Drs. for Am.,* 2025 WL 452707, at *8-9 (holding that physicians suffered irreparable harm from lack of access to CDC and other public health agency datasets).

The requested records not only relate to a "time-sensitive" public health emergency, *Drs. for Am.,* 2025 WL 452707, at *9 (quotation marks omitted), but also are highly relevant to an ongoing public debate about CDC's efforts to suppress a report on measles forecasting and the need for vaccination, which reportedly relied on new data from the measles outbreak in Texas.[54] Like the closure of the CDC FOIA office, the cancellation of the report's publication was

---

[54] Callahan, *supra* note 4.

reportedly "not normal at all," and staff had "never seen a rollout plan that was canceled . . . that far along in the process."[55] The public needs to know as soon as possible to what extent they can rely on CDC's guidance in the face of the measles epidemic, and whether factors other than scientific accuracy, such as political views, are driving the process.

Second, because Defendants' unprecedented dismantling of HHS's transparency infrastructure as part of the DOGE RIF Initiative is unfolding rapidly, the window is closing for CREW to inform the American people about these events in time for them to meaningfully participate in ongoing debates and make their voices heard to their elected representatives. There is intense public interest in the DOGE RIF Initiative, *supra* Background I.C., including its severe impact on FOIA offices across the federal government, *see supra* note 43, leading multiple Senators to question how FOIA functions and basic transparency can continue at CDC and other affected agencies, *see supra* note 33. Accordingly, the "records sought are 'directly tied to [] current, ongoing' actions by [DOGE] . . . of the highest national concern,'" including DOGE's efforts to fire thousands of federal employees, undercut agencies' compliance with federal law, and fundamentally restructure the executive branch. *CREW*, 2025 WL 752367, at *14 (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12). In holding that CREW would be irreparably harmed absent expedited processing of another FOIA request about DOGE's activities, the *CREW v. DOGE* court explained that DOGE's "actions to date have proceeded remarkably swiftly" and require a corresponding "quick release of information," that DOGE has operated with "unusual secrecy," that its expansive power "with no congressional input appear to be unprecedented," and that "these factors together bolster the Court's conclusion that a years-long delay in processing . . . . would cause irreparable harm." *Id.* at *15-16. Here, beyond delay, Defendants have implemented

---

[55] *Id.*

the DOGE RIF Initiative in a manner that has crippled their ability to respond to CREW's FOIA requests at all. Without emergency relief, the public cannot be timely informed about these issues and participate in current debates about their legality. *Id.* at \*14.

Moreover, "'absent an expedited response to [CREW]'s FOIA request[s], it is not clear … that the public' or Congress 'would otherwise have access to this relevant information.'" *CREW*, 2025 WL 752367, at \*15 (quoting *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 13). CDC has, for example, removed critical datasets from its websites, re-posting them only under compulsion of a court order. *See Drs. for Am.*, 2025 WL 452707, at \*2. Some CDC pages now include the banner: "[this] website is being modified to comply with President Trump's Executive Orders," raising concerns among practitioners that the records are now "incomplete, modified, or otherwise not in their original form." Hao Decl. ¶ 5, 12. Defendants' public communications have also "slowed significantly over the past several months" and CDC, for example, has not held a press briefing since January 20, 2025, despite numerous infectious disease outbreaks. Griffis Decl. ¶ 6, 16. And in addition to affecting FOIA staff across the agency, the April 1 mass firings included a large number of employees whose job responsibilities related to communicating information to the public, including media relations, digital communications, and social media staff. *Id.* ¶ 16.

Finally, repeat CDC FOIA requesters—including scientists, physicians, and public health workers—need to understand whether they can continue to rely on FOIA as a tool to obtain critical public health data and guidance. *See* Minovi Decl. ¶¶ 11, 14 (stating that the Union of Concern Scientists "submitted a FOIA request to CDC that remains pending. The FOIA request seeks toxicological and epidemiological data . . . [t]his data is used to inform UCS's, and the public's, ongoing work related to understanding the health effects of hazardous substances . . . [i]f this FOIA request is not fulfilled, we will be unable to help make these data available to the public."); Hao

Decl. ¶ 15 ("Historically, when key CDC records . . . were not readily available, physicians like myself could file a FOIA request to gain access."). If FOIA will no longer be a functional tool for these stakeholders to get the information they need to prevent further harm or serve their public health missions, *see* Griffis Decl. ¶ 19, Doe Decl. ¶¶ 10, 11, they need to know now to determine how to use their resources to make up for that information gap.

The need to protect against such irreparable harms drives courts in this District to grant preliminary injunctions in FOIA cases where the information would affect a developing situation of national significance. *See, e.g.*, *Am. Immigr. Council*, 470 F. Supp. 3d at 37 (finding irreparable harm based on ongoing "'public discourse around ICE's handling' of the global pandemic"); *Protect Democracy*, 263 F. Supp. 3d at 300-01 (similar, regarding ongoing public debate about military strike against Syria); *Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 40-41 (similar, regarding ongoing debate about the Bush administration's warrantless surveillance program).

**B.    CREW will suffer irreparable harm if CDC's FOIA functions remain inoperative.**

Defendants' sudden closure of the CDC FOIA office has irreparably harmed CREW and will continue to do so until Defendants are compelled to comply with the law. CREW, as a leading transparency organization, depends on FOIA to fulfill its mission of ensuring an ethical, accountable, and open government. CREW is primarily engaged in disseminating information to the public; it "is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, ensuring the integrity of government officials and agencies, and empowering citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions." Goldstein Decl. ¶ 2. As noted in CREW's expedited processing requests, "CREW's website receives hundreds of thousands of page views every month. The

website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA." Goldstein Decl. Exs. A-E. Prior to the requests at issue here, CREW submitted FOIA requests to CDC, and it plans to send additional requests in the future. Goldstein Decl. ¶¶ 4, 18.

But the "new obstacles" resulting from Defendants' closure of the CDC FOIA office "unquestionably make it more difficult for [CREW] to accomplish [its] primary mission." *Newby*, 838 F.3d at 9. In *Newby,* the D.C. Circuit found irreparable harm when states' addition of proof-of-citizenship requirements on their voter registration forms made it "more difficult" for League of Women Voters chapters to accomplish their mission of registering voters leading up to an election. *Id.* Here, Defendants have established *no* alternative system to receive and process FOIA requests, and therefore each day that passes is a day that CREW is hindered in fulfilling its mission. It would be as if the states in *Newby* had unlawfully abolished their systems for voter registration altogether, meaning that the plaintiffs could not register voters at all, not just that doing so would be "more difficult." *Id.*

CREW's ability to exercise its statutory rights under FOIA is central to its mission. Absent a preliminary injunction, Defendants have neither a plan nor the capacity to come into compliance with FOIA and the "records responsive to [CREW's] request[s] will not be released anytime soon, if ever." *CREW*, 2025 WL 752367, at *14. More than delay, Defendants are indefinitely denying CREW access to records needed to fulfill its mission-critical function of informing the public about "the operations or activities" of CDC. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989). And as detailed above, *supra* Argument I.B., even if Defendants were

to develop a plan to centralize its FOIA operations, there are considerable obstacles to Defendants' compliance in processing CDC FOIAs now that they have shuttered the agency's FOIA office.

Defendants' refusal to comply with FOIA, resulting in decreased public transparency into federal operations during an ongoing public health emergency, severely restricts CREW's ability to fulfill its mission. CREW seeks to increase public knowledge of CDC's activities because a public informed about its government's actions is "a structural necessity in a real democracy." *Favish*, 541 U.S. at 172. By disseminating this information to the public, the public can fully participate in ongoing debates and engage their elected representatives about Defendants' decision to suppress an expert assessment of the ongoing measles outbreak and the effect of vaccination on infection rates, and about the new administration's efforts to more fundamentally alter government capacity through DOGE. Members of the public will not be able to meaningfully engage with their elected representatives about these matters without public transparency. And FOIA access at CDC is especially critical now because, as noted above, Defendants have taken steps to make CDC information unavailable through other means. *See supra* Argument II.B.

While resolution of CDC's FOIA duties plays out through the ordinary course of litigation, the damage to FOIA as an accountability mechanism, and therefore CREW's ability to fulfill its organizational mission, cannot be wound back. Given Defendants' egregious step of shuttering the CDC FOIA office, absent emergency relief from this Court, CREW and the American public have no assurance that FOIA will remain a viable tool for oversight and accountability of CDC.

## III.    The balance of equities and public interest favors granting a preliminary injunction.

Against Defendants' unprecedented refusal to comply with the FOIA statute and agency regulations, the balance-of-equities and public-interest factors weigh strongly in favor of relief. These factors require courts to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief," in addition to paying

"particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (first quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987); then quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). When "the Government is the opposing party," the two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Because Defendants have completely shuttered the CDC FOIA office, immediate injunctive relief is the only way the public can vindicate its right under FOIA to access CDC records. A preliminary injunction here serves to vindicate "the citizens' right to be informed about 'what their government is up to.'" *Reps. Comm. for Freedom of the Press*, 489 U.S. at 773; *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) (describing the "public benefit in the release of information that adds to citizens' knowledge" of government activities); *Protect Democracy*, 263 F. Supp. 3d at 301 ("Not only would the public benefit from participation in the 'ongoing debate' discussed above, but an agency's compliance with a mandatory statutory regime is presumably always in the public interest.").

The public relies on CDC processing FOIA requests for a wide range of purposes related to public health. Scientists seek information on the health effects of hazardous substances. *See* Minovi Decl. ¶ 11. Physicians rely on CDC records to "provid[e] evidence-based and guideline-directed care for . . . patients." Hao Decl. ¶ 8. One physician recently submitted an expedited FOIA request to CDC when critical records and datasets she and her peers "routinely rely on" were removed from CDC's website and replaced with new data, which "may be modified from their original form." *Id.* ¶ 5, 13. Other data, which physicians rely on, remains publicly inaccessible. *Id.* ¶ 14. As do records on a range of public health issues. Just in February of this year, a student

41

sought documents related to foodborne illnesses on their university campus; university researchers sought records on the overprescribing of antibiotics and localized incidences of cancer; attorneys sought information related to disease outbreaks or foodborne illness to represent their clients; and journalists sought information on the transmission of disease from animals to humans.[56] Such FOIA requesters are now unable to communicate with Defendants about their pending requests. Minovi ¶ 12. As it stands, these requesters will be unable to help make critical health data available to the public. *Id.* ¶ 14. And while Defendants' actions will harm physicians' access to "essential tools," "ultimately, patients across the country will bear the greatest burden." Hao Decl. ¶ 15.

The loss of FOIA as a tool to ensure government accountability would have devastating results. FOIA requests at federal health agencies, including CDC, "have been particularly consequential" in "catalyz[ing] important government reforms."[57] Such requests "have pushed companies to take unsafe drugs off the market, led to reforms that prevent unnecessary delays in communicating public health risks, and prompted policies that lower prices and improve access to taxpayer-funded health technologies."[58]

Defendants have no countervailing interest in eliminating CDC's FOIA operations, in clear violation of FOIA and the APA. As the D.C. Circuit has recognized, "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public

---

[56] *FY25 February, CDC FOIA Office Request Logs*, CDC, Lines 33, 56, 126, 47, 97, 139, 77, https://foia.cdc.gov/app/ReadingRoom.aspx.

[57] Reshma Ramachandran, *The sudden dismissal of public records staff at health agencies threatens government accountability*, The Conversation (Apr. 16, 2025), https://theconversation.com/the-sudden-dismissal-of-public-records-staff-at-health-agencies-threatens-government-accountability-254024.

[58] *Id.* (citing articles explaining how FOIA requests resulted in congressional investigations of drug safety and new laws requiring additional safety studies, exposed Flint, Michigan's withholding of information about the city's contaminated drinking water, and revealed government contracts with pharmaceutical companies working on COVID-19 vaccine development, resulting in pro-consumer policies).

interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Newby*, 838 F.3d at 12 (cleaned up); *see also R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (finding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice"). And, for a preliminary injunction motion merely asking the Court to return matters to the "status quo ante," the public interest clearly outweighs Defendants' burden because (a) CDC already "had procedures in place . . . that conform to what the requested injunction would require," (b) "the burden" to resume those procedures "is not so great that it outweighs the strong public interest in ensuring" citizens' right to utilize FOIA, and (c) "any burden is of [CDC's] own making." *Newby*, 838 F.3d at 14. In fact, given the increased litigation likely to result from Defendants' egregious flouting of the law, Griffis Decl. ¶ 22, and Defendants' own statements about the drain FOIA litigation places on routine processing,[59] an injunction here will lessen, not increase, the burdens on the agency.

In cases like this one, in which expedition is warranted, case law and the FOIA statute itself make clear that "the public's interest in expedited processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out processing of FOIA requests." *Wash. Post*, 459 F. Supp. 2d at 76 (citing *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977)). To respond to Defendants' rapid efforts to shut down transparency into the federal government's public health infrastructure, it is essential that the public have timely information about CDC's mass firings, ability to comply with FOIA, and efforts to obscure public health data. Particularly in the face of a growing measles outbreak, the public needs to understand the agency's statements on how people can protect themselves from this highly contagious and communicable disease. A preliminary injunction is decidedly in the public interest.

---

[59] 2025 HHS Chief FOIA Officer Report, *supra* note 17, Section V.C.

**IV.    Partial summary judgment is appropriate to resolve Counts I–III.**

Although CREW requires a preliminary injunction to prevent imminent irreparable injury, CREW also seeks expedited partial summary judgment on its claims seeking expedited processing of its FOIA requests (Count I) and asserting that Defendants' action to shutter the CDC FOIA office is a policy or practice that violates FOIA (Count II) and is contrary to law under the APA (Count III). Courts in this Circuit often consider motions for a preliminary injunction and for summary judgment jointly. *See, e.g.*, *Grundmann v. Trump*, No. 25-cv-425 (SLS), 2025 WL 782665, at *4 (D.D.C. Mar. 12, 2025); *Nat'l Ass'n for Fixed Annuities v. Perez*, 217 F. Supp. 3d 1, 58 (D.D.C. 2016); *Hedgeye Risk Mgmt., LLC v. Heldman*, 196 F. Supp. 3d 40, 46-47 (D.D.C. 2016); *see also* Fed. R. Civ. P. 65(a)(2) (authorizing consolidated hearing of preliminary injunction and trial on the merits); *Hoai v. Superior Ct. of the D.C.*, 473 F. Supp. 2d 75, 78 n.4 (D.D.C. 2007) (ordering consolidation under Rule 65(a)(2)); *City of New Haven v. United States*, 634 F. Supp. 1449, 1451 n.1 (D.D.C. 1986) (same), *aff'd sub nom. City of New Haven v. United States*, 809 F.2d 900 (D.C. Cir. 1987) (same).

Here, the parties' briefing at this time can fully address the merits issues relevant to final disposition of Counts I–III of the Complaint, which raise no disputed factual issues. Moreover, expeditious final disposition will benefit CREW and the public so that they can be assured of access to the vital information at issue in this case. *See* 28 U.S.C. § 1657(a) (stating that courts "shall expedite the consideration of any action . . . if good cause therefor is shown").

**CONCLUSION**

For the foregoing reasons, the Court should grant CREW's motion for a preliminary injunction and for partial summary judgment.

Date: April 21, 2025

Respectfully Submitted,

*/s/  Kayvan Farchadi*

Kayvan Farchadi (D.C. Bar No. 1672753)
Yoseph T. Desta (D.C. Bar No. 90002042)
Alex Goldstein (D.C. Bar No. 90005086)
Chun Hin Tsoi (D.C. Bar No. 90017713)
Kalyn Mizelle McDaniel (D.C. Bar No.
  90027120)
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics in
  Washington
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
kfarchadi@citizensforethics.org
ydesta@citizensforethics.org
agoldstein@citizensforethics.org
jtsoi@citizensforethics.org
kmizellemcdaniel@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*