UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

   v.

U.S. CENTERS FOR DISEASE
CONTROL AND PREVENTION, et al.

Defendants.

Civil Action No. 25-01020 (TJK)

**DEFENDANT'S OPPOSTION TO PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brought filed this lawsuit under this Freedom of Information Act ("FOIA") and Administrative Procedure Act ("APA") case against Defendants U.S. Centers For Disease Control and Prevention ("CDC") and the U.S. Department of Health and Human Services ("HHS" or the "Department").  CREW seeks to compel expedited processing of its five FOIA requests and obtain declaratory relief labeling the CDC's closure of its FOIA office in violation of the APA. *See generally*, Compl., ECF No. 1.

In addition to the Complaint, CREW has moved this Court to issue a preliminary injunction, requiring Defendants to process its requests in an "expedited" manner. *See* Pl. Mot. (ECF No. 13), at 2-3. CREW further seeks an order declaring Defendants engaged in a policy and practice of delaying or denying FOIA requests when Defendants closed the CDC FOIA office. Finally, CREW argues the decision to close that FOIA office was unlawful and arbitrary in violation of the APA.

As argued more fully below and supported by the declaration of William Holzerland ("Holzerland Decl."), the Court should deny the motion for preliminary injunction. The underlying Complaint and preliminary injunction motion fail because they are premature. CREW filed suit before the ten-day statutory time for Defendants to respond to CREW's requests for expedited processing and the twenty business days for Defendants to respond to its five FOIA requests. [1]

CREW's APA claims are equally defective because an alternative remedy exists under FOIA that forecloses its APA counts.  Furthermore, contrary to the central theme of CREW's

---

[1] On May 1, 2025, Office of the Secretary-FOIA issued responses to Plaintiff's respective requests for expedited processing included in the requests denoted above in Paragraphs 27-31, granting Plaintiff expedited processing for the request referenced in Paragraph 27, and denying expedited processing for the other four FOIA requests. Exhibit 1.

claims, Defendants have not abandoned any of its obligations under FOIA and instead is undergoing a re-structure pursuant to a valid Executive Order.

The bottom line is straightforward. CREW wants a preliminary injunction that would provide it with all the relief it has sought in this action, and it wants an injunction that would require Defendants to undo its efforts to comply with an Executive Order. Further Plaintiff attempts to not only obtain disclosure but designate what component of the agency responds. But CREW has not come close to establishing that its request for preliminary injunction falls within the narrow circumstances where this Court has found the requisite likelihood of success on the merits and irreparable harm justifying such an extraordinary order. For these reasons, the Court should deny the motion.

## BACKGROUND

On February 11th, 2025, the President issued Executive Order 14210, which required agencies, including Office of the Secretary ("OS"), U.S. Department of Health and Human Services to undergo a significant restructuring that would streamline the functions of the Department. *Available at* HHS Announces Transformation to Make America Healthy Again | HHS.gov . 11.    Section (3)(c) of Executive Order 14210 further states that:

> (c) Reductions in Force.  Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law, and to separate from Federal service temporary employees and reemployed annuitants working in areas that will likely be subject to the RIFs.  All offices that perform functions not mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and all components and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse in appropriations as provided in the Agency Contingency Plans on the Office of Management and Budget website.  This subsection shall not apply to functions related to public safety, immigration enforcement, or law enforcement.

Consequently, on or around April 1, 2025, HHS and its affiliated agencies commenced a Reduction in Force ("RIF") that significantly changed the Department's workforce and started the process of restructuring the organization.  Holzerland Decl.  ¶17

In compliance with not only the "Purpose" part of Section 1 of Executive Order 14210, but also with HHS regulation 45 CFR 5.3, OS-FOIA thereby exercised its discretion to commence processing FOIA requests that involved other HHS components, including FOIA requests that involved CDC.  OS-FOIA exercised its discretion to process FOIA requests directed to certain HHS FOIA entities because streamlining inefficient operations will benefit the public by enhancing transparency and accountability to the taxpayer.

OS-FOIA believed that streamlining FOIA operations increases consistency by standardizing the Department's approach to radical transparency.  FOIA policies procedures and exemptions can better be applied across the Department, reducing disparities in how the Department handles FOIA requests.

On April 1, 2025, CREW submitted five  FOIA requests to CDC seeking various categories of records. Pl. Mot. at 16; *see also* Holzerland Decl. ¶¶ 26-31 (setting forth all five FOIA requests in full).  The first request sought records relating to CDC's decision on releasing measles vaccination assessment.  Pl. Mot. at 16.  The remaining four FOIA requests essentially sought records relating to CDC's closure of its FOIA office and the Department of Government Efficiency's ("DOGE") involvement in that decision. *Id.*  In addition to seeking the underlying records, CREW also sought expedited processing of all five FOIA requests.

According to CREW, after submitting its five FOIA requests via email, it received an automated email  explaining the FOIA office has been placed on administrative leave and cannot respond to any email.  Pl. Mot. at 16.  The following day, on April 2, 2025, CREW purportedly

- 3 -

received a second email explaining the follow-up response is necessary to ensure that CREW has received the automated email and reiterated the CDC FOIA office has been placed on administrative leave, with an impending June 2, 2025, separation date. *Id.* at 16-17. CREW alleges it followed up with emails to HHS headquarters' FOIA office on April 2 and April 3, 2025, but did not receive a response. *Id.* at 17.

Consequently, on April 4, 2025, CREW filed this lawsuit raising four claims. Count I claims Defendants unlawfully denied its request for expedite processing. *See* Compl. Count I. In Count II, CREW alleges Defendants engaged in an improper policy or practice of violating FOIA by closing the CDC FOIA office. *Id.* Count II. Finally, Counts III and IV allege violations of the APA when Defendants decided to close the CDC FOIA office. *Id.* Counts III and IV. About two weeks after filing its Complaint, CREW moved for preliminary injunction and partial summary judgment. *See generally*, Pl. Mot. (ECF No. 13). The Court, however, bifurcated the issue and ordered Defendants to respond only to CREW's motion for preliminary injunction and held in abeyance its partial motion for summary judgment. Min. Order (Apr. 24, 2025).[2]

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). A movant may be awarded such an "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). To establish such entitlement, a movant must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor;

---

[2] HHS granted one expedited processing request and denied the others. See Exhibit 1 and Holzerland Declaration ¶ 35.

and (4) an injunction is in the public interest. *Id*. at 20. The last two factors merge when the government is the opposing party. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019), cert. denied, 140 S. Ct. 789 2020); *accord Public Citizen Health Research Group v. Acosta*, 363 F. Supp. 3d 1, 20 (D.D.C. 2018).

"[P]laintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an 'extraordinary remedy.'" *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90 (D.D.C. 2014). Further, in the context of a mandatory injunction, like the one sought here, CREW "must meet a higher standard than in the ordinary case by showing clearly that [the movant] is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Electronic Privacy Information Center v. Department of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (quoting *Columbia Hospital for Women Foundation, Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997)).

## ARGUMENT

## I.    CREW HAS FAILED TO CARRY ITS HEAVY BURDEN TO SHOW ENTITLEMENT TO A PRELIMINARY INJUNCTION

### A. CREW Is Not Likely To Succeed On The Merits

#### 1.    CREW is unlikely to succeed on its expedited processing claim (Count I).

"Preliminary injunctions in the FOIA context are extraordinarily rare." *Democracy Forward Found. v. OMB*, -- F. Supp. 3d --, 2025 WL 1078778, *1 (D.D.C. Apr. 9, 2025) (J. Sooknanan).  Congress amended FOIA to provide for expedited processing of requests for agency records only in narrow circumstances. *Id.* at *1 (citing *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001)). "'Congress' rationale for a narrow application is clear: Given the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.'" *Id.*

(quoting *Al-Fayed*, 254 F.3d at 303) (cleaned up). Indeed, CREW has not established either likelihood of success on the merits or irreparable harm. At base, CREW has not identified a sufficiently imminent event that would justify expediting its five broad FOIA requests. More critically, CREW's expedited processing claims fail as a matter of law because it prematurely filed suit before the ten-day statutory period for Defendants to respond to the requests elapsed.

### a. CREW has not met the criteria warranting expedited processing

To obtain expedited processing, CREW must show a "compelling need." 5 U.S.C. § 552(a)(6)(E)(i). Such a need is established if either: (1) failure to obtain expedited processing would pose an "imminent threat to the life or physical safety of an individual"; or (2) the requester is "primarily engaged in disseminating information" and shows an "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); see also 6 C.F.R. § 5.5(d)(1)(ii). Only the second category is at issue here. Pl. Mot 28.

The FOIA expedited processing provision was added in 1996 by the Electronic Freedom of Information Act Amendments, Pub. L. 104–231, § 8, 110 Stat. 3048, 3051–52. The D.C. Circuit, in examining the legislative history of these amendments, noted that "'the specified categories for compelling need are intended to be narrowly applied.'" *Al–Fay*ed, 254 F.3d at 310 (quoting H.R.Rep. No. 104–795, at 26 (1996), 1996 U.S.C.C.A.N. 3448, 3469). The Circuit reiterated Congress' concern for agencies' "'finite resources'" and the possibility that overuse of the expedited process would unfairly disadvantage other requesters. *Id.*

In evaluating whether there is an urgency to inform, courts consider at least three factors: "(1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al–Fayed*, 254 F.3d at 310. "The

public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Id*. (quoting H.R.Rep. No. 104–795, at 26 (1996), 1996 U.S.C.C.A.N. 3448, 3469).

The Court would normally review, *de novo*, an agency's denial of expedited processing. *Al-Fayed*, 254 F.3d at 307. By statute, judicial review is based on the record before the agency at the time of the determination. *Id*. at 308. CREW's arguments for entitlement to expedited processing of the CDC staffing decisions are specious. In support of its claim of urgency for the CDC related FOIA requests, CREW cites to "ongoing" debates and stories that continue to "unfold" about the closing of the CDC FOIA office. Pl. Mot 38. These types of arguments to foist one FOIA requestor in front of another have been rejected by this Court. In evaluating whether a delay would compromise the interests of FOIA requesters like CREW, the Court often looks to objective time limits or specific events that will occur in the near future. *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com*., 498 F. Supp. 3d 87, 98–99 (D.D.C. 2020) (concluding that "delay would compromise the Brennan Center's significant interest in informing the public concerning actual or alleged Federal Government activity related to the 2020 census and reapportionment" because "the 2020 census and reapportionment ... will largely conclude early next year" (cleaned up)); Ctr. for Pub. Integrity v. United States Dep't of Def., 411 F. Supp. 3d 5, 12 (D.D.C. 2019) ("Given that the congressional hearings ... are 'imminent,' the Court finds that Plaintiff adequately demonstrated that the value of the information would be lessened or lost absent expedited processing."); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) ("Furthermore, the urgency element is met because of the upcoming expiration at the special provisions of the Voting Rights Act in 2007."); cf., e.g., *ACLU v. U.S. Dep't of Just*., 321 F. Supp. 2d 24, 30 (D.D.C. 2004) (finding compelling need where plaintiffs sought to provide information

relating to "whether Congress should renew Section 215 and other Patriot Act surveillance provisions before they expire in December 2025").

Courts have denied expedition based on urgency when requestors have failed to allege a sufficiently imminent event. *See, e.g., Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (rejecting expedition argument "that the information is needed to inform the ongoing national debate about immigration policy" because the plaintiffs "failed to identify an imminent action indicating that the requested information will 'not retain its value if procured through the normal FOIA channels' ") (*quoting Al-Fayed v. CIA,* Civ. A. No. 00-2092, 2000 WL 34342564, at *5 (D.D.C. Sept. 20, 2000)); *Allied Progress v. CFPB,* 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (denying preliminary injunction for expedited processing of FOIA requests "predicated on potential Congressional action on regulations promulgated by CFPB," albeit on different grounds. Here, there is no imminent event that would make expedited disclosure "urgent" or significantly alter the value of non-exempt information about CDC staffing that would be disclosed in the normal course of production. In addition, given the "on-going" nature of the "public debate" concerning the CDC staffing RIF it does not seem likely that the information will become stale after normal FOIA processing.

While CREW's FOIA requests seek records that will likely have some value in informing the public about how the federal government functioned throughout this process, they are not 'time-sensitive' in the sense of losing value vis-à-vis any date certain.

Next, if CREW is also seeking expedited release of records responsive to its five FOIA requests, its cited authorities do not support that request. Pl. Mot. at 21-23 (citing cases). In *Protect Democracy Project, Inc. v. Department of Defense*, 263 F. Supp. 3d 293 (D.D.C. 2017) (*Protect Democracy I*), plaintiff sued one month after submitting its FOIA requests and then sought

a preliminary injunction two weeks after the agencies answered the complaint, seeking an order compelling defendants to process its FOIA requests on an expedited basis and produce all requested records.  Although the court granted plaintiff's request for expedited processing, the court denied plaintiff's request for an expedited release of the records because, among other reasons, plaintiff had not "identified a single imminent deadline related to its requests, or any event set to occur on a particular date." *Id*. at 302.  The court then concluded that "it cannot be said, however, that there will be irreparable harm if the requested information is not released within, say, twenty days."  The court also noted that "requiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it." *Id.* at 303.  Like the plaintiff in *Protect Democracy I*, Plaintiff here has not identified a particular deadline by which the request records would be needed.  And, as discussed in Defendant's dispositive motion, granting the expedition request here would disrupt the normal processing of FOIA requests by imposing a burden on the agencies and unfairly disadvantaging other FOIA requesters.  Def. Mot. at 10-11 (citing cases).  Similarly, while in *Protect Democracy Project, Inc. v. Department of Justice*, 498 F. Supp. 3d 132, 144 (D.D.C. 2020) (*Protect Democracy II*), the court reversed the agency's denial of expedited processing, the court did not order any immediate production and instead required the parties to confer on the production of the responsive documents.  Thus, even CREW's own legal authorities counsel against any immediate injunctive relief requiring Defendants to release records responsive to its five FOIA requests.

Finally, Defendants recognize CREW's four-count Complaint does not include a separate count seeking release of records responsive to its FOIA requests.  However, CREW's "Requested Relief" includes a request for an order directing Defendants to "expeditiously and fully . . . disclose all non-exempt documents to CREW." *Compl.* Request for Relief ¶ (2).  CREW's motion similarly

seeks an order requiring Defendants to "expeditiously and fully process and produce all non-exempt records responsive to these requests, along with a *Vaughn* index as soon as practicable." Pl. Mot. at 5. Considered together, they show CREW clearly is seeking release of records responsive to its five FOIA requests through its expedited processing claim, but CREW has not exhausted administrative remedies for these requests. As mentioned above, CREW submitted five FOIA requests by email to CDC on April 1, 2025. It then immediately received an automated response, indicating the FOIA office is on administrative leave and unable to respond to CREW's email. A mere three days later, CREW filed this federal lawsuit on April 4, 2025. Compl. (ECF No. 1). Clearly, CREW's premature lawsuit enforcing its five FOIA requests is defective for failure to exhaust administrative remedies.

Indeed, the FOIA provides that when an agency receives a proper FOIA request, it "must determine within twenty [business] days . . . whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i) (2018); *see CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013) (noting the government agency must respond to a FOIA request within twenty business days). The D.C. Circuit has held that "in order to make a 'determination' within the statutory time periods and thereby trigger the administrative exhaustion requirement, the agency need not actually produce the documents within the relevant time period . . . [b]ut the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents." *CREW*, 711 F.3d at 189.

**2. CREW's Policy and Practice Claims Are Not Likely to Succeed (Count II).**

CREW has alleged that "Defendants are engaged in a policy or practice of total FOIA noncompliance at CDC." Pl. Mot. at 34. As explained in the Declaration of William Holzerland,

CREW's claims of "total" FOIA noncompliance are demonstrably inaccurate. More crucially, CREW lacks standing to raise a policy and practice claim.

### a.   CREW lacks standing to assert a policy or practice claim

If an injury is self-inflicted, it cannot support Article III standing. *Buckner v. CONSOL Energy, Inc.*, Civ. A. No. 20-1148 (TJK), 2024 WL 2382941,*7 (D.D.C. May 23, 2024). "No doubt, self-inflicted injuries—those created by the choice a plaintiff makes rather than the actions of a defendant—do not qualify as injuries-in-fact. *Id.* (citing *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006)). Here, CREW cannot claim to be injured by Defendants' alleged policy and practice (i.e., the closure of the CDC FOIA office) because it knew full well that the office was closed before it submitted its five FOIA requests. CREW knew Defendants placed all CDC FOIA offices' employees on administrative on April 1, 2025, pending termination on June 2, 2025. Pl. Mot. 6. CREW even acknowledges "all FOIA work at CDC has ceased" since April 1. *Id.* at 7. Despite this knowledge, CREW nevertheless submitted five FOIA requests, along with requests for expedited processing, on the day it knew the CDC Office was closed. CREW then, remarkably, claims the closure constitutes Defendants' policy or practice of denying or delaying responses to its FOIA requests and thus causes it harm because it will not receive timely responses from Defendants. Under these facts, whatever harm CREW allegedly suffers is truly self-inflicted and thus it lacks standing to press the policy and practice claim.

Further, when challenging an alleged policy or practice, "more than a nebulous assertion of the existence of a 'policy' is required to establish standing. The plaintiff must not only demonstrate its existence but also that they are likely to be subjected to the policy again." *Haase*

*v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987). CREW's policy and practice claim here is subject

to the same formula. CREW claims it "regularly submits" FOIA requests with HHS and will

continue to do so in the future. Pl. Mot. 37. However, CREW does not allege any specific plans to

file FOIA requests in the future that would implicate the alleged policy and practice it seeks to

challenge. Instead, its claims of future injury rest entirely on the bare allegation that it is a frequent

FOIA requester. Given that HHS has not refused to respond to FOIA requests in the future this

cannot meet the "actual or imminent" injury required to seek prospective relief. *Worth v. Jackson*,

451 F.3d 854, 857-58 (D.C. Cir. 2006) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992)).

This Court has rejected similar attempts to establish standing to seek prospective relief. In

*Quick v. Department of Commerce*, 775 F. Supp. 2d 174 (D.D.C. 2011), the plaintiff argued it has

standing for a pattern or practice FOIA claim based on the allegation that he "plans to file

additional FOIA requests to the NIST in the future." *Id.* at 187. The court rejected this "passing

allegation" because "the Supreme Court has foreclosed that route:'[s]uch "some day" intentions—

without any description of concrete plans, or indeed even any specification of when the some day

will be—do not support a finding of the [requisite] "actual or imminent" injury.'" *Quick*, 775 F.

Supp. 2d at 187 (*quoting Lujan*, 504 U.S. at 564).

Like the plaintiffs in *Quick*, CREW's allegations that its stands to continue to be "harmed"

by this "ongoing policy in the future" because they "regularly" file FOIA requests with HHS and

will continue to do so in the future, are too speculative to establish standing to seek prospective

relief. Pl. Mot. 42. CREWs' status as frequent FOIA requesters cannot transform speculation and

conjecture into cases or controversies. *See CREW*, 527 F. Supp. 2d at 106 ("That CREW may one

day file another FOIA request with the DHS does not represent a cognizable, palpable injury which presents a case or controversy for the Court to consider.").

> **b. FOIA Pattern or Practice Claims for Equitable Relief are Confined to Cases Where Agencies Egregiously Adhere to an Improper Policy or Practice**

In *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 488 (D.C. Cir. 1988), the D.C. Circuit first recognized the possibility of equitable relief following a particularly egregious instance of a recalcitrant agency practice. *Payne Enterprises* concerned the practice by certain Air Force Logistics Command officers of refusing to release copies of bid abstracts in response to the plaintiff's repeated FOIA requests over a two-year period, despite express instructions to the contrary. The Air Force officers would routinely invoke FOIA Exemptions 4 and 5 in refusing to produce the documents. *Id*. Their refusals were in reality based on concerns about possible increases in Air Force contract prices that might result from disclosure of the bid documents, which concerns were reflected in an Air Force Logistics Command policy letter supporting the systematic refusals. *Id*. Plaintiff went on to appeal these decisions to the Secretary of the Air Force, who sided with the plaintiff without exception and concluded that those officers' position was "wholly unjustified." *Id*. at 488-89. Nonetheless, the officers persisted in refusing to produce the relevant documents. *Id*. at 490. The court concluded that this behavior—spanning two years and involving an agency "offensively" using FOIA to "hinder the release of non-exempt documents" pursuant to an agency policy—was "sufficiently outrageous" to warrant the fashioning of equitable relief. See id. at 494 (internal citations and quotation marks omitted).

Since *Payne Enterprises*, courts have applied the pattern or practice doctrine sparingly, and

only in a limited set of circumstances. First, to obtain equitable relief the plaintiff must allege "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 71 (D.D.C. 2016) (quoting *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)) (internal quotation marks omitted); *see also Newport Aeronautical Sales v. Dep't of Air Force,* 684 F.3d 160, 164 (D.C. Cir. 2012) ("As in *Payne*, [plaintiff] challenges the permissibility of an Air Force policy").

Second, the conduct underlying the claim must involve the repeated refusal to produce documents or to otherwise comply with FOIA in an intentional bid to "hinder the release of nonexempt documents" pursuant to the policy or practice, such as by speciously invoking FOIA's statutory exemptions. *See Payne Enters*., 837 F.2d at 494; *see also Cause of Action Inst*., 224 F. Supp. 3d at 72 ("[U]nlike the plaintiff in *Payne Enterprises*, Plaintiff does not allege that the Agency Defendants have decided, even initially, to not produce any records that should be produced."); *Del Monte Fresh Produce N.A. v. United States*, 706 F. Supp. 2d 116, 120 (D.D.C. 2010) ("*Payne Enterprises* regards the repeated denial of Freedom of Information requests based on invocation of inapplicable statutory exemptions rather than the delay of an action over which the agency had discretion."). Thus, CREW's burden to sustain a policy or practice claim requires it to show "(1) some policy or practice that (2) results in a repeated violation of FOIA." ACLJ v. Dep't of State, 249 F. Supp. 3d 275, 282 (D.D.C. 2017). Moreover, in accordance with *Payne Enterprises,* the alleged policy or practice should generally involve "sufficiently outrageous" conduct by the defendant agency. *Id*. at 281.

Here, HHS-OS has stated its intention to abide by the terms of the FOIA. Holzerland Decl. ¶¶ 36-48 Further, HHS-OS describes the anticipated benefits of centralization of the FOIA offices

within the OS.  Specifically, consolidation enhances expertise because it develops knowledge of FOIA law and of HHS records, which in turn improves the quality of HHS responses by reducing errors or legal challenges, reduces redundant training, technology, and staffing costs by pooling resources into a single, efficient FOIA processing operation. *Id*.at ¶ 21 In fact, more centralization allows for the transfer of specialized knowledge across the Department through cross-training and collaboration. *Id*.at ¶ 24 . Centralization also allows for the institutionalization of that knowledge through documentation, training programs, and broader dissemination, reducing dependency on individual experts, or human temperaments.  *Id*.

A more centralized HHS FOIA unit can provide a single point of contact for requesters, simplifying the customer service process for the public and in the long term, potentially improving response times. *Id*.  This also avoids public confusion that may arise from navigating a voluminous number of specialized units.  *Id*.

In this matter, there has been no repeated refusals to produce documents or any intentional bids to "hinder" the release of non-exempt information by HHS.  CREW fails to provide any support for their contention that HHS has "decided to abandon … [its] mandated FOIA duties." Pl. Mot. at  34.

### c. CREW's Allegations of Failure to Meet FOIA's Twenty-Day Timeline Will Likely Fail Because the Failure to Meet that Statutory Deadline Cannot by Itself Constitute an Illegal Policy  or Practice under *Payne Enterprises*

In contrast to the situations described above, mere delays in complying with FOIA's statutory timelines do not support equitable relief under *Payne Enterprises*. *See Cause of Action*, 2016 WL 7243518, at *5 ("[D]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable under Payne Enterprises." (internal citations omitted)). This is because FOIA already contemplates that delays in making a "determination" concerning a party's request

may occur and may even be necessary, and the statute itself provides a remedy when such delays occur: the right to file a lawsuit in district court and avoid administrative exhaustion requirements. As the D.C. Circuit explained: If the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court. This scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement. *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013); *see also* 5 U.S.C. § 552(a)(6)(C)(i) (stating that a person making a request "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph").

Thus, to issue relief on the basis of delay alone would ignore the remedial structure already put in place by FOIA, which does not include any independent cause of action to enforce FOIA's twenty-day timeline and which already contains an express consequence for failure to adhere to that timeline. *Bradshaw v. Vilsack*, 560 F. Supp. 3d 101, 118 (D.D.C. 2021). Moreover, FOIA provides adequate relief at law for an agency's delay in issuing a determination, namely a FOIA lawsuit like the one here, that seeks the documents identified in the request. *Powell v. Yellen*, No. 22-5200, 2023 WL 8947132, at *1 (D.C. Cir. Dec. 28, 2023). Courts have consistently dismissed APA claims "that sought remedies made available by FOIA." *Feinman v. FBI*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) In keeping with the general rule of equity, it would be inappropriate to issue equitable relief where such adequate relief at law exists. *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n.6 (D.C. Cir. 2006) ("The general rule is that injunctive relief will not issue when an adequate remedy at law exists."). Because CREW can only allege delay in processing its request, CREW's claims concerning policy and practice are likely to fail.

3.  **CREW Is Not Likely to Prevail on Its APA Claims (Counts III and IV)**

    a.  **Alternative remedy exists to foreclose CREW's APA claims.**

CREW argues that "[i]nsofar as FOIA does not authorize any of CREW's requested relief, the APA fills the gaps.  Pl. Mot. at 18; *id*. at 30 (suggesting if the Court finds the FOIA does not authorize relief against Defendants, the Court should provide relief under the APA).  CREW, however, fails to specify "the gaps" left open by the FOIA or identifies legal authorities to support its position.  Indeed, based on this untenable proposition, CREW argues Defendants' decision to close the CDC FOIA office was unlawful and arbitrary in violation of the APA.  *Id*. at 30-33. This argument simply lacks merit.

Under the APA, the Court may set aside an agency action if the Court finds that challenged action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). Review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. "Although the APA was enacted to 'provid[e] a broad spectrum of judicial review of agency action,' such review is only permissible if 'there is no other adequate remedy' at law."  *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-0289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (*quoting Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) and 5 U.S.C. § 704).  "[I]n determining whether an adequate remedy exists, [the D.C. Circuit] has focused on whether a statute provides an independent cause of action or an alternative review procedure."  *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs*., 396 F.3d 1265, 1270 (D.C. Cir. 2005).  The requirement that a plaintiff have no other adequate remedy in court reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen*, 487 U.S. at 903. As the D.C.

Circuit has also observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (citation omitted). If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA. *See Perry Cap. LLC v. Mnuchin, 864 F.3d 591, 621* (D.C. Cir. 2017). Critically, the D.C. Circuit has expressly held that "FOIA offers an 'adequate remedy' within the meaning of section 704." *CREW v. Dep't of Just.*, 846 F.3d 1235, 1245 (D.C. Cir. 2017); *accord Harvey v. Lynch*, 123 F. Supp. 3d 3, 7-8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction over APA claims that seek remedies available under FOIA." (cleaned up)). *See also Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) (citing *Johnson v. Exec. Off. for U.S. Attorneys*, 310 F.3d 771, 777 (D.C. Cir. 2002)) ("As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records.")).

Here, because FOIA provides an adequate remedy for the relief sought, CREW's APA claims should be dismissed as "barred." *Tereshchuk v. Bureau of Prisons*, No. 14-5278, 2015 WL 4072055, at *1 (D.C. Cir. June 29, 2015) (per curiam). Indeed, CREW specifically invokes the FOIA to ask the Court to find Defendants have engaged in a policy and practice of denying its FOIA requests and to order Defendants to augment the CDC review resources temporarily or permanently. Pl. Mot. at 29-30. Because FOIA provides that alternative remedy CREW's APA claims fail as a matter.

### b.  Implementing the Executive Order is not a violation of the APA

CREW acknowledges Defendants implemented the President's Executive Order when Defendants commenced reduction-in-force("RIF") plans that included eliminating CDC FOIA

office.  Pl. Mot. 5-6. Yet, it challenges Defendants' implementation of the Executive Order as a violation of the APA. This argument lacks merit.

To be clear, CREW is not challenging the President's Executive Order as unlawful under the APA.  In that vein, if CREW's APA claims were challenging the underlying Executive Order issued by the President, Presidential actions are not agency actions reviewable under the APA. *Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) (because the President is not an "agency" under the APA, his actions cannot meet the APA's requirement of a "final agency action"); *Tulare Cnty. v. Bush*, 306 F.3d 1138, 1143 (D.C. Cir. 2002). More importantly, nor is Defendants' implementation of the Executive Order. *See Ancient Coin Collectors Guild v. Customs & Border Prot.*, 801 F. Supp. 2d 383, 402 (D. Md. 2011) (concluding that where the Department of State was acting on behalf of the President, the actions were not reviewable under the APA), *aff'd*, 698 F.3d 171 (4th Cir. 2012); *Detroit Int'l Bridge Co v. Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016) ("agency's action on behalf of the President, involving discretionary authority committed to the President, is 'presidential' and unreviewable under the APA" and concluding that the action by the Department of State on behalf of the President was unreviewable under the APA).  Under the law, Defendants' commencing the RIF and closing the CDC FOIA office was an implementation of the Executive Order, whihc is outside the APA's purview.

For these reasons, CREW is unlikely to succeed on its APA claims.

**B. CREW Has Not Demonstrated That It Will Suffer Irreparable Harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn.*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. The moving party must demonstrate an injury "both certain

and great" and "of such imminence that there is a 'clear and present' need for equitable relief in order to prevent irreparable harm." *Id.* (quoting *Wis. Gas Co. v. Fed. Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). The injury must also "be beyond remediation," meaning that the possibility of corrective relief "at a later date" is unavailable. *Id.* at 297-98. "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). Further, "irreparable harm" in the FOIA context must consist of informational harm to the plaintiff– plaintiff cannot satisfy the "irreparable harm" element of the preliminary injunction standard by pointing to alleged harms faced by third parties. *See, e.g., Alcresta Therapeutics, Inc. v. Azar*, 318 F. Supp. 3d 321, 326 (D.D.C. 2018) (noting that "injuries to third parties are not a basis to find irreparable harm").

Here, CREW has the burden to put forth sufficient evidence to satisfy this high standard. "The movant cannot simply make 'broad conclusory statements' about the existence of harm. Rather, [the movant] must 'submit[ ] . . . competent evidence into the record . . . that would permit the Court to assess whether [the movant], in fact, faces irreparable harm . . . .'" *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21 (D.D.C. 2013) (quoting *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C.2008)). Accordingly, district courts have routinely rejected motions seeking an expedition order, or date certain, through the preliminary injunction vehicle. *See, e.g., N.Y. Times Co. v. Defense Health Agency*, Civ. A. No. 21-566 (BAH), 2021 WL 1614817, at *1 (D.D.C. Apr. 25, 2021) (denying preliminary injunction); *Heritage Foundation v. EPA*, Civ. A. No. 23-748 (JEB), 2023 WL 2954418, at *6 (D.D.C. Apr. 14, 2023) (same), *appeal dismissed*, 2023 WL 8116008

(D.C. Cir. Nov. 17, 2023); *Heritage Foundation v. Dep't of Just.*, Civ. A. No. 23-1854 (DLF), 2023 WL 4678763, at *5 (D.D.C. July 19, 2023) (same), *appeal dismissed as moot*, 2023 WL 6884264 (D.C. Cir. Oct. 16, 2023). This is a difficult showing to make, particularly in FOIA cases. Indeed, "[i]t is rare that any preliminary relief is appropriate in a FOIA case." *Brennan Center for Justice v. Department of Commerce*, 98 F. Supp. 3d 87, 92 (D.D.C. 2020). To be sure, in rare cases, even when an agency has granted expedited processing, "courts in this District have required the government to process FOIA requests by a date certain to avoid the records requested becoming stale after that date, and thus being of little value to inform the public of ongoing proceedings of national importance." *Id*. at 99.  But the facts of those unusual cases underscore the difficulty of establishing irreparable harm warranting this type of relief.

Here, CREW has not presented evidence that "extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr.,* 15 F. Supp. 3d at 39. At bottom, CREW speculates that HHS has suddenly decided to not respond to FOIA requests. CREW, however, has not provided any evidence that supports this claim. Pl.'s Mot. at 36–38. Contrary to CREW's assertion, the Holzerland Declaration explains that HHS has not decided to stop responding to FOIA requests.  Holzerland Decl. ¶¶ 36-44.  Further, CREW has not shown that there is any particular time limit on the usefulness of that information; public critiques of how the government handled the Measles Outbreak, for example, do not have an expiration date, and CREW has not identified any future date at which the Measles outbreak and effects will not be of interest to the public.  Similarly, not receiving information about Defendants' closure of the CDC FOIA office expeditiously will not result in "very serious damage."  In fact, as CREW acknowledges, Defendants have already closed that office and thus there is no longer a need for the information responsive to CREW's four FOIA requests on that issue to be released by a date certain.

CREW also cannot show a likelihood of irreparable injury by speculating about the benefits that faster processing and production might yield for the general public. A plaintiff must show that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Daily Caller,* 152 F. Supp. 3d at 5. Many of CREW's claimed public benefits strain credulity regardless, such as the suggestion that whatever raw data (if any) CREW receives about the measles outbreak will materially increase or decrease public debate among the general public. Pl. Mot 49. That highly speculative and attenuated possibility are not linked to any risk of irreparable harm to CREW. CREW has offered nothing else and thus has failed to carry its burden.

The throughline in CREW's theory of harm is delay. That is doubtlessly true of any FOIA request that seeks information for the purpose of newsgathering, public advocacy, or other use of information. CREW has offered nothing that distinguishes this potential delay from the delay that faces any other FOIA requesters when they must potentially wait for information they would rather have and use sooner.

Not only is CREW factually incorrect in asserting that HHS has "refused" to comply FOIA Pl. Mot. 40, but it is advancing a theory of irreparable injury that would be presumptively satisfied in any FOIA case, transforming FOIA injunctions from the disfavored exception into the norm. Accordingly, absent specific proof of a concrete harm, CREW cannot demonstrate irreparable harm for delay in receiving information. Under the law, because CREW cannot show irreparable harm, the Court must deny its motion for preliminary injunction.

## C. The Public Interest and Balance of Equities Weigh Against a Preliminary Injunction.

Along with alleged harm to the plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by CREW would be in the public interest or harm nonlitigants. *See Al-Fayed*, 254 F.3d at 303. Here a preliminary injunction would not be in the public interest

and would harm nonlitigants.

The primary effect of granting CREW a preliminary injunction would be to disadvantage other requesters who would be pushed further back in the expedited FOIA processing queue. *See* Holzerland Decl. ¶43.  FOIA was intended to be available to all members of the public, not just those who are professional FOIA requesters or who have the resources to file a complaint in district court and move for preliminary injunctive relief.   It is unfair, particularly on this record, for CREW to jump ahead of other requesters who filed before CREW, and who are waiting patiently in line for their requests to be processed. *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding entry of preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of the FOIA").

Moreover, CREW's argument that a preliminary injunction will further FOIA's purposes because it is statutorily entitled to expedited processing, Pls.' Mem. at 35-6, is unavailing given CREW's failure to demonstrate a likelihood of success on the merits. *See supra* Part I.A.

In weighing CREW's interest against the harm to other requesters that would result from a preliminary injunction, it is clear that granting CREW's motion would be contrary to the public interest, and contrary to the first-in/first-out basis on which agencies generally process FOIA requests. Accordingly, the Court should deny CREW's motion.

## II. THE COURT MUST REQUIRE A BOND IF IT ISSUES A PRELIMINARY INJUNCTION

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. Pro. 65(c). District courts have "broad discretion . . . to determine the appropriate amount of an injunction bond." *DSE, Inc. v.*

*United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). Accordingly, Defendants request that this Court

require a bond if it grants a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

Dated: May 1,  2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney


By: _____*/s/ Benton Peterson*_____
    Benton Peterson
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202 252 2534

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

                Plaintiff,

     v.

U.S. CENTERS FOR DISEASE
CONTROL AND PREVENTION, et al.

Defendants.

Civil Action No. 25-01020 (TJK)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Motion for Preliminary Injunction, Defendants'
response thereto, and the entire record herein, it is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction is DENIED.

SO ORDERED:

_____
Date

_____
United States District Judge