UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, <br><br> PLAINTIFF, <br><br> V. <br><br> **U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION,** <br><br> **SUSAN MONAREZ,** <br><br> **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**., <br><br> DEFENDANTS. | CIVIL ACTION NO. 25-01020 (TJK) |

## DECLARATION OF WILLIAM H. HOLZERLAND

I, William H. Holzerland, declare the following to be true and correct:

1. I am the Deputy Agency Chief Freedom of Information Act (FOIA, 5 U.S.C. §522) Officer, Office of the Assistant Secretary for Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and Human Services ("HHS" or the "Department"), and currently serve as the Acting Chief FOIA Officer for HHS. In this capacity, I am responsible for supervising the handling of all FOIA matters and litigations received by the ASPA FOIA Division ("OS-FOIA"), which is an OS staff division, and for providing enterprise-wide policy direction and guidance on disclosure matters. I have held this position since March 26, 2023.

2. I am a career member of the Senior Executive Service with over two decades of

government experience primarily focused on FOIA and privacy.  In this role, I oversee departmental initiatives to ensure efficient and appropriate FOIA compliance, monitor implementation of the FOIA throughout the Department, and keep the Secretary, the Deputy Secretary, the General Counsel, and the Attorney General appropriately informed of the Department's performance in implementing FOIA requirements.  I serve as the Department's appellate authority for disclosure appeals and supervise the work of the Department's Privacy Act Officer.

3. I held a senior transparency role with the U.S. Department of the Interior from 2020-2023 and previously, served as Senior Director, Information Management, for the Federal Emergency Management Agency (FEMA) from 2016-2020, and in that role, was the agency's Chief Disclosure Officer, Chief Privacy Officer, and Chief Records Officer.

4. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, as the Deputy Agency Chief FOIA Officer, and upon conclusions I reached based on that knowledge or information.

5. The purpose of this declaration is to provide information about the Department's FOIA operations and Plaintiff's FOIA requests at issue in this litigation, to demonstrate why the restructuring of the Department and execution of its FOIA duties is based on statutory and regulatory authority.

**HHS FOIA CONTEXT OF PLAINTIFF'S FOIA REQUESTS**

6. HHS FOIA administration has historically been decentralized and as will be detailed later in Paragraphs 13-17 below, until the Department commenced its ongoing reorganization, consisted of independently run FOIA offices at eleven (11) Operating Divisions ("OpDivs") including at the Centers for Disease Control and Prevention ("CDC-FOIA"), as well

as a staff division FOIA unit at the Office of Inspector General (OIG).

7. Each of the Department's FOIA offices responds to FOIA requests. OS-FOIA (defined above in Paragraph 1 as the FOIA office of the Office of the Secretary) responds to initial FOIA requests for records maintained by all OS staff divisions, save for OIG, and multiple OpDivs; ensures consultation with the Office of the General Counsel; reviews and processes non-CMS departmental appeal decisions (including until 2020, FDA appeals); establishes departmental FOIA policies; and monitors FOIA implementation throughout the Department.

8. The Department historically maintained a fragmented information technology environment, with CDC-FOIA data hosted on a separate network from that of the Department, and OS-FOIA is working with partners to resolve technological challenges and gain access to the CDC FOIA database.

9. The Department received and processed the fifth-most FOIA requests amongst federal agencies during Fiscal Year (FY) 2024. *See,* U.S. Department of Justice 2024 Annual FOIA Report Summary, available at https://www.justice.gov/oip/media/1398111/dl?inline).

10. Generally speaking, the highly federated FOIA operations at the Department led to significant risk of uneven application of FOIA across the Department and an untenable volume of FOIA litigation. With 122 agencies subject to FOIA in Fiscal Year 2024, HHS expended 26% of the entire government's FOIA litigation costs during that timeframe. *See,* HHS Fiscal Year 2024 Freedom of Information Annual Report, available at https://www.hhs.gov/foia/reports/annual-reports/2024/index.html).

11. Pursuant to HHS regulations, OS-FOIA may at its discretion also process FOIA requests involving other HHS OpDivs. Under the definitions' section of the departmental FOIA regulations found at 45 C.F.R. § 5.3, the definition of "Office of the Secretary" states, in

pertinent part:

> The HHS FOIA Office within ASPA [defined above in Paragraph 1 as Office of the Assistant of Public Affairs] processes FOIA requests for records maintained by OS Staff Divisions other than the OIG. In certain circumstances and at the HHS FOIA Office's discretion, the HHS FOIA office may also process FOIA requests involving other HHS OpDivs.

12. This provision affords OS-FOIA the authority to process OpDiv FOIA requests and facilitates departmental compliance with the Act and HHS regulations.

13. On February 11, 2025, President Trump signed Executive Order 14210 entitled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative. *Available at* [Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative – The White House](#). ("Executive Order 14210"). Section 1 "Purpose" of Executive Order 14210 states: "[t]o restore accountability to the American public, this order commences a critical transformation of the Federal bureaucracy. By eliminating waste, bloat, and insularity, my Administration will empower American families, workers, taxpayers, and our system of Government itself." *Id*.

14. Section (3)(c) of Executive Order 14210 further states that:

> (c) Reductions in Force. Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law, and to separate from Federal service temporary employees and reemployed annuitants working in areas that will likely be subject to the RIFs. All offices that perform functions not mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and all components and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse in appropriations as provided in the Agency Contingency Plans on the Office of Management and Budget website. This subsection shall not apply to functions related to public safety, immigration enforcement, or law enforcement.

15. In compliance with Executive Order 14210, on March 27, 2025, the Department announced that it would undergo a significant restructuring that would streamline the functions of the Department. *Available at* [HHS Announces Transformation to Make America Healthy Again | HHS.gov](). In that announcement, the Department indicated that as of that time, the 28 divisions of the HHS contained many redundant units. *Id.*

16. Consequently, on or around April 1, 2025, HHS and its affiliated agencies commenced a Reduction in Force (RIF) that significantly changed the Department's workforce and started the process of restructuring the organization.

17. In compliance with not only the "Purpose" part of Section 1 of Executive Order 14210 mentioned above in Paragraph 13, but also with HHS regulation 45 CFR 5.3 mentioned above in Paragraph 11, OS-FOIA thereby exercised its discretion to process FOIA requests that involved other HHS OpDivs, including FOIA requests that involved CDC moving forward.

18. As part of the reorganization efforts, OS-FOIA exercised its discretion to process FOIA requests directed to certain HHS FOIA entities because streamlining inefficient operations will benefit the public by enhancing transparency and accountability to the taxpayer.

19. Streamlining FOIA operations will increase consistency by standardizing the Department's approach to radical transparency. FOIA policies procedures and exemptions can better be applied across the Department, reducing disparities in how the Department handles FOIA requests.

20. Consolidation of duplicative functions allows better efficiency because it optimizes resources. A dedicated OS-FOIA team can streamline workflows, and because tools can be shared, reduce duplication of effort and costs, and leverage specialized expertise, leading to faster response times and better resource allocation.

21. Streamlining FOIA operations will improve compliance and oversight because it facilitates monitoring and tracking of requests, ensuring adherence to statutory deadlines and legal requirements. It also simplifies the quarterly and annual FOIA reporting, as well as the auditing processes that the Department is subject to by oversight bodies.

22. Consolidation will enhance the quality of HHS FOIA responses by reducing errors or legal challenges, reduces redundant training, technology, and staffing costs by pooling resources into a single, efficient FOIA processing operation.

23. Streamlining will enable better and easier coordination and reduce wasteful intra-agency consults on FOIA releases, as well as with entities external to HHS, especially when it comes to other equity partners who have interests in records that are responsive to a FOIA request, and who must be consulted in advance of prospective release of records by HHS.

24. Last but not least, the public will benefit when some FOIA units are consolidated because the Department's FOIA redactions, exemptions, legal reviews, and responses will be more consistent, timely, and accurate. A more centralized FOIA unit can provide a single point of contact for requesters, simplifying the customer service process for the public and in the long term, improving response times. This will avoid public confusion that may arise from navigating a voluminous number of specialized units.

25. As a result, Departmental leadership is implementing the reorganization of some FOIA units while it is at the same time, reviewing future plans to ensure that the Department maintains an efficient and effective FOIA program, consistent with Secretary Kennedy's vision for the Department to operate with radical transparency as a core value.

**PLAINTIFF'S FOIA REQUESTS**

26. On April 1, 2025, Plaintiff submitted five (5) FOIA requests to CDC in which it

sought expedited processing, for "time-sensitive records relating to CDC's assessment of measles risks, the closure of its FOIA office, DOGE's involvement in that closure, and Defendants' plans (if any) to comply with their statutorily mandated FOIA duties."

27. In the first request, Plaintiff sought the following records:

> All records from January 20, 2025 to the date this request is processed that mention, reference, or relate to the CDC's decision not to release an assessment by the Center for Forecasting and Outbreak Analytics that addressed the risk of catching measles in relation to the vaccination rates of nearby areas.

28. In the second request, Plaintiff sought the following records:

   a. All communications sent or received by CDC Public Liaison Bruno Viana, CDC/ATSDR FOIA Officer Roger Andoh, or any other employees in the CDC/ATSDR FOIA Office that mention, reference, or relate to the decision to place the CDC FOIA office on administrative leave on April 1, 2025.
   b. All communications sent or received by any CDC employee outside the CDC/ATSDR FOIA Office that mention, reference, or relate to the decision to place the CDC FOIA office on administrative leave on April 1, 2025.
   c. All memoranda, directives, or other final records relating to the decision to place the CDC FOIA office on administrative leave on April 1, 2025.

29. In the third request, Plaintiff sought the following records:

   a. All communications that mention, reference, or relate to the deliberation of or decision to place the CDC FOIA office on administrative leave on April 1, 2025, received by CDC staff and sent by any individual with an email address associated with DOGE, U.S. DOGE Service, or the Office of Personnel Management ('OPM').
   b. All memoranda, directives, and other final records relating to the deliberation of or decision to place the CDC FOIA office on administrative leave on April 1, 2025 received by CDC staff and sent by any individual with an email address associated with DOGE, U.S. DOGE Service, or the Office of Personnel Management ("OPM").

30. In the fourth request, Plaintiff sought the following records:

   a. All guidance, communications, memoranda, directives, or policies describing CDC's plans to respond to, process, and otherwise manage

7

      open FOIA requests and future FOIA requests.
   b. All guidance, communications, memoranda, directives, or policies describing CDC's plans to otherwise comply with its statutory responsibilities under FOIA.

31. In the fifth request, Plaintiff sought the following records:

   a. All guidance, communications, memoranda, directives, policies, or other final directives relating to CDC's plan to take down its FOIA portal website at https://foia.cdc.gov/.
   b. All guidance, communications, memoranda, directives, policies, or other final directives relating to CDC's plan to provide an automated email response to requesters' FOIA emails.

32. On April 4, 2025, prior to the statutory timeframe for response to the requests for expedited processing, and far in advance of the statutory timeframe for response to the underlying FOIA requests themselves expiring, Plaintiff filed the instant Complaint for Injunctive and Declaratory Relief.

33. On April 21, 2025, Plaintiff filed the instant Motion for Preliminary Injunction and Partial Summary Judgment seeking an order that would:

> (1) require [HHS] to grant expedited processing of Plaintiff's FOIA requests at issue in this case, and expeditiously and fully process and produce all non-exempt records responsive to these requests, along with a *Vaughn* index as soon as practicable;
> (2) require Defendants to assign sufficient personnel and resources to immediately comply with the requirements of FOIA and timely process FOIA requests directed to CDC; and
> (3) preliminarily and permanently enjoin Defendants from continuing to engage in unlawful actions that render the CDC FOIA office inoperative. The requested order would also declare that Defendants' closure of the CDC FOIA office is unlawful. *See* ECF 13.

34. Under FOIA, the Department may afford expedited processing to a requester whenever the requester demonstrates a "compelling need," which a requester would typically show in one of two ways: (1) by establishing that his or her failure to obtain the records on an expedited basis "could reasonably be expected to pose an imminent threat to the life or physical

8

safety of an individual," or (2) in the case of a request made by "a person primarily engaged in disseminating information," by demonstrating that there is an "urgency to inform the public concerning actual or alleged Federal Government activity." § 552(a)(6)(E)(v)(I), (II).

35. On May 1, 2025, OS-FOIA issued responses to Plaintiff's respective requests for expedited processing included in the requests denoted above in Paragraphs 27-31, granting Plaintiff expedited processing for the request referenced in Paragraph 27, and denying expedited processing for the other four FOIA requests.

### OS-FOIA WORKLOAD

36. As of April 1, 2025, the OS-FOIA program had nearly 5,362 pending FOIA requests, approximately 580 pending FOIA appeals, and 166 pending FOIA consults.

37. As of May 1, 2025, the integration of the CDC-FOIA workload with the OS-FOIA workload remains ongoing.

38. In terms of litigation, as of April 1, 2025, the OS-FOIA program maintained a docket of approximately fifty-nine (59) FOIA litigations (thirty-four (34) of which are active and another twenty-five (25) that are pending closure) prior to the reorganization but has since assumed responsibility for an additional forty-six (46) ongoing lawsuits to date from OpDivs impacted by the reorganization. The additional ongoing litigation productions assumed from other parts of HHS will be performed concurrent with the existing workload.

39. As of September 30, 2024, the OS-FOIA program had 3,679 FOIA requests pending.

40. As of April 21, 2025, the OS-FOIA program had approximately 5,659 pending FOIA requests, approximately 588 pending FOIA appeals, and 169 pending FOIA consults, and added approximately 1,782 pending FOIA requests formerly processed by the Administration for

Children and Families, effective that same day.

41. Pending FOIA requests from other HHS OpDivs will be synthesized with the existing OS-FOIA queue.

42. The Department uses multitrack processing and generally processes FOIA requests on a first-in, first-out basis.

43. Moving Plaintiff's FOIA requests to the very top of the queue would be unfair to and disadvantage other FOIA requesters, who have equally important requests for records, and who have been waiting to have their requests processed.

44. Were Plaintiff's FOIA requests to jump to the front of the processing queue as a result of this lawsuit, the Department would nonetheless encounter competing FOIA priorities in the near term as we streamline to ensure a more effective FOIA program.

45. Many matters in ongoing FOIA litigation, which predate the filing of Plaintiff's lawsuit, impose requirements on the Department which would conflict with a requirement to fully process plaintiff's requests by a date certain of Plaintiff's request.

46. Aside from litigation priorities and processing expedited requests, the Department continues to have additional, recurring short-term legal obligations pursuant to the FOIA. These include, but are not limited to, timely acknowledging incoming requests, adjudicating requests for expedited processing, and processing consultations on records sent to the Department from other agencies.

47. Incoming FOIA consultations frequently relate to FOIA litigations where the outside agency is a named defendant, which therefore may have litigation deadlines requiring short-term – yet immediate – attention from HHS.

48. Completing the processing of Plaintiff's FOIA requests by a date certain would

almost certainly render the Department unable to timely meet its obligations to FOIA plaintiffs in other cases.

49. Aside from the ongoing reorganization of the Department, OS-FOIA has also experienced loss of staff. The loss of staff in OS-FOIA is mostly attributable to the planned completion of performance on two FOIA support contracts; one concluded on March 29, 2025, and the other concluded on April 11, 2025.

50. Simultaneously, OS-FOIA is absorbing the workloads of several other FOIA Offices impacted by the ongoing reorganization, consistent with the discretion afforded to the Department in its FOIA regulations as mentioned above in Paragraph 11.

## CONCLUSION

13. In summary, based on the foregoing, I aver that HHS has provided the Court with adequate grounds to show that the reorganization of the HHS FOIA offices is not arbitrary and capricious and that even though the Department granted expedited processing on one of Plaintiff's FOIA requests, not all of Plaintiff's FOIA requests should be given preferential or expedited treatment, and instead should be processed in the normal course of business and in the order in which they were submitted.

14. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Executed this 1st day of May 2025.

WILLIAM H. HOLZERLAND