IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

        v.

U.S. CENTERS FOR DISEASE
CONTROL AND PREVENTION, *et al.*,

        Defendants.

Civil Action No. 25-01020 (TJK)

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.   CREW is likely to succeed on the merits.................................................................. 2

    A.   CREW is likely to succeed on its expedited processing claim. ................................. 2

        1.   CREW has met the criteria for expedition. ...................................................... 2

        2.   CREW's claim is not premature. .................................................................... 5

    B.   CREW is likely to succeed on its policy-or-practice claim. ...................................... 6

        1.   CREW has standing. ..................................................................................... 6

        2.   Defendants' speculative and unsupported assurances of FOIA compliance do nothing to undermine the merits of CREW's claim. .............. 10

    C.   CREW is likely to succeed on its APA claims that Defendants' closure of the CDC FOIA office was unlawful, arbitrary, and capricious. .............................. 18

II.   CREW will suffer irreparable harm absent a preliminary injunction. ............................. 21

III.   The balance of equities and public interest favor granting a preliminary injunction. ......................................................................................................... 24

IV.   The Court should not require CREW to post a bond. ...................................................... 25

CONCLUSION................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Aguiar v. Drug Enf't Admin.*,
   865 F.3d 730 (D.C. Cir. 2017) ............................................................... 17

*Allied Progress v. CFPB*,
   No. 17-cv-686, 2017 WL 1750263 (D.D.C. May 4, 2017) ....................... 4

*Am. C.L. Union ("ACLU") v. U.S. Dep't of Just.*,
   321 F. Supp. 2d 24 (D.D.C. 2004) ........................................................... 3

*\*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*,
   470 F. Supp. 3d 32 (D.D.C. 2020) .................................................. 3, 4, 25

*Am. Oversight v. U.S. Dep't of State*,
   414 F. Supp. 3d 182 (D.D.C. 2019) ........................................................ 23

*Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*,
   801 F. Supp. 2d 383 (D. Md. 2011) ........................................................ 21

*Buckner v. CONSOL Energy, Inc.*,
   No. 20-cv-1148, 2024 WL 2382941 (D.D.C. May 23, 2024) .................. 10

*Cause of Action Inst. v. U.S. Dep't of Com.*,
   No. 19-cv-2698, 2022 WL 4130813 (D.D.C. Sept. 12, 2022) ................... 8

*\*Chamber of Com. of U.S. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) ................................................................ 21

*Citizens to Preserve Overton Park v. Volpe*,
   401 U.S. 402 (1971) ................................................................................ 19

*\*Colo. Wild Pub. Lands v. U.S. Forest Serv.*,
   691 F. Supp. 3d 149 (D.D.C. 2023) ........................................... 11, 12, 17

*CREW v. Exec. Off. of the President*,
   587 F. Supp. 2d 48 (D.D.C. 2008) ............................................................ 8

*CREW v. U.S. Dep't of Just.*,
   436 F. Supp. 3d 354 (D.D.C. 2020) .......................................................... 5

*CREW v. U.S. Dep't of Just.*,
   No. 24-cv-1497, 2025 WL 879664 (D.D.C. Mar. 21, 2025) ................... 17

*CREW v. U.S. Dep't of Hous. & Urb. Dev.*,
   415 F. Supp. 3d 215 (D.D.C. 2019) .................................................. 17

*\*CREW v. U.S. DOGE Serv.*,
   No. 25-cv-00511, 2025 WL 752367 (D.D.C. Mar. 10, 2025)......................... 4

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
   411 F. Supp. 3d 5 (D.D.C. 2019). .................................................. 3

*Detroit Int'l Bridge Co. v. Canada*,
   189 F. Supp. 3d 85 (D.D.C. 2016) .................................................. 21

*DSE, Inc. v. United States*,
   169 F.3d 21 (D.C. Cir. 1999) ...................................................... 25

*\*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) .................................................... 19

*\*Elec. Priv. Info. Ctr. ("EPIC") v. U.S. Dep't of Just.*,
   416 F. Supp. 2d 30 (D.D.C. 2006) .......................................... 4, 22, 23

*Fed. Bureau of Investigation v. Fikre*,
   601 U.S. 234 (2024) ............................................................... 12

*Frank LLP v. Consumer Fin. Prot. Bureau*,
   288 F. Supp. 3d 46 (D.D.C. 2017) ............................................... 7, 8

*Gatore v. U.S. Dep't of Homeland Sec.*,
   327 F. Supp. 3d 76 (D.D.C. 2018) .................................................. 9

*Greenpeace, Inc. v. U.S. Dep't of Homeland Sec.*,
   311 F. Supp. 3d 110 (D.D.C. 2018) ................................................ 18

*Henneghan v. D.C.*,
   916 F. Supp. 2d 5 (D.D.C. 2013) .................................................. 19

*\*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   895 F.3d 770 (D.C. Cir. 2018) ............................................. 9, 11, 17

*Khine v. U.S. Dep't of Homeland Sec.*,
   334 F. Supp. 3d 324 (D.D.C. 2018) ................................................. 9

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
   No. 25-cv-0946, 2025 WL 1187730 (D.D.C. Apr. 24, 2025)........................... 25

*Leopold v. U.S. Dep't of Def.*,
　　752 F. Supp. 3d 66 (D.D.C. 2024) ...................................................... 11

*Lewis v. D.C.*,
　　No. 10-5275, 2011 WL 321711 (D.C. Cir. Feb. 2, 2011) ...................... 19

*Long v. Dep't of Homeland Sec.*,
　　436 F. Supp. 2d 38 (D.D.C. 2006) ........................................................ 4

*\*Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*,
　　369 F. Supp. 3d 151 (D.D.C. 2019) ................................... 11, 12, 16, 17

*\*Muckrock, LLC v. Cent. Intel. Agency*,
　　300 F. Supp. 3d 108 (D.D.C. 2018) ........................................ 6, 8, 17, 18

*\*Muttitt v. U.S. Cent. Command*,
　　813 F. Supp. 2d 221 (D.D.C. 2011) ................................................ 18, 20

*Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*,
　　383 F. Supp. 3d 1 (D.D.C. 2019) ........................................................... 8

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
　　No. 25-cv-333, 2025 WL 573764 (D. Md. Feb. 21, 2025) ..................... 25

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
　　No. 25-cv-239, 2025 WL 597959 (D.D.C. Feb. 25, 2025) ............... 12, 25

*\*Nat'l Sec. Couns. v. Cent. Intel. Agency*,
　　898 F. Supp. 2d 233 (D.D.C. 2012) ............................................ 6, 7, 8, 9

*\*Nat'l Sec. Couns. v. U.S. Dep't of Just.*,
　　848 F.3d 467 (D.C. Cir. 2017) ............................................................ 5, 6

*\*Newport Aeronautical Sales v. U.S. Dep't of Air Force*,
　　684 F.3d 160 (D.C. Cir. 2012) ............................................................... 9

*NLRB v. Robbins Tire & Rubber Co.*,
　　437 U.S. 214 (1978) ............................................................................ 23

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
　　502 F. Supp. 3d 492 (D.D.C. 2020) ..................................................... 25

*\*Payne Enters. v. United States*,
　　837 F.2d 486 (D.C. Cir. 1988) ........................................................ 11, 16

*Phillips v. D.C.*,
   No. 22-cv-00277, 2022 WL 1302818 (D.D.C. May 2, 2022) ............................................ 7

*\*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
   263 F. Supp. 3d 293 (D.D.C. 2017) ........................................................................... 3, 4

*Quick v. U.S. Dep't of Com.*,
   775 F. Supp. 2d 174 (D.D.C. 2011) .................................................................................. 9

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
   795 F.2d 90 (D.C. Cir. 1986) ........................................................................................... 5

*\*Tipograph v. U.S. Dep't of Just.*,
   146 F. Supp. 3d 169 (D.D.C. 2015) ......................................................................... 7, 9, 11

*\*U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) ........................................................................................................... 19

*Valancourt Books, LLC v. Garland*,
   82 F.4th 1222 (D.C. Cir. 2023) ...................................................................................... 12

*\*Wash. Post v. U.S. Dep't of Homeland Sec.*,
   459 F. Supp. 2d 61 (D.D.C. 2006) ............................................................................ 23, 25

## Statutes

5 U.S.C. § 552 ...................................................................................................................... 5

## Regulations

*45 C.F.R. § 5.2 ................................................................................................................... 13

*45 C.F.R. § 5.23 ................................................................................................................. 13

*45 C.F.R. § 5.3 ............................................................................................................. 12, 19

## Other Authorities

HHS, HHS Fiscal Year 2024 Freedom of Information Annual Report (updated Feb. 21, 2025),
   https://www.hhs.gov/foia/reports/annual-reports/2024/index.html .......................... 14

Letter from Sen. Ron Wyden, Ranking Member of the Senate Committee on Finance, to Robert
   F. Kennedy Jr., Sec'y of Health and Hum. Servs. (May 8, 2025),
   https://www.finance.senate.gov/imo/media/doc/hhs_foia_closures_letter_-_
   050825pdf.pdf ............................................................................................................... 24

## INTRODUCTION

Defendants by their own admission cannot fulfill the U.S. Centers for Disease Control and Prevention's ("CDC") basic obligations under the Freedom of Information Act ("FOIA"). On their own telling, they abruptly shuttered the CDC FOIA office and removed its staff without advance notice or planning. Now they are attempting to transfer its important functions to an already overburdened and understaffed central office at the Department of Health and Human Services ("HHS") that lacks the capacity, resources, specialized training, or basic technological access necessary to carry out the work. These admissions do not demonstrate "radical transparency." Defs.' Opp. to Pl.'s Mot. for Prelim. Inj. ("Opp.") 3, ECF No. 18. They evince unreasoned and unlawful decisionmaking.

Based on these undisputed facts, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is entitled to preliminary injunctive relief on all its claims. Amid time-sensitive public health crises, including a measles outbreak Defendants recognize is urgent, Defendants' opposition fails to establish that Plaintiff is not entitled to—and is not irreparably harmed by denial of—expedited processing of its FOIA requests concerning the demolition of CDC's transparency apparatus as part of the U.S. DOGE Service ("DOGE") Reduction in Force ("RIF") Initiative. Defendants also fail to establish that CREW lacks a viable FOIA policy-or-practice claim when, on their own telling, they have abrogated their basic FOIA responsibilities at CDC without a plan in place to handle those responsibilities or CREW's pending requests. And Defendants avoid altogether the substance of CREW's Administrative Procedure Act ("APA") claims, while revealing elsewhere that their final decision to shutter the CDC FOIA office relied on improper legal authority and lacked any reasoned analysis.

The Court should grant CREW's preliminary injunction motion.

**ARGUMENT**

I.  **CREW is likely to succeed on the merits.**

    A.  **CREW is likely to succeed on its expedited processing claim.**

        1.  **CREW has met the criteria for expedition.**

Almost three weeks beyond the statutory deadline, on the day Defendants filed their opposition to CREW's motion, Defendants issued additional responses to CREW's five requests for expedited processing. *See* Opp. 1 n.1, 4 n.2. The Office of the Secretary's FOIA office ("OS FOIA"), not CDC, belatedly granted CREW expedited processing on its FOIA request concerning Defendants' reported suppression of a measles assessment, explaining that "[t]he subject matter . . . demonstrates that there is an 'urgency to inform the public concerning actual or alleged Federal activity.'" *Id.*, Ex. 1 at 13, ECF No. 18-2; *see* Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. & Partial Summ. J. ("Pl.'s Mem.") at 14-15, 21, ECF No. 13-1; Pl.'s Mot. For Prelim. Inj. & Partial Summ. J. ("Mot," ECF No. 13), Exs. A, D, ECF Nos. 13-4, 13-7.

But Defendants doubled down on the prior denials of expedited processing for CREW's other four FOIA requests, which seek records concerning the shuttering of the CDC FOIA office and DOGE's involvement in this action. *See* Opp. 1 n.1, 4 n.2; *id.*, Ex. 1 at 1, 4, 7, 10 (providing single sentence of reasoning). Defendants' opposition reinforces the conclusion that, like CDC's automated denial of expedited processing on April 1, this second denial was erroneous.

To start, Defendants fail to meaningfully engage with CREW's showing of urgency. Opp. 7. Defendants discount without explanation CREW's identification of "'ongoing' debates" and national news coverage of the CDC FOIA office shuttering as part of the DOGE RIF Initiative. *Id.* (claiming simply that reliance on ongoing debates is improper). Unfolding stories of national importance can, and in CREW's case do, readily establish the urgency of FOIA requests related to

them, as several cases underscore. *See* Pl.'s Mem. 21-22 (collecting authorities). Defendants ignore this established principle.

They also ignore the broader thrust of CREW's expedited processing requests: the public's pressing need for information about transparency at the nation's leading public health agency in light of the DOGE RIF Initiative upending basic government operations at HHS, the closure of the CDC FOIA office, and ongoing crises like the quickly worsening measles outbreak. *See id.* at 22-23. Yet, by acknowledging that transparency around measles information is urgent, and making public commitments to "radical transparency," Defendants have conceded that CREW's FOIA requests are "central" to the "pressing" public health issues of the day. *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017); *see Am. C.L. Union ("ACLU") v. U.S. Dep't of Just.*, 321 F. Supp. 2d 24, 30 (D.D.C. 2004) (explaining that government recognized "current exigency" when releasing information premised on "public interest" in informing ongoing public discussion (citation omitted)); Pl.'s Mem. 22-23. In this context, Defendants' efforts to minimize the stakes of CREW's FOIA requests—as simply concerning ordinary "CDC staffing decisions"—ring hollow. Opp. 7; *see ACLU*, 321 F. Supp. 2d at 30-31 (rejecting "piecemeal approach" to showing urgency and defendant's disregard of "the host of factors" and ongoing national debate demonstrating compelling need).

Also hollow is Defendants' argument that CREW is not entitled to expedited processing because it has not identified a "sufficiently imminent event" or specific deadlines. Opp. 7-8. FOIA requesters seeking expedited processing do not need to identify a "precise end-date" or time-limited event. *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) (quoting *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 13 (D.D.C. 2019)). Rather, requesters can establish urgency by showing the records at issue relate to an "ongoing"

issue of sufficient national importance. *Id.* (granting expedited processing for records related to ongoing COVID-19 pandemic and evolving public discussion).[1] That is exactly what CREW has done here. *See* Pl.'s Mem. 21-23. Just as the plaintiff in *American Immigration Council* was entitled to expedition "to inform and impact" evolving national discussions associated with the COVID-19 pandemic, so too is CREW so that it can inform ongoing debates on CDC's ability to operate transparently amid health crises and DOGE cuts to key functions. 470 F. Supp. 3d at 38.

These pressing circumstances readily distinguish the two cases that Defendants cite to claim that courts "den[y] expedition" in the absence of an imminent event. Opp. 8 (citing *Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38 (D.D.C. 2006), and *Allied Progress v. CFPB*, No. 17-cv-686, 2017 WL 1750263 (D.D.C. May 4, 2017)). In *Long*, the thrust of plaintiffs' demand to expedite their request for a broad range of immigration statistics was a hypothetical party's need to use the information for an amicus brief before a filing deadline, which had already passed by the time the court ruled. 436 F. Supp. 2d at 43. Plaintiffs alleged no facts establishing any other reason this data would lose value without expedition. *Id.* In *Allied Progress*, the court similarly opined in dicta that the plaintiff did "not provide any evidence of [] public interest." 2017 WL 1750263, at *5. Here, by contrast, the ongoing controversy and national attention surrounding the CDC FOIA office closure, the related DOGE RIF Initiative, and the ongoing measles outbreak are robustly supported.

Finally, Defendants' discussion of expedited *release* of records is likewise inapposite. *See* Opp. 8-10. As Defendants themselves "recognize," CREW has not included "a separate count

---

[1] *See also, e.g.*, *CREW v. U.S. DOGE Serv.*, No. 25-cv-00511, 2025 WL 752367, at *13-15 (D.D.C. Mar. 10, 2025) (similar, concerning ongoing DOGE activities to, *inter alia,* fire agency personnel); *Protect Democracy*, 263 F. Supp. 3d at 299-300 (similar, concerning ongoing military strikes in Syria lacking clear end-date); *Elec. Priv. Info. Ctr. ("EPIC") v. U.S. Dep't of Just.*, 416 F. Supp. 2d 30, 35 (D.D.C. 2006) (similar, regarding ongoing debate about legality of warrantless surveillance program).

seeking release of records." *Id.* at 9. It also has not sought production "by a date certain." *Id.* (citation omitted). Instead, CREW has pled in Count I that it was wrongly denied expedited processing and requests relief requiring Defendants to process its requests as soon as practicable.

### 2.    CREW's claim is not premature.

Defendants suggest CREW's expedited processing claim fails because CREW "prematurely filed suit before the ten-day statutory period for Defendants to respond to the requests elapsed." *Id.* at 6; *see id.* at 1.[2] Defendants' argument fails on several fronts.

Most importantly, CREW's expedited-processing claim is ripe because CDC denied all five of CREW's requests with automated emails stating CDC was "unable to respond." Decl. of Alex M. Goldstein ("Goldstein Decl.") ¶¶ 14-15, ECF No. 13-3; *see id.*, Exs. G, H; *see also id.*, Ex. I. CDC's denial entitled CREW to sue immediately. *See* 5 U.S.C. § 552(a)(6)(E)(iii); *CREW v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 358-59 (D.D.C. 2020).

In light of this response, CREW reasonably and correctly concluded that further administrative process would be futile or inadequate. *See also* Decl. of William H. Holzerland ("Holzerland Decl.") ¶ 8, ECF No. 18-1 (explaining that OS FOIA is still working to "gain access to the CDC FOIA database"); *id.* ¶¶ 44, 48 (claiming expedited processing of CREW's requests would "render the Department unable to timely meet its [FOIA] obligations"); *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (explaining that plaintiffs need not pursue futile administrative process).

And, in any event, "the specific circumstances of this case" do not warrant finding that CREW's claim is premature. *Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 470 (D.C. Cir.

---

[2] Defendants also suggest that CREW has failed to exhaust its administrative remedies on the requests themselves, but that argument is irrelevant because CREW has raised a claim only as to the denial of expedited processing. Opp 10.

2017). By Defendants' admission, more than ten days passed before the OS FOIA office acted on CREW's April 1 expedition requests. *See* Opp. 1 n.1, 4 n.2. Nothing is left to do in the administrative process; Defendants have had the opportunity to "correct" their erroneous denials of expedited processing, and the Court has an "adequate" record to review. *Nat'l Sec. Couns.*, 848 F.3d at 470-71 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)).

**B.    CREW is likely to succeed on its policy-or-practice claim.**

**1.    CREW has standing.**

Contrary to Defendants' assertions, CREW has amply demonstrated that it has Article III standing to raise its FOIA policy-or-practice claim. To establish standing, a plaintiff must show that (1) an illegal policy exists; (2) plaintiff has been subjected to it at some point in the past; and (3) plaintiff likely will be subjected to it again in the future. *Muckrock, LLC v. Cent. Intel. Agency*, 300 F. Supp. 3d 108, 134 (D.D.C. 2018). CREW easily meets these requirements.

Defendants do not meaningfully contest the first two elements. CREW's detailed showing points to "specific instances" of non-compliance, buttressed by sworn declarations and public reporting, illustrating how Defendants have adopted a total FOIA shutdown policy at CDC that has and will fundamentally thwart basic access to CDC records. *Nat'l Sec. Couns. v. Cent. Intel. Agency*, 898 F. Supp. 2d 233, 260 (D.D.C. 2012); *see* Pl.'s Mem. 6-9, 25-27, 31; Compl. for Decl. and Inj. Relief ("Compl.") ¶¶ 22-24, 35-36, 51-53, ECF No 1. Defendants fail to rebut any aspect of this detailed showing. Opp. 11. Defendants cite the Holzerland Declaration to challenge only the merits of CREW's claim, not standing. *See id.* at 13-15. Regardless, Defendants' weak efforts to "disclaim[] any policy and/or alter[] [their] behavior" do not "divest" CREW of standing, especially considering CREW's robust showing. *Muckrock*, 300 F. Supp. 3d at 130; *see infra* I.B.2.

Defendants hang their hat on the third element of policy-or-practice standing, contending that CREW has not shown that it will be subject to Defendants' CDC FOIA shutdown policy in

the future. *See* Opp. 11-12. This is incorrect. As a result of Defendants' policy or practice, they cannot properly fulfill CREW's pending and future requests for CDC records.

A plaintiff can show a sufficiently imminent injury from a FOIA policy or practice in several ways: by "pointing to pending FOIA requests that will likely implicate the agency's policy"; attesting to "specific, concrete plans to file a FOIA request that would implicate the policy"; *or* "showing that its business depends on" filing FOIA requests and "receiving documents that the policy permits the [agency] to withhold." *Frank LLP v. Consumer Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 58 (D.D.C. 2017) (quotation marks omitted). CREW shows all three.

First, CREW has five "outstanding FOIA requests" that Defendants cannot properly fulfill due to the CDC FOIA shutdown policy, which by itself suffices to demonstrate "future injury." *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 262 (quoting *CREW v. U.S. Sec. & Exch. Comm'n*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012)); *see also, e.g.*, *Tipograph v. U.S. Dep't of Just.*, 146 F. Supp. 3d 169, 176 (D.D.C. 2015) (similar, and collecting cases); *Phillips v. D.C.*, No. 22-cv-00277, 2022 WL 1302818, at *4 (D.D.C. May 2, 2022). Defendants provide no evidence the requests are actually being processed. In fact, their declaration's discussion of OS FOIA's workload, declining staff, and separate information technology system corroborates CREW's evidence that the office lacks the operational capability to process CREW's pending and future CDC FOIA requests. *Compare* Holzerland Decl. ¶¶ 8, 36, 41, 48-49, *with* Decl. of Kevin Griffis ("Griffis Decl.") ¶¶ 4, 13, 14, 19, 20, ECF No. 13-17.[3]

Second, CREW's declaration makes plain that, in response to this unprecedented FOIA office shutdown, CREW has specific and concrete plans to build off its pending CDC FOIA

---

[3] As described below, *infra* at 12-13, OS FOIA also lacks the legal ability to process CREW's requests. OS FOIA admits to taking on far more FOIA responsibilities than HHS regulations permit.

requests and submit further requests in the near future. *See* Goldstein Decl. ¶¶ 4, 19; *see also* Compl. ¶ 7. CREW has not yet submitted these additional requests because Defendants had not, until they filed their opposition, publicly revealed any information about whether CDC-related FOIA requests would be processed at all or where CREW should submit them. Moreover, the manner in which CREW crafts some of its further requests will depend on what, if anything, it receives in response to its still-pending ones. CREW's "clear intent" and express plans to submit "future requests" for CDC-related records, which the CDC FOIA shutdown will impair, reinforces its imminent injury. *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 262; *see also, e.g.*, *Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 383 F. Supp. 3d 1, 12 (D.D.C. 2019) (plaintiff's intent to continue filing similar requests plausibly established imminent injury from agency policy); *CREW v. Exec. Off. of the President*, 587 F. Supp. 2d 48, 61 (D.D.C. 2008) (similar); *Frank*, 288 F. Supp. 3d at 59 (similar).

Finally, CREW faces imminent injury from the FOIA shutdown policy based on "[its] status as a serial FOIA requester" to agencies like HHS and CDC. *Muckrock*, 300 F. Supp. 3d at 134; *see Cause of Action Inst. v. U.S. Dep't of Com.*, No. 19-cv-2698, 2022 WL 4130813, at *3 (D.D.C. Sept. 12, 2022) (citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)). That status does more than simply reinforce that CREW "credibly anticipates filing more" FOIA requests. *Frank*, 288 F. Supp. 3d at 59; *see Nat'l Sec. Couns.*, 898 F. Supp. 2d at 262. It establishes that, separate and apart from a specified future request, CREW faces a broader and more fundamental injury from the CDC FOIA shutdown policy.

CREW frequently uses FOIA requests to CDC and other agencies as a critical tool to "advance its mission" of "disseminat[ing] . . . information about public officials and their actions." Goldstein Decl. ¶¶ 2-3; *see id.* ¶ 4 & n.1. CDC's inoperative FOIA office quite obviously frustrates

this "stated mission," *Nat'l Sec. Couns.*, 898 F. Supp. 2d at 262, preventing CREW from obtaining *any* agency records. That broad deprivation is more than enough to plausibly establish a concrete and impending injury in fact. *See, e.g., id.* (imminent injury based in part on intention to submit FOIA requests implicating policy or practice and organizational mission); *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 333 (D.D.C. 2018) (similar, based on plaintiff's frequent use of FOIA to carry out its primary institutional activities and mission (citing *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 782 (D.C. Cir. 2018))); *Gatore v. U.S. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 94 (D.D.C. 2018) (similar), *aff'd*, No. 21-5148, 2023 WL 2576176 (D.C. Cir. Mar. 21, 2023); *Tipograph*, 146 F. Supp. 3d at 176 (explaining that a plaintiff can show an imminent injury in fact due to a policy or practice affecting FOIA responses if its "very business . . . depend[s] on filing FOIA requests"); *see also Newport Aeronautical Sales v. U.S. Dep't of Air Force*, 684 F.3d 160, 162, 164 (D.C. Cir. 2012) (permitting FOIA policy-or-practice claim where FOIA requests were "an important tool" for plaintiff's business of "[g]athering information").

Against this robust backdrop, Defendants' cursory arguments disputing CREW's standing fall flat. The sole policy-or-practice case Defendants discuss, *Quick v. United States Department of Commerce*, 775 F. Supp. 2d 174 (D.D.C. 2011), is not on point and analyzed standing only in dicta. Opp. 12. The *Quick* court opined that plaintiff would lack standing to assert a "hypothetically asserted" policy-or-practice claim, 775 F. Supp. 2d at 184, because he did not, as CREW does, identify specific requests he would submit, establish his FOIA bona fides, or point to pending FOIA requests affected by the agency's policy or practice. *Quick* thus offers Defendants no help.

Finally, Defendants' argument that CREW's injury is "self-inflicted" is meritless. As a factual matter, CREW did not submit its FOIA requests to CDC "kn[owing] full well that the office was [already] closed." Opp. 11. Instead, CREW sought to verify public reporting and to obtain

more information about Defendants' conduct, which was immediately confirmed by CDC's auto-denial of CREW's requests for expedited processing. No case law supports applying the self-inflicted-injury doctrine where, as here, a plaintiff sought to exercise a statutory right but was frustrated from doing so by an agency's actions. And the single case Defendants cite only reinforces why their theory fails. *See Buckner v. CONSOL Energy, Inc.*, No. 20-cv-1148, 2024 WL 2382941, *7 (D.D.C. May 23, 2024) (explaining theory applies only when the injury results from "the choice a plaintiff makes *rather than the actions of a defendant*" (emphasis added)). Here, it was *Defendants'* decision to shut down CDC's FOIA office and hobble its FOIA capacity that has caused CREW's injury.

### 2. Defendants' speculative and unsupported assurances of FOIA compliance do nothing to undermine the merits of CREW's claim.

Defendants' arguments on the merits of CREW's policy-or-practice claim are equally unavailing. Defendants contend that the Holzerland Declaration undermines CREW's claim, *see* Opp. 14-15, and that CREW has only identified delays in processing its FOIA request but not conduct sufficiently egregious to make out a policy-or-practice claim, *see id.* at 15-16; *see also id.* at 13-14. Neither contention withstands scrutiny.

**Holzerland Declaration:** Defendants' reliance on the Holzerland Declaration is best understood as an effort to moot CREW's policy-or-practice claim.[4] That claim crystallized when Defendants abruptly closed the CDC FOIA office without notice, planning, or explanation and in violation of FOIA and HHS regulations—thereby adopting a CDC FOIA shutdown policy. Now, Defendants attempt to unwind their policy by alleging they are appropriately handling CREW's requests and "have [an] intention to abide by the terms of the FOIA." Opp. 14 (citing Holzerland

---

[4] Even if considered as an effort to undermine the merits of Plaintiff's claim, the declaration is unpersuasive. As described below, it provides only speculative assertions of generic "anticipated benefits" of centralization, without any detail on CDC-specific FOIA requests. Opp. 14.

Decl. ¶¶ 36-48). But these representations fall well short of demonstrating that Defendants have taken "intervening actions" that have "entirely solved the policy problem or cured [CREW]'s ongoing injury." *Colo. Wild Pub. Lands v. U.S. Forest Serv.*, 691 F. Supp. 3d 149, 172 (D.D.C. 2023); *see also, e.g.*, *Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 163 n.5 (D.D.C. 2019) (Kelly, J.) (considering defendants' assurances of FOIA compliance as a mootness issue and rejecting affidavits as sufficient to moot policy-or-practice claim); *Payne Enters. v. United States*, 837 F.2d 486, 491-92 (D.C. Cir. 1988) (same).

To begin, policy-or-practice claims present an exception to mootness in the FOIA context, where, ordinarily, an agency can moot challenges predicated on specific FOIA requests by addressing them. *Payne*, 837 F.2d at 491; *see also, e.g.*, *Jud. Watch*, 895 F.3d at 777; *Leopold v. Dep't of Def.*, 752 F. Supp. 3d 66, 94 (D.D.C. 2024). So long as the plaintiff alleges that the agency's initial failure to properly respond to its FOIA requests reflects a "failure to abide by the terms of the FOIA" and causes continuing injury—as CREW has alleged here—its policy or practice challenge "is not moot" simply because the agency then responds during litigation. *Payne*, 837 F.2d at 491; *see also, e.g.*, *Tipograph*, 146 F. Supp. 3d at 174; *Leopold*, 752 F. Supp. 3d at 94. Here, Defendants have not even begun processing CREW's FOIA requests. *Cf. Leopold*, 752 F. Supp. 3d at 94 (similar). The OS FOIA office has only issued belated expedition determinations on them and has otherwise left them in limbo, likely because, by its own admission, it is still working to "gain access" to CDC systems and faces severe workload and staffing issues that render it "unable to timely meet its obligations." Holzerland Decl. ¶¶ 8, 48; *see id.* ¶¶ 36-47, 49-50.

In any event, Defendants' assertions that CREW's pending and future CDC FOIA requests and all other CDC-related requests will be properly handled are insufficient. Defendants face a "heavy burden" of showing that, going forward, they will abide by FOIA's terms and thus have

mooted CREW's challenge. *Colo. Wild Pub. Lands*, 691 F. Supp. 3d at 171-72; *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (describing showing mootness based on changed conduct as a "formidable burden"). In such cases, a defendant must prove not only that it has voluntarily ceased the challenged conduct; it must also show "there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have completely or irrevocably eradicated the effects of the alleged violation," *Colo. Wild Pub. Lands*, 691 F. Supp. 3d at 172 (quoting *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997)); *see also, e.g.*, *Mo. Coal.*, 369 F. Supp. 3d at 163 n.5 (similar), and that showing must be "absolutely clear," *Valancourt Books, LLC v. Garland*, 82 F.4th 1222, 1230 (D.C. Cir. 2023). This burden is particularly demanding at the preliminary injunction stage. *See Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 25-cv-239, 2025 WL 597959, at \*9-10 (D.D.C. Feb. 25, 2025). The Holzerland Declaration falls well short of the mark.

Rather than eschewing Defendants' CDC FOIA shutdown policy, the Holzerland Declaration doubles down on it, despite the policy's plain violation of HHS FOIA regulations. The declaration proclaims that 45 C.F.R. § 5.3 gives OS FOIA the authority to consolidate all department FOIA work, and in so doing to close the agency's separate FOIA office, as a means of streamlining operations. *See* Holzerland Decl. ¶¶ 11-12, 17-18; Opp. 3, 14-15. But that reading of the regulation is flatly incorrect. The plain text of 45 C.F.R. § 5.3 gives OS FOIA limited "discretion" to handle *particular* FOIA requests directed to other HHS components, not carte blanche to handle *all* such requests. And this regulation by no means authorizes HHS to dissolve the CDC FOIA office or other ones; rather it and other accompanying regulations explicitly contemplate that those separate FOIA offices will coexist with OS FOIA and separately perform their own mandated FOIA functions. *See* 45 C.F.R. § 5.3 (defining CDC as one of several HHS

operating divisions, each with their own FOIA "officials," "operations," and "programs"); *id.* § 5.2 (establishing that "each" HHS operating division, including CDC, "is responsible for" maintaining its own proactive disclosure "Web site" and "determining which of its records" belong on it); *id.* § 5.23(a) (similar with respect to requests for certain research data, which each operating division must process).

Defendants' briefing and declaration also notably fail to establish that OS FOIA is actively processing CREW's requests. *Cf.* Holzerland Decl. ¶ 46 (distinguishing adjudicating request for expedited processing from processing the underlying request itself). In fact, Defendants concede that their effort to integrate the CDC FOIA office's workload is still "ongoing," *id.* ¶ 37, and will interfere with their ability to expeditiously process CREW's requests, *id.* ¶ 44 ("Were Plaintiff's FOIA requests to jump to the front of the processing queue as a result of this lawsuit, the Department would nonetheless encounter competing FOIA priorities in the near term as we streamline to ensure a more effective FOIA program."). And nowhere do Defendants indicate they will reinstate the trained CDC FOIA staff they abruptly terminated.

What is more, significant unrebutted evidence demonstrates that Defendants' integration plan is simply not feasible anytime soon. Defendants fail entirely to address CREW's robust evidentiary showing that OS FOIA lacks the capacity to take over the CDC FOIA function in the short-to-medium term, and will not be able to successfully do so without time-consuming and highly-resource-intensive work. *See* Pl.'s Mem. 8-9, 11, 25-26. As CREW demonstrated based on multiple declarations and HHS's own annual FOIA reports, the OS FOIA office has a small and shrinking staff; a narrow focus on Secretary staff division records; a large backlog of requests for those records, its own separate technology systems that do not interact with CDC's systems; and no one with the specialized training, expertise, and institutional knowledge to handle FOIA

requests for CDC-specific records. *See id.* at 8-9, 20; Griffis Decl. ¶¶ 5, 13, 19. Neither Holzerland nor Defendants engage with any of these considerations and thus must concede them.

In fact, Defendants' evidence *supports* CREW's claim. Their declarant admits that OS FOIA faces significant workload and integration issues and, with these issues, cannot even expeditiously process CREW's five pending requests without "almost certainly" jeopardizing the department's FOIA obligations. Holzerland Decl. ¶ 48; *see id.* ¶¶ 36-47, 49-50. As the Holzerland Declaration lays out, OS FOIA currently has its own backlog of thousands of FOIA matters: 5,659 pending FOIA requests, 588 pending FOIA appeals, 169 pending FOIA consults, and 59 FOIA lawsuits. *Id.* ¶¶ 38, 40. It has "experienced loss of staff" to handle this work because of the recent completion of two "support contracts." *Id.* ¶ 49. With its already-significant workload and shrinking staff, it must now take on the CDC FOIA workload and pre-existing backlog[5] and "the workloads of several other FOIA offices" affected by the April 1 DOGE RIFs, including the Administration for Children and Families ("ACF"). *Id.* ¶ 50; *see id.* ¶ 40 (describing expanded caseload of additional 46 lawsuits from affected offices as well as ACF's 1,782 pending FOIA requests); Pl.'s Notice of Suppl. Auth, Ex. 1 at 1-2 (HHS making similar representations regarding "influx of work and changes in staffing levels" when seeking time extension in another FOIA case). Simultaneously, Defendants concede they are grappling with "technological challenges" in their efforts to have OS FOIA absorb CDC FOIA work because "CDC-FOIA data [is] hosted on a separate network from that of the Department" and OS FOIA needs to "work[] with partners . . . [to] gain access to the CDC FOIA database." Holzerland Decl. ¶ 8.

---

[5] *See* HHS, HHS Fiscal Year 2024 Freedom of Information Annual Report (updated Feb. 21, 2025), https://www.hhs.gov/foia/reports/annual-reports/2024/index.html (Sections V.A. and VII.D lay out pending CDC requests as of the end of the last fiscal year).

Unsurprisingly, then, the Holzerland Declaration fails to deliver on its claims that consolidation will improve the handling of "FOIA requests . . . involv[ing] CDC moving forward." *Id.* ¶¶ 17-18; *see also id.* ¶¶ 19-24 (vaguely claiming that consolidation will, *inter alia*, improve the quality of FOIA responses by facilitating cross-HHS knowledge transfer and the pooling of training, technology, and staffing); Opp. 14-15 (summarizing declaration). On its face, the declaration offers only bare and speculative assertions of generic "anticipated benefits" that could inspire any centralization endeavor at any entity. Opp. 14. They are devoid of any actual data, evidence, or reasoning specifically showing that CDC-related FOIA work will benefit, rather than suffer, from Defendants' decision to shut down the CDC FOIA office.[6] Nor does the declaration indicate that OS FOIA is in fact successfully absorbing the CDC FOIA function; describe its policies, procedures, or systems for doing so; provide any details showing that OS FOIA is actively processing the hundreds of pending and incoming FOIA requests that CDC previously was responsible for each month; or suggest that centralization has resulted in any of the supposed benefits Defendants anticipate.

All the declaration can muster is that, a full month after the CDC FOIA office was shuttered, OS FOIA is still working to "gain access" to CDC FOIA data, and that its integration efforts are "ongoing." Holzerland Decl. ¶¶ 8, 37. Defendants can only point to aspirational benefits

---

[6] For instance, the declaration claims that centralization will "streamline workflows" and ensure better "tracking of requests" and application of "specialized expertise" across the department. Holzerland Decl. ¶¶ 20-21. But it does not identify any workflow, tracking, or expertise issues that need to be addressed at CDC or explain how OS FOIA can better handle CDC-specific FOIA work. Defendants' centralization hypothesis also flies in the face of real-word practice. Many departments intentionally administer their FOIA operations on a decentralized basis, as HHS did pre-April 1, so that their components can maintain different FOIA processes tailored to their needs and areas of focus. *See, e.g.*, *United States Department of Justice 2024 Chief FOIA Officer Report*, U.S. Dep't of Just., https://perma.cc/K99G-CCZE (Section IV, discussing decentralization); *2024 Chief FOIA Office Report – Solicitor of Labor/DOL Chief FOIA Officer Report*, U.S. Dep't of Labor, https://perma.cc/2EAH-Q6TJ (similar, Executive Summary).

that the DOGE RIF Initiative being executed at HHS and CDC may have at some unknown future date, *see id.* ¶¶ 19-24 (using future tense), and state in conclusory fashion that CREW's pending FOIA requests "will be"—but apparently have not been—"synthesized with the existing OS-FOIA queue," *id.* ¶ 41. Their declaration paints the picture of a department scrambling to determine how to comply with statutory and regulatory FOIA requirements in the face of the sudden and unreasoned shutdown of multiple FOIA offices. *Id.* ¶¶ 44, 50. Defendants cannot shift the onus onto Plaintiff, *see* Opp. 14-15 (critiquing CREW's showing), where their own policies have demonstrably led to their inability to comply.

With all this in mind, Defendants' "stated . . . intention to abide by the terms of the FOIA" and properly handle CDC FOIA requests is plainly insufficient. Opp. 14. Defendants' hopes for a more "effective FOIA program," Holzerland Decl. ¶¶ 25, 44, provide zero "assurance" of FOIA compliance and therefore do not moot CREW's policy-or-practice claim or undermine the claim's viability, *Payne*, 837 F.2d at 492 (similarly rejecting government's unsupported assertion in affidavit that contested practice would not be reinstated). Any assurance would, in any event, be empty since Defendants placed CDC's entire FOIA office on administrative leave with no advance notice or reasoned explanation, Decl. of Person Doe ("Doe Decl.") ¶¶ 4-7, ECF No. 13-6, on the same day they had just "started the process" of "significantly chang[ing] the Department's workforce," Holzerland Decl. ¶ 16.

Courts in this Circuit have rejected similarly unsubstantiated assurances offered by agencies seeking to defeat policy-or-practice claims. *See, e.g.*, *Payne*, 837 F.2d at 492; *Mo. Coal.*, 369 F. Supp. 3d at 160-62, 163 n.5 (determining agency had impermissible FOIA policy and rejecting agency's claims to the contrary because declarations offered no examples where agency had abstained from applying policy and nothing supporting assurance that it would not resume);

16

*Muckrock*, 300 F. Supp. 3d at 130, 135-36 (similar); *Colo. Wild Pub. Lands*, 691 F. Supp. 3d at 172-73 (concluding that agency declaration did not moot or undermine policy-or-practice claim where declaration did not assert finalized corrective actions brought it in compliance with FOIA).[7]

**CREW's Sufficient Showing of an Impermissible Policy or Practice:** Defendants also vastly overstate the showing required to state a policy-or-practice claim. Such a claim does *not* require "egregious" agency conduct. Opp. 13. The D.C. Circuit "expressly 'd[oes] not require egregious agency action'" and "[i]nstead" permits "a plaintiff . . . to prevail" simply by showing some "failure to abide" by FOIA's terms. *CREW v. U.S. Dep't of Just.*, No. 24-cv-1497, 2025 WL 879664, at *9 (D.D.C. Mar. 21, 2025) (quoting *Jud. Watch*, 895 F.3d at 781-83, and *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013)). Regardless, Defendants' decision to abruptly shutter the CDC FOIA office *is* egregious for the reasons discussed.

And contrary to Defendants' argument, CREW's showing does not fall short for failure to identify "repeated" instances of FOIA violations or reliance on "mere delays" in complying with FOIA's statutory timelines. Opp. 15. CREW has identified repeat violations: five of its requests for expedited processing were auto-denied under the CDC FOIA shutdown policy, and those requests are still pending. *See Mo. Coal.*, 369 F. Supp. 3d at 159-61 (finding a policy or practice where plaintiff cited five instances of identical, violative conduct); *Muckrock*, 300 F. Supp. 3d at 135-37 (similar). Delays in the proper processing of these requests, and future ones, is precisely the type of FOIA violation that "support[s] equitable relief under *Payne Enterprises*." Opp. 16; *see CREW v. U.S. Dep't of Hous. & Urb. Dev.*, 415 F. Supp. 3d 215, 226 (D.D.C. 2019). The D.C. Circuit has rejected Defendants' exact argument that delays are noncognizable for policy-or-

---

[7] Further, Defendants' declaration is not entitled to the presumption of good faith that ordinarily attaches and cannot support final judgment because it is conclusory and does not provide reasonably specific detail, or any detail, on the processing of CDC-specific FOIA requests. *See Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 734-36, 738-39 (D.C. Cir. 2017).

practice purposes since the FOIA "statute itself provides a remedy when such delays occur" by authorizing suits in district court. Opp. 16; *see Jud. Watch*, 895 F.3d at 779-81 (explaining that this argument is "untenable" in light of FOIA's requirement that records be made "promptly available" and longstanding precedent "dispos[ing] of any suggestion that Congress intended the repeated filing of lawsuits" to obtain records); *Muckrock*, 300 F. Supp. 3d at 134-35 (similar).

Finally, CREW's claim rests on more than just delay in processing its five requests. CREW asserts that Defendants have engaged in a total CDC FOIA shutdown, with all the attendant FOIA violations that entails. *See* Pl.'s Mem. 27-28; Compl. ¶ 62. For example: Defendants' policy prevents them from making available all up-to-date CDC reading room records, from making reasonable efforts to search for requested CDC records, and from making timely initial determinations and productions. *See* Pl.'s Mem. 27; Compl. ¶ 62 a & b; Doe Decl. ¶¶ 7, 10; Griffis Decl. ¶¶ 13-14, 19-20; Decl. of Darya Minovi ¶ 12, ECF No. 13-19. Defendants do not dispute these assertions. Nor could they since, by their own telling, they cannot even access CDC systems.

## C. CREW is likely to succeed on its APA claims that Defendants' closure of the CDC FOIA office was unlawful, arbitrary, and capricious.

Because the wholesale shuttering of an agency FOIA office without notice or explanation is unprecedented, this is far from a "run-of-the-mill FOIA case." *Greenpeace, Inc. v. U.S. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018). As CREW has asserted, the CDC FOIA shutdown raises two APA issues "not connected to the processing of any particular FOIA record requests." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (discussing *Public Citizen v. Lew*, 127 F. Supp. 2d 1, 7-9 (D.D.C. 2000), where "the court reviewed a claim under the APA alleging that several agencies' violated a provision of FOIA"). First, the shutdown was contrary to law because it violated HHS regulations, *see* Pl.'s Mem. 31-32; Compl. ¶ 67 g-h, in addition to the FOIA statute. Second, it was arbitrary and capricious because it was neither

reasonable nor reasonably explained and failed to consider important practical aspects of how to successfully fold the CDC FOIA function into OS FOIA. *See* Pl.'s Mem. 32-34; Compl. ¶ 73.

Defendants fail altogether to address the merits of CREW's APA claims, *see* Opp. 17-19, and thus concede those arguments. *See Henneghan v. D.C.*, 916 F. Supp. 2d 5, 9 (D.D.C. 2013) ("[T]he Court may treat as conceded any argument raised in the motion which the opposing parties fail to address."); *accord Lewis v. D.C.*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011). In any event, the defenses they have offered elsewhere in their papers do not demonstrate compliance with the APA's terms. As discussed, the plain text of 45 C.F.R. § 5.3 does not authorize Defendants to shut down the CDC FOIA office. And the Holzerland Declaration does not indicate that Defendants provided any advanced or contemporaneous explanation for their decision to shutter the office or engaged in any reasoned analysis on the need to do so, the strong reliance interests that the closure would impair, or the severe impact that the closure would have on their ability to meet statutorily mandated obligations to provide CDC records. That lack of a reasoned, contemporaneous explanation is dispositive here. *See U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) ("It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action" (quotation marks omitted)). The declaration's invocation of 45 C.F.R. § 5.3 and its generic representations about the anticipated benefits of CDC FOIA centralization "can be viewed only as impermissible *post hoc* rationalizations and thus are not properly before [the Court]." *Id.* at 22; *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 (1971) (rejecting "litigation affidavits" from agency officials as "merely 'post hoc' rationalizations").

Granting CREW relief on its unrebutted APA claims would provide it with a different and necessary "genre" of remedy. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of*

*Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005) (cleaned up). That relief is distinct from FOIA relief because it would apply to Defendants' unlawful and arbitrary-and-capricious implementation of the DOGE RIF Order against the entire CDC FOIA office, as opposed to the downstream impact of those APA violations on the processing of CREW's requests. *See Muttitt*, 813 F. Supp. 2d at 229 (drawing a distinction between FOIA claim connected to processing of particular FOIA requests and APA claim that stemmed from broader FOIA violation).

Defendants' illegal and unreasoned closure of the CDC FOIA office cannot simply be addressed by requiring Defendants to "assign[] sufficient personnel and resources to timely process CREW's FOIA requests," Compl., Requested Relief ¶ 7—which the Court could order to stop Defendants' policy-or-practice violation, *see* Pl.'s Mem. 29-30. Rather, the only way to truly remedy Defendants' brazen attack on the CDC FOIA endeavor itself is to vacate and enjoin their final decision to render the agency's FOIA office "non-operational." Compl., Requested Relief ¶ 6; *see* Mot. (similar and requesting that CDC FOIA office closure itself be declared unlawful, consistent with paragraphs 4-5 of CREW's requested relief). That is uniquely APA relief, and the record demonstrates it is warranted here.

Defendants fail to appreciate the meaningful distinction between the nature of CREW's policy-or-practice and APA claims, and between the forms of relief these different claims properly encompass. *See* Opp. 18 (erroneously suggesting CREW only seeks finding that its FOIA requests were denied according to impermissible policy or practice, and FOIA relief in the form of augmented agency FOIA resources). Accordingly, their reliance on FOIA cases that dismiss duplicative APA claims is unpersuasive. *Id.* Although, in relying on these cases, they attempt to frame this case as ordinary FOIA litigation, the undisputed facts show it is anything but.

Defendants' remaining arguments against APA review are also misguided. As Defendants

acknowledge, CREW is not challenging the DOGE RIF Order itself in this case. *See id.* at 19. So, the principle that presidential actions "are not reviewable under the APA" is inapplicable here. *Id.* Defendants' attempt to extend this bar on APA review to "implementation[s]" of executive orders, like their implementation of the DOGE RIF Order to "clos[e] the CDC FOIA office," is unfounded. *Id.* Under settled law, courts frequently subject agencies' implementations of executive orders or proclamations to APA review. *See, e.g.*, *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1326-27 (D.C. Cir. 1996) (finding regulations that implement an executive order are reviewable under the APA). The two cases that Defendants rely on are not to the contrary. *See* Opp. 19. They declined APA review only because the challenged agency actions were "presidential in nature"; they were taken in the foreign affairs context, where the president's individual authority is paramount, and were carried out pursuant to directly delegated presidential authority and solely on the president's behalf. *Detroit Int'l Bridge Co. v. Canada*, 189 F. Supp. 3d 85, 100-01 (D.D.C. 2016); *see also Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 402-04 (D. Md. 2011), *aff'd*, 698 F.3d 171 (4th Cir. 2012). The CDC FOIA closure does not bear any of these unique hallmarks of presidential action. And the DOGE RIF executive order itself does not provide Defendants with any cover for their actions. The plain text of the order does not authorize RIFs of agency components and employees who, like CDC's FOIA personnel, perform "functions . . . mandated by statute or other law." Opp. 2 (cleaned up).

## II.    CREW will suffer irreparable harm absent a preliminary injunction.

Defendants wrongly argue that CREW's claims are insufficiently urgent and that any alleged harm flows only to the public, not CREW. That mischaracterizes the facts and the law.

CREW is irreparably harmed by Defendants' failure to process its CDC FOIA requests. As noted, Defendants fail to establish that they are actively processing CREW's five CDC requests or will be able to comply with their CDC FOIA obligations in the near future. *See supra* I.B.2. And

contrary to Defendants' contention that the CDC FOIA office closure lessens the urgency here, Opp. 21, the closure increases the urgency to inform the public about Defendants' crippling of CDC transparency mechanisms, which is ongoing and occurring while they misleadingly advertise a commitment to "radical transparency," Holzerland Decl.¶ 25. Further, the closure irreparably harms CREW by indefinitely frustrating its mission to disseminate information. *See supra* I.B.1.

Amid their continued shuttering of the CDC's FOIA function, Defendants argue that injunctive relief seeking expedited FOIA processing is proper only when there is a hard "expiration date" to the usefulness of the information sought. Opp. at 21. But urgency, not a narrow showing of a specific expiration date, lies at the core of both expedited processing and the harm CREW faces without it. *See, e.g.*, *EPIC,* 416 F. Supp. 2d at 40-41; *supra* I.A.1. Accordingly, courts have recognized that an "urgency to inform" encompasses the very situation at issue here: fast-moving and consequential developments implicating key agency operations and activities, without necessarily implicating a concrete deadline. *See supra* I.A.1; Pl.'s Mem. 23-24 (citing cases).

OS FOIA's decision, hours before Defendants' filing, to grant expedition on one of CREW's FOIA requests underscores the urgency here. OS FOIA determined that the request seeking information on CDC's suppression of a measles risk assessment "demonstrates that there is an 'urgency to inform the public concerning actual or alleged Federal activity.'" Opp., Ex. 1 at 13. This concession is telling, because it acknowledges that whether and how CDC practices transparency can be an issue of the utmost urgency. *See EPIC*, 416 F. Supp. 2d at 41 (similar). This transparency is particularly critical now as Defendants promote untested treatments for

diseases like measles,[8] and as child deaths from other preventable outbreaks hit historic highs.[9]

Denial of its statutory right to inform the public about urgent and significant CDC issues causes CREW irreparable harm. This is not, as Defendants argue, an impermissible third-party harm. It is the core of FOIA's mandate. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society[.]"). The value of the information that CREW endeavors to place in the public's hands as part of its use of FOIA, to protect the public's rights to government transparency, is dependent on prompt processing and production. *See Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) (recognizing the "diminutive value of untimely disclosure" and that "stale information is of little value" (quoting *Payne Enters.*, 837 F.2d at 494)). Delayed release of CDC records in this instance lessens their value because delay can in turn prevent the public from effectively acting. This diminished value constitutes a clear, irreparable injury to CREW. *See, e.g.*, *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019); *EPIC*, 416 F. Supp. 2d at 40 (the "loss" of the "value" of timely information "constitutes a cognizable harm"). Here, the urgency of CREW's requests is undeniable because delay can have tragic, irreversible consequences in the public health context. Without CREW's timely access to and dissemination of CDC information, the people who "bear the greatest burden," Decl. of Dr. Jennifer Hao ¶ 15, ECF No. 13-18, will be deprived of critical means to safeguard their well-being.

CREW anticipates this information will have a consequential impact on how Defendants proceed with their implementation of the DOGE RIF Initiative and their compliance with their

---

[8] Teddy Rosenbluth, *Kennedy orders search for new measles treatments instead of urging vaccination*, N.Y. Times (May 2, 2025), https://www.nytimes.com/2025/05/02/health/measles-treatments-vaccines-kennedy.html.
[9] Mike Stobbe, *CDC reports 216 child deaths this flu season, the most in 15 years*, Associated Press (May 2, 2025), https://apnews.com/article/flu-deaths-children-cdc-e79b1e4169d629ad4bc1095d95d82110.

FOIA obligations. Defendant Secretary Kennedy has already acknowledged that many of the DOGE layoffs at HHS have been in error, Pl.'s Mem. 2, n.7, and that in certain cases he has learned about DOGE cuts at the agency he runs only because members of the public have brought them to his attention.[10] Public attention has led to some correction of these errors, including within the department's FOIA functions. For example, amid public outcry over HHS cutting two-thirds of the Food and Drug Administration's FOIA staff, HHS reportedly rehired some of that staff last week.[11] As the CDC FOIA office nonetheless remains shuttered, public debate and congressional inquiry is increasing,[12] and CREW is not able to timely participate and inform these ongoing and pressing discussions without the records it seeks.

It is for all these reasons that CREW asserts it faces irreparable harm if Defendants do not expeditiously process its requests. CREW does not, as Defendants state, seek to "transform[] FOIA injunctions from the disfavored exception into the norm." Opp. 22. Rather, CREW simply seeks to redress the tangible harms it faces in its pursuit of timely information following Defendants' extraordinary and abrupt closure of the CDC FOIA office.

## III.    The balance of equities and public interest favor granting a preliminary injunction.

As CREW has explained in detail, *see* Pl.'s Mem. 40-43, the balance of the equities and the public interest weigh decisively in favor of granting a preliminary injunction. Defendants' opposition offers only a single cursory counterargument—that "[i]t is unfair . . . for CREW to jump

---

[10] Mark Alfred and Margaret Manto, *DOGE is on a tear at HHS. Even insiders are struggling to keep up*, NOTUS (Apr. 22, 2025), https://perma.cc/8LEY-ZYGQ.

[11] Rachana Pradhan, *In Reversal, FDA Rehires Staff Tasked With Releasing Public Records*, CNN (May 2, 2025), https://perma.cc/TQ5A-FYX6.

[12] Letter from Sen. Ron Wyden, Ranking Member of the Senate Committee on Finance, to Robert F. Kennedy Jr., Sec'y of Health and Hum. Servs., at 1-3 (May 8, 2025), https://www.finance.senate.gov/imo/media/doc/hhs_foia_closures_letter_-_050825pdf.pdf (discussing how "wholesale elimination" of CDC FOIA office and other FOIA offices at HHS raises "extreme[]" concerns about the department's ability to comply with FOIA).

ahead of other [FOIA] requesters who filed before CREW" sought expedition. Opp. 23. But this argument misses the mark because, as discussed above, CREW is entitled to expedited processing. In such circumstances, courts routinely reject the government's argument that allowing for line-cutting is unfair, and they in fact find that expedited processing of the time-sensitive records at issue serves the public interest. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 75-76; *Am. Immigr. Council*, 470 F. Supp. 3d at 39 (similar). The Court should do the same here.

## IV.    The Court should not require CREW to post a bond.

Defendants briefly suggest that, if the Court issues a preliminary injunction, it should require CREW to post security under Federal Rule of Civil Procedure 65(c). Opp. 23-24. The Court should deny that request. Rule 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all." *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020). Here, where CREW is a public-interest plaintiff, its claims do not seek the expenditure of money or monetary damages and Defendants' cursory argument does not articulate they will suffer any monetary loss, and the balance of equities strongly favors CREW, a bond would not be appropriate. *See Nat'l Council of Nonprofits*, 2025 WL 597959, at *19 (denying request for bond); *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-cv-0946, 2025 WL 1187730, at *61-62 (D.D.C. Apr. 24, 2025) (similar, and collecting cases); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-cv-333, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025) (setting nominal bond of zero dollars because granting defendants' request "would essentially forestall [the] [p]laintiffs' access to judicial review").

## CONCLUSION

For the foregoing reasons, the Court should grant the motion for preliminary injunction.

Respectfully Submitted,

*/s/ Yoseph T. Desta*

Kayvan Farchadi (D.C. Bar No. 1672753)
Yoseph T. Desta (D.C. Bar No. 90002042)
Alex Goldstein (D.C. Bar No. 90005086)
Chun Hin Tsoi (D.C. Bar No. 90017713)
Kalyn Mizelle McDaniel (D.C. Bar No.
   90027120)
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics in
   Washington
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
kfarchadi@citizensforethics.org
ydesta@citizensforethics.org
agoldstein@citizensforethics.org
jtsoi@citizensforethics.org
kmizellemcdaniel@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*