UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, <br><br> PLAINTIFF, <br><br> V. <br><br> **U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION,** <br><br> **SUSAN MONAREZ,** <br><br> **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**., <br><br> DEFENDANTS. | CIVIL ACTION NO. 25-01020 (TJK) |

## SUPPLEMENTAL DECLARATION OF WILLIAM H. HOLZERLAND

I, William H. Holzerland, declare the following to be true and correct:

1. I am the Deputy Agency Chief Freedom of Information Act (FOIA, 5 U.S.C. §522) Officer, Office of the Assistant Secretary for Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and Human Services ("HHS" or the "Department"), and currently serve as the Acting Chief FOIA Officer for HHS. In this capacity, I am responsible for supervising the handling of all FOIA matters and litigations received by the ASPA FOIA Division ("OS-FOIA"), which is an OS staff division, and for providing enterprise-wide policy direction and guidance on disclosure matters. I have held this position since March 26, 2023.

2. This supplemental declaration is my second declaration in this case. It

incorporates and supplements my first declaration dated May 1, 2025 (ECF No. 18-1). I submit this supplemental declaration to address certain points that were raised during the Motion Hearing held on May 13, 2025, at 2:08 p.m. before the Honorable Timothy J. Kelly, United States District Judge, and in Plaintiff's Reply Memorandum In Support of Plaintiff's Motion For Preliminary Injunction (ECF 20) ("Plaintiff's Reply"). More specifically, the purpose of this supplemental declaration is to provide additional information about the Department's FOIA operations and Plaintiff's FOIA requests at issue in this litigation, to demonstrate why the restructuring of the Department and execution of its FOIA duties is based on statutory and regulatory authority.

3. The key points that I will address in this supplemental declaration will include: Reorganization vs. Shutdown (Paragraphs 5-12); Automated Emails and Information Technology (Paragraphs 13-20); Processing of FOIA Requests and Plaintiff's Place In Queue (Paragraphs 21-26); and Training (Paragraphs 27-36).

4. As was the case for my first declaration, the statements contained in this supplemental declaration are based upon my personal knowledge, upon information provided to me in my official capacity, as the Deputy Agency Chief FOIA Officer, and upon conclusions I reached based on that knowledge or information.

**REORGANIZATION VS. SHUTDOWN**

5. I am aware that Plaintiff has asserted at the Hearing and in its filings that the Centers for Disease Control and Prevention ("CDC") shut down its FOIA office. *See, e.g.,* Plaintiff's Reply at 12, 13, 14, 16, 22, 23, 24.

6. In response, I hereby state that the Department did not implement an alleged "shutdown" of the CDC-FOIA Office ("CDC-FOIA") but instead implemented a reorganization

2

of some FOIA offices across the Department. To explain, a shutdown would have involved eliminating individual FOIA offices with the intent of disrupting or preventing FOIA services and as part of workforce reduction, reducing transparency or disclosure of records. As will be shown later in Paragraphs 8-11 below, this has not been the case. Furthermore, in a shutdown, there would also have been loss of expertise. As will also be shown later in Paragraphs 21-26 ("Processing") and 27-36 ("Training"), this too has not been the case. Instead, and as I explained in Paragraphs 20, 22, 24 of my first declaration, the reorganization and centralization of some of the FOIA offices that the Department is implementing aims at consolidating these functions to streamline operations and improve efficiency and transparency for the taxpayer. *See* ECF 18-1 at 20, 22, 24.[1] [2]. *See* ECF 18-1 at 20, 22, 24.[3]

7.  As my supplemental declaration shows in detail in Paragraphs 21-26 ("Processing"), with the April 1, 2025 FOIA reorganization, the Department's FOIA functions are clearly intended to continue with a goal of processing FOIA requests as quickly as practicable. Since April 1, 2025, the Department has continued to meet its FOIA obligations

---

[1] As I also explained in Paragraphs 13, 14, 15, 17, 25 of my first declaration, to the extent some FOIA offices were reorganized, this was part of a larger HHS restructuring pursuant to Executive Order 14210 for workforce optimization. *See* ECF 18-1.

[2] As stated in Paragraph 11 of my first declaration, the reorganization was also implemented in compliance with 45 C.F.R. §5.3 which does not limit the OS-FOIA office's discretion to process FOIA requests submitted to any office in the Department. *See* ECF 18-1. The regulation states: "In certain circumstances and at the HHS FOIA Office's discretion, the HHS FOIA office may also process FOIA requests involving other HHS OpDivs." Id. The best evidence of what the HHS FOIA regulations say is the regulations themselves. While the FOIA regulations operate to denote how members of the public can submit FOIA requests and govern agency responses to them – and not to govern personnel matters - we note the absence of language in the provision highlighted limiting the OS FOIA program's discretion exercised herein.

[3] As I further stated in Paragraph 15 of my first declaration, the intent of the reorganization was to align with broader departmental goals and modernization efforts such as Secretary Kennedy's "Make America Healthy Again" initiative. *See* ECF 18-1.

through completion of work on new and existing FOIA requests. As of May 19, 2025, with its reorganization, the Department has synthesized the existing FOIA workloads of the former FOIA Office for the Administration for Children and Families ("ACF") and of the former CDC-FOIA into the FOIA Office for the Office of the Secretary ("OS-FOIA") workload, inclusive of all pending and new FOIA requests, litigation productions, and email boxes.

8. In doing so, OS-FOIA has taken the steps necessary to process ninety-one (91) pre-existing FOIA requests that had been received prior to April 1, 2025 (the date when the Department's reorganization started).[4] From the date of the reorganization (April 1, 2025), OS-FOIA processed them to their final disposition. Stated differently, this means that after the April 1, 2025 reorganization started, in compliance with 5 U.S.C. §552(a)(3), OS-FOIA has made ongoing, reasonable efforts to acknowledge new requests, search for responsive records, and process responsive records identified for public release, generally on a first-in, first-out basis which has resulted in resolving these ninety-one (91) pre-existing FOIA cases.

9. The Department's goal of continuing to meet its FOIA obligations also means that in compliance with 5 U.S.C. §552(a)(6), OS-FOIA actively communicates with requesters seeking complex data sets that involve review by multiple subject matter experts. For example, one request sought a full export of the Human Assurance Tracking System (HATS) that is maintained by the Office of the Assistant Secretary for Health (OASH). OS-FOIA coordinated discussions between the requester and HHS subject matter experts in April 2025 (after the April 1, 2025 FOIA reorganization had started) which led to a better understanding of the data sought. The requester received a sample data set to ensure the Department properly fulfills the request.

---

[4] As of the hearing, OS-FOIA had processed 61 FOIA requests and issued 14 litigation releases since April 1, 2025; an additional 30 FOIA requests have been closed and 3 litigation productions have been issued since that time.

4

10. Furthermore, since April 1, 2025, OS-FOIA is actively reviewing over 80,000 pages of records currently in the final stage of their review process by senior OS-FOIA personnel, and those records are responsive to over 500 pending FOIA requests.

11. In addition to the foregoing, in compliance with 5 U.S.C. §552(a)(2), OS-FOIA has made proactive disclosures on a publicly available website, available at [Electronic Reading Room | HHS.gov](#). For example, since April 1, 2025, when the FOIA reorganization started, the Department has publicly posted seventy (70) discrete items on its public facing FOIA reading room, including [HHS FOIA Logs](#) and [HHS FOIA Litigation Releases](#).. *See,* Exhibit 1 attached to this Declaration.

12. The foregoing shows that the reorganization of the HHS FOIA enterprise has not involved an alleged "shutdown," but as it is being implemented, will instead allow a more unified, consistent process for requesters and will promote uniform application of the FOIA to Department records in accordance with the law, agency regulations, and applicable policies. Requests submitted in the coming months will be processed in accordance with the FOIA, using routine techniques and steps employed in the processing of FOIA requests, on a first-in, first-out basis. The examples cited above in Paragraphs 8 through 11 represent a sample operational FOIA response that HHS plans to continue to build upon accordingly.

**AUTOMATED EMAILS AND INFORMATION TECHNOLOGY**

13. I am aware that in Plaintiff's Reply, Plaintiff indicates that when it submitted its April 1 FOIA requests to CDC, it allegedly received automated emails from the former CDC-FOIA email inbox stating the Department was "unable to respond," to the FOIA requests. *See,* Plaintiff's Reply, page 11.

14. To the extent that Plaintiff received automated replies from CDC email

addresses on April 1, 2025, these communications were not authorized by the Department. These automated replies were instead unauthorized communications that were presumably set up by former CDC-FOIA employees after they had received their Reduction In Force (RIF) notices.

15.     As a matter of procedural background, in issuing FOIA responses, the Department follows its regulations and issues its FOIA responses on letterhead signed by the FOIA Officer (or designee) at the Operating Division that receives the request at issue, in accordance with Departmental regulations.  According to HHS regulations, a "*Freedom of Information Act (FOIA) Officer* means an HHS official who has been delegated the authority to release or withhold records; to assess, waive, or reduce fees in response to FOIA requests; and to determine whether to grant expedited processing."  *See,* "FOIA Officer" definition under 45 C.F.R. § 5.3.  To my knowledge, the automated emails that Plaintiff allegedly received did not come from a "FOIA Officer," and were not written on letterhead.  Accordingly, an experienced FOIA requester knows or should know that automated emails could not reasonably be construed as disposing of or summarily denying a FOIA request.  If Plaintiff, in the instant matter, had construed the automated replies emails it allegedly received as disposing of or denying its FOIA requests, then at a minimum, Plaintiff was bound to follow HHS appeal procedures outlined in 45 C.F.R. §§ 5.61-5.64,.  To my knowledge, Plaintiff failed to appeal alleged "denials" of its April 1 FOIA requests.

16.     Since the time these unauthorized automated emails were issued however, the Department has worked with its information technology partners to address the problem and as of May 6, 2025, OS-FOIA controls the former CDC-FOIA database, its tracking system, and the former CDC-FOIA email addresses.

17.     Between April 1 and May 2, 2025, the former CDC FOIA webpage was updated

in substantive ways and the page now redirects requesters to the OS-FOIA webpage for service.

18. The former CDC-FOIA request submission weblink no longer exists, and the submission link on CDC.gov takes requesters seeking CDC records to the OS-FOIA submission portal.

19. Having resolved technological complexities, the Department is taking actions consistent with its statutory obligations under the FOIA relative to approximately 212 new FOIA requests seeking CDC records received since April 1, 2025. Typically, this involves logging new requests, assigning them individual tracking numbers, issuing acknowledgment letters, and tasking those requests out to program offices likely to maintain responsive records, as applicable, to conduct searches for responsive records.

20. As attached Exhibits 2, 3 and 4 show, when a requester attempts to submit a FOIA request directly to the former CDC-FOIA email address, the following message appears: "If you have questions about the FOIA process, please email FOIARequest@hhs.gov. Submit all requests to FOIA Public Access Link (PAL)." *Available at* Freedom of Information Act | FOIA | CDC. *Also see,* attached Exhibits 2 and 3. In clicking that link, the FOIA submitter is then directed to a webpage that states "Welcome to the Health and Human Services - Online FOIA Public Access Link." *Available at* HHS FOIA Submission Site-Home. *See,* attached Exhibit 4.

### PROCESSING OF FOIA REQUESTS AND PLAINTIFF PLACE IN QUEUE

21. I am aware that Plaintiff argued at the Hearing and in its filing that there is no indication that any of its FOIA requests are being processed at all. *See, e.g.,* Plaintiff's Reply, pages 13 and 14.

22. While it is correct that as of the May 1, 2025 filing, OS-FOIA was indeed

7

working through technical complexities pertaining to access, along with partners at CDC, these issues were resolved as of May 6, 2025. As already stated above in Paragraph 16, OS-FOIA has access to the former CDC-FOIA database, its tracking system, and former CDC-FOIA email addresses, and is currently synthesizing the existing former CDC-FOIA workload with the balance of OS-FOIA work to ensure prompt customer service, consistent with the FOIA and HHS regulations. In fact, OS-FOIA is executing actions consistent with the FOIA regarding pending and new FOIA requests, inclusive of all steps necessary for tracking and management of individual requests, and the general requirement that FOIA requests be processed on a first-in, first-out basis.

23. For example, and as already stated above in Paragraph 8, since April 1, 2025, OS-FOIA has taken the steps necessary to process ninety-one (91) FOIA requests, meaning it has executed all of the routine steps in the workflow necessary to issuing final disposition letters in those cases.

24. Additionally, since April 1, 2025, when the FOIA reorganization started, OS-FOIA has issued seventeen (17) litigation productions, encompassing 8,264 pages reviewed and 4,406 released during this timeframe.

25. As far as Plaintiff's requests are concerned, the five (5) FOIA requests in question in which Plaintiff sought expedited processing all received responses to the requests for expedited processing by May 1, 2025.

26. Contentions that Plaintiff's FOIA requests were either summarily denied via electronic mail auto-reply on April 1, 2025, or alternatively, that its FOIA requests are not being acted upon, are inaccurate as detailed above. Further, the subject matter of the request in which expedited processing was sought and granted to Plaintiff here is irrelevant other than to the

extent the contents of the request itself met the criteria for expedited processing under the FOIA and agency regulations. The FOIA requires agencies to process expedited requests on a first-in, first-out basis in the agency's expedited queue, and currently, Plaintiff's expedited request stands as the 70th of 70 requests in that queue.

### TRAINING

27. I am further aware that Plaintiff claims that OS-FOIA lacks specialized training. *See* Plaintiff's Reply, page 7. As an example, Plaintiff asserted that "the OS-FOIA office focused narrowly on secretary-level records, which don't involve the same kind of scientific -- at least know-how and training. The training has to be done." Transcripts, page 64, lines 22-24.

28. Here again, Plaintiff is mistaken on the expertise of the OS-FOIA Office and in its ability to handle the FOIA work of other FOIA entities in the Department.

29. As necessary background, the Secretary of HHS oversees all Operating Divisions of the Department and has plenary authority to ensure the Department's budget is spent effectively and its programs are executed efficiently. Pursuant to Executive Order 13392 and the FOIA, the Assistant Secretary for ASPA (defined above in Paragraph 1) has been designated as the Agency Chief FOIA Officer for the Department with the responsibilities set forth in 5 U.S.C. § 552(j), and the Secretary delegated authority to implement and administer the FOIA across the Department to ASPA. On behalf of the Secretary of HHS, the OS FOIA program executes this oversight work in addition to the day-to-day transactional work of processing FOIA requests on behalf of the entities listed above, along with processing FOIA appeals for nearly the entire Department (save for the Centers for Medicare and Medicaid Services (CMS) and until September 2020, the Food and Drug Administration (FDA)).

30. The foregoing means that even prior to the April 1, 2025 reorganization, OS-

FOIA reviewed and approved FOIA appeals of Operating Division FOIA offices, save for the exceptions noted above in Paragraph 29, including, but not limited, to appeals that OS-FOIA received regarding the initial determinations of FOIA requests that had been made by the former CDC-FOIA office.  Appeals require reviewing the initial FOIA request, the administrative record of the processing of the initial request, including review of any rationale or reasoning for the initial  response.  This means that the HHS FOIA appellate authority (which is OS-FOIA) must understand the specific subject matter covering a vast array of topics to evaluate whether the office that issued the initial determination applied FOIA exemptions to the records at issue in a given case correctly, and must understand the Operating Division's structure and programs in enough detail to dispose of procedural issues, such as determining whether an Operating Division conducted an adequate search for responsive records.  The staff of OS-FOIA has been able execute such duties for years prior to the April 1, 2025 reorganization.

    31.  The FOIA appeals which OS-FOIA oversees for the Department often involve complex legal and policy questions, such as whether exemptions were properly invoked for the records at issue, whether the issuing FOIA office met its burden in establishing foreseeable harm if exemptions were claimed, along with procedural issues.  The appellate authority must have the expertise to interpret and apply the same statute and regulations to the records as the office that made the initial determination, to ensure consistency and compliance under FOIA.  With inadequate training in the subject matter, in handling the appeal, the centralized office (OS-FOIA) risks misinterpreting records, overturning valid decisions, or upholding incorrect ones, which could lead to legal challenges or loss of trust.  If OS-FOIA staff lacked such expertise, it would not have been able to handle the appeals of the various Departmental FOIA offices, including of the former CDC-FOIA office, for years before the April 1, 2025, reorganization.

32.     Additionally, while a requester may submit a FOIA request to a particular HHS FOIA Office like the former CDC-FOIA office, it often happens that the fulfillment of the request will involve other FOIA offices within the Department (often OS-FOIA), either to search for or review records.  This could be the case for any topic that involves the Department.

33.     To be more specific, a request could be submitted to the former CDC-FOIA office for public health guidance development - for example, records pertaining to guidance on masking in the respiratory virus context - but the same request could be submitted to OS-FOIA for policy records pertaining to the identical topic.  In another example, a request could be submitted to the former CDC-FOIA office for vaccine related records, or adverse event reports for COVID-19 vaccines, but the same request could be submitted to the FDA.  A third example could involve submitting a request to the former CDC-FOIA office for disease surveillance data but the same request could be submitted to the National Institutes of Health (NIH).  In a final example, a request could be submitted to the former CDC-FOIA office for records pertaining to grants for substance abuse prevention, but the same request could be submitted to CMS for funding substance abuse treatment programs.  In fact, it is not uncommon for FOIA requesters to submit their FOIA request to several entities within the Department, and even when they do not do it, for the former CDC-FOIA office to refer requests to other HHS entities.

34.     Stated differently, the CDC is not the sole Department entity to deal with requests for data related to disease outbreaks such as measles, COVID-19, influenza, foodborne illnesses, case counts, public health response records, epidemiological reports, school guidance, and so forth.  Records related to research and scientific records also involve other entities or individuals across the Department, for example, research projects relevant to public health, research integrity documents, or even clinical trials.  Likewise, while a requester may submit a

request to the former CDC-FOIA office, policy and decision-making documents, records of internal deliberations, including emails, memos or meeting minutes, especially those involving controversial decisions or external influences can involve other parts of the Department, and land at OS-FOIA. Records involving investigations of CDC's responses to public health crises, or media or public meeting, or food and waterborne illness, or personal privacy and medical records may also involve other FOIA offices, including OS-FOIA.

35. Taking the factors discussed above in Paragraphs 29 to 34, given its high level of expertise especially as required to handle FOIA appeals, the OS-FOIA program currently fields FOIA requests on behalf of all Staff Divisions within the Office of the Secretary, along with Operating Divisions that include ACF (defined above in Paragraph 7), Administration for Strategic Preparedness and Response (ASPR), Agency for Healthcare Research and Quality (AHRQ), Agency for Toxic Substances and Disease Registry (ATSDR), and the CDC.

36. In sum, even prior to the reorganization, the OS FOIA program already oversaw departmental initiatives to ensure efficient and appropriate FOIA compliance and as detailed in the 2025 HHS Chief FOIA Officer Report, and in other artifacts, its staff is well-trained and prepared to respond to FOIA requests on behalf of HHS, regardless of subject matter of the records. *See*, 2025 Chief FOIA Officer Report HHS | HHS.gov. Due to its mission and extensive experience issuing determinations on appeals, the FOIA staff best equipped to handle FOIA reviews for the Department is the OS-FOIA staff.

37. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Executed this 19th day of May 2025.


_____
WILLIAM H. HOLZERLAND

Case 1:25-cv-01020-TJK   Document 25-1   Filed 05/19/25   Page 13 of 13