IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION,** *et al.*,<br><br>Defendants. | Civil Action No. 25-01020 (TJK) |

**PLAINTIFF'S RESPONSE TO THE SUPPLEMENTAL DECLARATION OF
WILLIAM HOLZERLAND**

## INTRODUCTION

Pursuant to the Court's direction at the preliminary injunction hearing held on May 13, 2025, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submits this response to the Supplemental Declaration of William Holzerland ("Supp. Decl."), ECF No. 25-1.

The supplemental declaration is Defendants' fourth failure to explain how they can comply with their basic Freedom of Information Act ("FOIA") obligations at the U.S. Centers for Disease Control and Prevention ("CDC") without the agency's FOIA office. Defendants first failed to provide any explanation when they abruptly shuttered the office on April 1, 2025. *See* Mem. in Supp. of Pl's Mot. for Prelim. Inj. & Partial Summ. J. ("Pl.'s Mem.") 6-7, 25-26, ECF No. 13-1. A month later, Defendants' response to CREW's preliminary injunction motion failed to rebut CREW's evidence, and in fact admitted, that the central Department of Health and Human Services ("HHS") FOIA office ("OS FOIA") they assigned to handle CDC FOIA work lacks the capacity, resources, specialized training, or basic technological access necessary to do that work and comply with FOIA at CDC. *See* Reply Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. ("Pl.'s Reply") 12-16, ECF No. 20. At the May 13 hearing on CREW's motion, Defendants' counsel failed to adequately address these significant issues. Now, Defendants' supplemental declaration fails in its attempt to paper over them.

The supplemental declaration purports to provide additional information on four subjects: (I) the closure of the CDC FOIA office and reorganization of HHS FOIA operations; (II) Defendants' information technology to conduct FOIA work; (III) OS FOIA's processing of FOIA requests; and (IV) OS FOIA's training to process requests. *See* Supp. Decl. ¶ 3. But none of its representations satisfy the Court's specific request for "additional" "facts" showing Defendants are processing CDC FOIA requests and have "solid plans" to comply with FOIA. May 13, 2025

1

H'rg Tr. ("Tr.") 48:12-18, 67:9. Instead, the declaration confirms that Defendants are engaged in a "shell game" with no clear ability or intention to properly handle the important work of the CDC FOIA office in the near term. Tr. 48:13-16. Close consideration of each of the declaration's four sections drives home this conclusion and shows that, under present circumstances and due entirely to Defendants' unreasoned and sudden decision-making, Defendants cannot comply with FOIA at CDC while rendering CDC's FOIA office inoperative.

## FACTUAL ANALYSIS

### I.   Closure of the CDC FOIA Office and Reorganization of HHS FOIA Operations

Defendants' supplemental declaration begins with an irrelevant semantic dispute, claiming that the elimination of the CDC FOIA office was not in fact "a shut down." Supp. Decl. ¶¶ 5-6. But it readily indicates that FOIA compliance at CDC unexpectedly ceased on April 1, and that Defendants are now unsuccessfully scrambling to comply with the statute.

The declaration does not dispute that Defendants placed *everyone* in the CDC FOIA office on administrative leave on April 1, thereby eliminating the office and removing all two-dozen employees with direct "expertise" on CDC's specific records systems and scientific and technical work. Supp. Decl. ¶¶ 6-7 (describing the office as the "former" office); *see also id.* ¶¶ 17-18 (explaining that Defendants are now directing requesters to the OS-FOIA webpage and have disabled the CDC FOIA submission weblink); Decl. of Kevin Griffis ("Griffis Decl.") ¶¶ 13-14, 19-20, ECF No. 13-17; Decl. of Person Doe ("Doe Decl.") ¶ 10, ECF No. 13-16.[1] And they do not

---

[1] In two footnotes, the declaration cites Executive Order 14210 and 45 C.F.R. § 5.3 to justify the closure of the CDC FOIA office. *See* Supp. Decl. ¶ 6 nn.1-2. Neither provides Defendants with any support or absolves them from meeting their legal obligations under FOIA. *See* Pl.'s Mem. 31; Pl.'s Reply 12-13, 19, 21. Defendants err in newly arguing that 45 C.F.R. § 5.3 (1) does not "govern personnel matters," and (2) does not limit the OS FOIA office's discretion to process FOIA requests. The first argument contradicts Defendants' earlier argument that 45 C.F.R. § 5.3 justified eliminating the personnel and function of the FOIA office at CDC, an "agency" subject to FOIA. *See* 5 U.S.C. §§ 551-52 (broadly defining an agency as "each authority of the

2

dispute that they acted on April 1 without any advanced notice or planning, and that their efforts to "reorganize[e]" FOIA operations and centralize the CDC FOIA function are therefore *still* ongoing more than a month-and-a-half later. Supp. Decl. ¶¶ 6, 12 (explaining reorganization and centralization is "being implemented" and "aims at consolidating . . . functions"). They further express no intent to hire back or otherwise restore the employment status of any of these "former" CDC FOIA employees, *id.* ¶ 14, despite taking such action for other HHS FOIA components, *see* Pl.'s Reply 24.

Moreover, the supplemental declaration misses the mark in claiming that there has been no CDC FOIA shutdown because Defendants are not acting "with the intent of disrupting or preventing FOIA services," and are instead "continuing to meet [their] FOIA obligations through completion of work on new and existing FOIA requests." Supp. Decl. ¶¶ 6-7. Defendants' intent to "moderniz[e]" and "streamline operations," even if well-meaning in theory,[2] is irrelevant to whether they are in reality processing CDC FOIA requests and conducting other necessary CDC FOIA work without the agency's FOIA office. *Id.* ¶ 6 & n.3. As detailed below in Section III,

---

Government of the United States, whether or not it is within or subject to review by another agency"). What is more, 45 C.F.R. § 5.3 in fact mandates that CDC maintain separate FOIA personnel and functions as part of an intentionally decentralized HHS FOIA system. Defendants' second argument flies in the face of the regulation's plain text, which permits OS FOIA to process CDC FOIA requests *in certain circumstances*, not all circumstances. Defendants never grapple with this clear language or identify any previous situation where they applied it in such a drastic manner. Their interpretation therefore merits no deference. *See, e.g.*, *Ramsingh v. Transportation Sec. Admin.*, 40 F.4th 625, 632 (D.C. Cir. 2022) (declining to defer to agency interpretation where regulation was not ambiguous).

[2] Secretary Kennedy has recently appeared to backtrack from the HHS FOIA centralization hypothesis, claiming that he intends to bring back certain HHS offices. *See* Forbes Breaking News, *RFK Jr. Promises HHS FOIA Offices Will Be Restored, Details Steps To 'Total Transparency'*, YouTube (Apr. 26, 2025), https://www.youtube.com/watch?v=rjb9Qc18t2I; CNN (May 2, 2025); *see also* Rachana Pradhan, *In Reversal, FDA Rehires Staff Tasked With Releasing Public Records*, CNN (May 2, 2025), https://www.cnn.com/2025/05/02/health/fda-public-records-kff-health-news#:~:text=The%20FDA%20has%20rehired%20at,Services%2C%20which%20oversees%20the%20agency.

3

CREW has adduced even more evidence, including from third-party declarants, that OS FOIA is currently engaged in a broad dereliction of compliance with CDC FOIA's obligations. And Defendants' supplemental declaration itself conspicuously fails to provide *any* concrete information on Defendants' ongoing CDC-specific FOIA work.

Parsing the declaration's representations in paragraphs 7-11, where it discusses Defendants' supposed "goal of processing FOIA requests as quickly as practicable," *id.* ¶ 7 exposes Defendants' failure to provide information on CDC-specific work:

- In paragraph 7, the declaration alleges that, as of May 19—more than a month after the April 1 RIFs—HHS has "synthesized the existing FOIA workloads" of the CDC FOIA office and of the Office for the Administration for Children and Families ("ACF") into the OS FOIA workload. But the declaration does not explain what "synthesization" means or state that OS FOIA is actually processing the "pending and new FOIA requests" directed to CDC or handling CDC "litigation productions."[3] And adding to the confusion, the declaration later backtracks on its claim that OS FOIA has synthesized the CDC FOIA workload by asserting that this effort is "currently" ongoing. *Id.* ¶ 22.

- In paragraph 8, the declaration states that OS FOIA has processed 91 "pre-existing FOIA requests" since April 1, but it never states whether these FOIA requests were pre-existing OS FOIA requests, for which the OS FOIA office always was responsible, or pre-existing CDC FOIA requests. And there are at least two reasons to conclude that all, or nearly all, of these 91 requests processed "on a first-in, first-out basis" between April 1 and May 19 were not CDC FOIA requests—Defendants admit in paragraph 16 that OS FOIA did not even gain basic access to CDC FOIA systems until May 6, and publicly-available quarterly

---

[3] In fact, in several recent joint status reports in other ongoing CDC FOIA cases, Defendants have explained that they are unable to carry out various CDC FOIA obligations because of the April 1 RIFs and closure of the CDC FOIA office. *See, e.g.*, Joint Status Rep. at 1 *Informed Consent Action Network ("ICAN") v. CDC et. al*, No. 24-cv-1000 (D.D.C. May 12, 2025), ECF No. 18 (explaining that Defendants need time to review plaintiff's challenges to redactions because the CDC FOIA office "currently is unstaffed" and OS FOIA "is working to gain access to the [CDC] FOIA office's records"); Joint Status Rep. at 2, *ICAN v. CDC et. al*, No. 24-cv-1673 (D.D.C. Apr. 18, 2025), ECF No. 29 (explaining that Defendants missed an April 2, 2025 deadline to produce a draft declaration and *Vaughn* index because of the April 1 RIFs, and that they could not provide a date certain for this production); Joint Status Rep. at 2, *ICAN v. CDC et. al*, No. 24-cv-1764 (D.D.C. Apr. 7, 2025), ECF No. 15 (similar); Joint Status Rep. at 1, *ICAN v. CDC et. al*, No. 24-cv-1621 (D.D.C. Apr. 18, 2025), ECF No. 27 (similar, regarding inability to send supplemental release); Joint Status Rep. at 2, *ICAN v. CDC et. al*, No. 24-cv-1617 (D.D.C. Apr. 7, 2025), ECF No. 23 (similar, regarding inability to review inquiries regarding productions); *see also* Pl.'s Notice of Supp. Auth. at 1-2, Ex. 1, ECF No. 17-1.

FOIA statistics show that OS FOIA has processed an average of 90 requests for each month in the last three fiscal quarters before the shuttering of CDC FOIA.[4]

- In paragraph 9, the declaration attempts to illustrate how OS FOIA is meeting FOIA obligations by offering an example of a specific FOIA request the office handled after April 1. But that FOIA request was not a CDC-directed request and did not require CDC FOIA work. Nor does the declaration represent that this request was submitted after the April 1 shuttering of the CDC FOIA office. As the declaration lays out, the request sought data "maintained by the Office of the Assistant Secretary for Health"—an HHS Secretary component for which OS FOIA has always processed FOIA requests[5]—and OS FOIA simply "coordinated discussions between the requester and HHS subject matter experts" and ensured the requester received a sample data set.

- In paragraph 10, the declaration states that OS FOIA is in "the final stage" of reviewing over 80,000 pages of records" for "over 500 pending requests," but it never states when these requests were received, and whether they pertain to CDC, as opposed to OS FOIA's pre-existing docket of work before the CDC FOIA shutdown. And since OS FOIA just gained access to CDC systems and is at this point unable to provide a single example of CDC FOIA processing, it is highly unlikely that these processing stats apply to CDC FOIA work.

- In paragraph 11, the declaration asserts that OS FOIA has been making proactive disclosures on the HHS reading room website, including by posting 70 "discrete items" since April 1. But it does not assert that any of these disclosures relate to CDC or fulfill CDC's FOIA obligation to maintain its own proactive disclosure "Web site" and "determining which of its records" belong on it. 45 C.F.R. § 5.2(b) (implementing affirmative disclosure requirement in 5 U.S.C. 552(a)(3)). The only two examples the declaration gives of proactive disclosures are HHS FOIA logs and litigation releases, not CDC FOIA logs or litigation releases.

Supp. Decl. ¶¶ 7-11, 16, 22. In short, the supplemental Holzerland declaration falls short in exactly the same way as his initial declaration; it never provides any clear indication or "sample" of CDC FOIA work taking place in the nearly two months since the April 1 RIFs. *Id.* ¶ 12; *see* Pl.'s Reply 13-14 (already pointing out that Defendants failed to demonstrate CDC FOIA processing).

---

[4] *See* Create a Quarterly Report, FOIA.gov, https://www.foia.gov/quarterly.html (revealing processing rates of 79 requests per month for Q3 2024, 105 requests per month for Q4 2024, and 86 requests per month for Q1 2025).

[5] *See* 45 C.F.R. § 5.3 (definition of Staff Division); *2025 Chief FOIA Officer Report*, HHS (Mar. 10, 2025) ("2025 HHS Chief FOIA Officer Report"), https://www.hhs.gov/foia/statutes-and-resources/officers-reports/2025-introduction/index.html (discussion in Introduction of Office of the Assistant Secretary for Health).

And looking ahead, the declaration's vision of a "unified" FOIA processing system "in the coming months," Supp. Decl. ¶ 12, does not square with the facts: the basic statistics and factors showing that OS FOIA simply does not have the capacity to take on pending and future CDC FOIA work and simultaneously handle its present backlog and future workload, *see* Pl.'s Mem. 9, 26; Pl.'s Reply 13-14. To its unrebutted showing on this front, CREW adds only that the supplemental declaration wholly fails to square OS FOIA's limited resources with the office's burgeoning docket.

The declaration curiously provides no indication of the number of employees currently working at OS FOIA. But available data indicates that this number is small and shrinking. At the end of the last quarter for fiscal year 2024, OS FOIA had only 31 full-time FOIA employees (out of 336 total HHS FOIA employees), Pl.'s Mem. 9, and it has since reported that it has lost staff, *see id.* (relying on 2025 HHS Chief FOIA Officer Report authored by William Holzerland); Decl. of William H. Holzerland ("Holzlerland Decl.") ¶ 49 (alleging OS FOIA has experienced a "loss of staff"), ECF No. 18-1. The declaration does not indicate that Defendants are bringing on any new employees or outside support resources using already appropriated funds, or seeking additional budgetary outlays, to shore up the OS FOIA losses, and Defendants' RIF actions make any such backfilling unlikely.[6]

In its limited and hobbled state, the OS FOIA office must nonetheless do far more work than it previously did, as the supplemental declaration reaffirms. As it reiterates, OS FOIA must now complete "all" the work of the CDC FOIA office's roughly 23-person FOIA staff,[7] "all" the

---

[6] *See* Holzerland Decl. ¶¶ 13-14 (citing as supporting authority Executive Order 14210, an executive order focused on reducing the size of the federal bureaucracy); Supp. Decl. ¶ 6 n.1 (same).

[7] *See* Pl.'s Mem. 6; *see also* HHS, HHS Fiscal Year 2024 Freedom of Information Annual Report (updated Feb. 21, 2025) ("2024 Annual FOIA Report"), https://www.hhs.gov/foia/reports/annual-reports/2024/index.html (Section IX).

work of the ACF FOIA office's 18-person FOIA staff,[8] and centralized workload across HHS. Supp. Decl. ¶¶ 7, 36; *see also* Holzerland Decl. ¶¶ 37, 40-41, 50 (similarly discussing the integration of FOIA workload from CDC, ACF, and "several other FOIA Offices").

There is no evidence in the record or reason to think that OS FOIA is up to the task. It already fares poorly compared to other FOIA offices within HHS. For example, OS FOIA began 2024 with 2,189 pending FOIAs and ended the year with 3,679 pending requests, a 68% increase. 2024 Annual FOIA Report, *supra* note 7, at Section V.A. By contrast, the CDC FOIA office reduced its pending requests by 22% during the same time span, even as it processed 44% more requests. *Id.* (laying out how the CDC FOIA office processed 1,918 requests as compared to OS FOIA's 1,329 requests). OS FOIA also takes by far the longest time among all HHS FOIA offices to adjudicate requests for fee waivers—in 2024 averaging 557.75 days for 8 requests, while CDC averaged 1.62 days for 282 requests. *Id.*, Section VIII.B. And OS FOIA takes the longest time at HHS to adjudicate requests for expedited processing—in 2024 averaging 270 days for 49 requests, while CDC averaged under two days for 174 requests. *Id.*, Section VIII.A. All this despite its larger staff than that of CDC's now-shuttered FOIA office. *Id.*, Section IX. Unsurprisingly, then, OS FOIA has consistently failed to meet its statutory obligations with respect to CREW's recent requests and has admitted that its "current workload is approximately 3000 cases." Supp. Decl. of Alex M. Goldstein ("Goldstein Supp. Decl.") ¶ 6; *see id.* ¶¶ 7-19.

Under these circumstances, the Court should not let Defendants' claimed reorganization "play out" on Defendants' own nebulous terms and timelines. Tr. 4:1-17. As the supplemental declaration makes clear with its vague representations, Defendants have no solid plan in place to

---

[8] *See* 2024 Annual FOIA Report, *supra* note 7, at Section IX (also indicating that the ACF FOIA office has roughly 15 additional full-time-equivalent employees, which presumably also were impacted by the ACF FOIA office closure).

7

perform CDC FOIA work, and their lack of reasoned decisionmaking therefore warrants no deference.

## II.  Information Technology

The supplemental Holzerland declaration offers two sets of allegations regarding Defendants' information technology for FOIA work, but neither provides any assurance that they have and will comply with basic FOIA obligations at CDC.

First, Defendants allege that the automated emails that CREW received on April 1 were "unauthorized communications," and CREW "should [have] know[n]" better than to construe those emails as denials of its FOIA requests. Supp. Decl. ¶¶ 13-15. This argument is irrelevant. It has nothing to do with any factual issue concerning Defendants' existing FOIA operations (*i.e.*, the only subject the Court asked them to address in their supplementation), *see* Tr. 48:12-18, and it is a red herring because it attacks a claim that CREW has not pleaded (*i.e.*, that the April 1 emails denied its FOIA requests outright, entitling it to sue on that basis), *see* Pl.'s Reply 5 n.2. The parties agree that the only "denial" claim that CREW has raised—the denial of expedited processing—is ripe. *See* Tr. 36:14-37:9 (conceding that exhaustion for expedited processing is not at issue).[9]

Second, Defendants admit that OS FOIA has only recently gained access to CDC FOIA systems, and their allegations on what they have done with their newfound access do not indicate the office is performing CDC FOIA work yet. On the former point, Defendants allege that OS FOIA gained control of the CDC FOIA "database," "tracking system," and "email addresses" as

---

[9] In any event, Defendants' argument is specious. Again, they wrongly blame CREW for their own poor planning and decisionmaking. *See* Pl.'s Reply 9-10 (similar). CREW's submission conformed with Defendants' own websites and regulations at the time. *See* Compl. for Inj. & Decl. Relief ¶¶ 22-24; Pl.'s Mem. 16. If Defendants meant to direct FOIA requesters to submit CDC FOIA requests elsewhere, and to avoid the CDC FOIA office needing to advise requesters of its closure and inability to respond, they could have acted with some semblance of advance planning and notice before shuttering the CDC FOIA office. They did not.

of May 6, more than a month after the CDC FOIA Office closure. Supp. Decl. ¶ 16. On the latter score, Defendants allege only that they have now updated the CDC FOIA web resources to route CDC-directed requests to OS FOIA. *Id.* ¶¶ 17-18, 20. For the "approximately 212 new [CDC] FOIA requests" after April 1 that have now been routed to OS FOIA, Defendants do not assert OS FOIA is doing anything specific with them. *Id.* ¶ 19; *see also* Decl. of Person Doe ("May 21 Doe Decl.") ¶¶ 12-13 (observing that CDC FOIA requests "are not being routed to offices within CDC to collect responsive records," and providing an example of a large category of records, from CDC's Division of Healthcare Quality Promotion, for which records requests do not appear to be being routed). All Defendants can vaguely muster is that they and OS FOIA are "taking actions consistent with its statutory obligations," which "[t]ypically . . . involves logging new requests, assigning them individual tracking numbers, . . . tasking [them] out to program offices," and "conduct[ing] searches." Supp. Decl. ¶ 19. Whatever their typical process, they have not alleged any facts establishing it is actually playing out here for CDC requests. The supplemental declaration is noticeably devoid of any details regarding CDC FOIA request logging, tasking, and searching.

### III.   Processing of FOIA Requests

The Holzerland supplemental declaration's allegations on ongoing OS FOIA processing work simply reiterate its earlier ones and thus are more of the same: they do not allege OS FOIA is actually processing CDC FOIA requests. *Compare id.* ¶¶ 21-24 (vaguely alleging that OS FOIA "is currently synthesizing" the CDC FOIA workload, and stating that OS FOIA is processing 91 FOIA requests and issuing 17 litigation productions without specifying that these are CDC requests and productions, as opposed to its own existing work), *with id.* ¶¶ 7-11 (same). They proceed from the fundamental misapprehension that OS FOIA's belated access to CDC systems and work on

9

unspecified FOIA requests and productions—all presumably its own existing workload—demonstrate compliance with CDC FOIA obligations. They do not.

Defendants' allegations concerning CREW's five specific FOIA requests similarly do not inspire confidence. *See id.* ¶¶ 25-26. The declaration alleges only that CREW's granted expedited request is last in the OS FOIA expedited processing queue—70th out of 70 expedited requests. *See id.* ¶ 26. It provides no estimated timeline for expedited processing of this request, despite government counsel's stated intention to obtain one. Tr. 50:7-12. Nor does it provide any details on any work to process CREW's four other pending FOIA requests, including where these fall in OS FOIA's queue. *See* Supp. Decl. ¶¶ 25-26 (stating simply that it is inaccurate that the requests are not being acted upon, without providing any detail other than its past representation that it denied them expedition); *see also* Goldstein Supp. Decl. ¶ 23 n.1 (pointing out how the requests have grown in urgency).

OS FOIA's queue of expedited and ordinary CDC FOIA requests will surely balloon as the office continues to leverage its newfound technical access and "synthesize" the CDC FOIA workload, and as its small and shrinking staff is tasked with vastly more work than its pre-April 1 docket. *See* Pl.'s Mem. 8-11, 26; Pl.'s Reply 13-14; *supra* Section I. Accordingly, the Court should not lend credence to the supplemental declaration's suggestion that everything is business as usual for the OS FOIA office. *See* Supp. Decl. ¶ 22 (alleging that OS FOIA is "executing actions consistent with the FOIA regarding pending and new FOIA requests").

With this state of affairs, Defendants are unable to process the hundreds of currently pending CDC FOIA requests, the hundreds of new requests for CDC records submitted each month, and the additional workload from processing OS FOIA requests and requests to other HHS

10

components.[10] CREW has submitted additional FOIA requests for CDC records, *see* Goldstein Supp. Decl. ¶¶ 20-22, but the supplemental declaration's generic assurances of FOIA compliance provide zero confidence that these additional requests will be processed in compliance with FOIA. The same goes for other requesters. As the declarations accompanying this response establish, several other requesters have, like CREW, been stonewalled by Defendants. *See* Decl. of Julia Szybala ¶¶ 7-24 (detailing how, for five CDC FOIA requests submitted by Democracy Forward Foundation between January 21, 2025 and April 25, 2025, Defendants have gone silent after simply acknowledging the first four, have not responded to the fifth, and have ignored multiple attempts to obtain status updates); Decl. of Andrea Issod ¶¶ 6-12 (detailing April 1, 2025 Sierra Club FOIA request to CDC that has been completely ignored, other than an automated email response informing Sierra Club of the office closure); Decl. of Anisha H. Hindocha ¶¶ 9-25 (detailing American Oversight's six outstanding requests to CDC and how CDC has not provided any correspondence since the CDC FOIA office closure, other than one automated email response on April 1, 2025); Supp. Decl. of Darya Minovi ¶¶ 3-10 (detailing Union for Concerned Scientists' multiple unsuccessful attempts to obtain status updates on a March 11, 2025 FOIA request after receiving an estimated completion time of May 6, 2025).

Defendants' ability to offer only vague handwaving at some unspecified OS FOIA processing, *see* Supp. Decl. ¶¶ 21-24, suggests that CDC FOIA requesters, like CREW, are in store for more stonewalling. And given OS FOIA's already-significant backlog and increased responsibilities, only those requesters with the resources to litigate are likely to receive records in

---

[10] The quarterly FOIA data for CDC, available at https://www.foia.gov/quarterly.html, *see supra* note 4, indicates that the components each generally receive hundreds of requests each fiscal quarter. The data indicates that, during Q1 2025, CDC received 539 FOIA requests, processed 482 of them, and had 132 requests in its backlog. *See also* 2024 Annual FOIA Report, *supra* note 7, at Sections V.A, V.B.(1), XII.A., and XII.D.(2) (laying out processing and backlog figures for 2024 fiscal year).

11

a timely manner. Defendants' actions undermine the purpose of FOIA: to ensure government transparency to all Americans, regardless of wealth or status.

## IV.     Training

Finally, the Holzerland supplemental declaration offers two related reasons why OS FOIA believes it has the know-how to completely take over the entire CDC FOIA function, but neither reason withstands scrutiny.

The supplemental declaration begins by claiming that OS FOIA's work to successfully process FOIA appeals of CDC FOIA determinations prior to the April 1 RIFs equips OS FOIA with the "expertise" necessary to "handle" all CDC "FOIA work" going forward. *Id.* ¶¶ 28-31. Setting aside the fact that OS FOIA is wrong that it has successfully executed its appellate duties in recent years—as the HHS annual FOIA reports establish, the OS FOIA appellate backlog is substantial and growing[11]—the declaration itself belies the claim that OS FOIA appellate work has any bearing here. As the supplemental declaration alleges, "[a]ppeals require *reviewing . . . the administrative record of the processing* of the initial request, including review of any rationale or reasoning for the initial response." Supp. Decl. ¶ 30 (emphasis added). In other words, the OS FOIA appellate review process admittedly relies on the critical work of the CDC FOIA office (and other HHS FOIA offices) to identify the specific agency programs, structures, scientific and technical activities, and officials implicated by particular FOIA requests; locate and search relevant agency record systems and obtain responsive records; and make agency-specific withholding determinations. *See also* 2025 HHS Chief FOIA Officer Report, *supra* note 5, at Section V.C

---

[11] *See* 2024 Annual FOIA Report, *supra* note 7, at Sections XII.A, XII.E.(2); 2025 HHS Chief FOIA Officer Report, *supra* note 5, at Section II.A; *see also* Pl.'s Mem. 9 (discussing OS FOIA backlog).

(William Holzerland's explanation that OS FOIA "relies on" the FOIA offices of CDC and other HHS components for their "input" and their "administrative records").

The declaration never explains how OS FOIA's appellate duties in simply reviewing the end result of all this CDC processing work—which is the product of the now-shuttered CDC FOIA office's on-the-ground know-how, training, and experience—arm OS FOIA with the expertise necessary to carry out this work in the first instance. It also never explains how OS FOIA can do this work without any aid from the CDC FOIA office staff, all of whom have been relieved of their duties. Nor could the declaration plausibly make these logical leaps, either as a matter of theory or practical reality. Common sense indicates that appellate authority generally is distinct from, and critically depends on, the initial adjudicatory analysis of the subordinate tribunal. And OS FOIA can hardly claim that its past appellate duties have practically enabled it to get rid of that substantial legwork and handle CDC FOIA processing by itself when, on its own telling, it did not even obtain "access" to CDC FOIA systems until two weeks ago and had to overcome "technical complexities" to achieve this basic feat. Supp. Decl. ¶ 22.

Additional facts undercut the claim that OS FOIA's appellate experience "best equip[s]" it to handle CDC FOIA work or other components' FOIA work. *Id.* ¶ 36. For one, the 2025 HHS Chief FOIA Officer Report authored by Defendants' declarant William Holzerland emphasizes that the now-shuttered CDC FOIA office, the OS FOIA office, and other HHS FOIA offices have their own different and diverse training programs and activities to ensure fair and effective FOIA administration within their components. *See* 2025 HHS Chief FOIA Officer Report, *supra* note 5, at Section II.A. The Holzerland supplemental declaration blithely ignores this fundamental point. It claims that OS FOIA's "training" to carry out its "appellate authority" and "interpret" and "apply" statutes and regulations is sufficient, without acknowledging that this training is separate

13

from the specialized training that the CDC FOIA office has undertaken to carry out CDC-specific searching and other processing work. Supp. Decl. ¶ 31.

Moreover, the accompanying Doe declaration from a CDC employee reinforces that OS FOIA appellate determinations on CDC FOIAs critically depend on, and involve considerable deference to, the substantial underlying work that the CDC FOIA office performs and the expertise the office brings to bear. *See* May 21 Doe Decl. ¶¶ 5-10 (explaining that OS FOIA does not have CDC-specific subject-matter or component-level expertise, but rather relies on CDC FOIA's expertise, including by relying on CDC FOIA memoranda, reports, and administrative records in order to handle CDC FOIA appeals).[12] Absent that underlying work and expertise, it is unclear how OS FOIA can claim that it will handle CDC FOIA work on its own.

Perhaps realizing this key weakness, the Holzerland supplemental declaration pivots to the tenuous claim that the OS FOIA office can and does actually handle CDC FOIA requests because FOIA requests to CDC and other HHS components often "involve" other components, including OS FOIA. Supp. Decl. ¶ 32; *see id.* ¶¶ 33-35. This claim rests on a strained chain of logic that is both hypothetical and contrary to rational FOIA practice.

The chain of logic begins with the allegation that a theoretical requester "could" submit a request for various "public health" topics—including "masking in the respiratory virus context," COVID-19-vaccine information, "disease surveillance data," and outbreak data for diseases such as measles and foodborne illnesses—not just to CDC, but also to other HHS components depending on the topic. *Id.* ¶¶ 33-34. But other HHS components cannot and would not be searching for CDC records. It therefore makes no sense for Defendants to claim that an adequate

---

[12] Actual OS FOIA appeal determinations on CDC FOIAs reinforce this point. They often discuss the work of the CDC FOIA office at length and provide a very short analysis and determination based on review of the administrative record generated by the CDC FOIA office. *See, e.g.*, May 21 Doe Decl., Ex. A.

14

search of CDC records can be possibly obtained elsewhere. *See also* 45 C.F.R. § 5.25 (laying out how HHS FOIA offices should direct FOIA requests to the proper office, and how "the entity that originated" a particular record "is presumed to be the best entity to make the disclosure determination" regarding it); *id.* § 5.23(a) (directing requesters to submit requests for research data to the HHS component "that made the award under which the data were first produced"). Moreover, the theoretical possibility that a requester could seek certain public health records from multiple HHS components ignores the reality that the most direct and efficient place for someone to obtain these records is from CDC—which is the nation's leading public health agency and which, prior to April 1, touted its standardized FOIA process to annually handle thousands of requests on public health issues, like measles and foodborne illnesses, that it is responsible for controlling and preventing. *See* Pl.'s Mem. 10; *see also* Griffis Decl. ¶¶ 8-9; Doe Decl. ¶ 3; May 21 Doe Decl. ¶ 11.

Defendants' chain of logic ends with an equally dubious allegation—that because the CDC FOIA office is theoretically not the only place where a FOIA request that seeks CDC records can be submitted, OS FOIA can and does "field[]" such FOIA requests. Supp. Decl. ¶ 35; *see id.* ¶ 32 (stating that the search and review of FOIA records to fulfill FOIA requests for components like CDC FOIA "involve[s]" other components like OS FOIA). The declaration is devoid of any example where the OS FOIA office itself has actually processed a CDC FOIA request or has done so without any input from or work by staff in the now-shuttered CDC FOIA office. And obviously so, since OS FOIA could not even access CDC systems until weeks ago.

Because Defendants' initial decision to shut down FOIA compliance at CDC was unreasoned and unreasonable, they have no choice but to resort to such strained post-hoc reasoning. But their supplemental declaration cannot, and does not, paper over the reality that HHS

15

has no clear ability or intention to properly handle the important work of the CDC FOIA office without its trained staff.

## CONCLUSION

For the foregoing reasons, the Court should conclude that the supplemental Holzerland declaration does not provide any additional information demonstrating Defendants' compliance with their basic CDC FOIA obligations. And for the reasons stated in CREW's preliminary injunction briefing and oral argument at the May 13, 2025 hearing, the Court should grant CREW's preliminary injunction motion and order Defendants to grant expedited processing of CREW's FOIA requests, declare Defendants' closure of the CDC FOIA office unlawful, and preliminarily and permanently enjoin Defendants from engaging in unlawful actions that render CDC's FOIA office inoperative.

Respectfully Submitted,

*/s/ Kayvan Farchadi*

Kayvan Farchadi (D.C. Bar No. 1672753)
Yoseph T. Desta (D.C. Bar No. 90002042)
Alex Goldstein (D.C. Bar No. 90005086)
Chun Hin Tsoi (D.C. Bar No. 90017713)
Kalyn Mizelle McDaniel (D.C. Bar No. 90027120)
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics in Washington
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
kfarchadi@citizensforethics.org
ydesta@citizensforethics.org
agoldstein@citizensforethics.org
jtsoi@citizensforethics.org
kmizellemcdaniel@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*