**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**, | |
| Plaintiff, | |
| v. | Civil Action No. 25-01020 (TJK) |
| **U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION**, | |
| **SUSAN MONAREZ**, in her official capacity as Acting Director of the U.S. Centers for Disease Control and Prevention, | |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**, | |
| **ROBERT F. KENNEDY JR.,** in his official capacity as Secretary of the U.S. Department of Health and Human Services, | |
| Defendants. | |

**FIRST AMENDED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      On April 1, 2025, the Freedom of Information Act ("FOIA") office of the U.S. Centers for Disease Control and Prevention ("CDC") was abruptly eliminated. All CDC FOIA staff were cut, and the agency's FOIA work came to a grinding halt. That same day, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted five expedited FOIA requests to CDC seeking records regarding the agency's reported staff reductions and other matters of significant public interest. In response, CREW received messages confirming that the CDC's FOIA staff had been placed on administrative leave and could not respond to CREW's requests. Now, the CDC FOIA office's important work is being transferred to an already

overburdened and understaffed central office at the Department of Health and Human Services ("HHS") that lacks the resources, specialized training, institutional knowledge, and capabilities necessary to carry out the work. As a result, the pending and future FOIA requests of CREW and all other CDC FOIA requesters will languish absent judicial intervention.

2.      Defendants' actions are unlawful. As a judge in this District recently explained, "FOIA's demand for expedition—and, indeed, more generally, FOIA's requirement that agencies release all non-exempt, responsive records—would be rendered meaningless if an agency could avoid these statutory obligations through the simple expedient of dismissing its FOIA staff." *Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*, No. 24-cv-03505-RDM, 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025) (expressing skepticism "that an agency can avoid its obligations under FOIA—including the obligation to process a request in an efficient and prompt manner—by simply implementing a reduction-in-force that 'either terminate[s] or place[s] on administrative leave'" its FOIA staff (alteration omitted)). Yet that is precisely what Defendants have sought to do by abruptly closing the CDC FOIA office, without advanced notice, planning or explanation.

3.      Transparency from our nation's public health agencies is especially critical now, given ongoing outbreaks across the country of measles and other serious diseases and illnesses, as well as serious questions about the Trump administration's preparedness to handle public health crises. Defendants' closure of the CDC FOIA office threatens to leave the American public in the dark on those vital questions of national importance.

4.      Accordingly, CREW brings this action for declaratory and injunctive relief under FOIA, 5 U.S.C. § 552, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and respectfully requests that the Court issue an order (1) requiring Defendants to

immediately process and release the records CREW has requested; (2) requiring Defendants to assign sufficient personnel and resources to immediately comply with the requirements of FOIA and timely process FOIA requests directed to CDC; and (3) enjoining Defendants from continuing to engage in unlawful actions that render the CDC FOIA office inoperative, as well as declaring that Defendants' closure of the office is unlawful and setting aside the closure.

## JURISDICTION AND VENUE

5.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, 5 U.S.C. § 552, *et seq.*, and the APA, 5 U.S.C. § 701, *et seq*. This Court may grant declaratory relief, injunctive relief, and other appropriate relief pursuant to 28 U.S.C. §§ 2201-02 and 5 U.S.C. §§ 552(a)(4), 705-06.

6.    Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). CREW is located in Washington, D.C., at least one of the Defendants also resides in Washington, D.C., and a substantial part of the events or omissions giving rise to the claims occurred in Washington, D.C.

## PARTIES

7.    Plaintiff CREW is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FOIA, the Federal Advisory Committee Act, and other federal laws, and it widely disseminates those records to the public. CREW has previously submitted several FOIA requests to CDC and HHS

on a range of issues, has pending requests with the agencies, and will submit more requests to the agencies in the future.

8.     Defendant CDC is an agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 701(b)(1). CDC has possession, custody, and control of records responsive to CREW's FOIA requests.

9.     Defendant Susan Monarez is the Acting Director of CDC and is sued in her official capacity only.[1]

10.     Defendant HHS is an executive branch department and is an agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 701(b)(1).

11.     Defendant Robert F. Kennedy Jr. is the Secretary of HHS and is sued in his official capacity only.

## LEGAL FRAMEWORK

### *The Freedom of Information Act*

12.     FOIA, 5 U.S.C. § 552, requires federal agencies to release requested records to the public unless one or more specific statutory exemptions apply.

13.     An agency must respond to a party making a FOIA request within 20 business days and, in so doing, must notify the party of at least the agency's "determination" of which requested records it will release, which it will withhold and why, and the requester's right to

---

[1] As of this filing, the CDC leadership website (https://www.cdc.gov/about/leadership/index.html) does not list Susan Monarez, or for that matter anyone, as the current Acting Director. Susan Monarez served as Acting Director until her nomination to be Director; her nomination is still pending, and the Acting Director position may now be vacant. *See* Helen Branswell, *Does the CDC have an acting director?*, Stat News (May 16, 2025), https://www.statnews.com/2025/05/16/does-the-cdc-have-an-acting-director-yes-says-rfkjr/. To the extent that, as some reporting suggests, Matthew Buzzelli is operating as the Acting Director, he would be automatically substituted as a defendant under Federal Rule of Civil Procedure 25(d), and the same goes for any other successor.

appeal the determination to the agency head. *Id.* § 552(a)(6)(A)(i); *see, e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (explaining that, in order to make a "determination" under FOIA, an "agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse").

14.　　"In unusual circumstances," the 20-business-day time limit "may be extended" by 10 business days if the agency provides "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). "[U]nusual circumstances means," among other things, "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request." *Id.* § 552(a)(6)(B)(ii).

15.　　An agency must make "reasonable efforts to search for" requested records and must make responsive, non-exempt records "promptly available" to the requester. *Id.* § 552(a)(6)(C)(i).

16.　　An agency's failure to make a determination on a FOIA request within 20 business days (or 30 business days, should the agency properly invoke 5 U.S.C. § 552(a)(6)(B)(i)) is subject to immediate judicial review; under these circumstances, the requester "shall be deemed to have exhausted his administrative remedies." *Id.* § 552(a)(6)(C)(i); *see CREW*, 711 F.3d at 184, 189.

17.　　A requester who establishes "a compelling need" for requested records "or falls within 'other cases determined by the agency' is entitled to expedited processing of his request."

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 92 (D.D.C. 2020) (quoting 5 U.S.C. § 552(a)(6)(E)(i)). Once expedited processing of a FOIA request is granted, agencies must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). The presumptive deadline for processing expedited requests is the same as the time limit applicable to standard FOIA requests—20 business days. *See, e.g.*, *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006). Requesters may sue and seek judicial supervision over an agency's dilatory expedited processing efforts. *See, e.g.*, *id.* at 34-35 (suit challenging withholding of records after agency granted expedited processing but did not proceed expeditiously); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 18 F.4th 712, 715 (D.C. Cir. 2021) (same); *Ctr. for the Study of Servs. v. HHS*, 130 F. Supp. 3d 1, 6 (D.D.C. 2015) (same).[2]

18.    FOIA imposes other obligations on agencies beyond the processing and production of records. For example, FOIA requires agencies to maintain a reading room, where they must "make available for public inspection in an electronic format" various records, including "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," "administrative staff manuals and instructions to staff that affect a member of the public," and copies of released records likely to be subject to repeat requests. 5 U.S.C. §§ 552(a)(2)(B)-(D). FOIA also requires agencies to "establish a system to assign an individualized tracking number for each request received that will take longer than ten days to process and provide to each person making a request the tracking number assigned to the request." *Id.* § 552(a)(7)(A). And it requires agencies to "establish a telephone

---

[2] FOIA requesters who do not receive a determination on a request for expedited processing within 10 calendar days, or who receive a decision denying or affirming the denial of a request for expedited processing, also may seek immediate judicial review. *See, e.g.*, 5 U.S.C. § 552(a)(6)(E)(iii); *CREW v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 358-59 (D.D.C. 2020).

line or Internet service that provides information about the status of a request to the person making the request using the assigned tracking number." *Id.* § 552(a)(7)(B).

19.    FOIA authorizes, and in several instances requires, agencies to promulgate regulations on the processes and procedures governing various aspects of their FOIA operations. *See, e.g.*, *id.* § 552(a)(3)(A)(ii) (discussing how FOIA requests must be "in accordance with" agencies' "published rules stating the time, place, fees (if any), and procedures to be followed"); *id.* § 552(a)(6)(B)(iv) (stating that agencies "may" promulgate regulations for the aggregation of certain requests); *id.* § 552(a)(6)(E)(i) (requiring the promulgation of regulations for the expedited processing of FOIA requests). These regulations are binding on the agencies, *see, e.g.*, *Goldstein v. Internal Revenue Serv.*, 174 F. Supp. 3d 38, 52 (D.D.C. 2016) (remanding to the agency because it failed to follow its FOIA regulations), just as they are binding on requesters, *see, e.g.*, *Gov't Accountability Project v. U.S. Dep't of Just.*, 852 F. Supp. 2d 14, 21 (D.D.C. 2012).

20.    "CDC is bound to the same [FOIA] regulation[s] as HHS"; those regulations, which were promulgated by HHS, are set forth at 45 C.F.R. Part 5. *Wright v. HHS*, No. 22-cv-1378, 2022 WL 18024624, at *3 n.4 (D.D.C. Dec. 30, 2022) (discussing 45 C.F.R. Part 5); *see* 45 C.F.R. § 5.4.

21.    The HHS regulations establish that each HHS "Operating Division," including CDC and the other HHS component agencies, has its own "respective" FOIA "officials," "operations," and "programs." 45 C.F.R. § 5.3 (also explaining that each Operating Division has officers who "serve as the principal resource and authority for FOIA operations and implementation within their respective" divisions, and who have the "full authority" to task agency components to search for records and to provide records located in their offices).

22.     The regulations further establish that separate "FOIA Requester Service Centers (FOIA offices) . . . process" FOIA requests for each of the different HHS divisions. *Id.* § 5.23; *see also id.* § 5.2(b) ("Each [division] has a FOIA Requester Service Center or FOIA Public Liaison who can assist individuals in locating records."). The regulations direct requesters to send FOIA requests "to the appropriate FOIA Requester Service Center that you believe would have the records you seek," and they explain that requests are officially received when they "reach[] the FOIA Requester Service Center with responsibility for the [division] where requested records are likely to be located, but no later than 10 working days after the request first arrives at any" service center. *Id.* § 5.23. The regulations provide an HHS webpage with an "up-to-date listing" of the contact information for the different HHS component FOIA Requester Service Centers, maintained at http://www.hhs.gov/foia/contacts/index.html. *Id.* Up until at least April 21, 2025, when CREW filed its preliminary injunction motion in this case, the webpage listed for CDC the CDC FOIA office's contact information, including its address and contact email, the phone number and name of its FOIA Officer, and the name, phone number, and email of its FOIA Public Liaison.[3]

23.     And finally, the regulations provide that CDC and "each" other HHS division is "responsible for" separately maintaining its own reading-room website, "determining which of its records must be made publicly available" on it, and "ensur[ing] that its [website] . . . is reviewed and updated on an ongoing basis." 45 C.F.R. § 5.2(b). Moreover, FOIA requests for "research data made available under the provisions of 45 CFR 75.322(e)" must be addressed to the specific division "that made the award under which the data were first produced," and that division must process the request. *Id.* § 5.23(a).

---

[3] *See* Decl. of Alex M. Goldstein ¶ 20, ECF No. 13-3 [hereinafter Goldstein Decl.].

24.     Accordingly, the regulations establish that HHS "FOIA operations are decentralized." *Id.* § 5.3. As HHS recently explained in its 2025 Chief FOIA Officer Report, HHS's 11 Operating Divisions, including CDC, and its Office of the Secretary ("OS"), are intentionally set up to have separate FOIA offices, "all of which receive and respond to FOIA requests" for their components and all of which administer the HHS FOIA program "on a decentralized basis."[4] As the report details across its different sections, the HHS FOIA offices have their own distinct FOIA operations, including independent webpages providing instructions to new and existing requesters; case management systems and processes; technological capabilities; training procedures for personnel; outreach processes to provide guidance to requesters with complex or voluminous requests; use of contractors and other initiatives to handle FOIA workload needs; backlogs of FOIA requests and appeals; and processes to identify and post records to their respective agency reading rooms.

25.     The OS FOIA office was set up as the central HHS FOIA office, to process initial FOIA requests for records in the custody of the Secretary's staff divisions. *See* 45 C.F.R. § 5.3; *2025 Chief FOIA Officer Report HHS*, *supra* note 4, at Introduction. "In certain circumstances and at the [OS] FOIA Office's discretion, the . . . office may also process FOIA requests involving other" HHS divisions. 45 C.F.R. § 5.3.

26.     A plaintiff may, "separate from claims seeking relief for specific FOIA requests, . . . assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)). A plaintiff can make such a claim by establishing "that the agency has adopted, endorsed, or implemented

---

[4] *2025 Chief FOIA Officer Report HHS*, HHS (Mar. 10, 2025), https://www.hhs.gov/foia/statutes-and-resources/officers-reports/2025-introduction/index.html (discussion in Introduction).

some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (cleaned up) (collecting cases). "[F]ailures to adhere to FOIA's pre-litigation requirements, including response deadlines and records management provisions needed to enable 'prompt' determinations," can constitute the bases of a policy and practice claim. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 779 (D.C. Cir. 2018); *see id.* at 780-82.

27.     A plaintiff may seek equitable relief to "direct[] a habitually noncompliant agency to comply" with the requirements of FOIA. *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 227 (D.D.C. 2011). The D.C. Circuit "expressly 'd[oes] not require egregious agency action'" and "[i]nstead" permits "a plaintiff . . . to prevail" simply by showing some "failure to abide" by FOIA's terms. *CREW v. U.S. Dep't of Just.*, --- F. Supp. 3d ----, No. 24-cv-1497, 2025 WL 879664, at *9 (D.D.C. Mar. 21, 2025) (quoting *Jud. Watch*, 895 F.3d at 781-83, *Payne*, 837 F.2d at 491, and *Muttitt*, 926 F. Supp. 2d at 293).

28.     An agency's violations of FOIA statutory or regulatory requirements may give rise to a FOIA policy-or-practice claim.

### *The Administrative Procedure Act*

29.     The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

30.     The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

31.     A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or

applicability of the terms of an agency action." *Id.* § 706. The reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." *Id.* §§ 706(1), (2)(A); *see also id.* §§ 706(2)(C)-(D) (providing that courts shall hold unlawful and set aside agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or taken "without observance of procedure required by law"). "[A]n agency action must comply with the agency's governing statutes and regulations," and, if it does not comply, that provides grounds for APA relief. *Bean v. Perdue*, 316 F. Supp. 3d 220, 227 (D.D.C. 2018); *see also, e.g.*, *Am. Vanguard Corp. v. Jackson*, 803 F. Supp. 2d 8, 13-14 (D.D.C. 2011) (relying on, *inter alia*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008).

## FACTUAL ALLEGATIONS

### *Mass Firings Across HHS and Closure of the CDC FOIA Office*

32.     On February 11, 2025, President Donald Trump issued an executive order entitled *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* ("DOGE RIF Order"), requiring agency heads to "promptly" prepare to "initiate large-scale reductions in force (RIFs)."[5]

33.     On February 18, Secretary Kennedy indicated that FOIA would no longer be needed within HHS, stating in a speech: "We will make our data and our policy process so transparent that people won't even have to file a FOIA request."[6]

---

[5] Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025).

[6] Berkeley Lovelace Jr., *et al.*, *Widespread job cuts begin at health agencies*, NBC News (Apr. 1, 2025), https://www.nbcnews.com/health/health-news/widespread-job-cuts-begin-health-agencies-rcna198859.

34.     On March 27, HHS announced that, in accordance with the DOGE RIF Order, it planned to downsize its workforce by 20,000 employees, from 82,000 to 62,000.[7]

35.     On April 1, the Trump administration carried out mass firings throughout HHS, beginning the process of cutting around 10,000 jobs across the department.[8] It fired over 2,000 employees at CDC.[9]

36.     Also on April 1, CDC closed its entire FOIA office as part of the administration's mass firings across HHS.[10]

37.     On April 2, an HHS official confirmed the closure of the CDC FOIA office and that any plan for CDC and HHS to comply with FOIA was not yet "finalized."[11]

38.     Meanwhile, 2025 reportedly has been, to date, the CDC FOIA office's "second busiest year since Covid."[12]

39.     In addition, the United States currently faces an "ongoing measles outbreak."[13]

---

[7] Press Release, HHS, *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/about/news/hhs-restructuring-doge.html.

[8] Lovelace Jr., *et al.*, *supra* note 6.

[9] *See Fact Sheet: HHS' Transformation to Make America Healthy Again*, HHS (Apr. 2, 2025), https://www.hhs.gov/press-room/hhs-restructuring-doge-fact-sheet.html; Apoorva Mandavilli & Roni Caryn Rabin, *C.D.C. Cuts Threaten to Set Back the Nation's Health, Critics Say*, N.Y. Times (Apr. 2, 2025), https://www.nytimes.com/2025/04/02/health/cdc-layoffs-kennedy.html.

[10] Alexander Tin, *RFK Jr. purges CDC and FDA's public records teams, despite "transparency" promises*, CBS News (Apr. 1, 2025), https://www.cbsnews.com/news/rfk-jr-purges-cdc-fda-records-transparency-teams/; Rachel Cohrs Zhang, *RFK Jr. Pushes Out Top Officials in Health Agency Overhaul*, Bloomberg News (Apr. 1, 2025), https://www.bloomberg.com/news/articles/2025-04-01/us-health-agency-mass-firings-begin-as-kennedy-orders-10-000-cut?embedded-checkout=true.

[11] Zachary Stieber, *Entire CDC FOIA Office Fired as Health Agency Moves to Centralize Structure*, Epoch Times (Apr. 4, 2025), https://www.theepochtimes.com/health/entire-cdc-foia-office-fired-as-health-agency-moves-to-centralize-structure-5835502?utm_source=twitter&utm_medium=Social&utm_campaign=ettwitter&welcomeuser=1.

[12] Zhang, *supra* note 10.

[13] *Measles - United States of America*, World Health Org. (Mar. 27, 2025), https://www.who.int/emergencies/disease-outbreak-news/item/2025-DON561.

Between January 1 and June 20, 2025, 36 States have reported a total of 1,214 cases of measles, including three deaths[14]—the first measles-related deaths in the United States in a decade.[15]

40.     CDC reportedly has suppressed information about a measles forecast and the need for measles vaccinations.[16] As the measles outbreak spread, CDC reportedly directed staff not to release a report from its Center for Forecasting and Outbreak Analytics that found the risk of catching measles is high in areas with low vaccination rates.[17]

41.     A CDC spokesperson reportedly explained that the agency did not release the assessment "because it does not say anything that the public doesn't already know,"[18] while a CDC staff member reportedly said the cancellation was "not normal at all," and that they have "never seen a rollout plan that was canceled . . . that far along in the process."[19]

42.     Former CDC Director of Communications Kevin Griffis expressed concern that "[e]liminating FOIA personnel imperils FOIA as an accountability tool, encouraging mischief or worse," especially at a time when CDC has drastically cut its communications staff and has failed to hold a press briefing on several ongoing infectious disease outbreaks—measles, Ebola, or avian flu—since January 20, 2025.[20]

---

[14] *Measles Cases and Outbreaks*, CDC, https://www.cdc.gov/measles/data-research/index.html (last visited June 24, 2025).

[15] *Measles - United States of America*, *supra* note 13; *see also* Tom Bartlett, *His Daughter Was America's First Measles Death in a Decade*, The Atlantic (Mar. 11, 2025), https://www.the atlantic.com/health/archive/2025/03/texas-measles-outbreak-death-family/681985/.

[16] Patricia Callahan, *The CDC Buried a Measles Forecast That Stressed the Need for Vaccinations*, ProPublica (Mar. 28, 2025), https://www.propublica.org/article/measles-vaccine-rfk-cdc-report.

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Kevin Griffis, *Decimation of HHS comms, FOIA offices will leave Americans in the dark about urgent health matters*, Stat News (Apr. 2, 2025), https://www.statnews.com/2025/04/02/hhs-cuts-cdc-communications-foia-offices-gutted/; *see also, e.g.*, Letter from Rep. Gerald E.

***CREW's April 1, 2025 Expedited FOIA Requests to CDC***

43.    On April 1, 2025, CREW submitted five expedited FOIA requests to CDC.

44.    The first expedited request sought:

   a.    "All records from January 20, 2025 to the date this request is processed that mention, reference, or relate to the CDC's decision not to release an assessment by the Center for Forecasting and Outbreak Analytics that addressed the risk of catching measles in relation to the vaccination rates of nearby areas."[21]

45.    The second expedited request sought:

   a.    "All communications sent or received by CDC Public Liaison Bruno Viana, CDC/ATSDR FOIA Officer Roger Andoh, or any other employees in the CDC/ATSDR FOIA Office that mention, reference, or relate to the decision to place the CDC FOIA office on administrative leave on April 1, 2025.

   b.    All communications sent or received by any CDC employee outside the CDC/ATSDR FOIA Office that mention, reference, or relate to the decision to place the CDC FOIA office on administrative leave on April 1, 2025.

   c.    All memoranda, directives, or other final records relating to the decision to place the CDC FOIA office on administrative leave on April 1, 2025."[22]

46.    The third expedited request sought:

   a.    "All communications that mention, reference, or relate to the deliberation of or decision to place the CDC FOIA office on administrative leave on April 1, 2025, received by CDC staff and sent by any individual with an email address associated with DOGE, U.S. DOGE Service, or the Office of Personnel Management ("OPM").

---

Connolly, Ranking Member of the House Oversight and Gov't Reform Comm., to Robert F. Kennedy Jr., Sec'y of Health and Hum. Servs. (Mar. 20, 2025), https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-document/2025-03-20-gec-to-24-cfo-agencies-re-foia-staffing.pdf (expressing similar concerns regarding closure of CDC office); Letter from Sen. Ron Wyden, Ranking Member of the Senate Comm. on Finance, to Robert F. Kennedy Jr., Sec'y of Health and Hum. Servs. (May 8, 2025), https://www.finance.senate.gov/imo/media/doc/hhs_foia_closures_letter_-_050825pdf.pdf (similar).

[21] ECF No. 13-4.

[22] ECF No. 13-5.

     b. All memoranda, directives, and other final records relating to the deliberation of or decision to place the CDC FOIA office on administrative leave on April 1, 2025 received by CDC staff and sent by any individual with an email address associated with DOGE, U.S. DOGE Service, or the Office of Personnel Management ("OPM")."[23]

47.    The fourth expedited request sought, from January 20, 2025 to the date the request is processed:

     a. "All guidance, communications, memoranda, directives, or policies describing CDC's plans to respond to, process, and otherwise manage open FOIA requests and future FOIA requests.

     b. All guidance, communications, memoranda, directives, or policies describing CDC's plans to otherwise comply with its statutory responsibilities under FOIA."[24]

48.    The fifth expedited request sought, from January 20, 2025 to the date the request is processed:

     a. "All guidance, communications, memoranda, directives, policies, or other final directives relating to CDC's plan to take down its FOIA portal website at https://foia.cdc.gov/.

     b. All guidance, communications, memoranda, directives, policies, or other final directives relating to CDC's plan to provide an automated email response to requesters' FOIA emails."[25]

49.    CREW submitted each FOIA request via email to FOIARequests@cdc.gov, as directed by CDC's FOIA website. The website stated at the time: "A FOIA request must be e-mailed to CDC at: FOIARequests@cdc.gov."[26]

50.    CREW's expedited requests each sought a fee waiver.

---

[23] ECF No. 13-6.

[24] ECF No. 13-7.

[25] ECF No. 13-8.

[26] Goldstein Decl. ¶ 13.

51. In response to the submission of its expedited FOIA requests, CREW received automated emails from FOIARequests@cdc.gov stating: "Hello, the FOIA office has been placed on admin leave and is unable to respond to any emails."[27]

52. Other individuals reportedly received the same automated message.[28]

53. On April 2, CREW further received an email from FOIARequests@cdc.gov stating: "I cannot tell if our automated reply is functional, so I am responding while I am still able to access CDC systems. The entire CDC FOIA Office has been placed on administrative leave prior to a mandated June 2 separation date."[29]

54. On April 2 and April 3, CREW contacted HHS headquarters' FOIA office via email (at HHS.ACFO@hhs.gov and FOIARequest@hhs.gov) to seek clarification on whether HHS was processing CREW's expedited FOIA requests.[30]

55. After HHS failed to respond,[31] CREW initiated this suit against Defendants on April 4 and filed a preliminary injunction motion on April 21.

56. On May 1, the day the Defendants' preliminary injunction opposition was due, the HHS FOIA office, OS FOIA, emailed CREW letters acknowledging receipt of CREW's five expedited FOIA requests to CDC.[32] In the acknowledgment letters, OS FOIA granted[33]

---

[27] *Id.* ¶ 14.

[28] *See, e.g.*, Lauren Harper, *RFK Jr. promises radical transparency, then closes FOIA shops, Freedom of the Press Found.* (Apr. 6, 2025), https://freedom.press/the-classifieds/rfk-jr-promises-radical-transparency-then-closes-foia-shops/.

[29] Goldstein Decl. ¶ 15.

[30] *Id.* ¶ 16.

[31] *Id.* ¶ 17.

[32] *See* ECF No. 18-2.

[33] *Id.* at 13.

expedited processing for CREW's measles-related FOIA request but denied[34] expedited processing for the other four requests.

57.    As of this filing, CREW has not received any indication from Defendants that they are processing its expedited FOIA request related to measles. As of May 19, the request was last in OS FOIA's queue of 70 expedited requests.[35]

58.    As of this filing, CREW has not received a determination on either its expedited FOIA request or its four other non-expedited requests. As this Court previously has observed, "Defendants have not clarified the status of CREW's non-expedited requests in their [preliminary injunction] opposition or [May 19] supplemental filing."[36]

59.    More than 20 business days have passed since CREW submitted its five April 1 FOIA requests, and Defendants therefore have failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

60.    On June 23, the OS FOIA office again sent CREW acknowledgement letters. It did so for two of CREW's requests (ECF No. 13-4, the expedited measles-related request, and ECF No. 13-8, the FOIA-portal-related request). OS FOIA again confirmed that it received the requests, without providing a determination, and it then stated:

> Because you seek records which require a search in another office, "unusual circumstances" apply to your request, automatically extending the time limit to respond to your request for ten additional days. See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii) (2012 & Supp. V. 2017). The actual time needed to process your request will depend on the complexity of our records search and on the volume and complexity of any material located. For your information, this Office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Our current workload is approximately 7000 cases.

---

[34] *Id.* at 1, 4, 7, 10.

[35] Mem. Op. 6, ECF No. 29 [hereinafter Op.]; Suppl. Decl. of William H. Holzerland ¶ 26, ECF No. 25-1 [hereinafter Suppl. Holzerland Decl.].

[36] Op. 6.

### *Status of Defendants' FOIA Operations*

61.    The CDC FOIA office no longer exists or, at the very least, is no longer operational.[37]

62.    All of the CDC FOIA office's approximately 23 employees were placed on administrative leave on April 1, 2025, pending their termination on June 2, 2025.[38] All those employees have since been terminated, and none have been rehired.

63.    Defendants closed the CDC FOIA office without advanced notice, planning, or explanation.

64.    Defendants have put the OS FOIA office in charge of handling the CDC FOIA office's responsibilities, doing so as part of their plan to centralize FOIA operations and workload from several HHS components.[39]

65.    HHS has a "fragmented information technology environment."[40] As a result, "CDC-FOIA data" is "hosted on a separate network from that of [HHS]," and OS FOIA experienced "technological challenges" in attempting to "gain access to the CDC FOIA database."[41] OS FOIA was only able to "work[] through technical complexities pertaining to access . . . as of May 6, 2025," more than a month after the shutdown of the CDC FOIA office.[42] OS FOIA now "has access to the former CDC-FOIA database, its tracking system, and former

---

[37] *See, e.g.*, *id.* at 4.

[38] Decl. of Person Doe ¶¶ 4-5, ECF No. 13-16 [hereinafter Doe Decl.]; Decl. of Kevin Griffis ¶¶ 7, 15-16, ECF No. 13-17 [hereinafter Griffis Decl.].

[39] *See, e.g.*, Op. 4; Decl. of William H. Holzerland ¶¶ 17-18, 37, 40-41, 50, ECF No. 18-1 [hereinafter Holzerland Decl.]; Suppl. Holzerland Decl. ¶¶ 6-7.

[40] Holzerland Decl. ¶ 8.

[41] *Id.*

[42] Suppl. Holzerland Decl. ¶ 22.

CDC-FOIA email addresses," and it has updated HHS and CDC FOIA webpages to direct CDC FOIA requests to OS FOIA.[43]

66.    With its newfound technical access and centralized operation, OS FOIA is purportedly engaged in ongoing efforts to "synthesize" and integrate the CDC FOIA office's workload into its own workload.[44]

67.    But Defendants' vague representations in this litigation regarding the handling of CREW's FOIA requests and other CDC FOIA workload,[45] together with their recent public filings in other ongoing FOIA litigation[46] and their stonewalling of other CDC FOIA requesters,[47] show that, on information and belief, OS FOIA is not actively processing pre-existing or new CDC FOIA requests[48] or fulfilling other CDC FOIA responsibilities, like ensuring compliance with the agency's reading-room obligations.[49]

---

[43] *Id.* ¶¶ 17-18, 20, 22.

[44] *Id.* ¶ 22.

[45] *See, e.g.*, *id.* ¶ 19 (vaguely stating that OS FOIA is "taking actions consistent with its statutory obligations"—which "[t]ypically . . . involves logging new requests, assigning them individual tracking numbers, . . . tasking [them] out to program offices," and "conduct[ing] searches"—without providing any details as to processing for CDC FOIA requests generally or for CREW's request in particular).

[46] *See, e.g.*, Joint Status Rep. at 1, *Informed Consent Action Network v. CDC et al.*, No. 24-cv-1000 (D.D.C. May 12, 2025), ECF No. 18 (explaining that Defendants need time to review plaintiff's challenges to redactions because the CDC FOIA office "currently is unstaffed" and OS FOIA "is working to gain access to the [CDC] FOIA office's records").

[47] *See* Decl. of Julia Szybala ¶¶ 7-25, ECF No. 26-3; Decl. of Andrea Issod ¶¶ 6-12, ECF No. 26-4; Decl. of Anisha H. Hindocha ¶¶ 9-27, ECF No. 26-5; Suppl. Decl. of Darya Minovi ¶¶ 3-10, ECF No. 26-6.

[48] *See also, e.g.*, Decl. of Person Doe ¶¶ 12-14, ECF No. 26-1 [hereinafter May 21 Doe Decl.].

[49] *See, e.g.*, Goldstein Decl. ¶ 21.

68.     The CDC FOIA workload is substantial. For example, prior to its elimination, the CDC FOIA office processed hundreds of FOIA requests each quarter and close to 2,000 FOIA requests annually[50] on a range of important public health matters.[51]

69.     OS FOIA will have to add this CDC FOIA workload, and the workload of the other HHS components whose responsibilities it is also taking over,[52] to its own sizeable docket of FOIA work. It too processes hundreds of FOIA requests a quarter and upwards of 1,300 requests annually, for records in the custody of the Secretary's staff divisions,[53] and it has a substantial backlog of pending requests, appeals, and consults and substantial ongoing litigation.[54]

70.     To do all this work, OS FOIA has a limited and shrinking staff.[55]

71.     And this limited OS FOIA staff lacks the specialized training,[56] expertise, institutional knowledge, and capabilities necessary to respond properly to FOIA requests directed

---

[50] *See, e.g.*, *Create a Quarterly Report*, https://www.foia.gov/quarterly.html (last visited June 24, 2025) (indicating that, during Q1 2025, CDC received 539 FOIA requests, processed 482 of them, and had 132 requests in its backlog); *HHS Fiscal Year 2024 Freedom of Information Annual Report*, HHS (Feb. 21, 2025) [hereinafter *2024 Annual FOIA Report*], https://www.hhs.gov/foia/reports/annual-reports/2024/index.html (Sections V.A, V.B.(1), XII.A., XII.D.(1), and XII.D.(2), laying out processing and backlog figures); *FOIA Annual Reports*, HHS, https://www.hhs.gov/foia/reports/annual-reports/index.html (last visited June 24, 2025) (providing prior annual reports).

[51] *See, e.g.*, *PAL Popular Documents*, CDC, https://foia.cdc.gov/App/ReadingRoomPopular Document.aspx (last visited June 18, 2025); Griffis Decl. ¶¶ 8-10.

[52] *See, e.g.*, Holzerland Decl. ¶¶ 40-41, 50; Suppl. Holzerland Decl. ¶¶ 7, 35.

[53] *See, e.g.*, Create a Quarterly Report, *supra* note 50; *2024 Annual FOIA Report*, *supra* note 50, at Sections V.A, and XII.D.(1).

[54] *See, e.g.*, *2024 Annual FOIA Report*, *supra* note 50, at Sections V.A, V.B.(1), XII.A., XII.B, and XII.D.(2); *See, e.g.*, Create a Quarterly Report, *supra* note 50; Holzerland Decl. ¶¶ 36, 38, 40; Doe Decl. ¶ 9; Griffis Decl. ¶ 5; *2025 Chief FOIA Officer Report HHS*, *supra* note 4, at Section V.C. In its second set of acknowledgment letters sent June 23, the OS FOIA office itself emphasizes its substantial workload, noting that it currently has 7,000 pending requests.

[55] *See, e.g.*, *2024 Annual FOIA Report*, *supra* note 50, at Section IX; *2025 Chief FOIA Officer Report HHS*, *supra* note 4, at Section V.C.; Holzerland Decl. ¶ 49; Doe Decl. ¶ 9.

to CDC or handle the other FOIA responsibilities previously carried out capably by the CDC FOIA office.[57] As OS FOIA itself states in its June 23 acknowledgment letters, responding to CDC FOIA requests presents it with "unusual circumstances" because those requests seek records from a different office. In other words, OS FOIA believes it "automatically" needs 10 extra business days to respond to CDC-related FOIA requests—including expedited ones— because the CDC FOIA office is now closed.

72.    OS FOIA therefore lacks the ability to successfully take over the CDC FOIA office's responsibilities in the short-to-medium term. Such an endeavor will be a "highly resource intensive" one requiring considerable time.[58] Meanwhile, CREW and other CDC FOIA requesters are harmed.

73.    Beyond CREW's five April 1 FOIA requests that are currently in limbo because of Defendants' actions, CREW has other pending FOIA requests with Defendants for CDC records and OS records.[59] And CREW intends to submit additional FOIA requests to Defendants on a number of matters. These pending and future requests will similarly languish if Defendants' conduct is allowed to continue.

---

[56] As part of HHS's previously decentralized FOIA operation, other HHS FOIA offices had their own different and diverse training programs and activities to ensure fair and effective FOIA administration within their components. *See 2025 Chief FOIA Officer Report HHS*, *supra* note 4, at Section II.A.

[57] *See, e.g.*, Doe Decl. ¶¶ 9-11; Griffis Decl. ¶¶ 13, 19-20; May 21 Doe Decl. ¶¶ 5-11.

[58] *See* Griffis Decl. ¶ 20.

[59] *See, e.g.*, Suppl. Decl. of Alex M. Goldstein ¶¶ 5-22, ECF No. 26-2.

## CREW'S CLAIMS FOR RELIEF

### COUNT I
### Violation of FOIA – Wrongful Withholding of Records
### Responsive to CREW's Requests
### (5 U.S.C. § 552)

74.    CREW re-alleges and incorporates by reference all preceding paragraphs.

75.    In its April 1, 2025 FOIA requests, CREW properly asked for records within the possession, custody, and control of Defendants.

76.    Defendants are wrongfully withholding non-exempt records responsive to CREW's FOIA requests.

77.    Defendants have failed to conduct an adequate search in response to CREW's FOIA requests.

78.    Defendants have failed to expeditiously process the measles-related FOIA request on which they granted expedition.

79.    By failing to timely release all requested records in full to CREW, Defendants are in violation of FOIA.

80.    CREW has constructively exhausted its administrative remedies.

81.    CREW is therefore entitled to injunctive and declaratory relief requiring immediate processing and disclosure of the requested records.

### COUNT II
### Violation of FOIA – Policy or Practice of Violating FOIA
### (5 U.S.C. § 552)

82.    CREW re-alleges and incorporates by reference all preceding paragraphs.

83.    A plaintiff may, "separate from claims seeking relief for specific FOIA requests, . . . assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Muttitt*, 926 F. Supp. 2d at 293 (quoting *Payne*, 837 F.2d at 491).

84.     By eliminating the CDC FOIA office and attempting to shift all its responsibilities to the OS FOIA office, Defendants have adopted and are engaged in a policy or practice of violating FOIA in the following respects:

    a.     failing to make available for public inspection in an electronic format all up-to-date CDC reading-room records required under 5 U.S.C. § 552(a)(2), and to properly maintain the CDC reading-room website, as required under 45 C.F.R. § 5.2(b);

    b.     failing to "make reasonable efforts to search for" CDC records and make requested CDC records "promptly available," as required under 5 U.S.C. § 552(a)(3);

    c.     failing to make determinations on standard and expedited FOIA requests for CDC records within the time periods required under 5 U.S.C. § 552(a)(6);

    d.     failing to "establish a system to assign an individualized tracking number for each [CDC] request received" and "a telephone line or Internet service that provides information about the status of a [CDC] request to the person making the request using the assigned tracking number," as required under 5 U.S.C. § 552(a)(7);

    e.     failing to prepare and make available all up-to-date reference material or "a guide for requesting records" from the CDC as required under 5 U.S.C. § 552(g); and

    f.     removing the CDC FOIA Officer in contravention of HHS regulations, 45 C.F.R. § 5.3, which provides that Operating Division Officers "serve as the principal resource and authority for FOIA operations and implementation within their respective Operating Divisions," including CDC.

85.     Defendants' actions also violate HHS regulations providing that the department's FOIA operations are intentionally decentralized, and that HHS divisions therefore have separate FOIA offices, operations, programs, and officials, each responsible for their own FOIA work. *See id.* §§ 5.2(b), 5.3, 5.23(a), 5.25. Although the regulations provide that OS FOIA may, "[i]n *certain circumstances* and at [its] discretion, . . . *also* process FOIA requests involving other HHS [Operating Divisions]" like CDC, they do not authorize the office to eliminate the FOIA offices of any divisions and take over all their FOIA processing. *Id.* § 5.3 (emphases added).

86.     Defendants' unlawful and intentional actions have resulted and will continue to result in the untimely access to documents to which CREW and the public are entitled.

87.     Defendants' unlawful and intentional actions have harmed and will continue to harm CREW by requiring it to incur the costs and delay associated with litigating its entitlement to documents.

## COUNT III
### Violation of the APA – Agency Action Contrary to Law
### (5 U.S.C. § 706)

88.     CREW re-alleges and incorporates by reference all preceding paragraphs.

89.     Under the APA, a court shall "hold unlawful and set aside agency action" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C), or taken "without observance of procedure required by law," *id.* § 706(2)(D).

90.     By closing the CDC FOIA office and attempting to shift all its responsibilities to the OS FOIA office, Defendants have acted contrary to law in the following respects:

a.     failing to make available for public inspection in an electronic format all up-to-date CDC reading-room records required under 5 U.S.C. § 552(a)(2), and to

properly maintain the CDC reading-room website, as required under 45 C.F.R. § 5.2(b);

b.  failing to "make reasonable efforts to search for" CDC records and make requested CDC records "promptly available," as required under 5 U.S.C. § 552(a)(3);

c.  failing to make determinations on standard and expedited FOIA requests for CDC records within the time periods required under 5 U.S.C. § 552(a)(6);

d.  failing to "establish a system to assign an individualized tracking number for each [CDC] request received" and "a telephone line or Internet service that provides information about the status of a [CDC] request to the person making the request using the assigned tracking number," as required under 5 U.S.C. § 552(a)(7);

e.  failing to prepare and make available all up-to-date reference material or "a guide for requesting records" from the CDC as required under 5 U.S.C. § 552(g); and

f.  removing the CDC FOIA Officer in contravention of HHS regulations, 45 C.F.R. § 5.3, which provides that Operating Division Officers "serve as the principal resource and authority for FOIA operations and implementation within their respective Operating Divisions," including CDC.

91.  Defendants' actions also violate HHS regulations providing that the department's FOIA operations are intentionally decentralized, and that HHS divisions therefore have separate FOIA offices, operations, programs, and officials, each responsible for their own FOIA work. *See id.* §§ 5.2(b), 5.3, 5.23(a), 5.25. Although the regulations provide that OS FOIA may, "[i]n *certain circumstances* and at [its] discretion, . . . *also* process FOIA requests involving other

HHS [Operating Divisions]" like CDC, they do not authorize the office to eliminate the FOIA offices of any divisions and take over all their FOIA processing. *Id.* § 5.3 (emphases added).

92.    Defendants' decision to close the CDC FOIA office and move its responsibilities to the OS FOIA office was final agency action.

93.    As a result of Defendants' final agency action, CREW has suffered and continues to suffer injury.

94.    To the extent the Court finds that FOIA does not authorize relief for any of the foregoing legal violations, CREW appropriately seeks such relief under the APA.

## REQUESTED RELIEF

WHEREFORE, CREW respectfully requests that this Court:

(1)    Declare that CREW is entitled to the immediate and full processing and disclosure of all non-exempt records it has requested under FOIA;

(2)    Declare that, by closing the CDC FOIA office, Defendants have adopted and are engaged in policies or practices in violation of FOIA;

(3)    Declare that, by closing the CDC FOIA office, Defendants took final agency action contrary to law, and set aside the closure decision;

(4)    Permanently enjoin Defendants from continuing to engage in the foregoing unlawful actions in violation of FOIA, including enforcing any directive that renders the CDC FOIA office non-operational;

(5)    Direct Defendants to promptly comply with the requirements of FOIA, including by assigning sufficient personnel and resources to timely process CREW's FOIA requests;

(6)    Provide for expeditious proceedings in this action;

(7)     Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and ensure compliance with the Court's orders;

(8)     Award CREW its costs and reasonable attorneys' fees in this action; and

(9)     Grant such other relief as the Court may deem just and proper.

Date: June 25, 2025                          Respectfully Submitted,

/s/ Yoseph T. Desta

Kayvan Farchadi (D.C. Bar No. 1672753)
Yoseph T. Desta (D.C. Bar No. 90002042)
Alex Goldstein (D.C. Bar No. 90005086)
Chun Hin Tsoi (D.C. Bar No. 90017713)
Kalyn Mizelle McDaniel (D.C. Bar No. 90027120)
Nikhel S. Sus (D.C. Bar No. 1017937)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
kfarchadi@citizensforethics.org
ydesta@citizensforethics.org
agoldstein@citizensforethics.org
jtsoi@citizensforethics.org
kmizellemcdaniel@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*