**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | |
| Plaintiff, | |
| v. | Civil Action No. 25-01020 (TJK) |
| **U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION,** *et al.*, | |
| Defendants. | |

<u>**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

    A.    Factual Background ................................................................................... 2

        1.    Defendants Fire Thousands of Employees at HHS and CDC.......................... 2

        2.    Defendants Fire All CDC FOIA Staff and Close the CDC FOIA Office ......... 3

        3.    The Closure of the CDC FOIA Office Has Prompted Serious Transparency and Public Health Concerns .................................................................... 6

    B.    Procedural Background ............................................................................ 11

LEGAL STANDARDS ....................................................................................................... 13

ARGUMENT .................................................................................................................... 14

    I.    CREW Is Entitled to Summary Judgment on Its Claim in Count I that Defendants' Closure of the CDC FOIA Office Amounts to an Impermissible Policy or Practice of FOIA Noncompliance ................................................................................... 14

        A.    CREW Has Article III Standing to Raise Its Policy-or-Practice Claim.................. 14

        B.    CREW Has Clearly Shown that Defendants' Closure of the CDC FOIA Office Thwarts Basic Access to CDC Records .................................................. 20

            1.    CREW's Showing Warrants Summary Judgment in Its Favor...................... 20

            2.    Defendants Have Failed to Undermine or Moot CREW's Sufficient Showing ................................................................................... 36

    II.    CREW Is Entitled to Summary Judgment on Its Claim in Count II that Defendants' Closure of the CDC FOIA Office Is Contrary to Law Under the APA ........................... 38

    III.    CREW Is Entitled to Summary Judgment on Its Claim in Count III that Defendants Have Failed to Properly Process Its FOIA Requests ....................................... 44

CONCLUSION.................................................................................................................. 45

# TABLE OF AUTHORITIES

## Cases

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ................................................................ 14

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
249 F. Supp. 3d 275 (D.D.C. 2017) ........................................................... 20

*Am. Ctr. for L. & Just. v. U.S. Dep't of State*,
254 F. Supp. 3d 221 (D.D.C. 2017) ........................................................... 32

*Am. Vanguard Corp. v. Jackson*,
803 F. Supp. 2d 8 (D.D.C. 2011) ............................................................... 40

*Bean v. Perdue*,
316 F. Supp. 3d 220 (D.D.C. 2018) ........................................................... 40

*Better Gov't Ass'n v. Dep't of State*,
780 F.2d 86 (D.C. Cir. 1986) .................................................................... 18

*Brown v. U.S. Citizenship & Immigr. Servs.*,
No. 23-cv-3669, 2024 WL 4253121 (D.D.C. Sept. 20, 2024) ................... 45

*Buckner v. CONSOL Energy, Inc.*,
No. 20-cv-1148, 2024 WL 2382941 (D.D.C. May 23, 2024) ..................... 20

*Cause of Action Inst. v. U.S. Dep't of Com.*,
No. 19-cv-2698, 2022 WL 4130813 (D.D.C. Sept. 12, 2022) ................... 17

*Colo. Wild Pub. Lands v. U.S. Forest Serv.*,
691 F. Supp. 3d 149 (D.D.C. 2023) ........................................................... 33

*CREW v. Exec. Off. of the President*,
587 F. Supp. 2d 48 (D.D.C. 2008) ............................................................. 17

*CREW v. U.S. Dep't of Hous. & Urban Dev.*,
415 F. Supp. 3d 215 (D.D.C. 2019) ..................................................... 24, 37

*CREW v. U.S. Dep't of Just.*,
436 F. Supp. 3d 354 (D.D.C. 2020) ........................................................... 33

*CREW v. U.S. Dep't of Just.*,
772 F. Supp. 3d 1 (D.D.C. 2025) ...................................................... 20, 21, 37

*Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*,
874 F.3d 287 (D.C. Cir. 2017) .................................................................. 36

*Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*,
No. 24-cv-3505-RDM, 2025 WL 763735 (D.D.C. Mar. 11, 2025) ............ 1, 9, 34

*D.C. v. U.S. Dep't of Agric.*,
444 F. Supp. 3d 1 (D.D.C. 2020) ............................................................... 19

*Dynalantic Corp. v. Dep't of Def.*,
115 F.3d 1012 (D.C. Cir. 1997) ................................................................ 14

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   396 F.3d 1265 (D.C. Cir. 2005) ................................................................. 39-40

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*,
   795 F. Supp. 2d 85 (D.D.C. 2011) ................................................................. 21

*\*Frank LLP v. Consumer Fin. Prot. Bureau*,
   288 F. Supp. 3d 46 (D.D.C. 2017) ............................................................. 17-18

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
   232 F. Supp. 3d 53 (D.D.C. 2017) ................................................................. 19

*Fuller v. Winter*,
   538 F. Supp. 2d 179 (D.D.C. 2008) ............................................................... 40

*\*Gatore v. U.S. Dep't of Homeland Sec.*,
   177 F. Supp. 3d 46 (D.D.C. 2016) ................................................................. 45

*\*Gatore v. U.S. Dep't of Homeland Sec.*,
   327 F. Supp. 3d 76 (D.D.C. 2018) ........................................................... 14, 18

*Greenpeace, Inc. v. U.S. Dep't of Homeland Sec.*,
   311 F. Supp. 3d 110 (D.D.C. 2018) ............................................................... 40

*\*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   895 F.3d 770 (D.C. Cir. 2018) .......................................... 18, 20-21, 32, 34-37

*\*Khine v. U.S. Dep't of Homeland Sec.*,
   334 F. Supp. 3d 324 (D.D.C. 2018) ............................................................... 18

*Kronberg v. U.S. Dep't of Just.*,
   875 F. Supp. 861 (D.D.C. 1995) ................................................................... 24

*Laverpool v. Dep't of Hous. and Urban Dev.*,
   315 F. Supp. 3d 388 (D.D.C. 2018) ............................................................... 13

*Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*,
   826 F.3d 492 (D.C. Cir. 2016) ..................................................................... 13

*Loyola Univ. Med. Ctr. v. Becerra*,
   728 F. Supp. 3d 128 (D.D.C. 2024) ............................................................... 14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................... 14

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ..................................................................... 21

*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) ................................................................................... 19

*\*Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*,
   369 F. Supp. 3d 151 (D.D.C. 2019) ......................................................... 21, 36

*\*Muckrock, LLC v. Cent. Intel. Agency*,
   300 F. Supp. 3d 108 (D.D.C. 2018) .................................................. 13-17, 33, 35

*Muttitt v. Dep't of State*,
  926 F. Supp. 2d 284 (D.D.C. 2013) ............................................................ 20

\*Muttitt v. U.S. Cent. Command*,
  813 F. Supp. 2d 221 (D.D.C. 2011) ............................................................ 40

\*Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*,
  383 F. Supp. 3d 1 (D.D.C. 2019) ............................................................... 17

*Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ................................................................................... 1

\*Nat'l Sec. Counselors v. Cent. Intel. Agency*,
  898 F. Supp. 2d 233 (D.D.C. 2012) ................................................ 16-18, 40

*Nat'l Sec. Counselors v. Cent. Intel. Agency*,
  960 F. Supp. 2d 101 (D.D.C. 2013) ........................................................... 13

*Nat'l Treasury Emps. Union v. Vought*,
  774 F. Supp. 3d 1 (D.D.C. 2025) ............................................................... 39

\*New York v. Kennedy*,
  --- F. Supp. 3d ----, No. 25-cv-00196, 2025 WL 1803260 (D.R.I. July 1, 2025) ................ 3, 39

*New York v. McMahon*,
  No. 25-cv-10601, 2025 WL 1463009 (D. Mass. May 22, 2025) ............................ 39

\*Open Soc'y Just. Initiative v. Cent. Intel. Agency*,
  399 F. Supp. 3d 161 (S.D.N.Y. 2019) ........................................................ 36

\*Payne Enterprises, Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ........................................................ 15, 20, 35-36

\*Phillips v. D.C.*,
  No. 22-cv-00277, 2022 WL 1302818 (D.D.C. May 2, 2022) ............................... 17

\*Power The Future v. U.S. Dep't of State*,
  No. 24-cv-346, 2025 WL 343175 (D.D.C. Jan. 30, 2025) ................................... 45

\*Pub. Citizen v. Lew*,
  127 F. Supp. 2d 1 (D.D.C. 2000) ............................................................... 40

*Quick v. U.S. Dep't of Com.*,
  775 F. Supp. 2d 174 (D.D.C. 2011) ........................................................... 19

*Scudder v. Cent. Intel. Agency*,
  25 F. Supp. 3d 19 (D.D.C. 2014) ............................................................... 24

*Tipograph v. U.S. Dept of Just.*,
  146 F. Supp. 3d 169 (D.D.C. 2015) ....................................................... 17-18

*Widakuswara v. Lake*,
  --- F. Supp. 3d ----, No. 1:25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ............... 39

**Statutes**

5 U.S.C. § 551 ............................................................................................. 42

5 U.S.C. § 552 ................................................................................. 33-34, 42, 44

5 U.S.C. § 704 ................................................................................................. 39

5 U.S.C. § 706 ............................................................................................. 38-39

**Other Authorities**

*2025 Chief FIOA Officer Report HHS*, HHS (Mar. 10, 2025), https://www.hhs.gov/foia/statutes
-and-resources/officers-reports/2025-introduction/index.html ................ 5, 6, 8, 28, 42

*Chief FOIA Officer Report*, U.S. Dep't of Transp. (Mar. 2025),
https://tinyurl.com/ycp2h9mf ........................................................................ 42

*Chief Freedom of Information Act Officer Report to the Department of Justice for 2025*, U.S.
Dep't of Def. (2025), https://tinyurl.com/4kux56kf .......................................... 42

Compl. for Inj. & Decl. Relief, *Elec. Privacy Info. Ctr. v. U.S. Off. of Pers. Mgmt.*,
No. 25-cv-00597-TNM (D.D.C. Feb. 28, 2025), ECF No. 1 ................................... 9

*Freedom of Information Act (FOIA)*, CDC, https://foia.cdc.gov/app/Home.aspx .................. 7

*Freedom of Information Act (FOIA)*, CDC, https://www.cdc.gov/foia/about/index.html ............. 7

*HHS Fiscal Year 2024 Freedom of Information Annual Report*, HHS (Feb. 21, 2025),
https://www.hhs.gov/foia/reports/annual-reports/2024/index.html ................... 8, 28, 29, 41

*Joint Status Rep., *Bloomberg L.P. v. CDC*,
No. 24-cv-3343-JEB (D.D.C. May 28, 2025) ................................................... 27

Joint Status Rep., *CREW v. U.S. DOGE Serv.*,
No. 25-cv-00511-CRC (D.D.C. Mar. 28, 2025) ................................................. 9

*Joint Status Rep., *Informed Action Consent Network v. CDC et al.*,
No. 25-cv-1331-DLF (D.D.C. June 20, 2025) ................................................. 27

*Joint Status Rep., *Informed Action Consent Network v. CDC et al.*,
No. 24-cv-1617-RCL (D.D.C. June 6, 2025) ................................................... 27

*Joint Status Rep., *Informed Action Consent Network v. CDC et al.*,
No. 24-cv-1000-RBW (D.D.C. May 12, 2025) ................................................. 25

Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't
Reform Comm., to Dr. Susan Monarez, Acting Dir. of CDC (Apr. 24, 2025), https://oversight
democrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-
document/2025-04-24.gec-to-cdc-monarez-re-foia.pdf ...................................... 9-10

Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't
Reform Comm., to Robert F. Kennedy Jr., Sec'y of HHS, at 2 & n.8 (Mar.
20, 2025), https://tinyurl.com/38e9k5dd ..................................................... 9

Letter from Sen. Ron Wyden, Ranking Member of the Senate Comm. on Fin., to Robert F.
Kennedy Jr., Sec'y of HHS (May 8, 2025), https://www.finance.senate.gov/imo/
media/doc/hhs_foia_closures_letter_-_050825pdf.pdf ....................................... 9

*Minute Order, *Cediel v. HHS*,
No. 24-cv-2289-RDM (D.D.C. Apr. 24, 2025) ................................................ 34

Pl. States' Mot. for a Prelim. Inj., *New York v. Kennedy*,
   No. 1:25-cv-00196-MRD (D.R.I. May 9, 2025), ECF No. 43 ................................... 3

*Measles Cases and Outbreaks*, CDC,
   https://www.cdc.gov/measles/data-research/index.html ........................................ 10

*The Freedom of Information Act: Perspectives from Public Requesters Before the S. Comm. on
   the Judiciary*, 119th Cong. (2025), https://www.judiciary.senate.gov/committee-activity/
   hearings/the-freedom-of-information-act-perspectives-from-public-requesters ......................... 9

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 13

**Executive Orders & Regulations**

*45 C.F.R. § 5.2 ................................................................................ 34, 41

*45 C.F.R. § 5.23 ............................................................................... 41-42

*45 C.F.R. § 5.24 ................................................................................ 44

*45 C.F.R. § 5.3 ................................................................. 5, 6, 32, 37, 41-43

Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ........................................ 2

## INTRODUCTION

The Freedom of Information Act ("FOIA") is vital to our democracy. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Lab. Rels. Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Accordingly, a federal agency cannot "avoid its obligations under FOIA—including the obligation to process a [records] request in an efficient and prompt manner—by simply implementing a reduction-in-force that 'either [] terminate[s] or place[s] on administrative leave'" its FOIA personnel. *Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*, No. 24-cv-3505-RDM, 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025). And yet, Defendants have sought to do just that at the U.S. Centers for Disease Control and Prevention ("CDC").

By their own admission, Defendants abruptly shuttered the CDC FOIA office and removed its staff without advanced notice or planning. And they have sought to transfer its important functions to an already overburdened and understaffed central office at the Department of Health and Human Services ("HHS") that lacks the capacity, resources, or expertise necessary to carry out the work. These admissions—and the uncontroverted supporting declarations and data CREW has marshaled—do not demonstrate "radical transparency," as Defendants have pledged. They evince unlawful decision-making.

Based on the undisputed facts, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") is entitled to summary judgment on all its claims. Defendants' destruction of the CDC FOIA function is an unlawful FOIA policy-or-practice (Count I) and violates the Administrative Procedure Act ("APA") (Count II). And because Defendants have unreasonably delayed handling the five pending FOIA requests at issue in this litigation (Count III), the Court should direct Defendants to process them promptly.

## BACKGROUND

### A. Factual Background

#### 1. Defendants Fire Thousands of Employees at HHS and CDC

On February 11, 2025, President Trump issued an executive order entitled *Implementing the President's "Department of Government Efficiency" Workforce Optimization Initiative* ("DOGE RIF Order"), requiring agency heads to promptly prepare to initiate large-scale reductions in force ("RIFs"). *See* First Am. Compl. for Decl. and Inj. Relief ¶ 32, ECF No. 31 [hereinafter Am. Compl.] (citing Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025)). The DOGE RIF Order directed agencies to prioritize for RIFs those offices that perform functions not mandated by statute or law. Exec. Order No. 14210 § 3(c). A week later, Secretary of HHS Robert F. Kennedy Jr. stated in his introductory speech to HHS staff members that FOIA would no longer be needed within the department, proclaiming an era of "radical transparency."[1]

On March 27, HHS announced that, in accordance with the DOGE RIF Order, it planned to dramatically restructure and downsize its workforce by 20,000 employees, from 82,000 to 62,000. *See* Am. Compl. ¶ 34; Mem. Op. 3, ECF No. 29 [hereinafter Op.]. The following week, on April 1, HHS commenced its RIF plan, cutting around 10,000 employees across components. *See* Am. Compl ¶ 35. As part of this RIF, 2,000 employees were fired at CDC. *Id.*; *see also* Decl. of Kevin Griffis ¶ 15, ECF No. 13-17 [hereinafter Griffis Decl.]; Decl. of Person Doe ¶ 4, ECF No. 13-16 [hereinafter Doe Decl.]. Many employees had job responsibilities that involved communicating information to the public, including media relations, digital communications, social media, and

---

[1] Berkeley Lovelace Jr. *et al.*, *Widespread job cuts begin at health agencies*, NBC News (Apr. 1, 2025), https://www.nbcnews.com/health/health-news/widespread-job-cuts-begin-healthagencies-rcna198859; *see also* Am. Compl. ¶ 33.

FOIA processing. *See* Griffis Decl. ¶ 16.[2] DOGE reportedly was involved in these job cuts.[3]

Just two days later, Secretary Kennedy stated that the DOGE-coordinated cuts led to errors; by his estimate, 20 percent of the cuts were "mistakes."[4] As a result, HHS and CDC have backtracked from some of the cuts, deciding to reinstate hundreds of fired employees.[5] A district court recently found that the April 1 cuts were likely arbitrary and capricious because "the record is completely devoid of any evidence that the Defendants have performed any research on the[ir] repercussions" and "devastating consequences." *New York v. Kennedy*, --- F. Supp. 3d ----, No. 25-cv-00196, 2025 WL 1803260, at *14 (D.R.I. July 1, 2025); *see id.* at *2 (discussing how Secretary Kennedy and other officials knew RIF plan "would generate mistakes").

### 2. Defendants Fire All CDC FOIA Staff and Close the CDC FOIA Office

As part of the April 1 mass firings, Defendants placed each of the CDC FOIA office's approximately 23 employees on administrative leave pending their termination on June 2, 2025. *See* Doe Decl. ¶ 4; Griffis Decl. ¶¶ 7, 15-16. CDC staff received no advanced notice. *See* Doe Decl.

---

[2] Thousands of employees who performed a range of public health functions beyond communicating to the public—including responding to infectious disease outbreaks—reportedly also were fired across HHS and CDC. *See, e.g.*, Sophie Gardner, *Which jobs were cut at CDC? Here's a list.*, Politico (Apr. 3, 2025), https://www.politico.com/news/2025/04/03/which-jobs-were-cut-at-cdc-heres-a-list-00271509; Pl. States' Mot. for a Prelim. Inj. 6-18, *New York v. Kennedy*, No. 1:25-cv-00196-MRD (D.R.I. May 9, 2025), ECF No. 43.

[3] *See, e.g.*, Michael Ramsey, *RFK Jr. defends HHS job cuts, says 'We're not cutting scientists'*, NewsNation (Mar. 28, 2025), https://www.newsnationnow.com/cuomo-show/rfk-defends-hhs-job-cuts/ (discussing DOGE assistance with agency reorganization and consolidation at 4:10-5:00 of embedded video); Kristina Fiore, *Musk, DOGE Created New HHS Org Chart*, MedPageToday (Apr. 1, 2025), https://www.medpagetoday.com/special-reports/features/114915; Ellie Quinlan Houghtaling, *RFK Jr. Reveals DOGE Fired Some People by Mistake*, The New Republic (Apr. 4, 2025), https://newrepublic.com/post/193645/robert-f-kennedy-jr-doge-cuts-hhs-mistake.

[4] Cheyenne Haslett, *RFK Jr. announces HHS reinstating some programs, employees cut by mistake*, ABC News (Apr. 3, 2025), https://abcnews.go.com/Politics/rfk-jr-announces-hhs-reinstating-programs-employees-cut/story?id=120463293; Houghtaling, *supra* note 3.

[5] *See, e.g.*, *New York*, 2025 WL 1803260, at *2; Eric Bradner, *Trump administration scrambles to rehire key federal workers after DOGE firings*, CNN (June 24, 2025), https://www.cnn.com/2025/06/24/politics/doge-fired-workers-rehired.

¶ 6; Griffis Decl. ¶ 18. They lost access to their office space on April 1 and computer systems on April 2. *See* Doe Decl. ¶ 5. The April 1 firings also targeted FOIA staff in other HHS components, including the Administration of Children and Families, the Food and Drug Administration, and the National Institutes of Health.[6] Although Defendants have since rehired some of these FOIA employees,[7] and although Secretary Kennedy has committed to restoring all HHS FOIA offices,[8] the CDC FOIA office remains closed and unstaffed. Its employees have been terminated.[9]

At the time of the April 1 RIF action, the CDC FOIA office was actively fulfilling its statutory obligations and processing FOIA requests. It was in regular contact with other FOIA offices across HHS and with HHS leadership to coordinate responses to FOIA requests, appeals, and litigation. *See* Griffis Decl. ¶ 11. But as of April 1, the office ceased to exist. *See* Op. 4. As a result, CDC FOIA work came to a halt. *See* Griffis Decl. ¶ 16; Doe Decl. ¶ 7. FOIA requests sent at the time to FOIARequests@cdc.gov returned an automated message that CDC's FOIA office had been placed on administrative leave and was unable to respond. *See* Am. Compl. ¶¶ 51-52.

---

[6] *See, e.g.*, Doe Decl. ¶ 8; Decl. of Gunita Singh ¶ 3, ECF No. 13-20; Sydney Lupkin, *After promising transparency, RFG guts public records teams at HHS*, NPR (Apr. 3, 2025), https://www.npr.org/sections/shots-health-news/2025/04/03/g-s1-57888/hhs-fda-rfk-foia-public-records; Rachana Pradhan & Brett Kelman, *Firings at Federal Health Agencies Decimate Offices That Release Public Records*, KFF Health News (Apr. 7, 2025), https://kffhealthnews.org/news/article/hhs-firings-federal-health-agencies-foia-requests-public-records/; Nick Valencia *et al.*, *'It's a bloodbath': Massive wave of job cuts underway at US health agencies*, CNN (Apr. 2, 2025), https://www.cnn.com/2025/04/01/health/staff-cuts-at-federal-health-agencies-have-begun/index.html; Ben Johansen, *Kennedy shutters several FOIA offices at HHS*, Politico (Apr. 3, 2025), https://www.politico.com/news/2025/04/03/kennedy-shutters-several-foia-offices-at-hhs-00268646.

[7] *See* Rachana Padhan, *In Reversal, FDA Rehires Staff Tasked With Releasing Public Records* (May 2, 2025), https://kffhealthnews.org/news/article/fda-rehires-foia-staff-public-records-requests-layoffs-trump-hhs/.

[8] Forbes Breaking News, *RFK Jr. Promises HHS FOIA Offices Will Be Restored, Details Steps To 'Total Transparency'*, YouTube (Apr. 26, 2025), https://www.youtube.com/watch?v=rjb9Qc18t2I.

[9] *See, e.g.*, Christina Jewett & Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After Supreme Court Decision*, N.Y. Times (July 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/hhs-layoffs.html; Op. 4 & n.1 (noting Defendants' characterization of CDC FOIA staff as "former" employees (citation omitted)).

On April 2, an HHS official confirmed the closure of the CDC FOIA office and stated that any plan for CDC and HHS to comply with FOIA was not yet "finalized." *Id.* ¶ 37. In other words, Defendants closed the CDC FOIA office without advanced notice, planning, or explanation. *Id.* ¶ 63; Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. & Partial Summ. J. 25, ECF No. 13-1 [hereinafter PI Mem.]. Contemporaneous press reporting indicated that HHS planned to "create a central place to handle FOIA requests" for CDC and other components across "the entire department," but Defendants did not announce or implement any such centralization efforts at the time,[10] and did not do so until the midst of the instant litigation. In their May 1 filing in this case, Defendants revealed that they planned to have the central HHS FOIA office—the "Office of the Secretary" ("OS") FOIA office—"process FOIA requests that involve[]" HHS components like "CDC moving forward." Decl. of William H. Holzerland ¶¶ 1, 17, ECF No. 18-1 [hereinafter Holzerland Decl.]; *see also, e.g.*, *id.* ¶ 37; Op. 4; Am. Compl. ¶ 64.

But by regulation, each HHS component must have its own FOIA office—with its own officials, programs, and operations—that operates independently as part of a "decentralized" FOIA apparatus at the department. 45 C.F.R. § 5.3; *see* Am. Compl. ¶¶ 21-24; Holzerland Decl. ¶ 6. These regulations remain in force. As HHS recently explained in its 2025 Chief FOIA Officer Report, OS and the department's 11 component agencies, including CDC, are intentionally set up to have separate FOIA offices, "all of which receive and respond to FOIA requests" for their components and all of which administer the HHS FOIA enterprise "on a decentralized basis."[11]

---

[10] Alexander Tin, *RFK Jr. purges CDC and FDA's public records teams, despite "transparency" promises*, CBS News (Apr. 1, 2025), https://www.cbsnews.com/news/rfk-jr-purges-cdc-fda-records-transparency-teams/.

[11] *2025 Chief FOIA Officer Report HHS*, HHS (Mar. 10, 2025), https://www.hhs.gov/foia/statutes-and-resources/officers-reports/2025-introduction/index.html (discussion in Introduction).

The OS FOIA office was set up as the central office to process initial FOIA requests for records in the custody of the Secretary's staff divisions. *See* 45 C.F.R. § 5.3; *2025 Chief FOIA Officer Report HHS*, *supra* note 11, at Introduction; *see also* Suppl. Decl. of William H. Holzerland ¶ 29, ECF No. 25 [hereinafter Suppl. Holzerland Decl.] (noting that OS FOIA also handles administrative appeals of FOIA determinations made by other HHS FOIA offices). "In certain circumstances and at the [OS] FOIA Office's discretion, the . . . office may also process FOIA requests involving other" HHS divisions. 45 C.F.R. § 5.3. But this limited discretion does not authorize OS FOIA to take over *all* the FOIA processing of CDC or any other division. And as previously discussed and discussed below, OS FOIA is gravely ill-equipped to take on CDC FOIA obligations in the short-to-medium term: it lacks the manpower, bandwidth, specialized training and expertise, and institutional knowledge necessary to do so. *See infra* Part I; *see also* Am. Compl. ¶¶ 65-72; PI Mem. 8-9, 25-26; Reply Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. 13-16, ECF No. 20 [hereinafter PI Reply]; Pl.'s Resp. to the Suppl. Decl. of William Holzerland 4 n.3, 6-7, 9, 11, 13-14, ECF No. 26 [hereinafter PI Suppl. Reply].

### 3. The Closure of the CDC FOIA Office Has Prompted Serious Transparency and Public Health Concerns

The abrupt shuttering of the CDC FOIA office has provoked significant public attention and outcry, *see, e.g.*, Am. Compl. ¶¶ 36-38 nn.10-12,[12] and understandably so. As CDC itself touts on

---

[12] *See also, e.g.*, Kevin Griffis, *Decimation of HHS comms, FOIA offices will leave Americans in the dark about urgent health matters*, STAT (Apr. 2, 2025), https://www.statnews.com/2025/04/02/hhs-cuts-cdc-communications-foia-offices-gutted/; Lauren Harper, *RFK Jr. promises radical transparency, then closes FOIA shops*, Freedom of the Press Found. (Apr. 6, 2025), https://freedom.press/the-classifieds/rfk-jr-promises-radical-transparency-then-closes-foia-shops/; Miles Klee, *Health Secretary RFK Jr. Promised Radical Transparency. Now He's Closing FOIA Offices*, Rolling Stone (Apr. 1, 2025), https://www.rollingstone.com/politics/politics-news/rfk-jr-health-agencies-foia-offices-closing-1235308520/; Zachary Stieber, *Entire CDC FOIA Office Fired as Health Agency Moves to Centralize Structure*, Epoch Times (updated Apr. 4, 2025), https://tinyurl.com/425nrdvr; Sydney Lupkin, *House oversight Democrat demands answers on gutting of CDC public records office*, NPR (Apr. 24, 2025), https://www.npr.org/sections/shots-

its FOIA webpage, "information sharing" is "core" to its mission of "saving lives and protecting the health of Americans" and ensuring that its "science and research activities . . . comply with federal laws, regulations, and policies."[13] A critical part of CDC's ability to share information is its FOIA work. Again, as the agency's FOIA portal explains, FOIA provides "a standardized process for citizens to request documents in CDC's possession," and the agency "strongly endorses both the letter and the spirit of this Act."[14] CDC typically handles thousands of FOIA requests each year on a range of important public health topics, including foodborne illness and toxic substance events and outbreaks of infectious diseases like Ebola and measles, *see* Am. Compl. ¶ 68—and provides "hundreds of thousands of pages of records to requestors."[15] And 2025 reportedly has been a remarkably active FOIA year for CDC, with the agency seeing a considerable uptick in FOIA requests.[16] Those requests have concerned, among other topics, the Trump administration's RIF plans for CDC, CDC communications with DOGE, and information on current infectious disease

---

health-news/2025/04/24/nx-s1-5375065/cdc-hhs-public-records-foia; Samantha-Jo Roth, *FOIA staffing cuts endanger future of government transparency*, Wash. Examiner (May 18, 2025), https://www.washingtonexaminer.com/news/white-house/3414598/foia-staffing-cuts-engdanger-future-government-transparency/; Rich Lord, *Federal government record requests languish — and not just those aimed at DOGE*, PublicSource (June 17, 2025), https://www.publicsource.org/federal-government-doge-cuts-slow-foia-requests/; *supra* notes 6, 10.

[13] *Freedom of Information Act (FOIA)*, CDC, https://www.cdc.gov/foia/about/index.html (last visited July 16, 2025).

[14] *Freedom of Information Act (FOIA)*, CDC, https://foia.cdc.gov/app/Home.aspx (last visited July 16, 2025). Although this portal is still accessible online, Defendants are directing FOIA requesters to submit CDC-related FOIA requests to HHS. *See* Suppl. Holzerland Decl. ¶ 17; *Freedom of Information Act (FOIA)*, *supra* note 13.

[15] *Freedom of Information Act (FOIA)*, *supra* note 13; *see PAL Popular Documents*, CDC, https://foia.cdc.gov/App/ReadingRoomPopularDocument.aspx (last visited July 15, 2025).

[16] Rachel Cohrs Zhang, *RFK Jr. Pushes Out Top Officials in Health Agency Overhaul*, Bloomberg (Apr. 1, 2025), https://www.bloomberg.com/news/articles/2025-04-01/us-health-agency-mass-firings-begin-as-kennedy-orders-10-000-cut; *see also* Am. Compl. ¶ 38.

outbreaks, including the ongoing measles outbreak.[17] At the same time, CDC has received a high volume of media requests concerning these same issues. *See* Griffis Decl. ¶ 9.

During this exceptionally busy period for CDC and HHS,[18] the CDC FOIA closure will make it significantly harder for the agencies to communicate with the public, and it will lead to a massive slowdown in their ability to disseminate public health records and information. Many have expressed significant concerns along these lines. *See, e.g.*, Griffis Decl. ¶ 19 ("I anticipate that the sudden closure of CDC's FOIA Office will drastically increase the processing times of current and future FOIA requests for CDC records. This is due to insufficient resources, staffing, training, and institutional knowledge among remaining HHS personnel, as well as the substantial backlog of FOIA requests across HHS components, including OS."); Doe Decl. ¶¶ 10-11 (similar).[19] That includes affected CDC FOIA requesters. *See, e.g.*, Suppl. Decl. of Darya Minovi Decl. ¶ 10, ECF No. 26-6 [hereinafter Suppl. Minovi Decl.] ("We have received no additional communication from Defendants concerning our pending FOIA request. Our attempts to reach anyone responsible for processing our CDC FOIA requests have been unsuccessful. We are unsure when or whether we will receive the requested records with the elimination of the CDC FOIA office."); Decl. of Julia Szybala ¶ 25, ECF No. 26-3 [hereinafter Szybala Decl.] (similar). It also includes members of Congress, who have expressed alarm that the closure of the CDC FOIA office will "foil FOIA" and harm government transparency.[20]

---

[17] *See PAL Popular Documents, supra* note 15 (click "CDC FOIA Office Request Logs").

[18] Last fiscal year, HHS components received over 50,000 FOIA requests and accrued a backlog of over 12,000 requests, numbers that represent greater than 10 percent spikes from the prior year. *See HHS Fiscal Year 2024 Freedom of Information Annual Report*, HHS (Feb. 21, 2025) [hereinafter *2024 Annual FOIA Report*], https://www.hhs.gov/foia/reports/annual-reports/2024/index.html (Section XII.D.(1)); *2025 Chief FOIA Officer Report HHS, supra* note 11, at Section V.C.

[19] *See also* Johansen, *supra* note 6; Lupkin, *supra* note 6; Harper, *supra* note 12; Pradhan & Kelman, *supra* note 6; Griffis, *supra* note 12.

[20] *The Freedom of Information Act: Perspectives from Public Requesters Before the S. Comm. on*

These transparency concerns are especially salient now because CDC is reeling in the wake of the April 1 RIF action. Alarm is mounting about how the mass firings, including of CDC's FOIA office, will seriously impede the public health agency's ability to inform the American people about, and in turn protect them from, all manner of health threats.[21]

---

*the Judiciary*, 119th Cong. (2025) (statements of Sens. Dick Durbin & Sheldon Whitehouse) (statements at 26:00; 53:00, 1:07:05), https://www.judiciary.senate.gov/committee-activity/hearings/the-freedom-of-information-act-perspectives-from-public-requesters (last visited June 27, 2025); *see also, e.g.*, Letter from Sen. Ron Wyden, Ranking Member of the Senate Comm. on Fin., to Robert F. Kennedy Jr., Sec'y of HHS, at 1-3 (May 8, 2025), https://www.finance.senate.gov/imo/media/doc/hhs_foia_closures_letter_-_050825pdf.pdf (discussing how the "wholesale elimination" of the CDC FOIA office and other FOIA offices at HHS raises "extreme[]" concerns about the department's ability to comply with FOIA); Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't Reform Comm., to Dr. Susan Monarez, Acting Dir. of CDC (Apr. 24, 2025), https://oversightdemocrats.house.gov/sites/evo-subsites/democrats-oversight.house.gov/files/evo-media-document/2025-04-24.gec-to-cdc-monarez-re-foia.pdf [hereinafter Connolly Letter] (similar). The concerns raised by the CDC FOIA office closure dovetail with broader concerns about FOIA staff purges. Reports of significant FOIA staff reductions at the U.S. Agency for International Development ("USAID"), *see Ctr. to Advance Sec. in Am.*, 2025 WL 763735, at *1-2, the Office of Management and Budget, *see* Joint Status Rep. at 3, *CREW v. U.S. DOGE Serv.*, No. 25-cv-00511-CRC (D.D.C. Mar. 28, 2025), ECF No. 30, and other agencies have raised significant alarm about the state of FOIA compliance across the federal government, *see* Letter from Rep. Gerald E. Connolly, Ranking Member of the House Oversight and Gov't Reform Comm., to Robert F. Kennedy Jr., Sec'y of HHS, at 2 & n.8 (Mar. 20, 2025), https://tinyurl.com/38e9k5dd (page 45 of pdf); Will Royce & Andrea Beaty, *Public Records Wreckers*, Prospect (May 1, 2025), https://prospect.org/justice/2025-05-01-public-records-wreckers/; Jason Leopold, *How Trump's Presidency Is Impacting the FOIA*, Bloomberg (Feb. 21, 2025), https://www.bloomberg.com/news/newsletters/2025-02-21/how-foia-is-affected-by-trump-administration-s-political-chaos-and-doge; Allie Maloney & Hans Kristensen, *How Government Cuts Could Impact Your Right to Information*, Fed'n of Am. Scientists (Mar. 10, 2025), https://fas.org/publication/foia-opm-doge/; Angela Fu, *Firing of FOIA officers leaves experts worried about public records access under Trump*, Poynter (Feb. 21, 2025), https://www.poynter.org/reporting-editing/2025/public-records-requests-trump-administration-federal-government-foia/; Compl. for Inj. & Decl. Relief ¶¶ 41-44, *Elec. Privacy Info. Ctr. v. U.S. Off. of Pers. Mgmt.*, No. 25-cv-00597-TNM (D.D.C. Feb. 28, 2025), ECF No. 1.

[21] *See, e.g.*, Apoorva Mandavilli & Roni Caryn Rabin, *C.D.C. Cuts Threaten to Set Back the Nation's Health, Critics Say*, N.Y. Times (Apr. 2, 2025), https://www.nytimes.com/2025/04/02/health/cdc-layoffs-kennedy.html; Lena H. Sun, *How the CDC's widespread layoffs cut lifesaving health programs*, Wash. Post (Apr. 5, 2025), https://www.washingtonpost.com/health/2025/04/05/cdc-job-cuts-health-issues/; Ariel Hart, *Critics say CDC 'secrecy' will slow vital info; agency pledges transparency*, Atlanta J.-Const. (Apr. 6, 2025), https://shorturl.at/o4Q8v; Michelle R. Smith & Laura Ungar, *Trump administration's deep cuts to public health leave system reeling*, PBS

One particularly serious public health threat facing the country is the ongoing measles outbreak. *See* Am. Compl. ¶ 39. Between January 1 and July 16, 2025, 40 U.S. jurisdictions have reported a total of 1,309 cases of measles, including three deaths—the first measles-related deaths in the country in a decade.[22] As the outbreak spread, CDC reportedly directed staff not to release a report from its Center for Forecasting and Outbreak Analytics ("CFA") that found the risk of catching measles is high in areas with low vaccination rates. *See* Am. Compl. ¶¶ 40-41. It did so despite significant and growing public interest in measles, *see, e.g.*, Griffis Decl. ¶ 9; Ex. A to Pl.'s Mot. for Prelim. Inj., ECF No. 13-4 at 45 & n.14, and confusion over and mixed messaging regarding the government's vaccine guidance.[23]

Against this backdrop, the abrupt closure of the CDC FOIA office has become not only a FOIA issue, but also a public health issue of paramount importance. As CDC's recently departed Communications Director explains, the closure "will significantly reduce agency accountability by shielding the nation's top health officials from public scrutiny." Griffis Decl. ¶ 21; *see* Am. Compl. ¶ 42; Connolly Letter, *supra* note 20, at 2; Pradhan & Kelman, *supra* note 6.

---

(May 31, 2025), https://www.pbs.org/newshour/health/trump-administrations-deep-cuts-to-public-health-leave-system-reeling; Pradhan & Kelman, *supra* note 6.

[22] *Measles Cases and Outbreaks*, CDC, https://www.cdc.gov/measles/data-research/index.html (last visited July 16, 2025); *see also, e.g.*, Aria Bendix, *Measles cases reach highest point since the disease was eliminated in U.S. in 2000*, NBC News (July 8, 2025), https://www.nbcnews.com/health/health-news/measles-cases-reach-highest-point-disease-was-eliminated-us-2000-rcna201421.

[23] *See* Julie Steenhuysen, *US measles battle hindered by confusion over health secretary response*, Reuters (Apr. 22, 2025), https://www.reuters.com/business/healthcare-pharmaceuticals/us-measles-battle-hindered-by-confusion-over-health-secretary-response-2025-04-09/; Melody Schreiber, *Measles Is Spreading, and RFK Jr. Is Praising Quacks*, The New Republic (Apr. 11, 2025), https://newrepublic.com/article/193935/measles-cases-spreading-rfk-jr-vaccines; Damian Garde, *RFK Jr.'s Inconsistent Measles Messages Alarm Health Officials*, Bloomberg (Apr. 7, 2025), https://www.bloomberg.com/news/articles/2025-04-07/kennedy-s-inconsistent-measles-messages-alarm-health-officials; Aria Bendix, *Robert F. Kennedy Jr. falsely claims measles vaccine protection 'wanes very quickly'*, NBC News (Apr. 11, 2025), https://www.nbcnews.com/health/kids-health/health-secretary-rfk-jr-measles-vaccine-falsely-claims-wanes-rcna200636.

### B.   Procedural Background

On April 1, 2025, CREW submitted five expedited FOIA requests to CDC. *See* Am. Compl. ¶¶ 43-48; Pl.'s Statement of Material Facts Not in Dispute ¶¶ 10-15 [hereinafter SOMF]. The first sought records related to CDC's decision not to release the CFA measles vaccination assessment. *See* Am. Compl. ¶ 44 (citing ECF No. 13-4). The second sought records related to the decision to place the entire CDC FOIA office on administrative leave on April 1, 2025. *See id.* ¶ 45 (citing ECF No. 13-5). The third sought records related to DOGE's involvement in the decision to place the CDC FOIA office on administrative leave. *See id.* ¶ 46 (citing ECF No. 13-6). The fourth sought records related to CDC's plan to fulfill its FOIA obligations without its FOIA staff. *See id.* ¶ 47 (citing ECF No. 13-7). The fifth sought records related to the takedown of CDC's FOIA portal and response functions. *See id.* ¶ 48 (citing ECF No. 13-8). CREW submitted each FOIA request via email to FOIARequests@cdc.gov, as directed by CDC's FOIA website. *Id.* ¶ 49 (citing Decl. of Alex M. Goldstein ¶ 13, ECF No. 13-3 [hereinafter Goldstein Decl.]).

In response, CREW immediately received automated emails from FOIARequests@cdc.gov stating: "Hello, the FOIA office has been placed on admin leave and is unable to respond to any emails." *Id.* ¶ 51 (quoting Goldstein Decl. ¶ 14). Other FOIA requesters reportedly received the same automated message. *Id.* ¶ 52. On April 2, CREW received a follow-up email confirming that the CDC FOIA office had been closed. *Id.* ¶ 53 (citing Goldstein Decl. ¶ 15). So, on April 2 and April 3, CREW contacted HHS headquarters' FOIA office by email to seek clarification on whether HHS was processing CREW's expedited FOIA requests. *Id.* ¶ 54 (citing Goldstein Decl. ¶ 16). After HHS failed to respond, CREW initiated this suit against Defendants on April 4 and filed a preliminary injunction motion on April 21. *Id.* ¶ 55. CREW's motion also was a motion for partial summary judgment, but the Court held this aspect of the motion in abeyance. *See* Op. 5.

On May 1, the day Defendants' preliminary injunction opposition was due, OS FOIA emailed CREW letters acknowledging receipt of CREW's five expedited FOIA requests to CDC. *See* Am. Compl. ¶ 56 (citing ECF No. 18-2). In the acknowledgment letters, OS FOIA granted expedited processing for CREW's measles-related FOIA request but denied expedited processing for the other four requests. *Id.*; *see* Op. 5-6. But the office did not issue FOIA determinations on any of the requests, and, as of this filing, it still has not done so. *See* Am. Compl. ¶ 58; SOMF ¶ 36.

The Court held a preliminary injunction hearing on May 13. It permitted Defendants to file a supplemental declaration in support of their opposition and CREW to file a response. *See* Suppl. Holzerland Decl. (supplementing Holzerland Decl.); PI Suppl. Reply.

On May 29, the Court denied CREW's preliminary injunction motion. *See* Op. 2, 20. In reaching this decision, the Court did not resolve the merits of any of CREW's claims. In fact, the Court acknowledged that "CREW has raised serious questions about whether Defendants have acted unlawfully with how they have suddenly revamped the FOIA process for HHS and its component agencies." *Id.* at 2. The Court denied CREW's motion only because it determined that CREW had not shown it would suffer irreparable harm without preliminary relief. *Id.*

On June 16, the parties jointly filed a motion for a case schedule, wherein CREW would file an Amended Complaint and the parties would engage in dispositive briefing. *See* Joint Mot. for Scheduling Order, ECF No. 30. The Court granted the motion in a June 17 minute order.

On June 23, the OS FOIA office again sent CREW acknowledgement letters. *See* Am. Compl. ¶ 60; Decl. of Alex M. Goldstein in Supp. of Mot. for Summ. J. ¶ 4 [hereinafter Goldstein MSJ Decl.] (citing and quoting Exs. A-B). It did so for two of CREW's requests (ECF No. 13-4, the expedited measles-related request, and ECF No. 13-8, the non-expedited FOIA-portal-related request). *See* Goldstein MSJ Decl. ¶ 4; SOMF ¶¶ 33, 35. OS FOIA again confirmed that it received

the requests, without providing a determination. Goldstein MSJ Decl. ¶ 4. It then stated that it was "automatically extending the time limit to respond to [the] request[s] for ten additional days" because the requests presented "unusual circumstances" insofar as they "seek records which require a search in another office." *Id.* (citing and quoting Exs. A-B). The acknowledgement letters also noted that OS FOIA's "current workload is approximately 7000 cases." *Id.*

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard, summary judgment is appropriately granted when, "viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA claims are "typically and appropriately" decided on motions for summary judgment. *Laverpool v. Dep't of Hous. and Urban Dev.*, 315 F. Supp. 3d 388, 390 (D.D.C. 2018). At summary judgment, the Court conducts a *de novo* review, and the agency "bears the burden of proving that it has complied with its [FOIA] obligations" and "fully discharged" its duties. *Muckrock, LLC v. Cent. Intel. Agency*, 300 F. Supp. 3d 108, 118 (D.D.C. 2018) (quotation marks omitted) (also noting that courts "must analyze all underlying facts and inferences in the light most favorable to the FOIA requester"). But with respect to FOIA policy-or-practice claims, the plaintiff-movant bears the initial burden of demonstrating the elements of its claim. *See, e.g.*, *Nat'l Sec. Counselors v. Cent. Intel. Agency*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013). As with any FOIA claim, a plaintiff prevails on a FOIA policy-or-practice claim if, under the ordinary Rule 56 summary-judgment standard, it demonstrates the "absence of a genuine issue of material fact" in dispute and its entitlement to judgment as a matter of law. *Id.* (quotation marks omitted).

For APA claims, however, the ordinary summary-judgment standard does not apply because "the district judge sits as an appellate tribunal" and the "'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote omitted); *see also, e.g.*, *Loyola Univ. Med. Ctr. v. Becerra*, 728 F. Supp. 3d 128, 134 (D.D.C. 2024).

## ARGUMENT

**I.    CREW Is Entitled to Summary Judgment on Its Claim in Count I that Defendants' Closure of the CDC FOIA Office Amounts to an Impermissible Policy or Practice of FOIA Noncompliance**

### A.    CREW Has Article III Standing to Raise Its Policy-or-Practice Claim

Defendants previously contested CREW's Article III standing for its policy-or-practice claim, and CREW already rebuffed their weak challenge. *See* PI Reply 6-10 (addressing Defs.' Opp. to Pl.'s Mot. for Prelim. Inj. 11-13, ECF No. 18 [hereinafter PI Opp.]). To the extent Defendants once again contest standing, they will be wrong twice over.

A plaintiff has Article III standing if it has an "injury in fact" that is "fairly traceable to the challenged action of the defendant" and capable of being "redressed" by the Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). "[T]he Court must measure standing by the state of the world as of the date of the [a]mended [c]omplaint," considering the specific evidence and facts in the record. *Gatore v. U.S. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 91 (D.D.C. 2018) (citation omitted), *aff'd*, No. 21-5148, 2023 WL 2576176 (D.C. Cir. Mar. 21, 2023).

In the FOIA policy-or-practice context, a plaintiff establishes an Article III injury-in-fact if it shows that (1) a plausibly alleged illegal policy or practice exists; (2) it has been subjected to the policy or practice at some point in the past; and (3) it likely will be subjected to the policy or practice again in the future. *Muckrock*, 300 F. Supp. 3d at 134. CREW easily meets these requirements.[24]

---

[24] CREW also has sufficiently demonstrated traceability and redressability, which "overlap as two sides of a causation coin." *Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997).

The first two requirements are not meaningfully in dispute. It is undisputed that the CDC FOIA office is closed, all its employees have been fired, and OS FOIA is now in charge of its responsibilities. *See* Op. 4; SOMF ¶¶ 3, 5-6, 21, 37; Am. Compl. ¶¶ 61-62, 64 (citing declarations); Suppl. Holzerland Decl. ¶¶ 7, 16-18 (discussing takeover of "former" CDC FOIA workload and certain CDC technology). And CREW has offered fulsome and unrebutted facts and evidence showing that the CDC FOIA office closure and OS FOIA takeover have degraded basic FOIA compliance at CDC—amounting to a CDC FOIA shutdown policy or practice—and thereby impaired CREW's lawful access to records from the public health agency.

As CREW has shown, backed up by sworn declarations, public information, and Defendants' own representations, OS FOIA lacks the resources, bandwidth, training and expertise, and capabilities to take over CDC FOIA work in the short-to-medium term and, unsurprisingly, has failed in the past three months to handle elementary CDC FOIA tasks. *See* PI Mem. 8-9, 25-26; PI Reply 13-16; PI Suppl. Reply 4-7, 9-11; *see also* Am. Compl. ¶¶ 65-72 (citing declarations and other record evidence in footnotes); *infra* Part I.B; SOMF ¶¶ 39-43, 46-65, 69. This CDC FOIA shutdown policy or practice has affected CREW since day one. CREW's five expedited processing requests were immediately and improperly denied on April 1 with a one-line automated message. *See* Am. Compl. ¶ 51 (citing Goldstein Decl. ¶ 27); PI Mem. 27; SOMF ¶¶ 21-22. Since then, its FOIA requests have completely languished—with no sign Defendants are appropriately processing them by making determinations and searching for and producing responsive records—as OS FOIA

---

Defendants have not previously challenged these standing elements, and for good reason—as the discussion below makes clear, it is *their* policy or practice that is injuring CREW, and the Court has the power to redress CREW's injury under established D.C. Circuit cases like *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 491-94 (D.C. Cir. 1988). Therefore, the Court need not dwell on these two standing elements. *See, e.g.*, *Muckrock*, 300 F. Supp. 3d at 120, 130-35 (noting traceability and redressability and finding standing without specifically considering them).

has scrambled to gain access to CDC systems and figure out how to get records from the separate agency. *See* Goldstein MSJ Decl. ¶¶ 3-5; SOMF ¶¶ 24-25, 32-33, 35-36; Am. Compl. ¶¶ 57-60, 71 (citing record evidence in footnotes); *see also* Am. Compl. ¶ 67 (alleging that Defendants have failed to ensure compliance with CDC's reading-room obligations and citing record evidence); PI Reply 18 (similar); Goldstein MSJ Decl. ¶ 10 n.2 (similar); SOMF ¶¶ 54-55 (similar).

CREW's showing more than satisfies its burden. It presents a "plausible, more than nebulous assertion of the existence of" an impermissible FOIA policy or practice, corroborated by "specific instances" of FOIA non-compliance. *Muckrock*, 300 F. Supp. 3d at 130-31 (quoting *Nat'l Sec. Counselors v. Cent. Intel. Agency*, 898 F. Supp. 2d 233, 260 (D.D.C. 2012)). Defendants have failed to rebut this showing. *See, e.g.*, PI Reply 6. Their weak efforts to "disclaim[] any policy and/or alter[] [their] behavior" do not "divest" CREW of standing, especially considering CREW's robust showing. *Muckrock*, 300 F. Supp. 3d at 130; *see infra* Part I.B.

Defendants previously hung their hat on the third policy-or-practice standing element, contending that CREW has not shown it will be imminently subject to their CDC FOIA shutdown policy or practice in the future. *See* PI Reply 6-7. To the extent Defendants run this argument again, they will be incorrect, for all the reasons CREW has explained. *See id.* at 7-10. Because of their shutdown policy or practice, Defendants cannot properly fulfill CREW's pending and future requests for CDC records.

A plaintiff can show a sufficiently imminent injury from a FOIA policy or practice in several ways: by "pointing to pending FOIA requests that will likely implicate the agency's policy" or practice; attesting to "specific, concrete plans to file a FOIA request that would implicate the policy" or practice; *or* "showing that its business depends on" filing requests and "receiving documents that the policy" or practice "permits the [agency] to withhold." *Frank LLP v. Consumer*

*Fin. Prot. Bureau*, 288 F. Supp. 3d 46, 58 (D.D.C. 2017) (quotation marks omitted). CREW shows all three.

*First*, CREW has seven pending CDC FOIA requests in addition to those challenged in this litigation, which Defendants also cannot properly fulfill due to their impermissible policy or practice. *See* Suppl. Decl. of Alex M. Goldstein ¶¶ 20-22, ECF No. 26-2 [hereinafter Suppl. Goldstein Decl.]; Goldstein MSJ Decl. ¶¶ 6-13; SOMF ¶¶ 66-67; Am. Compl. ¶ 73. These "outstanding FOIA requests" by themselves are "sufficient" to demonstrate "future injury." *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262 (quoting *CREW v. U.S. Sec. & Exch. Comm'n*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012), and collecting cases); *see, e.g., Tipograph v. U.S. Dep't of Just.*, 146 F. Supp. 3d 169, 176 (D.D.C. 2015) (collecting cases); *Phillips v. D.C.*, No. 22-cv-00277, 2022 WL 1302818, at *4 (D.D.C. May 2, 2022).

*Second*, CREW's declaration makes plain that CREW has specific and concrete plans to build off its pending CDC FOIA requests and submit additional requests in the near future. *See* Goldstein MSJ Decl. ¶ 14; *see also* SOMF ¶ 71; Goldstein Decl. ¶ 19; Am. Compl. ¶¶ 7, 73. CREW's "clear intent" and express plans to submit "future requests" for CDC-related records, which Defendants' shutdown policy or practice will impair, reinforces its imminent injury. *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262; *see also, e.g., Nat. Res. Def. Council, Inc. v. U.S. Env't Prot. Agency*, 383 F. Supp. 3d 1, 12 (D.D.C. 2019) (plaintiff's intent to continue filing similar requests showed imminent injury from agency policy); *CREW v. Exec. Off. of the President*, 587 F. Supp. 2d 48, 61 (D.D.C. 2008) (similar); *Frank*, 288 F. Supp. 3d at 59 (similar).

*Third*, CREW faces imminent injury from the CDC FOIA shutdown policy or practice based on "[its] status as a serial FOIA requester." *Muckrock*, 300 F. Supp. 3d at 134; *see Cause of Action Inst. v. U.S. Dep't of Com.*, No. 19-cv-2698, 2022 WL 4130813, at *3 (D.D.C. Sept. 12, 2022)

(citing *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986)). That status does more than simply reinforce that CREW "credibly anticipates filing more" FOIA requests. *Frank*, 288 F. Supp. 3d at 59; *see Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262. It establishes that, separate and apart from a specified future request, CREW faces a broader and more fundamental injury-in-fact from Defendants' shutdown policy or practice.

CREW frequently uses FOIA requests to CDC and other agencies as a critical tool to "advance its mission" of "disseminat[ing] . . . information about public officials and their actions," particularly government impropriety. Goldstein Decl. ¶¶ 2-3; *see* Suppl. Goldstein Decl. ¶ 23 (detailing past requests and explaining that CREW has submitted CDC FOIA requests when there is punctuated reason to do so and when government action intersects with its mission, such as investigating government impropriety related to health emergencies like the COVID-19 pandemic or ongoing measles epidemic); May 13, 2025 Hr'g Tr. at 22-23, ECF No. 23 [hereinafter Hr'g Tr.] (similar); SOMF ¶ 72 (similar). CDC's inoperative FOIA office quite obviously impairs this "stated mission," *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 262, preventing CREW from obtaining *any* CDC records. That deprivation is more than enough to establish a concrete and impending injury-in-fact. *See, e.g., id.* (finding imminent injury based in part on plaintiff's intention to submit requests implicating policy or practice and its mission); *Khine v. U.S. Dep't of Homeland Sec.*, 334 F. Supp. 3d 324, 333 (D.D.C. 2018) (similar, based on plaintiff's frequent use of FOIA to carry out primary institutional activities and mission (citing *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 782 (D.C. Cir. 2018))); *Gatore*, 327 F. Supp. 3d at 94 (similar); *Tipograph*, 146 F. Supp. 3d at 176 (explaining that a plaintiff can show an imminent injury-in-fact due to a policy or practice affecting FOIA responses if its "very business . . . depend[s] on filing FOIA requests").[25]

---

[25] The Court's irreparable-harm analysis (Op. 18-19) in no way affects CREW's standing. For one, "the concepts of an Article III cognizable injury and an irreparable harm are not coterminous." *D.C.*

Against this robust backdrop, the cursory standing arguments that Defendants previously raised fall flat. The sole policy-or-practice case Defendants discussed, *Quick v. United States Department of Commerce*, 775 F. Supp. 2d 174 (D.D.C. 2011) (discussed at PI Opp. 12), analyzed standing only in dicta and, in any event, is not on point. The *Quick* court opined that the plaintiff would lack standing to assert a "hypothetically asserted" policy-or-practice claim, 775 F. Supp. 2d at 184, because he did not, as CREW does, identify specific requests he would submit, establish his FOIA bona fides, or point to pending FOIA requests affected by the agency's policy or practice. Nor did he identify any impact to his pending request, which, unlike here, the agency "began processing . . . long before the commencement of [his suit]" and "diligently worked towards completing." *Id.* at 187. *Quick* thus offers Defendants no help.

Finally, Defendants' prior argument that CREW's injury is "self-inflicted" is specious. PI Reply 9; PI Suppl. Reply 8 & n.9. As a factual matter, CREW did not submit its FOIA requests to CDC "kn[owing] full well that the [CDC FOIA] office was [already] closed." PI Opp. 11. CREW instead sought to verify public reporting and to obtain more information about Defendants' actions at CDC using FOIA—*the* fundamental public-disclosure statute that Congress enacted expressly to open agency action to public scrutiny, *see, e.g.*, *Milner v. Dep't of Navy*, 562 U.S. 562, 564-65 (2011)—only to be thwarted by the auto-denial of its requests for expedited processing. No case law supports applying the self-inflicted-injury doctrine where, as here, a plaintiff sought to exercise a statutory right but was frustrated from doing so by an agency's actions. And the single case

---

*v. U.S. Dep't of Agric.*, 444 F. Supp. 3d 1, 40 (D.D.C. 2020). "[T]here is a wide and apparent gap between the two standards" because "Article III standing may be present for even slight (and reparable) injuries" and "[i]rreparable harm, by contrast, must be both certain and great." *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 65-66 (D.D.C. 2017) (quotation marks omitted). The Court's conclusion that CREW did not satisfy the latter test thus is distinct from, and says nothing about, CREW's ability to satisfy the former. Regardless, the Court did not consider the policy-or-practice standing test, which, as discussed above, CREW satisfies in spades.

Defendants previously cited only reinforces why their self-inflicted-injury theory fails. *Buckner v. CONSOL Energy, Inc.* explains that the theory applies only when the injury results from "the choice a plaintiff makes *rather than the actions of a defendant*." No. 20-cv-1148, 2024 WL 2382941, *7 (D.D.C. May 23, 2024) (emphasis added). But here, it is *Defendants*' decision-making that has injured and will continue to injure CREW. CREW cannot be faulted for Defendants' decision, made solely by them, to eliminate the CDC FOIA office without any plan in place for handling CDC FOIA requests, without advanced or contemporaneous notice about what CDC requesters should do in the interim, and without ensuring that OS FOIA could successfully take over.

### B. CREW Has Clearly Shown that Defendants' Closure of the CDC FOIA Office Thwarts Basic Access to CDC Records

On the merits, CREW is entitled to summary judgment on its FOIA policy-or-practice claim. By closing the CDC FOIA office and shifting its responsibilities to an ill-equipped central office, Defendants are engaged in a broad dereliction of their FOIA responsibilities at CDC. Their rejoinders otherwise fail to undermine or moot this serious issue.

#### 1. CREW's Showing Warrants Summary Judgment in Its Favor

As courts in this Circuit have long recognized, a plaintiff may, "separate from claims seeking relief for specific FOIA requests, . . . assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters.*, 837 F.2d at 491). A plaintiff can make such a claim by establishing "that an agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (cleaned up) (collecting cases); *see also, e.g.*, *CREW v. U.S. Dep't of Just.*, 772 F. Supp. 3d 1, 4 (D.D.C. 2025). That policy or practice may be "informal, rather than crystallized in regulation or an official statement," *Jud.*

*Watch*, 895 F.3d at 778 (cleaned up), and may relate to a range of different FOIA violations—from "failures to adhere to FOIA's pre-litigation requirements," *id.* at 779, to unreasonable delays, *see, e.g., id.* at 780-84, to the improper invocation of FOIA exemptions, *see, e.g.*, *Mo. Coal. for the Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159-60 (D.D.C. 2019). It may also relate to violations of FOIA regulations, *see, e.g.*, *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 95-96 (D.D.C. 2011), since it is a "well-established principle that an agency is bound by its own regulations," *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977); *see* Am. Compl. ¶ 19. The D.C. Circuit "expressly 'd[oes] not require egregious agency action'" for a FOIA policy-or-practice claim. *CREW*, 772 F. Supp. 3d at 14 (quoting *Jud. Watch*, 895 F.3d at 781). So long as the conduct at issue rises above the level of "isolated mistakes by agency officials," and instead "signal[s]" that the agency is engaged in ongoing conduct to "ignor[e]" one or more of "FOIA's requirements," a successful policy-or-practice claim lies. *Jud. Watch*, 895 F.3d at 778, 780 (quotation marks omitted). This is such a case, and, consequently, CREW is entitled to summary judgment.

    **a.**     At issue here are more than just isolated mistakes by FOIA officials; Defendants are engaged in an ongoing CDC FOIA shutdown, impairing basic access to agency records. A rundown of the record compiled over the past three-plus months bears this conclusion out.

    Defendants abruptly fired everyone in the CDC FOIA office on April 1 and cut off their access to CDC systems on April 2, halting all FOIA work at the agency without advanced notice, explanation, or planning. *See, e.g.*, SOMF ¶¶ 3, 5, 6, 8; Am. Compl. ¶¶ 61-63 (citing record evidence); Op. 4; PI Mem. 6-7. And Defendants have taken only minimal steps since then to restart that work, to little effect. In the month following the CDC FOIA office closure, Defendants did not announce or implement any staffing or procedures for handling CREW's outstanding FOIA

requests to CDC, the outstanding CDC FOIA requests of any other parties, or the thousands of FOIA requests that the agency receives each year on a range of important public health and safety issues. *See* PI Mem. 25. They revealed their plans for OS FOIA to handle these responsibilities only in their May 1 filing in this case; and, adding to the confusion, they spoke only in generic and future-looking terms, gesturing at how OS FOIA would take over CDC FOIA work "moving forward" and how this centralization would result in "anticipated benefits." PI Reply 15 (quoting Holzerland Decl. ¶ 17 and PI Opp. 14). Defendants' delay and handwaving was and is entirely unsurprising since, during this period, OS FOIA lacked even basic access to CDC systems and experienced "technological challenges" in obtaining such access due to HHS's "fragmented information technology environment." Am. Compl. ¶ 65 (quoting Holzerland Decl. ¶ 8, wherein OS FOIA described needing to work with "partners" to resolve issues); SOMF ¶ 43. OS FOIA purportedly could not "work[] through technical complexities pertaining to access" to the CDC FOIA database, tracking system, and email addresses until May 6, more than a month after the CDC FOIA office closure. Am. Compl. ¶ 65 (quoting Suppl. Holzerland Decl. ¶ 22). And only after this point was OS FOIA able to take steps to update FOIA webpages to direct CDC FOIA requests to OS FOIA, *id.* (citing Suppl. Holzerland Decl. ¶¶ 17-18, 20, 22), and to "synthesize" and integrate the CDC FOIA workload into its own, *id.* ¶ 66 (citing Suppl. Holzerland Decl. ¶ 22). That integration is apparently ongoing. *See e.g.*, *id.* ¶ 66 (citing Suppl. Holzerland Decl. ¶ 22); PI Suppl. Reply 3 (citing Suppl. Holzerland Decl. ¶¶ 6, 12, where Defendants explain that reorganization and centralization is "being implemented" and "aims at consolidating . . . functions"); Holzerland Decl. ¶ 37 (similar); SOMF ¶¶ 46-47; *infra* 25-27. And things are clearly going poorly.

Although Defendants have undertaken efforts to set up a central system for OS FOIA to handle CDC FOIA work, *see* Op. 19, the record does not at all indicate that their efforts have been

successful, or that their system is close to operational. Far from it. In the two-plus months since OS FOIA gained basic access to certain CDC FOIA technical resources, nothing suggests the office is properly carrying out CDC FOIA work. Defendants have had multiple opportunities to offer supporting details, but each time they have conspicuously failed to provide *any* concrete information on if and how OS FOIA is processing CDC FOIA requests or handling other CDC FOIA responsibilities, like posting CDC reading-room records online.

CREW has already documented Defendants' repeated failures. As it has explained: Defendants could have provided details on CDC FOIA work in the days before or after they closed the CDC FOIA office, but they did not. *See* Am. Compl. ¶ 34 & n.7, 37; PI Mem. 25, 32; Doe Decl. ¶¶ 7-8; Griffis Decl. ¶ 18. Defendants could have provided such details in their preliminary injunction opposition and oral argument, but they did not. *See* PI Reply 13-16 (describing Defendants' failure to establish that OS FOIA was processing CDC requests); Hr'g Tr. 38-39, 41, 44, 49, 54 (government counsel generically referring to OS FOIA processing of requests and reorganization efforts, without ever specifying CDC-specific work); *id.* at 11, 24, 62 (CREW counsel pointing out absence of CDC-specific processing and haphazard nature of OS FOIA takeover). And they could have done so in their supplemental filing—the express purpose of which was to supply specific "facts" showing Defendants are processing CDC FOIA requests and have "solid plans" to comply with FOIA, Hr'g Tr. 48, 67—but they did not, *see* PI Suppl. Reply 4-5, 9-11 (walking through the various ways in which Defendants' representations have failed to show that OS FOIA is engaged in CDC-specific FOIA work). Defendants' silence is deafening. Especially so because it comes in the face of heaps of evidence affirmatively showing that OS FOIA is not close to "meet[ing] its FOIA obligations" at CDC. Suppl. Holzerland Decl. ¶ 7.

As CREW has shown, CDC FOIA work has ground to a halt in the past three-plus months. Consider the following proof that CREW already has adduced:

- The CDC FOIA shutdown did not just result in the improper auto-denial of CREW's five requests for expedited processing on April 1. *See* PI Mem. 27; PI Reply 17. CREW's expedited request and four non-expedited ones have been stuck in limbo ever since, with no indication they are being processed properly. *See* PI Suppl. Reply 10 (also noting that defense counsel represented to the Court that he would obtain expedited processing timeline but failed to do so); Am. Compl. ¶¶ 57-58. The Court has recognized as much. *See* Op. 6.

- Many other CDC FOIA requesters have been similarly stymied. Their pre-and-post April 1 requests also have been ignored, with no indication they are being processed. *See* PI Mem. 11 (citing Minovi Decl. ¶ 12); PI Suppl. Reply 11 (citing and summarizing Szybala Decl. ¶¶ 7-24; Decl. of Andrea Issod ¶¶ 6-12, ECF No. 26-4; Decl. of Anisha H. Hindocha ¶¶ 9-25, ECF No. 26-5; Suppl. Minovi Dec. ¶¶ 3-10). Defendants have failed to address these other requests or offer any concrete proof that CDC FOIA requests are being processed. *See, e.g.*, PI Suppl. Reply 4-5, 9-10.[26]

---

[26] CREW does not rely on these other requesters' experiences to support its own injury, which it discusses in Part I.A above. Their similar experiences simply provide more proof that OS FOIA is not properly handling CDC FOIA responsibilities, and they contradict Defendants' representations otherwise. *See, e.g.*, *Scudder v. Cent. Intel. Agency*, 25 F. Supp. 3d 19, 47 (D.D.C. 2014) (explaining that evidence of other FOIA requesters' experiences contradicted agency position regarding its ability to fulfill plaintiff's request); *Kronberg v. U.S. Dep't of Just.*, 875 F. Supp. 861, 871 (D.D.C. 1995) (similar). This additional proof is salient but not necessary for CREW to prevail. *See, e.g.*, *CREW v. U.S. Dep't of Hous. & Urban Dev.*, 415 F. Supp. 3d 215, 224 (D.D.C. 2019) (explaining that a single requester can succeed on a policy-or-practice claim and "does not need extrinsic evidence from the agency's treatment of other requesters").

- As CREW has observed, the CDC FOIA reading room does not appear to have been updated since March. *See* PI Mem. 27 (citing, *inter alia*, Goldstein Decl. ¶ 21). Defendants have failed to offer any concrete proof to the contrary. *See* PI Suppl. Reply 5.

- CDC employee declarations corroborate the CDC FOIA standstill. *See* PI Mem. 7 (citing Doe Decl. ¶ 7, which states that FOIA processing and proactive disclosures to the reading room have ceased); PI Reply 18 (similar); PI Suppl. Reply 9 (citing Decl. of Person Doe ¶¶ 12-13, ECF No. 26-1, which observes that requests "are not being routed to offices within CDC to collect responsive records," and providing an example of a large category of records). Defendants have failed to address this corroboration in their submissions.

- Defendants' representations in this suit, elicited in response to CREW's policy-or-practice claim, indicate that OS FOIA faces significant workload and integration issues that have impeded and will continue to impede its ability to process CDC FOIA requests. *See* PI Reply 14 (citing Holzerland Decl. ¶ 48, which claims that OS FOIA cannot expeditiously process CREW's five pending requests without "almost certainly" jeopardizing HHS FOIA obligations, and *id.* ¶¶ 8, 36-47, 49-50, which discusses workload and integration issues).

- And Defendants' representations across other suits indicate that OS FOIA is unable to carry out various CDC FOIA obligations—from reviewing and sending FOIA productions to assessing redaction challenges. *See* PI Suppl. Reply 4 n.3 (collecting filings where OS FOIA discussed inability to timely carry out CDC FOIA activities). In one filing, Defendants stated that, as of May 12, OS FOIA was "*working to gain access* to [the CDC] FOIA office's records." Joint Status Rep. at 1, *Informed Consent Action Network ("ICAN") v. CDC et al.*, No. 24-cv-1000-RBW (D.D.C. May 12, 2025), ECF No. 18 (emphasis added). This assertion directly contradicts Defendants' representations in this case—relied upon by the Court—

claiming that OS FOIA "resolved" technical issues and gained access to CDC systems "as of May 6." Suppl. Holzerland Decl. ¶¶ 16, 22; Hr'g Tr. 48-49; *see* Op. 14, 19.

All this evidence is unrebutted. *See infra* Part I.B.2; SOMF ¶¶ 21-25, 27, 36, 38-43, 46-52, 54, 56-64. Unsurprisingly so, since all of it rests on objective indicia of Defendants' conduct and their own statements.

    **b.**    To its prior showing, CREW now adds even more uncontroverted proof. Consider the following additional evidence that CDC FOIA work has stalled over the past three months on OS FOIA's watch: *More* CDC FOIA requesters have been stonewalled. *See* Decl. of Nathan Freed Wessler ¶¶ 4-11 (describing how ACLU submitted expedited request to CDC on February 7, 2025, CDC granted expedited processing on February 11 and stated it anticipated providing final response by May 4, but since then the agency has provided no correspondence); Decl. of Dr. Peter Lurie ¶¶ 6-15 (similar neglect of Center for Science in the Public Interest CDC request pending since March 11, 2025); Decl. of Jared Goodman ¶¶ 7-18 (similar for White Coat Waste Project); Decl. of Claire Cassedy ¶ 14 (similar for Knowledge Ecology International); *see also* Second Suppl. Dec. of Darya Minovi ¶¶ 2-9 (supplementing ECF Nos. 13-19, 26-6); Suppl. Decl. of Andrea Issod ¶¶ 6-12 (supplementing ECF No. 26-4); Decl. of Julia Szybala ¶¶ 6-25 (supplementing ECF No. 26-3); Decl. of Vanessa Allen ¶¶ 7-17 (supplementing ECF No. 26-5). *More* proof exists that OS FOIA has abandoned CDC's reading-room obligations. *See* Goldstein MSJ Decl. ¶ 10 & n.2. And *more* representations by Defendants in other ongoing FOIA cases further demonstrate that OS FOIA cannot timely meet its CDC FOIA obligations, and they further contradict the office's representations in this case that it already has the basic capacity and technical access to do so.

    In one case, Defendants explained on June 20 that CDC previously completed a search, that OS FOIA had taken over the agency's FOIA work as of April 1 and had determined that "additional

potentially responsive records remain on CDC's shared drive," but that OS FOIA "*cannot presently access*" the drive. Joint Status Rep. at 1, *ICAN v CDC et al.*, No. 25-cv-1331-DLF (D.D.C. June 20, 2025), ECF No. 12 (emphasis added). Defendants further represented that OS FOIA "hopes to gain access to these potentially responsive records on or about July 1, 2025" and could not "specify with reliability" details regarding the further responsive documents or their date of release. *Id.* at 1-2. Other cases surface similar issues. *See e.g.*, Joint Status Rep. at 2, *ICAN v. CDC et al.*, No. 24-cv-1617-RCL (D.D.C. June 6, 2025), ECF No. 24 (explaining that Defendants are "attempting to respond to" plaintiff's inquiries regarding exemption applications, but "prior Agency personnel who worked on the matter departed the Agency and many others in *CDC's FOIA office have been placed on administrative leave, which has delayed the Agency's response*" (emphasis added)); Joint Status Rep. at 2, *Bloomberg L.P., v CDC et al.*, No. 24-cv-3343-JEB (D.D.C. May 28, 2025), ECF No. 15 (explaining that the "HHS FOIA Office is now in the process of transitioning records from the CDC's FOIA Office to its system," and that "[t]his process is not yet complete").

And with respect to the CREW FOIA requests at issue in this litigation, OS FOIA has acted to further stall and subject them—and any others like them—to consistent delay. CREW's CDC requests have been pending since April 1, and OS FOIA already sent acknowledgement letters for them and granted expedited processing on one of them on May 1. *See* Am. Compl. ¶¶ 43, 56 (citing ECF No. 18-2); SOMF ¶¶ 29-30. Nonetheless, in late June OS FOIA once again sent CREW two acknowledgment letters—for the expedited FOIA request and a non-expedited one—where it purports to further extend its response time. *See* Goldstein MSJ Decl. ¶ 4; SOMF ¶¶ 33, 35. It has asserted that it "automatically" is entitled to 10 more business days to respond because the requests seek records "which require a search in another office" and "unusual circumstances" under FOIA thus "apply." Goldstein MSJ Decl. ¶ 4; SOMF ¶¶ 33, 35.

Setting aside the fact that OS FOIA's purported time-extension is legally deficient, *see infra* Part III, it reveals an astonishing position: The OS FOIA office apparently believes it presumptively must take and gets to take 10 extra business days on top of FOIA's statutory deadlines to respond to CDC requests—including expedited ones—because such requests require it to search for records at CDC, a separate "office" from OS FOIA and HHS. That position, which is broadly applicable beyond this case because all CDC FOIA requests involve searches at CDC, is preposterous. *Of course* OS FOIA must search "another office" when handling CDC requests; that is *precisely* its responsibility in the newfangled CDC FOIA regime it has presided over for months and touts as streamlined. *See* Holzerland Decl. ¶¶ 17-24; Suppl. Holzerland Decl. ¶¶ 6-7, 12. So it defies reason for it now to claim that this intentional design automatically entitles it to more time. In any event, OS FOIA's dubious claim helpfully crystallizes the CDC FOIA shutdown policy or practice. By OS FOIA's own logic, CDC FOIA requests inherently present the office with "unusual circumstances" that prevent it from complying with ordinary FOIA deadlines, and that by default require it to take at least 10 extra days to respond.

   **c.**    This outcome was entirely predictable given the structural factors that render OS FOIA unfit to handle CDC FOIA responsibilities in the short-to-medium term. CREW already has identified and described these factors several times over: it has done so based on HHS's own public FOIA reports published just months ago (*i.e.*, the *2025 Chief FOIA Officer Report HHS*, *supra* note 11, authored by HHS's declarant in this case, William H. Holzerland, and the *2024 Annual FOIA Report*, *supra* note 18, authored by OS FOIA's director); HHS's own declarations in this case; public FOIA data available at www.FOIA.gov/quarterly.html; and declarations from CDC employees with personal knowledge about Defendants' FOIA operations. *See* PI Mem. 8-9 & n.6, 9-11, 25-26; PI Reply 13-15 & n.6; PI Suppl. Reply 6-7, 12-15; Am. Compl. ¶¶ 68-72 & nn.50-58.

To sum up, shifting all CDC FOIA responsibilities to OS FOIA is not feasible anytime soon for at least five reasons.

**(1)    It piles substantial additional workload onto OS FOIA's already sizeable docket:**

- OS FOIA already receives upwards of 2,800 FOIA requests and processes upwards of 1,300 requests each year, for records in the custody of the Secretary's staff divisions. *See* PI Mem. 9 (also noting statistics showing that OS FOIA requests have substantially increased); Am Compl. ¶¶ 25, 69. It also already is responsible for hundreds of FOIA appeals each year, *2024 Annual FOIA Report*, *supra* note 18, at Section VI.A, and dozens of FOIA consultations and ongoing lawsuits, *id.* at Section XII.B; *see* Holzerland Decl. ¶¶ 36-38, 45-47.

- Now, OS FOIA must also handle the thousands of requests that the CDC FOIA office previously received and processed each year. *See 2024 Annual FOIA Report*, *supra* note 18, at Section V.A., VII.D (cited at PI Reply 14 n.5); PI Mem. 10; PI Suppl. Reply 11 n.10; Am. Compl. ¶ 68 & n.50. It also must handle the CDC FOIA office's other responsibilities, like consults and litigation productions. *See* Holzerland Decl. ¶¶ 23, 38. And it must absorb the requests and workload of other shuttered HHS FOIA offices as well. *See* PI Reply 14; PI Suppl. Reply 4, 6-7; Am. Compl. ¶ 69 & n.52.

- OS FOIA readily acknowledges and relies on this burgeoning docket when describing its FOIA centralization effort and seeking to justify its inability to process CREW's FOIA requests by a date certain or under ordinary timelines. *See* Holzerland Decl. ¶¶ 36-48; Am. Compl. ¶ 60 (noting its 7,000 pending requests). But neither it nor Defendants ever confront the obvious, broader takeaway: doubling or tripling OS FOIA's workload seriously impairs its ability to handle CDC FOIA work *across-the-board*. They never even try to explain how this dramatic expansion of OS FOIA's docket is remotely feasible.

**(2)    It severely taxes OS FOIA's already flagging FOIA operation:**

- OS FOIA already has a substantial backlog of thousands of its own pending FOIA requests and hundreds of FOIA appeals for which it is responsible. *See* PI Mem. 9 & n.22; PI Reply 14; PI Suppl. Reply 12 & n.11. As discussed, it must add to this backlog the CDC FOIA office's workload and backlog (and that of other shuttered HHS FOIA offices). With the FOIA centralization playing out, OS FOIA's pending "cases"—presumably its various FOIA matters—have jumped from 3,000 to 7,000. *See* PI Suppl. Reply 7; Am. Compl. ¶ 60.

- Defendants never ever address how, straining under the weight of its own backlog, OS FOIA can possibly be up to the task of handling CDC FOIA work as well. Nor do Defendants explain how it possibly makes sense to hand CDC FOIA responsibilities over OS FOIA when statistical evidence amply demonstrates that it already fares poorly when compared to its peers on a range of metrics. *See* PI Suppl. Reply 7 (collecting statistical evidence).

**(3)    It stretches a limited and shrinking OS FOIA office to its breaking point:**

- At the start of this year, OS FOIA had only 31 employees (out of 336 total HHS FOIA employees), and it reported losing 3 of its most experienced FOIA analysts during the prior year. *See* PI Mem. 9 & n.22. Now, OS FOIA reports that it has lost more staff, despite multiplying its docket. *See* PI Reply 14; PI Suppl. Reply 6.

- Defendants never square OS FOIA's limited and shrinking resources with its expanding role. Nor have they initiated any plans to expand OS FOIA or take any other steps to enable the office to accommodate HHS-wide FOIA work. *See* PI Suppl. Reply 6 & n.6.

**(4)    It requires consolidation of very distinct FOIA enterprises:**

- Each of HHS's various FOIA offices have until recently had freestanding operations as part of HHS's decentralized FOIA system. *See* PI Mem. 7-8 & n.21; PI Reply 13-14; Am. Compl. ¶ 24. This decentralized system has meant that OS FOIA, CDC FOIA, and the other FOIA

offices have long had, among other things, their own case management systems, training procedures, and processes to handle their reading-room obligations. *See* PI Mem. 8 & n.21; Am. Compl. ¶ 24.

- Defendants have recognized both the independent nature of the different FOIA offices and some basic technical challenges posed by folding CDC FOIA responsibilities into OS FOIA. *See* Holzerland Decl. ¶¶ 6, 8. They belatedly have sought to achieve some rudimentary consolidation of CDC FOIA operations into OS FOIA. *See* Suppl. Holzerland Decl. ¶¶ 16-18, 20, 22 (describing updating of webpages and basic access to certain CDC resources).

- But there is no indication Defendants have engaged in any advanced planning, or have devoted the necessary time and resources, to achieve full consolidation and ensure the panoply of systems, processes, and protocols are in place for OS FOIA to fully absorb CDC FOIA responsibilities. *See* PI Mem. 8; PI Reply 13-15; PI Suppl. Reply 8-9. OS FOIA's apparently persisting difficulties in achieving access to CDC systems, months after the CDC FOIA office closure and it claimed it had access, prove the point. *See supra* 26-27.

**(5)    It requires OS FOIA to handle CDC FOIA requests when it does not have the specialized training, expertise, or institutional knowledge to do so:**

- As is the case for any other HHS FOIA office, the CDC FOIA office had staff with specific training, expertise, and institutional knowledge about the agency's independent records systems and distinct technical and scientific work on public health issues like measles, and about the ways to properly handle FOIA requests implicating those systems and work. *See* PI Mem. 8 & n.21, 26; PI Reply 13-14; PI Suppl. Reply 12-15. OS FOIA staff lack this on-the-ground, built-over-time know-how. *Id.* So much so that they believe they automatically need an extra 10 days to search for CDC records. *Supra* 12-13, 27-28.

- OS FOIA's main rejoinder—that OS FOIA has the requisite proficiency to handle all CDC

31

FOIA requests because of its review of CDC FOIA appeals—misses the mark. It ignores that OS FOIA's appellate review critically depends on the CDC FOIA office's substantial initial legwork to process the FOIA requests and expertise in so doing. *See* PI Suppl. Reply 12-14 & n.12.

In short, a host of workload, staffing, training, and other factors demonstrate that OS FOIA is woefully ill-equipped to take on CDC FOIA responsibilities, and that such an endeavor will be highly resource- and time-intensive to achieve. *See* Am. Compl. ¶ 72 & n.58; PI Mem. 8, 26; PI Reply 13; SOMF ¶¶ 28, 33, 35, 38-44, 46-60. These factors reinforce that Defendants' decision to eliminate the CDC FOIA office and transfer its work to OS FOIA amounts to a CDC FOIA shutdown policy or practice. They are "accoutrements" that "show how" and why, under the decision, Defendants have setup a system to "skirt [their] [CDC] FOIA duties wholesale" pre-litigation and "force[] requesters to file suit to obtain timely information." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 254 F. Supp. 3d 221, 226 (D.D.C. 2017); *see* Am. Compl. ¶¶ 86-87 (alleging that the CDC FOIA shutdown requires it to sue and incur costs and delay to obtain CDC records); PI Mem. 28-29 (quoting *Jud. Watch*, 895 F.3d at 779-81, which explains that failures to adhere to pre-litigation requirements and forcing litigation is a policy-or-practice violation); PI Reply 18 (same); PI Suppl. Reply 11-12.

The cherry on-top of Defendants' CDC FOIA shutdown decision—it violates their governing FOIA regulations. As explained in further detail below, *see infra* Part II, HHS regulations mandate that component agencies like CDC have their own "respective" FOIA "officials," "operations," and "programs" as part of the department's intentionally "decentralized" FOIA enterprise. 45 C.F.R. § 5.3; *see* Am. Compl. ¶¶ 21-24, 84(f), 85; PI Mem. 31-32; PI Reply 12-13; PI Suppl. Reply 2 n.1. Defendants flout this command, claiming—in contravention of the plain

regulatory text—that OS FOIA's limited discretion to handle certain FOIA requests of other HHS components authorizes the office to handle them all. *See* Holzerland Decl. ¶¶ 11-12, 17-18. In so doing, Defendants confirm that they "ha[ve] adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA" and implementing regulations. *Colo. Wild Pub. Lands v. U.S. Forest Serv.*, 691 F. Supp. 3d 149, 170 (D.D.C. 2023) (quotation marks omitted).

**d.**     Taken together, Defendants' conduct inescapably points to one conclusion: they have decided to abandon CDC's statutorily and regulatorily mandated FOIA duties altogether. By closing the CDC FOIA office, and doing so without any workable plan for handling the agency's FOIA responsibilities in the short-to-medium term, Defendants are engaged in an ongoing policy or practice of across-the-board FOIA noncompliance at CDC.

Under this noncompliance policy or practice, CDC immediately denied CREW's five expedited processing requests with a one-line automated message stating that the agency could not respond. That single-sentence denial, which of course in no way considered CREW's articulated need for the requested records, uniformly flouted the agency's expedited processing responsibilities under 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 45 C.F.R. § 5.27. *See CREW v. U.S. Dep't of Just.*, 436 F. Supp. 3d 354, 361 (D.D.C. 2020) (holding that single-sentence denial of expedited processing request, which did not at all engage with requester's showing of the need for expedition, "does not stand up to judicial review"); *Muckrock*, 300 F. Supp. 3d at 135-36 (holding that uniform responses using a template evince a policy or practice). From then on, neither CREW nor any other CDC FOIA requester has been able to reasonably expect Defendants to follow other critical FOIA requirements. Without a viable CDC FOIA function for the foreseeable future, Defendants lack the ability to "make reasonable efforts to search for" CDC records requested by CREW and others, 5

U.S.C. § 552(a)(3), make a determination on those record requests within the required time periods, *see id.* § 552(a)(6), "assign an individualized tracking number for each request" and "provide[] information about the status of a request," *id.* § 552(a)(7), make requested CDC records "promptly available," *id.* § 552(a)(3), or update the CDC online FOIA reading room so that CREW and others can access CDC "statements of policy and interpretations," "administrative staff manuals and instructions to staff that affect a member of the public," and frequently requested records like FOIA logs, *id.* § 552(a)(2); *see* 45 C.F.R. § 5.2(b). Across all these fronts, CREW and other CDC requesters have already experienced compliance issues over the past three-plus months, *see supra* 24-27, and the coming months likely will bring more of the same.

        **e.**      Defendants' "total disregard" of their FOIA responsibilities at CDC should be declared unlawful and enjoined as an impermissible policy or practice. *Jud. Watch*, 895 F.3d at 782. Defendants cannot escape their CDC FOIA obligations simply by gutting the agency's FOIA office and nominally transferring its function elsewhere. As another judge in this District recently explained when addressing the similar gutting of USAID's FOIA office: "FOIA's demand for expedition—and, indeed, more generally, FOIA's requirement that agencies release all non-exempt, responsive records—would be rendered meaningless if an agency could avoid these statutory obligations through the simple expedient of dismissing its FOIA staff." *Ctr. to Advance Sec. in Am.*, 2025 WL 763735, at *2 (expressing skepticism "that an agency can avoid its obligations under FOIA—including the obligation to process a request in an efficient and prompt manner—by simply implementing a reduction-in-force that 'either [] terminate[s] or place[s] on administrative leave'" its FOIA staff); *see also* Minute Order, *Cediel v. HHS et al.*, No. 24-cv-2289-RDM (D.D.C. Apr. 24, 2025) (same) (available at ECF No. 17-2); *cf. Jud. Watch*, 895 F.3d at 783 ("[A]s Congress's limited reaction in amending FOIA suggests, staffing shortages and work overload may not render

injunctive relief inappropriate."). This Court already recognized at the preliminary injunction stage that CREW "raised serious questions" about the legality of Defendants' conduct at CDC. Op. 2. The summary judgment record now confirms that it is unlawful.

Because the unlawful nature of Defendants' conduct is readily apparent *now*, the Court should not allow Defendants' claimed FOIA reorganization to play out as they see fit, on their own nebulous terms and timelines. It has already been more than three months since Defendants closed the CDC FOIA office; Defendants should not be entitled to more time while CDC FOIA work continues to languish. Nor should Defendants be allowed to pursue a wait-and-see approach to FOIA compliance, whereby they continue to incapacitate their ability to handle CDC FOIA requests pre-litigation and then respond only when, as CREW has done, a requester sues. The D.C. Circuit has stressed that "failures to adhere to FOIA's pre-litigation requirements," and FOIA noncompliance that forces requesters to "vindicate[]" their FOIA rights by "judicial enforcement," is exactly the stuff of a policy-or-practice claim. *Jud. Watch*, 895 F.3d at 779-80. "Congress did not intend for the agency to use the FOIA offensively to hinder the release of non-exempt documents so as to force [requesters] to bring several lawsuits to obtain release of . . . documents." *Id.* at 781 (cleaned up). But that is precisely what Defendants' shutdown policy or practice requires of CDC FOIA requesters.

Because Defendants' conduct impairs CREW's "lawful access" to the agency's records, now and "in the future," CREW is entitled to relief. *Payne Enters.*, 837 F.2d at 491. The Court's remedial power in this arena is broad. "[D]istrict courts have ample authority to award declaratory and prospective injunctive relief to FOIA requesters who successfully sustain policy-or-practice claims." *Muckrock*, 300 F. Supp. 3d at 121; *see also, e.g.*, *Payne Enters.*, 837 F.2d at 494 ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms.").

Given Defendants' flagrant and unjustified violation of FOIA's basic guarantees at CDC, declaratory relief is appropriate here. *See Payne Enters.*, 837 F.2d at 494 (similar). And given the "likelihood of continued delinquent conduct by [Defendants]," *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 874 F.3d 287, 293 (D.C. Cir. 2017) (citing *Payne Enters.*, 837 F.2d at 495), and the "cognizable danger of recurrent violation," *Mo. Coal. for the Env't*, 369 F. Supp. 3d at 162 (quoting *Jud. Watch*, 895 F.3d at 783), prospective injunctive relief is warranted as well, *see, e.g.*, *Jud. Watch*, 895 F.3d at 783 (explaining that courts may assess whether an "agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, would be inadequate to overcome an agency policy or practice" (citation omitted)). For the duration of this case, Defendants have stood by their improper and unlawful decision to decimate the CDC FOIA function; they have sought to portray FOIA compliance at CDC as business as usual, despite all the evidence to the contrary and their own shifting explanations for what has been occurring. In light of their obstinance—and their inability to provide the Court with basic and accurate information on their access to CDC systems and handling of CDC FOIA work—there is a serious risk that their illegal policy or practice will persist absent injunctive relief. At a minimum, that relief should require Defendants "to augment, temporarily or permanently, [CDC] [FOIA] review resources." *Open Soc'y Just. Initiative v. Cent. Intel. Agency*, 399 F. Supp. 3d 161, 169 (S.D.N.Y. 2019).

### 2. Defendants Have Failed to Undermine or Moot CREW's Sufficient Showing

CREW's policy-or-practice showing stands unrebutted. *See generally* SOMF. As discussed, Defendants have failed to address nearly all the evidence CREW has presented—ignoring, for example, the numerous declarations showing that CDC FOIA work has ground to a halt on OS

FOIA's watch, the workload figures and other data demonstrating that OS FOIA lacks the ability to successfully absorb CDC FOIA responsibilities in the near-to-medium term, and their own representations to that effect across other cases. The limited legal and factual arguments that Defendants have raised are unavailing for the reasons CREW has explained. *See* PI Reply 10-18; PI Suppl. Reply 1-16.

To recap, Defendants' prior legal arguments fail because they misstate the law and misapprehend CREW's claim. CREW's policy-or-practice claim does not fall short for failure to identify egregious agency action; the D.C. Circuit expressly does not require egregious conduct, and, in any event, Defendants' conduct *is* egregious. *See* PI Reply 17 (citing *CREW*, 772 F. Supp. 3d at 14). Nor does CREW's claim fall short for failure to identify repeated instances of FOIA violations or reliance on mere delays. CREW has identified repeat violations—under Defendants' unlawful policy or practice, five of its expedited processing requests were auto-denied, and since then the requests have each languished for months. *See id.*; *supra* 12, 15-17, 24. And courts have rejected Defendants' exact argument that these delays cannot give rise to policy-or-practice claims. *See* PI Reply 17-18 (citing *Jud. Watch*, 895 F.3d at 779-81, and *CREW*, 415 F. Supp. 3d at 226). In any event, CREW's claim rests on more than just delays in processing its five requests; it rests on the fact that Defendants have engaged in an across-the-board CDC FOIA shutdown, with all the attendant FOIA violations that entails. *See id.* at 18; Am. Compl. ¶ 84 a-f; *infra* Part I.A. Finally, the plain text of 45 C.F.R. § 5.3 does not authorize Defendants' CDC FOIA office shutdown, for it contemplates only that OS FOIA can handle particular FOIA requests for other components in certain circumstances. *See* PI Reply 12-13. (More on the regulation Part II below.)

And to recap, Defendants' factual showing does nothing to undermine CREW's robust one, or to meet their heavy burden of demonstrating that they have entirely remedied their policy-or-

practice violation and mooted CREW's claim. *See* PI Reply 10-17; PI Suppl. Reply 1-16. That claim crystallized on April 1 when Defendants shuttered the CDC FOIA office and auto-denied CREW's expedition requests, and it has been ongoing and injuring CREW ever since. The two intervening declarations Defendants submitted have fallen well short of showing that Defendants can and will abide by CDC FOIA obligations going forward. The first declaration simply offered bare and speculative assertions of the generic benefits that Defendants anticipated would result from centralizing CDC FOIA responsibilities at OS FOIA, without acknowledging the concrete evidence showing that centralization would be highly time-consuming and resource-intensive or providing any proof that centralization, or, for that matter, any CDC FOIA work, was successfully underway. *See* PI Reply 13-17. In fact, the first declaration admitted that OS FOIA could not even access basic CDC systems a full month after the CDC FOIA office closure. *See* PI Reply 14.

Defendants' second declaration did not fare any better. It too failed to provide any concrete proof that OS FOIA has been processing CDC FOIA requests or carrying out other CDC FOIA responsibilities, and it too failed to grapple with the overwhelming evidence showing that OS FOIA is not up to snuff. *See* PI Suppl. Reply 1-16. Taken together, the declarations paint the picture of a department scrambling, but failing, to figure out how to comply with CDC FOIA obligations in the face of the sudden and unlawful shutdown of the CDC FOIA office.

Defendants' response to this motion will likely bring another declaration, yet again attempting to paint a rosy picture of FOIA compliance at CDC. If it is anything like its predecessors, it too will fail to satisfy Defendants' heavy burden.

## II.    CREW Is Entitled to Summary Judgment on Its Claim in Count II that Defendants' Closure of the CDC FOIA Office Is Contrary to Law Under the APA

The APA requires a court to "hold unlawful and set aside agency action" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), is "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right," *id.* § 706(2)(C), or is taken "without observance of procedure required by law," *id.* § 706(2)(D). This is such a case. Defendants have taken unlawful action by eliminating the CDC FOIA office and completely transferring its mandated FOIA responsibilities to OS FOIA, despite OS FOIA's demonstrated inability to handle these responsibilities and HHS regulations barring their transfer. Defendants have illegally destroyed the CDC FOIA function, and that warrants APA relief.

Judicial review is available under the APA because Defendants' conduct is "final agency action." 5 U.S.C. § 704. As several courts have recently recognized, the shuttering of agency offices or programs and the dismantling of their mandated functions is final action because it reflects the consummation of discrete agency decision-making and directly affects those carrying out or reliant on those functions. *See, e.g.*, *Widakuswara v. Lake*, --- F. Supp. 3d ----, No. 1:25-cv-1015, 2025 WL 1166400, at *12 (D.D.C. Apr. 22, 2025) (concluding that gutting of United States Agency for Global Media via blanket placement of employees on administrative leave and other related conduct was final agency action, and relying on *Biden v. Texas*, 597 U.S. 785, 807 (2022)); *Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 46-47 (D.D.C. 2025) (holding that the "final, concrete decision to shut down" the Consumer Financial Protection Bureau was reviewable agency action); *New York v. McMahon*, No. 25-cv-10601, 2025 WL 1463009, at *24 (D. Mass. May 22, 2025) (similar with respect to RIF at Department of Education). The RIFs across HHS are no exception. *See New York*, 2025 WL 1803260, at *12-13 (holding that the "sweeping termination of critical staff and the closure of divisions and offices" at CDC and other HHS components was final agency action).

Moreover, APA review is available because APA relief would provide CREW with a different "genre" of remedy from FOIA remedies. *El Rio Santa Cruz Neighborhood Health Ctr.,*

*Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005) (quotation marks

omitted). Under the APA, the Court would "set aside" Defendants' unlawful conduct—the closure

of the CDC FOIA office and transfer of its responsibilities elsewhere. That relief is distinct from

FOIA relief because it would apply to Defendants' unlawful implementation of the DOGE RIF

Order against the entire CDC FOIA office, as opposed to the downstream impact of that APA

violation on the processing of CREW FOIA requests (as discussed in Part I above). *See Muttitt v.*

*U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011) (drawing a distinction between

FOIA claim "connected to the processing of any particular FOIA record requests" and APA claim

that stemmed from broader FOIA violation, and discussing *Pub. Citizen v. Lew*, 127 F. Supp. 2d 1,

7-9 (D.D.C. 2000), where "the court reviewed a claim under the APA alleging that several agencies'

violated a provision of FOIA"); *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 266, 279 (explaining that

claim alleging agency violated FOIA regulation was properly addressed under APA).[27]

On the merits, CREW's APA claim is straightforward—Defendants' elimination of the

CDC FOIA office violates HHS regulations on the required structure of FOIA operations

department-wide. "[A]n agency action must comply with the agency's governing statutes and

regulations," and, if it does not comply, that provides grounds for APA relief. *Bean v. Perdue*, 316

F. Supp. 3d 220, 227 (D.D.C. 2018); *see also, e.g.*, *Am. Vanguard Corp. v. Jackson*, 803 F. Supp.

2d 8, 13-14 (D.D.C. 2011) (relying on, *inter alia*, *United States ex rel. Accardi v. Shaughnessy*, 347

U.S. 260 (1954)); *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008). Here, HHS regulations

require Defendants to maintain a functional CDC FOIA office as part of the department's

---

[27] To the extent the Court has any "uncertainty" about whether FOIA permits it to provide relief, that too militates in favor of APA review. *El Rio*, 396 F.3d at 1272. Courts have declined APA review in "run-of-the-mill FOIA case[s]" because FOIA itself plainly provides litigants recourse. *Greenpeace, Inc. v. U.S. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018). But the destruction of an agency's FOIA function hardly qualifies as run-of-the-mill.

intentionally "decentralized" FOIA operations. 45 C.F.R. § 5.3.[28] The regulations bear this out in several ways. *See* Am. Compl. ¶¶ 21-24, 91.

      *First*, the regulations establish that each HHS "Operating Division," including CDC, has its own "respective" FOIA "officials," "operations," and "programs." 45 C.F.R. § 5.3 (also explaining that each Operating Division, including CDC, has officers who "serve as the principal resource and authority for FOIA operations and implementation within their respective" divisions, and who have the "full authority" to task agency components to search for records and to provide records located in their offices). *Second*, the regulations establish that separate "FOIA Requester Service Centers (FOIA offices) . . . process" FOIA requests for each of the different HHS divisions. *Id.* § 5.23; *see also id.* § 5.2(b) ("Each [division] has a FOIA Requester Service Center or FOIA Public Liaison who can assist individuals in locating records."). In other words, the regulations contemplate that CDC and all other divisions will maintain their own FOIA offices. And they direct requesters to send FOIA requests "to the appropriate [FOIA office] that you believe would have the records you seek."[29] *Third*, the regulations provide that CDC and "each" other HHS division is "responsible for" separately maintaining its own reading-room website, "determining which of its records must be made publicly available" on it, and "ensur[ing] that its [website] . . . is reviewed and updated on an ongoing basis." *Id.* § 5.2(b). *Fourth*, the regulations specify that FOIA requests for "research data made available under the provisions of 45 CFR 75.322(e)" must be addressed to the specific

---

[28] Defendants' violation of these regulations, laid out in the following analysis in this section, supports CREW's policy-or-practice claim as well. *See supra* Part I.B; Am. Compl. ¶¶ 84(f), 85.

[29] Up until the filing of CREW's preliminary injunction motion, the "up-to-date listing" of "appropriate FOIA Requester Service Center[s] . . . maintained online at http://www.hhs.gov/foia/contacts/index.html," 45 C.F.R. § 5.23, listed for CDC the CDC FOIA office's contact information, including its address and contact email, the phone number and name of its FOIA Officer, and the name, phone number, and contact email of its FOIA Public Liaison, *see* Am. Compl. ¶ 22 & n.3 (citing Goldstein Decl. ¶ 20); *see also 2024 Annual FOIA Report*, *supra* note 18, at Section I (same).

division "that made the award under which the data were first produced," and they require that specific division to process the request. *Id.* § 5.23(a).

Accordingly, the regulations establish that HHS "FOIA operations are decentralized" and require the CDC FOIA office and function to exist and operate separately within this decentralized system. *Id.* § 5.3. As HHS recently explained, OS and the department's 11 other divisions are intentionally set up to have separate FOIA offices, "all of which receive and respond to FOIA requests" for their components and all of which administer the HHS FOIA program "on a decentralized basis." *2025 Chief FOIA Officer Report HHS*, *supra* note 11, at Introduction.[30] Defendants unlawfully disregard this intentional design by eliminating the CDC FOIA office. And in so doing, they have left CDC—an agency subject to FOIA by statute and regulation, *see* 5 U.S.C. §§ 551(1), 552(f)(1), 45 C.F.R. § 5.3 (definition of agency)—with no ability to meet its FOIA obligations in the short-to-medium term, *see supra* Part I.

Defendants previously have offered several responses to justify their unlawful closure of the CDC FOIA office. Their rejoinders were and are unpersuasive, for the reasons CREW already has explained. *See* PI Reply 12-13, 19-21; PI Suppl. Reply 2 n.1. To summarize:

a.    45 C.F.R. § 5.3 does not give Defendants the authority to centralize CDC FOIA office work as a means of streamlining department FOIA operations. *See* PI Reply 12-13; PI Suppl. Reply 2-3 n.1. Their contrary reading of the regulation is flatly incorrect. The plain regulatory text gives OS FOIA only limited "discretion" to process *particular* FOIA requests directed to other HHS

---

[30] That decentralization is consistent with the practice of many other departments, who also intentionally administer their FOIA operations on a decentralized basis so that their components can maintain different FOIA functions tailored to their individual needs. *See, e.g.*, PI Reply 15 n.6; *Chief Freedom of Information Act Officer Report to the Department of Justice for 2025*, U.S. Dep't of Def. (2025), https://tinyurl.com/4kux56kf (discussion in Summary); *Chief FOIA Officer Report*, U.S. Dep't of Transp. (Mar. 2025), https://tinyurl.com/ycp2h9mf (discussion in Introduction).

components—it may do so only "in *certain* circumstances"—not carte blanche to handle *all* such requests for CDC or others. 45 C.F.R. § 5.3 (emphasis added). Nor does it permit OS FOIA to take on any other FOIA work beyond processing, such as managing other components' reading rooms. And the regulation by no means authorizes HHS to dissolve the CDC FOIA office or other ones; rather it and other accompanying regulations explicitly contemplate that those separate FOIA offices will coexist with OS FOIA and separately perform their own functions. *See supra* 41-42; *see also* PI Reply 19 (pointing out that Defendants' invocation of 45 C.F.R. § 5.3 is a post-hoc rationalization); PI Suppl. Reply 2-3 n.1 (pointing out that Defendants' reading of 45 C.F.R. § 5.3 is novel and warrants no deference).

> **b.**    Defendants fail to appreciate the meaningful distinction between the nature of CREW's policy-or-practice and APA claims, and between the forms of relief these different claims properly encompass. *See* PI Opp. 18. Defendants' illegal closure of the CDC FOIA office cannot simply be addressed by requiring Defendants to "assign[] sufficient personnel and resources to timely process CREW's FOIA requests," Am. Compl., Requested Relief ¶ 5—which the Court could order to stop Defendants' FOIA violation, *see* PI Mem. 29-30; *supra* 36. Rather, the only way to fully remedy their brazen attack on the CDC FOIA endeavor is to set aside and enjoin their final decision to render the agency's FOIA office "non-operational." Am. Compl., Requested Relief ¶ 4. That is uniquely APA relief, and the record demonstrates it is warranted here.

> Accordingly, Defendants' prior reliance on FOIA cases that dismiss duplicative APA claims is unpersuasive. *See* PI Opp. 18. Although, in relying on these cases, they have attempted to frame this case as ordinary FOIA litigation, the undisputed facts show it is anything but.

> **c.**    Finally, CREW's APA claim does not seek review of presidential action, so Defendants' attempt to invoke this bar on APA review is unpersuasive. *See* PI Reply 20-21.

### III.    CREW Is Entitled to Summary Judgment on Its Claim in Count III that Defendants Have Failed to Properly Process Its FOIA Requests

In three ways, Defendants have failed to properly process CREW's April 1 CDC FOIA requests.

*First*, Defendants have refused for over three months to issue determinations on any of the five requests and, therefore, to make reasonable efforts to search for responsive records and make responsive and non-exempt ones promptly available. *See* Am. Compl. ¶¶ 13, 15, 43-54, 58-59, 75-77, 79; SOMF ¶¶ 21-25, 32-33, 35-36. As discussed, CREW's requests have been completely neglected. *Second*, Defendants have sought to extend their time to issue determinations, despite lacking any basis to do so. *See* SOMF ¶¶ 33, 35; Goldstein MSJ Decl. ¶ 4. Although Defendants were required under FOIA to issue determinations on CREW's requests by April 30, 20 business days after CREW submitted them, Am. Compl. ¶¶ 13, 43, Defendants in late June wrote to CREW to state that, for two requests, they needed to "automatically extend[]" their response time by "ten additional days" because of "unusual circumstances" under 5 U.S.C. 552 § (a)(6)(B)(i)-(iii), *id.* ¶ 60; *see also, e.g.*, SOMF ¶¶ 33, 35; Goldstein MSJ Decl. ¶ 4. The problem for Defendants is that, under the plain terms of 5 U.S.C. 552 § (a)(6)(B)(i), their extension letters came far too late. *See* Am. Compl. ¶ 14. The provision operates to "extend[]" by 10 working days the 20-working-day "time limits prescribed for" agencies to issue determinations on FOIA requests and appeals. 5 U.S.C. 552 § (a)(6)(B)(i). It therefore does not permit Defendants to retroactively extend their time to issue determinations once the prescribed limit has already passed, as they have sought to do here. *See also* 45 C.F.R. § 5.24(f) (explaining that, for time extensions under 5 U.S.C. 552 § (a)(6)(B), "we will notify you[] *before expiration of the 20-day period to respond* " (emphasis added)). In any event, Defendants' extension gambit lacked any legal force because their letters failed to supply the "date on which a determination is expected to be dispatched." 5 U.S.C. 552 § (a)(6)(B)(i); *see*

*Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 54 (D.D.C. 2016) (same). *Third*, and finally, Defendants have failed to appropriately process the measles-related FOIA request upon which they granted expedited processing. *See* Am. Compl. ¶¶ 17, 44, 58, 78; SOMF ¶¶ 32-33, 36. Despite recognizing that the request warrants expedition because "there is an urgency to inform the public concerning actual or alleged Federal activity," Ex. 1 to PI Opp., ECF No. 18-2 at 13, they have not even informed CREW whether they intend to comply with the request. For all these reasons, CREW is entitled to summary judgment in its favor on Count I.

To be clear, CREW is not at this point claiming that it is entitled to the ultimate production of any responsive, non-exempt records. Rather, CREW is claiming that it is entitled to judicial supervision over Defendants' dilatory efforts to handle its requests. CREW respectfully requests that the Court order Defendants to provide concrete plans and deadlines for issuing determinations, carrying out searches, and reviewing and producing documents according to appropriate processing and production rates—as it would in the ordinary course—and in so doing to put an end to Defendants' delay and apparent gamesmanship in handling the FOIA requests.[31]

## CONCLUSION

For the foregoing reasons, the Court should grant CREW's motion for summary judgment.

Date: July 17, 2025                                  Respectfully Submitted,

                                                     */s/ Yoseph T. Desta*
                                                     Yoseph T. Desta (D.C. Bar No. 90002042)
                                                     Kayvan Farchadi (D.C. Bar No. 1672753)

---

[31] Defendants have indicated they may resist even this modest relief and argue that CREW failed to exhaust its administrative remedies. *See* Hr'g Tr. 54-55. Not so. Defendants failed to issue determinations on any of the FOIA requests within 20 business days. After this point, CREW constructively exhausted its administrative remedies, appropriately amended its complaint as of right, and added a claim on the requests. Therefore, CREW's claim is plainly ripe. *See, e.g.*, *Brown v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-3669, 2024 WL 4253121, at *3-4 (D.D.C. Sept. 20, 2024); *Power The Future v. U.S. Dep't of State*, No. 24-cv-346, 2025 WL 343175, at *5 (D.D.C. Jan. 30, 2025) (same).

Alex Goldstein (D.C. Bar No. 90005086)
Chun Hin Tsoi (D.C. Bar No. 90017713)
Kalyn Mizelle McDaniel (D.C. Bar No.
  90027120)
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics in
  Washington
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
ydesta@citizensforethics.org
kfarchadi@citizensforethics.org
agoldstein@citizensforethics.org
jtsoi@citizensforethics.org
kmizellemcdaniel@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*