UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

       Plaintiff,

   v.

CENTERS FOR DISEASE CONTROL AND
PREVENTION, et al.,

       Defendants.

Civil Action No. 25-1020 (TJK)

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND PARTIAL CROSS-MOTION FOR SUMMARY JUDGMENT AND
<u>MOTION TO DISMISS WITH A MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction .................................................................................................................. 1

Background ................................................................................................................... 3

    I.      Procedural History ........................................................................................ 3

    II.     Statement of Facts ......................................................................................... 4

          A.     Processing Plaintiff's Five FOIA Requests ............................................. 4

          B.     Defendants' Modernization, Centralization, and Streamlining of FOIA.... 5

Legal Standards ............................................................................................................. 6

Argument ...................................................................................................................... 9

    I.      Plaintiff Fails to State a Viable APA Claim ................................................. 9

          A.     CREW Lacks Standing for Its APA Claim Because the Terminations of Employees in CDC's FOIA Office Are Injuries to Third Parties ............... 9

          B.     FOIA Provides an Adequate Remedy, Precluding the APA Claim. ......... 11

          C.     Count III Does Not Challenge Final Agency Action ............................... 16

    II.     Plaintiff Fails to State a Claim That the Agency is Violating Its FOIA Regulations, or, in the Alternative, Defendants Are Entitled to Summary Judgment ...................................................................................................... 19

          A.     Standard of Review for FOIA Policy and Practice Claims ...................... 19

          B.     Defendants Have Not Violated Agency Regulations ............................... 23

    III.    The Record Shows Defendants Exercising "Good Faith and Due Diligence" To Comply with Their FOIA Responsibilities, Entitling Them to Summary Judgment on Count II's FOIA Policy and Practice Claim ................................................... 38

Conclusion ................................................................................................................... 45

# TABLE OF AUTHORITIES

**Cases**                                                                                             **Page(s)**

*Am. Butterfly Ass'n v. Wolf,*
   977 F.3d 1244 (D.C. Cir. 2020) ............................................................................ 8

*Am. Fed'n of Gov't Emps. v. Trump,*
   Civ. A. No. 25-03698, 2025 WL 1482511 (N.D. Cal. May 22, 2025) .................................... 19

*Am. Hist. Ass'n v. Nat'l Archives & Recs. Admin.,*
   516 F. Supp. 2d 90 (D.D.C. 2007) ...................................................................... 27

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011) ........................................................................ 8

*Anderson* v. *Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................. 8, 9

*Arcos Sanchez v. Att'y Gen.,*
   997 F.3d 113 (3d Cir. 2021) ........................................................................ 25, 28

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 6, 7

*\*Auer v. Robbins,*
   519 U.S. 452 (1997) ............................................................................... 26, 35

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................... 7

*\*Bennett v. Spear,*
   520 U.S. 154 (1997) .................................................................................. 16

*\*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ............................................................................ 2, 11, 12

*Brayton v. Off. of the U.S. Trade Representative,*
   641 F.3d 521 (D.C. Cir. 2011) .......................................................................... 9

*Evans v. Bureau of Prisons,*
   951 F.3d 578 (D.C. Cir. 2020) ......................................................................... 9

*\*Cabezas v. FBI,*
   109 F.4th 596 (D.C. Cir. 2024) ....................................................................... 39

*Cause of Action Inst. v. Eggleston,*
   224 F. Supp. 3d 63 (D.D.C. 2016) .................................................................... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................ 8

*Center for the Study of Services v. Department of Health & Human Services*,
874 F.3d 287 (D.C. Cir. 2017) ............................................................. 22, 42, 43

*Chase Bank USA, N.A. v. McCoy*,
562 U.S. 195 (2011) ...................................................................................... 35

*Chaverra v. Immigr. & Customs Enf't*,
Civ. A. No. 18-289 (JEB), 2018 WL 4762259 (D.D.C. Oct. 2, 2018) ................... 13

*Cobell v. Kempthorne*,
455 F.3d 301 (D.C. Cir. 2006) ........................................................................ 16

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
143 F.4th 518 (D.C. Cir. 2025) .................................................................. 25, 32

*Davis v. FEC*,
554 U.S. 724 (2008) ...................................................................................... 37

*Citizens for Resp. and Ethics in Wash. v .Dep't of Just.*,
846 F.3d 1235 (D.C. Cir. 2017) ............................................................... passim

*Doe v. SEC*,
28 F.4th 1306 (D.C. Cir. 2022) ............................................................ 26, 35, 36

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .......................................................................................... 10

*Citizens for Resp. and Ethics in Wash. v .Dep't of Just. v. FEC*,
711 F.3d 180 (D.C. Cir. 2013) .......................................................... 19, 20, 21, 45

*Feinman v. FBI*,
713 F. Supp. 2d 70 (D.D.C. 2010) .................................................................. 15

*Fund for Animals, Inc. v. Bureau of Land Mgmt.*,
460 F.3d 13, 19 (D.C. Cir. 2006) .................................................................... 17

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ........................................................................ 13

*Goland v. CIA*,
607 F.2d 339 (D.C. Cir. 1978) ............................................................ 21, 28, 45

*Greenpeace, Inc. v. Dep't of Homeland Sec.*,
311 F. Supp. 3d 110 (D.D.C. 2018) ................................................................ 13

*Grosdidier v. Chairman, Broad. Bd. of Governors,*
  560 F.3d 495 (D.C. Cir. 2009) ................................................................ 10

*Gustave-Schmidt v. Chao,*
  226 F. Supp. 2d 191 (D.D.C. 2002) ........................................................ 7

*Harvey v. Lynch,*
  123 F. Supp. 3d 3 (D.D.C. 2015) ........................................................ 12, 14

*Indep. Equip. Dealers Ass'n v. EPA,*
  372 F.3d 420 (D.C. Cir. 2004) ................................................................ 17

*Info. Ctr. v. Nat'l Sec. Agency,*
  795 F. Supp. 2d 85 (D.D.C. 2011) .......................................................... 15

*Jerome Stevens Pharm., Inc. v. FDA,*
  402 F.3d 1249 (D.C. Cir. 2005) ............................................................... 8

*John Doe Co. v. Consumer Fin. Prot. Bureau,*
  849 F.3d 1129 (D.C. Cir. 2017) ............................................................. 37

*Johnson v. Becerra,*
  111 F.4th 1237 (D.C. Cir. 2024) ....................................................... 10, 37

*Johnson v. Exec. Off. for U.S. Att'ys,*
  310 F.3d 771 (D.C. Cir. 2002) ............................................................... 13

*\*Jud. Watch, Inc. v. Dep't of Homeland Sec.,*
  895 F.3d 770 (D.C. Cir. 2018) ........................................................ passim

*\*Kennecott Utah Copper Corp. v. Dep't of Interior,*
  88 F.3d 1191 (D.C. Cir. 1996) .......................................................... 37, 38

*\*Kisor v. Wilkie,*
  588 U.S. 558 (2019) ........................................................ 24, 26, 35, 36

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ............................................................................. 7

*Kowalski v. Tesmer,*
  543 U.S. 125 (2004) ............................................................................ 10

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................. 7

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ............................................................................ 17

*McMahon v. New York*,
    145 S. Ct. 2643 (2025) ................................................................................. 18

*Muttitt v. Dep't of State*,
    926 F. Supp. 2d 284 (D.D.C. 2013) ....................................................... 21, 23

*Muttitt v. U.S. Cent. Command*,
    813 F. Supp. 2d 221 (D.D.C. 2011) ....................................................... 14, 15

*Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n*,
    983 F.3d 498 (D.C. Cir. 2020) ..................................................................... 26

*Nat'l Sec. Couns. v. CIA*,
    898 F. Supp. 2d 233 (D.D.C. 2012) ............................................................. 14

*Nat'l Sec. Couns. v. CIA*,
    969 F.3d 406 (D.C. Cir. 2020) ..................................................................... 14

*Nat'l Treasury Emps. Union v. Vought*,
    774 F. Supp. 3d 1 (D.D.C. 2025) ................................................................. 18

*Nat'l Treasury Emps. Union v. Vought*,
    No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025) ........................ 18

*New York v. Kennedy*,
    Civ. A. No. 25-0196, 2025 WL 1803260 (D.R.I. July 1, 2025) ................... 18

*New York v. McMahon*,
    Civ. A. No. 25-10601, 2025 WL 1463009 (D. Mass. May 22, 2025) ........... 18

*Newport Aeronautical Sales v. Department of Air Force*,
    684 F.3d 160 (D.C. Cir. 2012) ..................................................................... 22

*Noble v. Nat'l Ass'n of Letter Carriers*,
    103 F.4th 45 (D.C. Cir. 2024) ...................................................................... 26

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ....................................................................................... 17

*\*Open Am. v. Watergate Special Prosecution Force*,
    547 F.2d 605 (D.C. Cir. 1976) ................................................. 23, 43, 44, 45

*Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*,
    497 F.3d 337 (3d Cir. 2007) ........................................................................ 25

*Papasan v. Allain*,
    478 U.S. 265 (1986) ....................................................................................... 7

*Payne Enters., Inc. v. United States,
    837 F.2d 486 (D.C. Cir. 1988) ................................................................ passim

Powers v. Ohio,
    499 U.S. 400 (1991) .............................................................................. 10

Privacy Info. Ctr. v. IRS,
    261 F. Supp. 3d 1 (D.D.C. 2017) ........................................................... 13

Pub. Citizen, Inc. v. Lew,
    127 F. Supp. 2d 1 (D.D.C. 2000) ........................................................... 14

Ray v. Fed. Bureau of Prisons,
    811 F. Supp. 2d 245 (D.D.C. 2011) ....................................................... 13

Rhea Lana, Inc. v. Dep't of Lab.,
    824 F.3d 1023 (D.C. Cir. 2016) ............................................................. 16

*SafeCard Servs. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) .......................................................... 9, 39

Sanchez-Mercedes v. Bureau of Prisons,
    453 F. Supp. 3d 404 (D.D.C. 2020) ......................................................... 8

Soundboard Ass'n v. Fed. Trade Comm'n,
    888 F.3d 1261 (D.C. Cir. 2018) ............................................................. 28

Sykes v. Dudas,
    573 F. Supp. 2d 191 (D.D.C. 2008) ......................................................... 7

Talk Am., Inc. v. Mich. Bell Tel. Co.,
    564 U.S. 50 (2011) ........................................................................... 34, 35

Taylor v. Clark,
    821 F. Supp. 2d 370 (D.D.C. 2011) ......................................................... 7

Tereshchuk v. Bureau of Prisons,
    Civ. A. No. 14-5278, 2015 WL 4072055 (D.C. Cir. June 29, 2015) ........... 13

Thunder v. U.S. Parole Comm'n,
    133 F. Supp. 3d 5 (D.D.C. 2015) ........................................................... 29

Trump v. Am. Fed'n of Gov't Emps.,
    145 S. Ct. 2635 (2025) .......................................................................... 19

Turkiye Halk Bankasi A.S. v. United States,
    598 U.S. 264 (2023) .............................................................................. 32

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) ................................................................... 27

*United States v. Fausto*,
   484 U.S. 439 (1988) ................................................................... 10

*United States v. Libby*,
   429 F. Supp. 2d 27 (D.D.C. 2006) ..................................... 28, 31

*\*Wash. Lawyers' Comm. for C.R. & Urb. Affs. v. Dep't of Just.*,
   145 F.4th 63 (D.C. Cir. 2025) ...................................... 3, 21, 39

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ................................................................... 17

*Widakuswara v. Lake*,
   779 F. Supp. 3d 10 (D.D.C. 2025) ........................................ 18

*Wright v. Dep't of Health & Hum. Servs.*,
   Civ. A. No. 22-1378 (RC), 2022 WL 18024624 (D.D.C. Dec. 30, 2022) ................................ 25

**Statutes**

5 U.S.C. § 551(13) ............................................................................. 17

5 U.S.C. § 552 (a)(3)(A) ......................................................... 25, 35

5 U.S.C. § 552(a)(4)(B) ................................................................... 12

5 U.S.C. § 552(a)(6)(A)(i) .............................................................. 19

5 U.S.C. § 552(a)(6)(C)(i) .............................................................. 20

*\*5 U.S.C. § 704 ........................................................................... passim

5 U.S.C. § 706(2)(A) ........................................................................ 11

Pub. L. No. 114-185 ........................................................................ 35

U.S.C. § 552(a)(2) ............................................................................ 37

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................... 1, 8

Fed. R. Civ. P. 12(b)(6) ............................................................... 1, 6

Fed. R. Civ. P. 56(a) ......................................................................... 8

**Regulations**

*45 C.F.R. § 5.3 ................................................................................................ passim
45 C.F.R. § 5.2(b) ............................................................................................ 33, 37
45 C.F.R. § 5.23 ..................................................................................................... 33
45 C.F.R. § 5.23(a) ................................................................................................ 31
45 C.F.R. § 5.4 ....................................................................................................... 25
45 C.F.R § 75.322(e) ............................................................................................. 38

**Other Authorities**

1A Sutherland Statutory Construction § 31:6 ........................................................ 25
*Executive Order 14,210 ............................................................................. 33, 34, 39

The Centers for Disease Control and Prevention ("CDC"), Jim O'Neill, in his official capacity as Acting Director of the CDC, the Department of Health and Human Services ("Agency" or "HHS"), and Robert F. Kennedy, Jr. in his official capacity as Secretary of Health and Human Services (the "Secretary," and all collectively, "Defendants"),[1] by and through undersigned counsel, respectfully move to dismiss Count II and Count III under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment in their favor on Count II and Count III under Rule 56 and in opposition to the motion for summary judgment (ECF No. 33, "Pl. MSJ") filed by Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW").

## INTRODUCTION

CREW wants to turn its ordinary dissatisfaction with FOIA responses into Court-ordered restructuring and judicial supervision of a cabinet-level agency. Dissatisfied with responses to its five FOIA requests, CREW sued Defendants in a three-count Complaint. *See* Am. Compl. (ECF No. 31). Count I alleges that Defendants have failed to conduct an adequate search in response to its five FOIA requests and release responsive, non-exempt records, particularly records pertaining to the measles-related FOIA request. *Id.* ¶¶ 74–81. CREW has dressed up these ordinary FOIA claims with bells and whistles. The bells are Count II—a FOIA policy and practice claim. *Id.* ¶¶ 82–87. The whistles are Count III—an Administrative Procedure Act ("APA") claim alleging the same. *Id.* ¶¶ 88–94. CREW cannot use Counts II and III to "jump the line" ahead of other FOIA requesters.[2]

---

[1]  Pursuant to Rule 25(d), the CDC's Acting Director is automatically substituted for former Acting Director of the CDC Susan Monarez.

[2]  Defendants' citations to page numbers are to those automatically generated by this Court's electronic CM/ECF filing system.

Only Counts II and III are at issue in Plaintiff's motion for summary judgment and Defendants' cross-motion to dismiss or, in the alternative, for summary judgment. While Plaintiff moved for summary judgment on all counts (ECF No. 33), the Court granted the Parties' joint motion to stay briefing on Count I until further order of the Court. *See* Min. Order Aug 27, 2025.

Count III fails to state a claim under the APA because the FOIA provides an "adequate remedy" precluding APA review. As CREW knows, the "FOIA offers CREW precisely the kind of 'special and adequate review procedure[ ]' that Congress immunized from 'duplic[ative]' APA review." *CREW v. Dep't of Just.*, 846 F.3d 1235, 1245–46 (D.C. Cir. 2017) (alterations in original; quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)); *see also* 5 U.S.C. § 704. CREW has no injury and thus lacks standing to raise what practically speaking are employment-law claims on behalf of CDC FOIA employees subject to a reduction in force. Count III also fails to state an APA claim because Plaintiff has not pleaded final agency action.

Count II and Count III fail to plead both FOIA policy and practice and APA claims for alleged violations of agency FOIA regulations. On the contrary, the traditional tools of regulatory interpretation—including the plain text, context, regulatory structure, and agency practice—permit Defendants to consolidate the CDC's FOIA functions within the head FOIA office for the Agency: the FOIA Office of the Office of the Assistant Secretary for Public Affairs ("Agency FOIA Office" or "OS-FOIA").

Moreover, the record entitles Defendants to summary judgment on Count II's FOIA policy and practice claims. Plaintiffs have failed to meet their burden to make the extraordinary showing that there is no genuine dispute of material fact that this case represents the "rare instance of agency delinquency," *CREW*, 846 F.3d at 1246, for which the FOIA provides for prospective relief against "an agency policy or practice" that "impair[s] [a] party's lawful access to information in the

future." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (emphasis omitted). Instead, the record shows Defendants are engaging in "good faith effort[s] and due diligence" to process FOIA requests in accordance with the law. *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 895 F.3d 770, 781-82 (D.C. Cir. 2018) (quotation marks omitted). At the micro-level, Defendants are processing Plaintiff's five at-issue FOIA requests. Defs.' Stmt. of Mat. Facts ("Def. Stmt.") ¶¶ 60–91; Fourth Holzerland Decl. ¶¶ 16–47. At the macro-level, Defendants are modernizing, centralizing, and streamlining the Agency's and CDC's FOIA responsibilities and functions. Def. Stmt. ¶¶ 8–10; Fourth Holzerland Decl. ¶ 9. Thus, Defendants' conduct does not show "a lack of due diligence and" that the agency "is so delinquent or recalcitrant as to warrant injunctive relief." *Wash. Lawyers' Comm. for C.R. & Urb. Affs. v. Dep't of Just.*, 145 F.4th 63, 69 (D.C. Cir. 2025) (citing *Jud. Watch*, 895 F.3d at 783-84). Likewise, the record entitles Defendants to summary judgment on Count III's APA claims.

## BACKGROUND

### I.    <u>Procedural History</u>

CREW submitted five FOIA requests to CDC on April 1, 2025. Am. Compl. (ECF No. 31) ¶ 43. CREW sued three days later, filing its Complaint on April 4, 2025. *See* Compl. (ECF No. 1). The first sought records relating to CDC's decision not to release a measles vaccination assessment. *Id.* ¶ 44. The other four sought records relating to the transfer of the functions of the CDC's FOIA office to the Agency and the involvement of the Department of Government Efficiency ("DOGE") in that decision. *Id.* ¶¶ 45–48. Each request sought expedited processing. *Id.* ¶ 44. CREW then moved for a preliminary injunction and partial summary judgment. *See* ECF No. 13. The Court held the summary judgment motion in abeyance and scheduled briefing on the motion for preliminary injunction. *See* Mem. Op. (ECF No. 29) at 5. During briefing, the Agency

FOIA Office granted expedited processing on the measles-focused request and denied expedited processing on the remaining four requests.  *Id.* at 5-6.

Ultimately, the Court denied Plaintiff's motion for preliminary injunction on June 4, 2025, holding that Plaintiff failed to make the necessary factual showing.  Order (ECF No. 28); Mem. Op. (ECF No. 29).  The Court found CREW failed to establish irreparable harm to entitle it to emergency injunctive relief.  Mem. Op. at 20.  The Court also remarked, "the record shows that HHS is doing *something* to process FOIA requests as part of its centralization effort."  Mem. Op. at 19 (emphasis in original; citing Holzerland Supp. Decl. ¶¶ 7–12, 17–20, 22–25).

Plaintiff filed its operative First Amended Complaint on June 25, 2025 (ECF No. 31), and its motion for summary judgment on July 17, 2025 (ECF No. 33).  The Court denied Defendants' motion to stay dispositive briefing on all counts while Defendants processed Plaintiff's five FOIA requests.  Min. Order Aug. 19, 2025.  That said, the Court later granted the Parties' joint motion to stay dispositive briefing on Count I—which alleges that Defendants have failed to conduct an adequate search in response to Plaintiff's five FOIA requests and release responsive, non-exempt records.  Min. Order Aug. 27, 2025.

## II.    Statement of Facts

For the sake of brevity, Defendants refer the Court to their Statement of Facts filed herewith.  Here, Defendants provide only a summary of the most salient facts to provide context for their legal arguments.

### A.    Processing Plaintiff's Five FOIA Requests

As the record shows, processing Plaintiff's five at-issue FOIA requests has proceeded at the Agency FOIA Office.  *See* 3d Holzerland Decl. ¶ 50.  The Agency FOIA Office is "actively engaged in the processing of Plaintiff's five (5) FOIA requests at issue in this matter."  *Id.*  The Agency FOIA Office "has initiated searches on all five (5) requests, identified potentially

responsive records, and has continued to assess and address various issues that have arisen during the course of processing." *Id.* Responses to the requests are forthcoming. *See* Def. Stmt. ¶¶ 60–91; 4th Holzerland Decl. ¶¶ 16–47 (describing detailed information about the processing including response, identification of custodians, timing of the search, number of potentially responsive records). Indeed, as to one request, the Agency FOIA Office "plans to process all responsive records received to date and issue a response to Plaintiff on or before September 15, 2025, via its first interim release." 3d Holzerland Decl. ¶ 32. As to the other four requests, the Agency FOIA Office "plans to update Plaintiff on or before September 30, 2025, as to the status of the search for responsive records and anticipated processing rate, to the extent responsive records are located." *Id.* ¶¶ 27, 41, 46. The parties then will provide a joint status report every forty-five days, beginning on November 4, 2025, to apprise the Court on the status of the Agency's processing of CREW's remaining four FOIA requests. Min. Order Aug. 27, 2025; Jt. Mot. (ECF No. 42).

## B.    Defendants' Modernization, Centralization, and Streamlining of FOIA

Defendants have made significant progress in implementing reforms for handling FOIA at the Agency. *See* Def. Stmt. ¶¶ 8–28, 36–59; *infra* § III. In summary, on April 1, 2025, the agency began reorganizing its FOIA operations pursuant to at least three things: "Executive Order 14210 aimed at workforce optimization"; "broader departmental goals and modernization efforts, including Secretary Kennedy's 'Make America Healthy Again' initiative,"; and "in compliance with 45 C.F.R. §5.3 which expressly provides that 'in certain circumstances and at [its] discretion' the [Agency FOIA Office] may process FOIA requests involving other HHS divisions." 3d Holzerland Decl. ¶ 8. While the Agency's FOIA administration was historically decentralized, the Agency on April 1, 2025, began "a reorganization into a more centralized system." *Id.* ¶¶ 7-8. These reorganizations—in response to an executive order and consistent with the Secretary's

reform initiatives and Agency' regulations—"allowed [the Agency] to respond effectively to shifting resource demands, evolving workloads, and situations such as staff reductions, reorganizations, or for other strategic reasons to optimize public release of records." *Id.* ¶ 8.  One of these reforms involved consolidating the CDC FOIA Office's former responsibilities into the Agency' head FOIA office.  *Id.*

The Agency continues to implement its reforms to processing FOIA requests directed to the CDC.  "[B]y May 6, 2025, [the Agency FOIA Office]—working with CDC Information Technology staff—resolved outstanding" issues accessing computer systems

> previously noted in [Mr. Holzerland's] May 1 filing.  OS-FOIA now has access to the former CDC-FOIA database, tracking system, and e-mail addresses, and is actively integrating the former CDC-FOIA workload into its own operations.  OS-FOIA continues to process both pending and new FOIA requests in accordance with FOIA and HHS regulations, including required tracking protocols and the general requirement of first-in, first-out.

*Id.* ¶ 9 (citing Holzerland Supp. Decl.).  With the CDC's FOIA operation now consolidated and centralized, the Agency FOIA Office "processes requests in the order they are received within each processing track (e.g., simple, complex, expedited) and makes every effort to move them forward as efficiently as possible under the circumstances." *Id.* ¶ 10.

There is no requirement that government be ossified and unchanging.  Responding to Plaintiff's five FOIA requests is a part of the Agency's reforms to transition into a more modern, centralized FOIA system.  Searches, responses, processing, and interim productions for Plaintiff's requests are in progress as noted above, providing proof of Defendants' progress.

## LEGAL STANDARDS

Rule 12(b)(6) governs dismissal of a case for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All facts pleaded therein are accepted as true, and all reasonable inferences are viewed in the light most favorable to the plaintiff. *Sykes v. Dudas*, 573 F. Supp. 2d 191, 198 (D.D.C. 2008). However, a district court is not required to accept as true conclusory allegations or unwarranted factual deductions. *Id.* at 198-99. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Likewise, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Accordingly, a plaintiff must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 668 (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)). Therefore, the focus is on the language in the complaint and whether the complaint sets forth sufficient factual allegations to plausibly support Plaintiff's claims for relief. In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (internal citations omitted).

The Court must also "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (cleaned up). Federal courts are courts of limited jurisdiction and the law "presume[s]" that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Lujan*

*v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims."  *Sanchez-Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020).  "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Id.*  (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)).  The court may consider materials outside the pleadings in determining whether it has jurisdiction.  *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  "If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim."  *Sanchez-Mercedes*, 453 F. Supp. 3d at 414.  A "dismissal for want of subject-matter jurisdiction can only be without prejudice[.]"  *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

Summary judgment is appropriate when the pleadings and the evidence demonstrate that there "is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" when it "might affect the outcome of the suit under the governing law."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding whether a genuine issue of material fact exists, the Court must make all inferences in the non-movant's favor.  *Anderson* , 477 U.S. at 255.  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. *Celotex*, 477 U.S. at 322.  "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50.

The "vast majority of FOIA cases can be resolved on summary judgment." *Evans v. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (quoting *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment may be granted on the basis of an agency's declaration if it contains "reasonable specificity of detail rather than merely conclusory statements" and it is "not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.* Agency declarations "are accorded a presumption of good faith." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

## ARGUMENT

### I.    Plaintiff Fails to State a Viable APA Claim

#### A.    CREW Lacks Standing for Its APA Claim Because the Terminations of Employees in CDC's FOIA Office Are Injuries to Third Parties

To the extent Plaintiff disguises an employment-based claim for the reduction-in-force of CDC's former FOIA staff as a FOIA policy and practice claim in APA clothing, Plaintiff lacks standing. Part of Count III alleges APA violations because Defendants "remov[ed] the CDC FOIA Officer" and "clos[ed] the CDC FOIA office." Am. Compl. (ECF No. 31) ¶¶ 90, 90.f. As relief, Plaintiff seeks a declaration that the closure of that office violated the law and requests that the Court "set aside the closure decision" and "[p]ermanently enjoin Defendants from . . . enforcing any directive that renders the CDC FOIA office non-operational." *Id.* at 26. While not explicit, Plaintiff implicitly seeks an order that Defendants re-hire these twenty-three terminated employees.

CREW lacks standing for this because CREW and its employees were not terminated as part of CDC's reduction-in-force process. Article III standing requires that a plaintiff show an

"injury in fact," "fairly traceable to the challenged action of the defendant," and it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision." *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024) (alteration in original, citation omitted).  In general, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (citation omitted).  The employment of these individuals in the CDC's FOIA Office is their injury, not CREW's.  And CREW has not (and cannot) plead that it meets the requirements for third-party standing: (1) that it has "suffered an injury in fact"; (2) "ha[s] a close relation to the third party"; and (3) there "exist[s] some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (citation omitted).

Notably, the terminated federal employees themselves could not bring APA claims to challenge the reduction-in-force either.  Instead, they must bring those claims through the Civil Service Reform Act's ("CSRA") "framework for evaluating adverse personnel actions against [federal employees]" before the Merit Systems Protection Board and subsequent judicial review in the Federal Circuit.  *United States v. Fausto*, 484 U.S. 439, 671 (1988) (citation omitted, alteration in original).  "[E]xtrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012).  And because "the CSRA is comprehensive and exclusive[,]" *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) (citing 5 U.S.C. §§ 2302(a)(2)(C)(ii), 7511(b)(8)), no APA claim would be available to those employees.  *See* 5 U.S.C. § 704 (limiting APA review to final agency action "for which there is no other adequate remedy in a court").

Lastly, to the extent CREW's APA claim alleges that the reduction-in-force interferes with the responses to their FOIA requests, that claims fails because FOIA provides an adequate remedy

precluding APA review, *see infra* § I.A.2, and, in any event, Count III does not challenge a final agency action. *See infra* § I.A.3.

### B.    FOIA Provides an Adequate Remedy, Precluding the APA Claim.

Count III asserts a claim under the APA. Am. Compl. (ECF No. 31) ¶¶ 88–94. Although the APA was enacted to "provid[e] a broad spectrum of judicial review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988), such review is only permissible if "there is no other adequate remedy" at law. 5 U.S.C. § 704. As CREW well knows, the "FOIA offers CREW precisely the kind of 'special and adequate review procedure[ ]' that Congress immunized from 'duplic[ative]' APA review." *CREW*, 846 F.3d at 1245–46 (quoting *Bowen*, 487 U.S. at 903) (alterations in original). Count III alleges identical violations of law as Count II's FOIA policy and practice claim, in particular, sections of the FOIA and the Agency' FOIA regulations. *Compare* Am. Compl. (ECF No. 31) ¶¶ 84.a–84.f (Count II), *with* ¶¶ 90.a-90.f (Count III). Plaintiff seeks an order to "set aside" the "closure of the CDC FOIA office." Pl. Prop. Order (ECF No. 33-12). Because the FOIA provides an adequate remedy for the APA claim, the APA claim is barred.

Judicial review under the APA is limited. Under the APA, a court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be," among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The Act does not apply when "statutes preclude judicial review" or when "agency action is committed to agency discretion by law." *Id.* § 701(a). Judicial review is further limited to "[a]gency action made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court[.]" *Id.* § 704.

- 11 -

The limitation on judicial review in "[s]ection 704 reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *CREW*, 846 F.3d at 1244 (quoting *Bowen*, 487 U.S. at 903). "When considering whether an alternative remedy is adequate and therefore preclusive of APA review, we look for clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *Id.* (citation and internal quotation marks omitted). This examination of congressional intent includes considering the existence of "an independent cause of action or an alternative review procedure" and "[a]n alternative that provides for *de novo* district-court review of the challenged agency action[.]" *Id.* at 1245 (citations omitted).

Concluding that the FOIA provides an adequate remedy such that review under the APA is barred, the D.C. Circuit explained:

> By these lights, we have little doubt that FOIA offers an "adequate remedy" within the meaning of section 704, as it exhibits all of the indicators we have found to signify Congressional intent. FOIA contains an express private right of action and provides that review in such cases shall be "*de novo*." 5 U.S.C. § 552(a)(4)(B). As opposed to the "uncertain" and "doubtful" remedies we have rejected as insufficient to preclude APA review, our precedent establishes that a plaintiff in CREW's position may bring a FOIA claim to enforce the reading-room provision. Indeed, in FOIA Congress established "a carefully balanced scheme of public rights and agency obligations designed to foster greater access to agency records than existed prior to its enactment." The creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired. Considered together, FOIA offers [the plaintiff] precisely the kind of "special and adequate review procedure[ ]" that Congress immunized from "duplic[ative]" APA review.

*Id.* at 1245-46 (other citations omitted, alterations in original). Accordingly, the D.C. Circuit held "FOIA offers an 'adequate remedy' within the meaning of section 704 such that CREW's APA claim is barred." *Id.* at 1246 (quoting 5 U.S.C § 704); *accord Harvey v. Lynch*, 123 F. Supp. 3d 3, 7–8 (D.D.C. 2015) ("[C]ourts in this Circuit have uniformly concluded that they lack jurisdiction

over APA claims that seek remedies available under FOIA." (cleaned up)); *Chaverra v. Immigr. & Customs Enf't*, Civ. A. No. 18-289 (JEB), 2018 WL 4762259, at *3 (D.D.C. Oct. 2, 2018) (quoting *Elec. Privacy Info. Ctr. v. IRS*, 261 F. Supp. 3d 1, 12 (D.D.C. 2017) ("There is 'little doubt that FOIA offers an adequate remedy within the meaning of section 704,' . . . when litigants seeks to 'gain access to . . . records.'" (alterations in original))).

As the D.C. Circuit did with a prior APA claim brought by CREW in 2017, 846 F.3d at 1235, this Court should dismiss CREW's APA claim here for failure to state claim. Numerous courts confronted with similar claims have dismissed FOIA claims in APA clothing as "barred." *See Tereshchuk v. Bureau of Prisons*, Civ. A. No. 14-5278, 2015 WL 4072055, at *1 (D.C. Cir. June 29, 2015); *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 249 (D.D.C. 2011) ("As a general rule, the FOIA is the exclusive remedy for obtaining improperly withheld agency records." (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 777 (D.C. Cir. 2002)); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 126 (D.D.C. 2018) (dismissing APA claim for failure to state a claim because "FOIA offers an 'adequate remedy'").

The FOIA's remedy is adequate even though the APA would not provide identical relief. As the D.C. Circuit held, "despite some mismatch between the relief sought and the relief available, FOIA offers an 'adequate remedy' within the meaning of section 704 such that CREW's APA claim is barred." *CREW*, 846 F.3d at 1246 (quoting 5 U.S.C § 704). The alternative remedy "need not provide relief identical to relief under the APA, so long as it offers relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (internal citations omitted). Similarly, it need not be "as effective as an APA lawsuit against the regulating agency" to qualify as "adequate." *Id.* at 525. Accordingly, Plaintiff has no viable APA claim.

- 13 -

Plaintiff disagrees, contending that "APA review is available because APA relief would provide CREW with a different genre of remedy from FOIA remedies." Pl. Mem. (ECF No. 35-1) at 46 (citation modified). Plaintiff fails to explain why. And a FOIA policy and practice claim can provide adequate relief. *CREW*, 846 F.3d at 1246. Here, Count III's APA claim overlaps with Count II's FOIA policy and practice claim, as Plaintiff concedes. Alleging violations of the Agency' regulations that implement the FOIA, CREW argues that "Defendants' violation of these regulations, laid out in the following analysis in this section, supports CREW's policy-or-practice claim as well." Pl. Mem. (ECF No. 35-1) at 48 n.28. Plaintiff has reiterated that "CREW's policy-or-practice and APA claims are linked, . . . address[ing] overlapping issues[.]" Resp. to Mot. Stay (ECF No. 39). They contend that "the only way to fully remedy [Defendants'] brazen attack on the CDC FOIA endeavor is to set aside and enjoin their final decision to render the agency's FOIA office 'non-operational.'" Pl. Mem. (ECF No. 35-1) at 50. Despite arguing that they are entitled to summary judgment on Count III's APA claim (*id.* at 45–50), Plaintiff's arguments run into settled law. "Courts in this circuit have [ ] uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA." *Cause of Action Inst. v. Eggleston*, 224 F. Supp. 3d 63, 75 (D.D.C. 2016) (internal quotation marks and citations omitted), *abrogated on other grounds by Jud. Watch*, 895 F.3d at 777–78.

Trying to thread the needle on Count III's APA claim, Plaintiff cites three district court cases which all precede *CREW*, 846 F.3d at 1235. *See* Pl. Mem. (ECF No. 35-1) at 47 (citing *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 229 (D.D.C. 2011); *Pub. Citizen, Inc. v. Lew*, 127 F. Supp. 2d 1, at 8-9 (D.D.C. 2000); and *Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 266 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020) (on appeal, not discussing APA claims)). To the extent any of these cases stand for the proposition that the FOIA is an inadequate remedy

barring an APA claim (and none do), the later-in-time D.C. Circuit precedent in *CREW*, 846 F.3d at 1235, abrogates those holdings because it held that "FOIA offers an 'adequate remedy' within the meaning of section 704 such that CREW's APA claim is barred."  *CREW*, 846 F.3d at 1246 (quoting 5 U.S.C § 704).  And even one of Plaintiff's cited cases contradicts its claim: "The Court finds that APA relief is foreclosed here because the Court concludes that in this case—where a plaintiff challenges an alleged pattern and practice of violating procedural requirements of FOIA in connection with the processing of the plaintiff's FOIA requests—the Court has the power under FOIA and *Payne* to provide the requested declaratory and injunctive remedies."  *Muttitt*, 813 F. Supp. 2d at 229.

FOIA still provides an adequate remedy even though Plaintiff also alleges violations of the Agency's FOIA regulations.  As explained,

> The plaintiff asserts that the cases in which APA claims have been dismissed from FOIA suits are distinguishable from the instant situation, since the plaintiff here is asserting an APA violation that stems not from failure to disclose documents responsive to its FOIA request, but rather from the [agency]'s failure to abide by its own regulations. This distinction is not persuasive.  The plaintiff is requesting the same relief for its APA claim that it is requesting for its FOIA claims[.]

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 795 F. Supp. 2d 85, 96 (D.D.C. 2011) (dismissing APA claim because FOIA provided an adequate remedy).  As one court considering a plaintiff's APA and FOIA policy and practice claims for an alleged regulatory violation has explained, "[b]ecause FOIA 'imposes no limits on courts' equitable powers in enforcing its terms,' the Court finds that if [plaintiff] were to prevail on Counts Two and Five, the statutory and equitable remedies available to him under FOIA would provide the same relief from the alleged policies as would the APA."  *Feinman v. FBI*, 713 F. Supp. 2d 70, 77 (D.D.C. 2010) (quoting *Payne*, 837 F.2d at 494).  Here, Plaintiff's FOIA and APA counts each seek the same genre of relief: reopening and restaffing the

CDC's FOIA Office.  *See* Pl. MSJ Prop. Order (ECF No. 33-12).  Therefore, its APA claim is barred.

In short, CREW contends that it could bring a free-standing APA claim over its alleged issues with Defendants' conduct of FOIA without itself filing a FOIA request.  *See* Pl. Mem. (ECF No. 35-1) at 47 ("On the merits, CREW's APA claim is straightforward—Defendants' elimination of the CDC FOIA office violates HHS regulations on the required structure of FOIA operations department-wide.").  Yet this is exactly the gambit Plaintiff tried in *CREW*, 846 F.3d at 1235, bringing only an APA claim that sought relief in the same genre as available in FOIA, and the D.C. Circuit rejected that position.  *See CREW*, 846 F.3d at 1244–46.  Here, CREW in Count II specifically invokes the FOIA to ask the Court to find Defendants have engaged in a policy and practice of denying its FOIA requests and to order Defendants to augment the CDC review resources temporarily or permanently.  Therefore, "despite some mismatch between the relief sought and the relief available, FOIA offers an 'adequate remedy'" barring CREW's APA claim as a matter of law.  *CREW*, 846 F.3d at 1246.

### C.    Count III Does Not Challenge Final Agency Action

Plaintiffs have shown neither "agency action" nor "final agency action" under 5 U.S.C. § 704 triggering judicial review.  The APA does not "extend to reviewing generalized complaints about agency behavior."  *Cobell v. Kempthorne*, 455 F.3d 301, 307 (D.C. Cir. 2006).  "First, the action must mark the consummation of the agency's decisionmaking process.... And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted).  For instance, the D.C. Circuit "ha[s] repeatedly held that agency action is not final if the adverse effects of the action depend "on the contingency of future administrative action."  *Rhea Lana, Inc. v. Dep't of Lab.*, 824 F.3d 1023, 1032 (D.C. Cir. 2016) (citation omitted).

Plaintiff's argument likewise complains that its current FOIA requests will not be properly processed in the future nor will future FOIA requests, thus relying upon contingencies—not final agency action.

The APA's definitions section reinforces this conclusion.   Under the APA, "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."   5 U.S.C. § 551(13).   While this provision uses the term "includes," *id.*, the Supreme Court and D.C. Circuit treat it as exhaustive.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("The meaning of 'agency action' . . . is set forth in 5 U.S.C. § 551(13), . . . which defines the term as 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act'"); *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (citing 5 U.S.C. § 551(13)).   The term "agency action," as the D.C. Circuit explained, "is not so all-encompassing as to authorize [courts] to exercise judicial review over everything done by an administrative agency." *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (citation modified).  Rather, agency action must be both "circumscribed" and "discrete," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004), and constitute a "manner in which an agency may exercise its power," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001).

Thus, Plaintiffs have not pleaded agency action as defined in the APA about delays in processing of their FOIA requests, the reduction-in-force of twenty-three employees, and transfer (not disappearance) of functions from the CDC FOIA Office to the Agency FOIA Office.  Such activities are, at most, among the "wide variety of activities that comprise the common business of managing government programs." *Fund for Animals*, 460 F.3d at 20.

Likewise, these acts are not "final" for APA purposes. Unlike these facts, Plaintiffs rely on dramatically different cases to assert that "the shuttering of agency offices or programs and the dismantling of their mandates functions is final action because it reflects the consummation of discrete agency decision-making and directly affects those carrying out or reliant on those functions." Pl. Mem. (ECF No. 35-1) at 46. The cases they cite involve alleged wholesale closures of agencies—not, as here, a sub-office with two dozen employees of a component within an agency (the CDC FOIA Office within CDC within HHS). One of Plaintiff's cited cases found final agency action in the alleged "dismantling the United States Agency for Global Media," "termination of contracts," "dismantling of critical infrastructure leading to the complete halt of agency programming," and that it was a "closer call," as "to the mass placement of [agency] employees on administrative leave, particularly given [the agency's] stated intent to fire over 600 [ ] employees" *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 18, 32 (D.D.C. 2025). Another found final agency action in "a final, concrete decision to shut down the [Consumer Financial Protection Bureau] entirely," and "there [was] a substantial risk that the defendants will complete the destruction of the agency," *Nat'l Treasury Emps. Union v. Vought*, 774 F. Supp. 3d 1, 47, 42–47 (D.D.C. 2025), but the D.C. Circuit vacated and remanded finding, in part, there was no final agency action. *Nat'l Treasury Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *1, *7 (D.C. Cir. Aug. 15, 2025). Another found it in alleged "mass terminations designed to get rid of the Department [of Education]," *New York v. McMahon*, Civ. A. No. 25-10601, 2025 WL 1463009, at *24 (D. Mass. May 22, 2025), and issued plaintiffs an injunction, *id.* at *39-40, which the Supreme Court has stayed. *McMahon v. New York*, 145 S. Ct. 2643 (2025). Another found it in an order requiring a reduction-in-force for thousands of agency employees at the Agency. *New York v. Kennedy*, Civ. A. No. 25-0196, 2025 WL 1803260, at *13 (D.R.I. July 1, 2025), *appeal*

*filed*, 25-1780 (1st Cir. Aug. 13, 2025).  Notably, while one district court enjoined a reduction-in-force at agencies, including the Agency, *Am. Fed'n of Gov't Emps. v. Trump*, Civ. A. No. 25-03698, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025), the Supreme Court granted a stay because, *inter alia*, the challenged actions "are lawful."  *Trump v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 2635 (2025).  In sum, many of Plaintiff's cited decisions on final agency action have since been vacated or stayed, and those cases involved extraordinarily different facts about alleged shutdowns of entire agencies, unlike the reduction-in-force of twenty-three employees, and transfer (not disappearance) of functions from the CDC FOIA Office to the Agency FOIA Office. Thus, Plaintiff has not pleaded or shown agency action, much less "final" action, thus entitling Defendants to dismissal or summary judgment on Count III's APA claim.

## II.    Plaintiff Fails to State a Claim That the Agency is Violating Its FOIA Regulations, or, in the Alternative, Defendants Are Entitled to Summary Judgment

### A.    Standard of Review for FOIA Policy and Practice Claims

After receiving a FOIA request, an agency should ordinarily "determine within 20 [working] days . . . whether to comply," 5 U.S.C. § 552(a)(6)(A)(i), but has up to 30 working days where that "determination" requires, among other things, searching or examining "voluminous" records or "consultation" with another agency, *id.* § 552(a)(6)(B)(i), (iii).  The Act does not require the agency to "actually produce" the requested documents within twenty days, "[b]ut the agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents."  *CREW v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013).  If the agency makes a determination within that time frame, the requester must pursue an administrative appeal before seeking judicial review.  *See id.* § 552(a)(6)(C)(i).  When an agency does not act within that timeframe, the statute provides the ordinary remedy: the requester "shall be deemed to have exhausted his administrative remedies

with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i).  Then, "[o]n complaint," a district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).  The "penalty" for delay, in other words, is that "the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court."  *CREW*, 711 F.3d 180, 189 (D.C. Cir. 2013).

"Once in court, however, the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court."  *CREW*, 711 F.3d at 185.  "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C)(i).  Such "exceptional circumstances" do not, as a general matter, "include a delay that results from a predictable agency workload of [FOIA] requests," but such delays may establish exceptional circumstances if "the agency demonstrates reasonable progress in reducing its backlog of pending requests."  *Id.* § 552(a)(6)(C)(ii).  As the D.C. Circuit explained, this exceptional-circumstances provision is a "safety valve" that "allow[s] agencies to deal with broad, time-consuming requests (or justifiable agency backlogs)."  *CREW*, 711 F.3d at 189.  It "accommodates" the "reality" that "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days."  *Id.* (alteration and quotation marks omitted).

FOIA's express terms do not contemplate injunctive relief directed to an agency's processing of future requests.  But this Court has recognized that, in "rare instance[s] of agency delinquency," *CREW*, 846 F.3d at 1246, prospective relief under FOIA may nevertheless be available against "an agency policy or practice" that "impair[s] [a] party's lawful access to information in the future."  *Payne*, 837 F.2d at 491 (emphasis omitted).  A policy-or-practice claim

requires "facts establishing that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing 'failure to abide by the terms of the FOIA.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne*, 837 F.2d at 491).

A plaintiff must make an extraordinary showing to succeed on a claim that agency delay constitutes a policy or practice of violating FOIA. A plaintiff may state a policy-or-practice claim based on agency's "unexplained" delay in processing FOIA requests. *Jud. Watch*, 895 F.3d at 780. But after an agency has been given an opportunity "to explain its delay," the ultimate question of agency "compliance with FOIA depends upon its good faith effort and due diligence" to process requests for records "in as short a time as is possible." *Id.* at 781, 782 (quotation marks omitted). A plaintiff may only succeed on a policy and practice claim if it shows that the "the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is *so* delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, would be inadequate to overcome an agency policy or practice." *Wash. Lawyers' Comm.*, 145 F.4th at 69 (quoting *Jud. Watch*, 895 F.3d at 783-84).

The D.C. Circuit has never held that a reasonably explained delay alone establishes a policy or practice of violating FOIA. On the contrary, the D.C. Circuit has recognized that it is "practical[ly] impossib[le] for agencies to process all FOIA requests" within the statutory timelines, *CREW*, 711 F.3d 180, 189 (D.C. Cir. 2013) (brackets omitted), and that "delay alone cannot be said to indicate an absence of good faith." *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978).

A plaintiff must clear a very high bar to succeed on such a policy-or-practice claim. Indeed, the D.C. Circuit has only once held that a plaintiff had successfully done so. In *Payne*, Air Force officers repeatedly denied a plaintiff's FOIA requests for almost two years, even though the

Secretary of the Air Force had admonished that "no FOIA exemption applied" and their "position was wholly unjustified." 837 F.2d at 489, 494. The Court held that "[t]he Secretary's inability to deal with [the] officers' noncompliance with the FOIA, and the Air Force's persistent refusal to end a practice for which it offers no justification," established an unlawful policy or practice and "entitle[d] Payne to declaratory relief." *Id.* at 494; *see also id.* at 488, 491 n.8 (finding that the Air Force has committed multiple "clear violations of the FOIA" that arose from a "concerted policy" to withhold information not protected by an exemption).

In two other cases, the D.C. Circuit acknowledged the theoretical availability of prospective relief on a policy-or-practice claim but held that the claims did not succeed. *Newport Aeronautical Sales v. Department of Air Force*, 684 F.3d 160 (D.C. Cir. 2012), like *Payne*, involved a claim that the Air Force was unlawfully withholding documents based on an erroneous invocation of a FOIA exemption. The Court held that the disclosure of requested documents did not moot the case because the plaintiff challenged an ongoing policy with respect to the application of FOIA exemption 3. *Id.* at 164. But the Court concluded that the claim failed on the merits because the challenged practice "does not violate FOIA." *Id.* at 168. In *Center for the Study of Services v. Department of Health & Human Services*, 874 F.3d 287, 290 (D.C. Cir. 2017), the court reviewed a permanent injunction that required an agency to produce records each year. The court held that such prospective relief was improper because it was not supported by a finding that "the agency was adhering to a policy or practice that it acknowledged as impermissible," that the agency had invoked an exemption "solely for purposes of delay, effectively flaunting the statutory scheme," or that "the agency was likely, in the face of [the district court's] ruling that Exemption 4 was inapplicable, to continue on that basis to impair [the plaintiff's] lawful access to the information in the future." *Id.* at 292. In *Judicial Watch*, 895 F.3d at 770, the complaint alleged

- 22 -

that the plaintiff had filed nineteen FOIA requests for "the same type of records and that six nearly identical lawsuits have not produced any change in the Secret Service's response to its proper requests until after it has filed a lawsuit." *Id.* at 780.  A divided panel of the D.C. Circuit held that "a plaintiff states a plausible policy or practice claim" where it alleges "prolonged, unexplained delays in producing non-exempt records that could signal the agency has a policy or practice of ignoring FOIA's requirements." *Id.*

Critically, because the case was at the pleading stage, the Secret Service had not yet offered any justification or explanation for its delays.  *See Jud. Watch*, 895 F.3d at 780. The Court determined that the agency's "as yet unexplained delays in making requested non-exempt records available" permitted a "reasonable inference" to be drawn from the alleged facts "that the Secret Service ha[d] adopted a practice of delay" by "repeatedly standing mute over a prolonged period of time and using Judicial Watch's filing of a lawsuit as an organizing tool for setting its response priorities."  *Id.* at 780-81.  The Court explained that, on remand to the district court, the Secret Service would "have the opportunity . . . to explain its delays," and that its ultimate success would depend on whether it could demonstrate " 'good faith effort and due diligence' "—long recognized as "the touchstones underlying FOIA's statutory scheme."  *Id.* at 783-84 (quoting *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).

### B.    Defendants Have Not Violated Agency Regulations

As an initial matter, Plaintiff argues that Defendants' alleged violations of agency regulations implementing the FOIA alone state a FOIA policy and practice claim under Count II. Plaintiff provides no support for this argument.  Instead, policy and practice claims are based on an agency's 'failure to abide by the terms of the FOIA.'"  *Muttitt*, 926 F. Supp. 2d at 293 (quoting *Payne*, 837 F.2d at 491).  Regulations are, definitionally, not part of the statute.  Failing to explain

this disconnect stops this part of Plaintiff's claim dead in its tracks. Thus, this component of Count II should be dismissed.

Even assuming CREW can plead a viable FOIA policy and practice claim based on an agency's violations of its own FOIA regulations, CREW's claim still fails. Consolidating the CDC's FOIA functions within the Agency FOIA Office lawfully follows the plainly interpreted Agency regulations. First, the regulations provide the Agency FOIA Office with wide-ranging "discretion" to handle FOIA requests directed to all Operating Divisions—including CDC. 45 C.F.R. § 5.3. Second, nothing requires separate FOIA Officers or Offices for the Operating Divisions; instead, they exercise "delegated" authority, which is inherently revocable. *Id.* Third, the agency's practice before this lawsuit shows that it treated the authority held by CDC's FOIA Officer and Office as delegated, and thus revocable. Def. Stmt. ¶ 11; 4th Holzerland Decl. at 83–86. Fourth, the regulation's structure reinforces this conclusion.

While Plaintiff's arguments do not raise a genuine ambiguity of regulatory interpretation, even if they did, then the Agency is entitled to deference to its reasonable interpretation under the doctrine of *Auer* deference. *See Kisor v. Wilkie*, 588 U.S. 558, 563 (2019). Either approach shows that Plaintiff has failed to state a claim, or, alternatively, Defendants' entitlement to summary judgment.

### 1.    CREW's Argument

Plaintiff raises a bureaucratically byzantine claim about who handles the CDC's FOIA requests. The Amended Complaint alleged that Defendants are violating agency regulations that implement the FOIA by "removing the CDC FOIA Officer" and transferring the functions of the former CDC FOIA Office to the Agency FOIA Office. Am. Compl. ¶¶ 84.f, 85, 90.f, 91. These identical allegations go to both Plaintiff's FOIA policy and practice claim in Count II and its APA claim in Count III. *Id.* Throughout this litigation, Plaintiff has reiterated that "CREW's policy-

or-practice and APA claims are linked, . . . address[ing] overlapping issues[.]"  Pl. Resp. to Mot.

to Stay (ECF No. 39); *see also* Pl. MSJ at 48 n.28 ("Defendants' violation of these regulations,

laid out in the following analysis in this section, supports CREW's policy-or-practice claim as

well.").  Plaintiff's Motion presses both claims, arguing that "Defendants' elimination of the CDC

FOIA office violates HHS regulations on the required structure of FOIA operations department-

wide."  Pl. MSJ at 47 (ECF No. 35-1).  Accordingly, Defendants analyze together Plaintiff's

challenges in Count II and Count III that argue that Defendants have violated HHS' regulations.

### 2.    Standard of Review: Regulatory Interpretation

"FOIA provides that an agency administering the FOIA statute may issue 'published rules

stating . . . procedures to be followed.'"  *Wright v. Dep't of Health & Hum. Servs.*, Civ.

A. No. 22-1378 (RC), 2022 WL 18024624, at *3 (D.D.C. Dec. 30, 2022) (quoting 5 U.S.C.

§ 552(a)(3)(A)).  Here, "CDC is bound to the same regulation as" the Agency.  *Id.* at *3 n.4.  *See*

*also* 45 C.F.R. § 5.4 ("The requirements in this part apply to all [Operating Divisions] and [Staff

Divisions] of HHS.").

Before a court can determine whether an agency has violated its regulation, it must interpret

the regulation's meaning.  "The same principles of construction that apply to interpret statutes also

apply to interpret administrative regulations."    Interpretation, 1A Sutherland Statutory

Construction § 31:6 (8th ed.); *see also Pa. Fed'n of Sportsmen's Clubs, Inc. v. Kempthorne*,

497 F.3d 337, 351 (3d Cir. 2007) ("The basic tenets of statutory construction apply to construction

of regulations and [our] starting point on any question concerning the application of a regulation

is its particular written text.") (citation modified)); *Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 119

(3d Cir. 2021) (citation omitted).  "To interpret a statute, we must start with the text and statutory

context."  *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 532 (D.C. Cir. 2025)

(citing *Noble v. Nat'l Ass'n of Letter Carriers*, 103 F.4th 45, 50 (D.C. Cir. 2024) ("The text must be read in the context of the entire statute.")).

If regulations remain genuinely ambiguous after a court exhausts all the traditional tools of statutory interpretation, then courts defer to an agency's reasonable interpretation of its own regulations, as explained by the D.C. Circuit:

> An agency may receive deference when it reasonably interprets its own "genuinely ambiguous" regulations. *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997). However, the Court made it clear in *Kisor* that "if there is only one reasonable construction of a regulation – then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense." *Id*. at 575.

*Nat'l Lifeline Ass'n v. Fed. Commc'ns Comm'n*, 983 F.3d 498, 507 (D.C. Cir. 2020).  To receive deference, "[t]he interpretation must be the agency's 'authoritative' or 'official position,' 'implicate its substantive expertise' and reflect 'fair and considered judgment' to receive deference." *Doe v. SEC*, 28 F.4th 1306, 1311 (D.C. Cir. 2022) (quoting *Kisor*, 588 U.S. at 576-79); *see also Nat'l Lifeline Ass'n*, 983 F.3d at 507.

3.    The Agency is Exercising the Discretion Under its FOIA Regulations Over FOIA Responsibilities Previously Delegated to the CDC FOIA Office

The Agency is divided into "Staff Division[s]" and "Operating Division[s]."  45 C.F.R. § 5.3.  Staff Divisions are "an organization component that provides leadership, direction, and policy and management guidance to the Office of the Secretary and the Department."  *Id.*  The "Office of the Secretary" is defined as the Agency's "chief policy officer and general manager, who administers and oversees the organization, its programs and activities."  *Id.*  By contrast, Operating Divisions include the CDC and other health-policy focused divisions.  *Id.*

The Agency's "Chief FOIA Officer," as defined, "has agency-wide responsibility for ensuring efficient and appropriate compliance with the FOIA, monitoring implementation of the

FOIA throughout the agency, and making recommendations to the head of the agency to improve the agency's implementation of the FOIA." *Id.* The regulations describe that the Secretary "has designated the Assistant Secretary, Office of the Assistant Secretary for Public Affairs [("Public Affairs Office" or "ASPA")], as the Agency Chief FOIA Officer[.]" *Id.* The Public Affairs Office's Assistant Secretary has, in turn, "designated" an official within the office as the "Deputy Agency Chief FOIA Officer[,]" and this official "has been authorized by the Chief FOIA Officer to act upon their behalf to implement compliance with the FOIA[.]" *Id.*

That Deputy Agency Chief FOIA Officer is Defendants' declarant in this case, William H. Holzerland. 4th Holzerland Decl. ¶ 1. Within the Public Affairs Office, Mr. Holzerland runs the Agency FOIA Office, also called "OS-FOIA." *Id.* The regulations specify that the Agency FOIA Office "within ASPA processes FOIA requests for records maintained by OS Staff Divisions other than the [Office of Inspector General]." 45 C.F.R. § 5.3.

Beyond this, the regulations provide wide-ranging "discretion" in who handles the FOIA requests. 45 C.F.R. § 5.3. "In certain circumstances and at the HHS FOIA Office's discretion, the HHS FOIA office may also process FOIA requests involving other HHS [Operating Divisions], as further described in § 5.28(a)." 45 C.F.R. § 5.3.

This "discretion" is unqualified. "[I]f the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience." *Am. Hist. Ass'n v. Nat'l Archives & Recs. Admin.*, 516 F. Supp. 2d 90, 109-10 (D.D.C. 2007) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954)). The regulation refers to "the HHS FOIA Office's discretion" over "FOIA requests." 45 C.F.R. § 5.3. This means all FOIA requests; no language limits this to "some" requests, a "limited" number of requests, or otherwise. Likewise, if this "discretion" is

exercised, no language requires that the Operating Division still process requests "in addition to" or "concurrently with" the Agency FOIA Office. Instead, the regulation's plain terms require the Agency FOIA Office to process FOIA requests sent to the Staff Divisions and, in addition to those responsibilities, it "may also process FOIA requests involving other HHS [Operating Divisions.]"

Along with this discretion in who handles FOIA requests, there is no mandatory requirement in HHS' regulations that each Operating Division or Staff Division have its own FOIA Officer or separate FOIA office. Accordingly, there is no requirement that CDC have its own FOIA Officer or FOIA office.

Instead, CDC's FOIA Officer and Office operated under "delegated" authority. 45 C.F.R. § 5.3. The regulation defines "Freedom of Information Act (FOIA) Officer" as "an HHS official who has been delegated the authority to release or withhold records." 45 C.F.R. § 5.3. Notably, "Operating Division and Staff Division [FOIA] Officers" have "the full authority as described in the definition of "[FOIA] Officer." *Id.* Accordingly, the CDC's FOIA Officer could only exercise the authority that the official was "delegated." *Id.*

The prior "delegat[ion]" to CDC's FOIA Officer was, definitionally, not an express grant of power, but inherently revocable. *Id.* The regulation did not expressly "empower" or "authorize" the CDC FOIA Officer to exercise FOIA responsibilities. That distinction matters because the words carry different meanings:

> To authorize is "to empower; to give a right or authority to act" generally. BLACK'S LAW DICTIONARY 122 (5th ed. 1979); *see also id.* at 121 (defining "authority" as "permission"). Delegation is narrower and more specific—to delegate is to give someone authority to act specifically on one's behalf or in one's stead. *See id.* at 383 (defining "delegate" as "a person who is delegated or commissioned to act in the stead of another"). Delegation may be one species of authorization, but the distinction is material.

*Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1271 n.3 (D.C. Cir. 2018). Moreover, authority that is "delegated" can be taken away. *See United States v. Libby*, 429 F. Supp. 2d 27,

44 (D.D.C. 2006) ("Just as the Deputy Attorney General delegated his authority to the Special Counsel, he has complete discretion to take that authority away."). And just because the regulation provides that responsibility may be delegated, that does not require it. *See Thunder v. U.S. Parole Comm'n*, 133 F. Supp. 3d 5, 9 (D.D.C. 2015) (a statute stating that a commission "may delegate" power means that "[t]he statute authorizes the Commission, but does not require the Commission, to delegate powers").

Indeed, the Agency's historical practice supports this interpretation of revocable delegation. Predating this litigation—and this presidential administration, the Agency historically issued delegations of authority over FOIA operations. *See* 4th Holzerland Decl. ¶ 83. "For decades," Mr. Holzerland states, "FOIA implementation at HHS' Operating Divisions, including CDC, has operated under delegations of authority that were revocable." *Id.* ¶ 84. For example, a series of delegations of authority occurred on September 3, 2024. *Id.* ¶¶ 84–85. These delegations aligned with the structure of the Agency's FOIA operations in the regulations discussed above. Reflected in a memorandum, the Secretary delegated to the Assistant Secretary for Public Affairs the authority vested in the Secretary under the FOIA, thus designating that official as "the Agency Chief FOIA Officer." Def. Ex. 7. The memorandum stated that "[t]his delegation may be redelegated to subordinate officials" and that "redelegated" authority was "subject to such other limitations as may be specified in writing by the Chief FOIA Officer or designee." *Id.* In another memorandum, the Assistant Secretary delegated authority for managing FOIA operations to the Deputy Agency Chief FOIA Officer. 4th Holzerland Decl. at 85; Def. Ex. 8. That memorandum stated that "[t]his delegation may be redelegated." Def. Ex. 8. Rounding out the chain of delegations, in another memorandum that same day sent to CDC FOIA Personnel, the Deputy Agency Chief FOIA Officer "delegate[d] to the [Operating Division] and [Staff Division] FOIA

Officers the authorities vested in me to implement and administer the Freedom of Information Act within their respective" offices certain specified duties and authorities.  Def. Ex. 9; *see also* 4th Holzerland Decl. ¶ 85.  This memorandum explained that this delegation of authority was itself "authorized by the delegation of authority memorandum" issued from the ASPA to him earlier that day.  Def. Ex. 9.  All three of these delegations became "effective immediately."  Def. Exs. 7, 8, 9.  Another memorandum issued that day to all "Departmental FOIA Personnel" explained the Agency's FOIA policies, noted that Operating Division's FOIA Officers (including CDC's) exercised "delegated authority by the" Deputy Agency Chief FOIA Officer and referenced the respective delegations of FOIA authority of September 3, 2024.  Def. Ex. 10; *see* 4th Holzerland Decl. ¶ 85.  In sum, everyone from agency leadership to FOIA staff knew that the Operating Division's FOIA Offices (including CDC) exercised only "delegated," not independent, authority.

Here, Defendants exercised their discretion to end CDC's delegated authority over FOIA when, on April 1, 2025, they restructured their FOIA operations by transferring to the Agency FOIA Office the responsibilities for handling FOIA requests that had been submitted to the former CDC FOIA Office.  3d Holzerland Decl. ¶ 8.  Since then, the Agency FOIA Office has been processing the CDC's FOIA requests.  These acts were memorialized on August 1, 2025, in a memorandum indicating that "the September 3, 2024 delegation of FOIA authority . . . is hereby rescinded in full."  Def. Ex. 11; *see also* 4th Holzerland Decl. ¶ 86.  That memorandum provided that "[a]ll FOIA authorities previously delegated to" the CDC FOIA Office "are reassigned to and will be executed by the" Agency FOIA Office.  Def. Ex. 11.

The upshot: agency leadership and personnel understood that the CDC exercised FOIA responsibilities only to the extent delegated to it.  Thus, agency practice reflects the structure of FOIA responsibilities within the Agency described above.  CDC exercised "delegated" authority,

that delegation could be revoked, and the Agency FOIA Office could exercise its "discretion" to then process FOIA requests directed to CDC.  *See* 45 C.F.R. § 5.3.  Thus, Defendants have not violated the Agency's FOIA regulations.

4.    Contrary to Plaintiff's Position, No Statute or Regulation Requires that CDC Have Its Own FOIA Officer or Office.

Still, Plaintiff argues that Defendants are violating their own regulations by consolidating CDC's FOIA function into the Agency FOIA Office.  *See* Pl. Mem. (ECF No. 35-1) at 46–50. Plaintiff repeatedly stakes its argument on terms that appear nowhere in the regulations.  While Plaintiff writes that Agency "regulations mandate" a separate FOIA office for CDC and that the CDC FOIA Office has "mandated FOIA responsibilities," *id.* at 39, 46, the word "mandate" is absent from the regulations Plaintiff cites.  Plaintiff also insists that the regulations "require Defendants to maintain a functional CDC FOIA office" (Pl. MSJ at 47), but the words "require" and "maintain" are never used in that context and "functional" never appears in the regulations. Plaintiff also contends that requests for "research data . . . must be addressed to the specific division 'that made the award under which the data were first produced,' and that division must process the request[,]"  Am. Compl. (ECF No. 31) ¶ 23 (citing 45 C.F.R. § 5.23(a)); *see also* Pl. Mem. (ECF No. 35-1) at 48-49, yet that subsection does not include the word "must."  Plaintiff adds that the regulation gives the Agency FOIA Office "only limited 'discretion' to process *particular* FOIA requests," Pl. Mem. (ECF No. 35-1) at 49 (emphasis in original), despite the word *particular* never appearing in that section of the regulation.  *See* 45 C.F.R. § 5.3.  With the conspicuous absence of so many of these mandatory terms, Plaintiff's argument falls apart.

Turning to the language of the regulations themselves instead of that in Plaintiff's briefs, its arguments fare no better.  Plaintiff argues that CDC must have its own FOIA officer and office because an Agency regulation says the Agency's "FOIA operations are decentralized, and each

FOIA Requester Service Center has a designated official with this authority." Am. Compl. (ECF No. 31) ¶ 24 (citing 45 C.F.R. § 5.3). Yet reading this provision in isolation ignores the regulatory context. *See Crowley Gov't Servs.*, 143 F.4th at 532 ("To interpret a statute, we must start with the text and statutory context."). "A statutory provision read '[i]n complete isolation ... might be amenable to [one] reading.' " *Id.* (quoting *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023)). "But [a court] has a 'duty to construe statutes, not isolated provisions.'" *Id.* (quoting *Turkiye Halk Bankasi A.S.*, 598 U.S. at 275). Turning to the context, all authority exercised by CDC's FOIA Office was "delegated," thus inherently revocable, and the Agency FOIA Office retained "discretion" to process its FOIA requests.

More than once, Plaintiff references descriptions in the 2025 Chief FOIA Officer Report to argue that the Agency must maintain a decentralized FOIA system. *See* Pl. MSJ at 12, 13, 49. Yet nothing in that report has the force of law. *See* Fourth Holzerland Decl. ¶ 88. The report "summarizes the Department's initiatives to comply with the Act and facilitate disclosure of government records while enhancing departmental operations." Def. Ex. 6 at 3 (Introduction).

Plaintiff also points to the definition of "Operating Division and Staff Division Freedom of Information Act (FOIA) Officers." Am. Compl. ¶¶ 21-22 (citing 45 C.F.R. § 5.3). While the regulations provide that there can be "Operating Division and Staff Division [FOIA] Officers . . . who are responsible for overseeing the daily operations of their FOIA programs in their respective Operating Divisions or Staff Divisions," nothing mandates their existence or compels HHS to have or use them. 45 C.F.R. § 5.3. As explained above, the Operating Divisions FOIA Officers and Offices only have "the full authority as described in the definition of [FOIA] Officer," and the FOIA Officer only exercises "delegated" authority as an Agency "official who has been delegated

the authority to release or withhold records." 45 C.F.R. § 5.3.  Accordingly, the CDC's FOIA

Officer could only exercise authority that had been delegated.  And delegations are revocable.

Plaintiff also identifies a statement in the regulations that there are "several FOIA

Requester Service Centers (FOIA offices) that process FOIA requests."  Am. Compl. ¶ 22 (citing

45 C.F.R. § 5.23).  Again, nothing in that definition includes mandatory language that compels the

Agency to have or use them.

Plaintiff also points to a regulation that "Each [Operating Division] and [Staff Division]

has a FOIA Requester Service Center or FOIA Public Liaison who can assist individuals in

locating records.')."  Am. Compl. (ECF No. 31) ¶ 22 (citing 45 C.F.R. § 5.2(b)); Pl. Mem. (ECF

No. 35-1) at 48.  Again, nothing in that definition includes mandatory language that compels the

Agency to have or use them.

Crucially, Plaintiffs have not pointed to a single statute or Agency regulation that requires

CDC to have its own FOIA office.  Instead, the regulations allocate "discretion" to the Agency

FOIA Office to process FOIA requests involving other Agency Operating Divisions consistent

with the FOIA's statutory mandates instead of requiring a particular structure for administering

FOIA for all the Operating Divisions.  45 C.F.R. § 5.3.

Nothing constrains the "discretion" provided by regulation to the Agency FOIA Office

over whether it or the Operating Divisions themselves handle FOIA Requests.  But even to the

extent the regulation builds in some constraint when it says "[i]n certain circumstances and at the"

Agency FOIA Office's discretion, 45 C.F.R. § 5.3, that exceedingly broad phrase is easily satisfied

here by recent executive order.  The President of the United States issued Executive Order 14,210

entitled "Implementing the President's 'Department of Government Efficiency' Workforce

Optimization Initiative."  Def. Ex. 2.  Section 1 of the Executive Order 14,210 states its purpose

is "[t]o restore accountability to the American public, this order commences a critical transformation of the Federal bureaucracy.  By eliminating waste, bloat, and insularity, my Administration will empower American families, workers, taxpayers, and our system of Government itself."  *Id.*  As Mr. Holzerland explained, as part of complying with Executive Order 14,210, the Agency FOIA Office "thereby exercised its discretion to process FOIA requests that involved other" Agency Operating Divisions, "including FOIA requests that involved CDC moving forward."  1st Holzerland Decl. ¶ 17 (ECF No. 18-1); *see also id.* ¶¶ 13–18.  The Agency did so to "streamlin[e] FOIA operations," "increase consistency," reduc[e] disparities in" the handling of FOIA requests, "[c]onsolidat[e] [ ] duplicative functions," "reduce duplication of effort and costs, and leverage specialized expertise, leading to faster response times and better resource allocation."  *Id.* ¶¶ 19-20.

Finally, Plaintiff does not (and cannot) argue that the FOIA statute itself requires the CDC to maintain a separate FOIA office.  Nothing in the statute requires this.

5.  *Auer* Deference To Defendants' Reasonable Interpretation of Their Own Regulations Defeats Plaintiff's Claims They Are Violating Their Own FOIA Regulations.

Thus, the regulations are unambiguous using the traditional tools of interpretation.  To the extent the Court believes that Plaintiff has revealed a genuine ambiguity in the Agency's regulations, then the Agency is entitled to *Auer* deference.

If the regulations are ambiguous, then the Agency's interpretations of its FOIA regulations are entitled to *Auer* deference.  *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 59 (2011) (deferring "to the FCC's interpretation of its regulations in its *amicus* brief.").  The Supreme Court has explained that courts "defer to an agency's interpretation of its regulations, even in a legal brief, unless the interpretation is '"plainly erroneous or inconsistent with the regulation [s]"' or there is any other '"reason to suspect that the interpretation does not reflect the agency's fair and

considered judgment on the matter in question."'" *Id.* (quoting *Chase Bank USA, N.A. v. McCoy,* 562 U.S. 195, 208-09 (2011) (quoting *Auer,* 519 U.S. at 461, 462)).

First, permitting the Agency FOIA Office the discretion to handle CDC's FOIA requests reflects Defendants' "authoritative" and "official position." *Doe*, 28 F.4th at 1314 (citing *Kisor*, 588 U.S. at 577). Defendants expressed in memoranda that they understood that the FOIA Officers at CDC and the other operating divisions only exercised authority "delegated" to them. 4th Holzerland Decl. ¶¶ 83–86; Def. Exs. 7–11. Reasonably inferred, this includes the corollary that the Agency FOIA Office could handle CDC's FOIA requests if that authority was not delegated to CDC in its "discretion." 45 C.F.R. § 5.3.

Second, deciding who within the Agency handles the CDC's FOIA requests implicates Defendants' "substantive expertise." *Doe*, 28 F.4th at 1315. Defendants have statutory obligations to process and respond to FOIA requests. The Agency must also issue regulations implementing its FOIA responsibilities. *See* 5 U.S.C. § 552 (a)(3)(A) (2014), amended by FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (the FOIA requires agencies to make records promptly available whenever they receive a request which reasonably describes the records being sought, and is made "in accordance with published rules stating the time, place, fees (if any) and procedures to be followed."). This technical question of FOIA implementation is neither "distan[t] from the agency's ordinary' duties" nor "'fall[s] within the scope of another agency's authority.'" *Doe*, 28 F.4th at 1315 (quoting *Kisor*, 588 U.S. at 578). Nor do these "interpretive issues may fall more naturally into a judge's bailiwick" like "the elucidation of a simple common-law property term" or "the award of an attorney's fee." *Kisor*, 588 U.S. at 578 (citations omitted). Instead, this presents a FOIA workflow and staffing question for the Agency.

Third, Defendants' reading reflects "'fair and considered judgment." *Doe*, 28 F.4th at 1315. For "many decades," FOIA implementation at HHS' Operating Divisions, including CDC, has operated under delegations of authority that were revocable. 4th Holzerland Decl. ¶¶ 83–86; Def. Exs. 7–11. "And there is no indication that [Defendants'] interpretation is merely a 'convenient litigating position or post hoc rationalizatio[n] advanced to defend past agency action against attack.'" *Doe*, 28 F.4th at 1315 (quoting *Kisor*, 139 S. Ct. at 2417 (alteration in original). Defendants' most recent delegation of FOIA responsibilities to CDC issued on September 3, 2024—seven months before CREW filed this lawsuit. 4th Holzerland Decl. ¶ 84. And everyone from agency leadership to FOIA staff knew these were only delegations of authority. Def. Exs. 7–10. In older examples, another two memoranda from June and August 2014 show that the Deputy Agency Chief FOIA Officer exercised "delegated authority" over the Agency's FOIA operations from the Agency Chief FOIA Officer. 4th Holzerland Decl. ¶ 84; Def. Exs. 12-13.

In sum, should the Court find genuine ambiguity in the regulations at issue, then Defendants are entitled to *Auer* deference. Defendants reasonably interpreted the regulations to allow the transfer of responsibilities for processing FOIA requests submitted to the CDC from CDC's FOIA Office to the Agency FOIA Office. In any event, Defendants have shown through the traditional tools of statutory interpretation that the regulations unambiguously support Defendants' position. Thus, under either approach, Defendants are entitled to summary judgment on Plaintiff's claims in Count II and Count II alleging violations of Agency regulations.

      6.    CREW Lacks Standing to Challenge Two Alleged Violations of the Agency's Regulations.

CREW also lacks standing for two of its alleged violations of the Agency's regulations. Article III standing requires that a plaintiff show an "injury in fact," "fairly traceable to the challenged action of the defendant," and it must be "likely, as opposed to merely speculative, that

the injury will be redressed by a favorable [judicial] decision." *Johnson v. Becerra*, 111 F.4th 1237, 1243 (D.C. Cir. 2024) (alteration in original, citation omitted).  Even with standing for some of Plaintiff's claims, "standing is not 'dispensed in gross' but a plaintiff 'must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.'"  *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1132 (D.C. Cir. 2017) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

First, Plaintiff argues that Defendants are violating Agency regulations because CDC is no longer responsible for its own "reading-room website," alleging that "the regulations provide that CDC and 'each' other HHS division is 'responsible for' separately maintaining its own reading-room website, 'determining which of its records must be made publicly available' on it, and 'ensur[ing] that its [website] . . . is reviewed and updated on an ongoing basis.'  Am. Compl. (ECF No. 33) ¶ 23 (quoting 45 C.F.R. § 5.2(b)); *see also* Pl. Mem. (ECF No. 35-1) at 48.  But Plaintiff lacks standing for this challenge because lack of a FOIA reading-room website published by CDC itself is not redressable.[3]

FOIA's reading-room provision requires agencies to "make [certain records] available for public inspection in an electronic format[,]" including "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."  5 U.S.C. § 552(a)(2).   Still, the D.C. Circuit has held that FOIA's remedial provision, "section 552(a)(4)(B)[,] 'does not authorize district courts to order publication' of documents subject to the provisions of section 552(a)(1)."  *CREW*, 846 F.3d at 1243 (quoting *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191, 1202 (D.C. Cir. 1996)).  Distinguishing between "[p]roviding

---

[3]      Regardless, the content previously on CDC FOIA website will be posted to the Electronic Reading Room on HHS.gov.  Def. Counter Stmt. ¶¶ 54, 55; 4th Holzerland Decl. ¶ 95.  For example, since April 1, 2025, the Agency FOIA Office published 209 items there.  *Id.*

documents to the individual" and "ordering publication[,]" the court held that, under section 552(a)(4)(B), a district court is without authority to do the latter. *Id.* (quoting *Kennecott*, 88 F.3d at 1203). In the same case, the D.C. Circuit held that "FOIA offers an 'adequate remedy' within the meaning of [5 U.S.C. §] 704" such that judicial review under the APA is unavailable. *Id.* at 1245-46. Because the remedy for violating the reading room rule is provision of the record to the requester, the Court cannot order CDC to publish documents online—much less order that the CDC's FOIA Office exist for that purpose in the first place. Thus, Plaintiff lacks Article III standing for this claim because that harm is not redressable.

Second, Plaintiff claims "FOIA requests for 'research data made available under the provisions of 45 CFR 75.322(e)' must be addressed to the specific division 'that made the award under which the data were first produced,' and that division must process the request." Am. Compl. (ECF No. 31) ¶ 23. Plaintiff lacks an injury because it has not alleged or submitted evidence that it submitted a request for "research data made available under the provisions of 45 CFR 75.322(e)." Accordingly, Plaintiff lack standing to sue to enforce this provision of the Agency's regulations.

Finally, neither of these two regulations cited support a claim that Defendants are violating HHS regulations because neither include mandatory language requiring the existence of a CDC FOIA Office or Officer. The regulatory context of "delegated" authority to the former CDC FOIA Office and the "discretion" of OS-FOIA to handle its FOIA requests dispel any doubt.

## III.    The Record Shows Defendants Exercising "Good Faith and Due Diligence" To Comply with Their FOIA Responsibilities, Entitling Them to Summary Judgment on Count II's FOIA Policy and Practice Claim

Defendants are exercising "good faith effort and due diligence" in responding to requests. *Jud. Watch*, 895 F.3d at 783. This defeats Plaintiff's FOIA policy and practice claim. *Id.* There can be no genuine dispute that the record evidence demonstrates that the Department has complied

with the FOIA. Defendants are not "so delinquent or recalcitrant as to warrant injunctive relief." *Wash. Lawyers' Comm.*, 145 F.4th at 69. As this Court has remarked in its opinion denying Plaintiff's motion for preliminary injunction, "the record shows that HHS is doing *something* to process FOIA requests as part of its centralization effort[,]". Mem. Op. at 19 (emphasis in original; citing Holzerland Supp. Decl. ¶¶ 7–12, 17–20, 22–25). From the beginning, Defendants have stated their intention to abide by the terms of the FOIA. 1st Holzerland Decl. (ECF No. 18-1) ¶¶ 36-48.

Mr. Holzerland describes the Agency's ongoing efforts. Def. Ex. 1. Mr. Holzerland's declaration is, like "[a]gency affidavits[,] . . . accorded a presumption of good faith[.]" *Cabezas v. Fed. Bureau of InvestigationFBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). To implement the President's Executive Order 14,210, the Agency is restructuring to "streamline" functions, reduce "redundant units," and implement reductions in force. Def. Stmt. ¶ 8. Streamlining inefficient operations by transferring the functions of the CDC FOIA Office to the Agency FOIA Office will benefit the public by enhancing transparency and accountability to the taxpayer. *Id.* ¶ 9. To date, the Agency FOIA Office has synthesized the existing FOIA workloads of the former CDC FOIA Office into the Agency FOIA Office's workload, inclusive of all pending and new FOIA requests, litigation productions, and email boxes. *Id.* ¶ 15. The Agency FOIA Office is handling requests on a first-in, first-out basis, including CDC's requests. *Id.* ¶¶ 15, 28. When a requester attempts to submit a FOIA request to the former CDC-FOIA email address, that requester automatically receives a message directing that the requester go to the Agency FOIA Office website to submit its request. *Id.* ¶ 17. When a requester does submit a request through the CDC FOIA portal (which remains active), all of those requests are automatically routed to a central tracking system managed by

Agency FOIA Office personnel. *Id.* ¶ 19. In sum, Agency FOIA Office staff have access to all prior and newly arriving CDC FOIA requests. *Id.* ¶¶ 15–19. Agency FOIA Office staff have worked on CDC FOIA requests since at least May 21, 2025, including gathering records. *Id.* ¶ 28.

The Agency FOIA Office has taken the steps necessary to process and fully resolve 196 pre-existing FOIA requests that had been received prior to April 1, 2025 (the date when the Department's reorganization started). *Id.* ¶¶ 15, 40. Defendants are committed to transparency. Indeed, in a new initiative, the Agency FOIA Office will be posting all FOIA responses online (*id.* ¶ 22), and since April 1, 2025 (when the FOIA reorganization started), the Department has publicly posted seventy discrete items on its public facing FOIA reading room. *Id.* ¶ 47.

Centralization has added benefits as it will increase consistency. *Id.* ¶¶ 23–27. While Agency components were inconsistent in apply FOIA exemptions, centralizing allows for standardization. *Id.* Centralization improves compliance and oversight because it facilitates monitoring and tracking of requests, ensuring adherence to statutory deadlines and legal requirements. *Id.* ¶ 24. This reduces disparities in how the Agency handles FOIA requests. *Id.* ¶ 23. This consolidated staff will gain enhanced expertise in overall FOIA compliance. *Id.* ¶ 23. The goal is to create a single, efficient FOIA processing operation. *Id.* ¶ 25.

Centralization will allow more efficient use of resources. *Id.* ¶¶ 23, 25. Consolidation of duplicative functions optimizes resources because tools can be shared, thus saving costs. *Id.* This also allows HHS to leverage specialized expertise, producing faster response times and better resource allocation. *Id.* ¶ 23. It further simplifies response times by reducing intra-agency consults on FOIA releases. *Id.* ¶ 26. Centralization also simplifies HHS' quarterly and annual FOIA reporting and audits. *Id.* ¶ 24.

What's more, a more centralized Agency FOIA unit can provide a single point of contact for requesters, simplifying the customer service process for the public and in the long term, potentially improving response times. *Id.* ¶ 27. This also avoids public confusion that may arise from navigating a voluminous number of specialized units. *Id.* The Agency FOIA Office already maintains established FOIA processing systems. Def. Counter Stmt. ¶¶ 28, 39, 41, 42. The reorganization does not require development of wholly new systems, but rather application of existing Agency FOIA Office infrastructure to include CDC FOIA requests. *Id.* ¶ 42.

The Agency FOIA Office possesses the expertise to handle FOIA requests for CDC, contrary to Plaintiff's naïve assertion otherwise. For years before the April 1, 2025, reorganization, the Agency FOIA Office reviewed all manner of FOIA appeals from Agency Operating Divisions including CDC. Def. Counter Stmt. ¶ 28; Holzerland Supp. Decl. ¶¶ 30, 33; 4th Holzerland Decl. ¶ 109. To do so, Agency FOIA Office staff apply their knowledge of specific subject matter covering a vast array of topics. Def. Counter Stmt. ¶ 39; 4th Holzerland Decl. ¶ 109. For example, Agency FOIA Office staff understand the Operating Division's structure and programs in enough detail to handle routine issues of whether an adequate search for responsive records was conducted or whether FOIA exemptions are being applied correctly. Def. Counter Stmt. ¶ 28; Holzerland Supp. Decl. ¶ 30. Agency FOIA Office staff, like all FOIA specialists at the Agency, apply the same legal and regulatory standards. *Id.* They also take internal and external trainings on applying same. *Id.*; 4th Holzerland Decl. ¶ 109. While Plaintiff insists that only the CDC FOIA staff have the expertise to handle those requests, in Fiscal Year 2024, the Agency FOIA Office recommended affirming CDC FOIA actions in 13 out of 113 cases, or approximately twelve percent of those reviewed during the year. Def. Stmt. ¶ 55. Clearly, the Agency FOIA Office can handle the former CDC FOIA Office's prior work.

The Agency is also preparing to launch a pilot program that uses artificial intelligence ("AI") tools to assist with the initial review of records responsive to FOIA requests. Def. Stmt. ¶¶ 21-22; 4th Holzerland Decl. ¶104. This pilot will focus on the first-level review phase, where records are typically screened for responsiveness, duplication, and the potential presence of sensitive or exempt information. The AI tool will not make final determinations but will support FOIA staff by tagging potentially responsive documents, identifying common exemption categories (as personally identifiable information or deliberative content) and flagging duplicates or irrelevant material. All AI-assisted review outputs will be subject to human verification by trained FOIA personnel before any determination is issued to a requester. *Id.* The goal is to improve efficiency and reduce FOIA processing times by automating repetitive and time-consuming elements of the document review process. *Id.* ¶ 22. If successful, the AI-assisted workflow could allow the Department to process requests more quickly and equitably, benefitting all requesters—including those with CDC FOIA requests. *Id.*

Additionally, the Office of Personnel Management has granted the Department a waiver to hire ten employees to support FOIA operations. Def. Stmt. ¶ 49; 4th Holzerland Decl. ¶ 107. These positions are not intended as restorations of previously eliminated roles; rather they carry distinct responsibilities and qualifications that align with the Department's current direction and priorities in the reorganization. *Id.* Given this record, Plaintiff cannot show a "likelihood of continued delinquent conduct by the agency." *Ctr. for the Study of Servs. v. Dep't of Health & Hum. Servs.*, 874 F.3d 287, 293 (D.C. Cir. 2017).

Plaintiff relies on an incredible "Doe Declaration," which asserts CDC FOIA staff receiving the reduction-in-force notices lost access to CDC's physical office spaces on April 1 and lost access to CDC computer systems on April 2. Doe Decl. (ECF No. 13-16) ¶ 5. While CDC

- 42 -

FOIA staff placed on administrative leave on April 1, lost permission to access CDC's physical office spaces, CDC FOIA staff did not lose access to CDC computer systems on April 2. Def. Counter Stmt. ¶ 5; Def. Ex. Nos. 3, 4, and 5; Def. Stmt. ¶¶ 29–35. Electronic records show that CDC FOIA staff members accessed CDC email and the CDC electronic FOIA tracking system through at least May 20, 2025. *Id.* At least five affected CDC FOIA employees continued to log into CDC computer systems throughout April and May, including as late as May 20, 2025. *Id.* During this time, these individuals accessed email, reviewed FOIA cases, downloaded data, and performed other system functions 455 times. *Id.* ¶ 33. This contradiction calls into question the rest of the "Doe Declaration's" statements.

Amongst this centralization, Defendants are processing Plaintiff's five FOIA requests, as explained above. 4th Holzerland Decl. ¶¶ 16–47. As to one request, the Agency FOIA Office plans to issue its first interim release of processed records on September 15, 2025. 3d Holzerland Decl. ¶ 32. As to the other four requests, the Agency FOIA Office "plans to update Plaintiff on or before September 30, 2025, as to the status of the search for responsive records and anticipated processing rate, to the extent responsive records are located." *Id.* ¶¶ 27, 41, 46. Joint status reports will be filed every forty-five days, beginning on November 4, 2025, with updates. Min. Order Aug. 27, 2025; Jt. Mot. (ECF No. 42).

Beyond Plaintiff's FOIA requests, the Agency FOIA office has issued eighty-nine litigation productions, encompassing 46,407 pages reviewed and 40,993 released since the reorganization began April 1, 2025. Def. Stmt. ¶ 44; 4th Holzerland Decl. ¶ 94.

These facts establish the Defendants' "good faith effort and due diligence . . . to comply with all lawful demands [for records] . . . in as short a time as is possible." *Jud. Watch*, 895 F.3d at 781 (alterations in original; quoting *Open Am.*, 547 F.2d at 616). Plaintiff has offered no

evidence that controverts Mr. Holzerland's declarations, nor has it offered any evidence of bad faith. As explained, there is no support for Plaintiff's assertion that Defendants are hindering the lawful release of records or abandoning their FOIA duties. There is thus no genuine dispute of material fact as to whether Defendants have a policy or practice of intentionally failing to comply with their FOIA obligations.

Nor do the facts of this case resemble those of any case in which the D.C. Circuit has indicated that a policy-or-practice claim might succeed. There is no allegation here, as there was in *Payne* and *Newport*, that Defendants have repeatedly withheld documents based on an erroneous assertion of a FOIA exemption. The concerns that animated the decision in *Judicial Watch* are likewise absent here. This case does not involve multiple requests for "nearly identical' records," over a period of years. *Jud. Watch*, 895 F.3d at 779. And given the undisputed evidence that Defendants generally processes requests on each track on a first in, first out basis (Def. Stmt. ¶¶ 15, 28), there can be no concern that Defendants use the "filing of a lawsuit as an organizing tool for setting its response priorities" and then "mooting the litigation" to "escap[e] judicial review." *Jud. Watch*, 895 F.3d at 779, 781; *see also Open Am.*, 547 F.2d at 616 (approving the use of a "first-in, first-out" system, with exceptions for "exceptional need or urgency").

Nor can there be any contention that Defendants' prior delays are "[u]nexplained" or the result of "a lack of due diligence." *Jud. Watch*, 895 F.3d at 783. Defendants process requests on a first in, first out basis, Def. Stmt. ¶¶ 15, 28, and are processing Plaintiff's five FOIA requests, Fourth Holzerland Decl. ¶¶ 16–47, establishing their good faith and due diligence, making summary judgment in its favor appropriate. An agency's ultimate success on a policy-or-practice claim will turn on whether it can establish "good faith effort and due diligence" in responding to requests. *Jud. Watch*, 895 F.3d at 783 (quoting *Open Am.*, 547 F.2d at 616).

Mere failure to respond to FOIA requests within twenty days alone does not present a FOIA policy and practice claim.  As then-Judge Kavanaugh observed, it is simply a "reality" that it is "practical[ly] impossib[le] for agencies to process all FOIA requests completely within twenty days." *CREW*, 711 F.3d at 189 (citation modified).  When, in any given case, the agency "does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.*  But the larger question of the agency's "compliance with the Act," depends on the agency's "good faith effort and due diligence," not on its ability to meet the statutory deadlines.  *Open Am.*, 547 F.2d at 616. And this Court has long recognized that "delay alone cannot be said to indicate an absence of good faith" in processing FOIA requests.  *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978).

Here, Defendants are exercising "good faith effort and due diligence" in responding to requests.  *Judicial Watch*, 895 F.3d at 783.  With this established in the record, Defendants have shown their entitlement to summary judgment.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Counts II and III, or, in the alternative, grant summary judgment in Defendants favor on these counts and any other relief deemed just and proper.

*       *       *

Dated: September 4, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division


By: _____/s/ Mason D. Bracken_____
    MASON D. BRACKEN
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2523
    mason.bracken@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

        Plaintiff,

        v.

CENTERS FOR DISEASE CONTROL AND
PREVENTION, et al.,

        Defendants.

Civil Action No. 25-1020 (TJK)

### [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's motion for summary judgment, Defendants' cross-motion to dismiss or for summary judgment, and the entire record herein, it is hereby

ORDERED that Plaintiff's motion is DENIED;

ORDERED that Defendants' motion is GRANTED; and it is further

ORDERED that Counts II and III are DISMISSED.

SO ORDERED:

_____
Date

_____
TIMOTHY J. KELLY
United States District Judge