**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br>     *Plaintiff*, <br><br>     v. <br><br> U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION et al., <br><br>     *Defendants*. | Civil Action No. 25-1020 (TJK) |

<u>**MEMORANDUM OPINION**</u>

Citizens for Responsibility and Ethics in Washington, commonly known as CREW, is a nonprofit government watchdog.  CREW routinely submits requests for records to government agencies under the Freedom of Information Act, or FOIA.  One agency to which CREW submits requests is the Centers for Disease Control, housed under the Department of Health and Human Services.  On April 1, 2025, CREW submitted five expedited FOIA request to the CDC.  As it happened, on that same day, as part of an agency-wide reduction in workforce, all employees within CDC whose jobs were to respond to FOIA requests were placed on leave and the CDC FOIA office was shuttered.  All FOIA requests made to the CDC would instead be handled by the Office of the Secretary, a different division of HHS.  After becoming aware of these developments a few days later, CREW sued, alleging that its FOIA requests were not being properly processed under FOIA and that the closure of the CDC FOIA office was unlawful under both FOIA (through a policy-or practice claim) and the Administrative Procedure Act, or APA.

CREW moves for summary judgment on the latter two claims, and Defendants move both to dismiss and for summary judgment.  For the reasons explained below, although the record suggests that the closure of the CDC FOIA office impaired—to some degree—HHS's ability to

process requests for CDC records, the Court will deny Defendants' motion to dismiss CREW's policy-or practice FOIA claim, deny without prejudice both parties' motions for summary judgment, and allow to the parties to renew their motions with an updated factual record. The Court will also, as explained, grant Defendants' motion to dismiss CREW's APA claim.

## I.    Regulatory and Factual Background

FOIA requires agencies to make records available to any person whose request "reasonably describes such records" and satisfies agency procedures. 5 U.S.C. § 552(a)(3)(A). Along with requiring agencies to process and produce records upon request, FOIA places several other ongoing obligations on agencies. For example, "[e]ach agency" must "make available for public inspection" certain "administrative staff manuals" and copies of released records likely to be subject to repeat requests. §§ 552(a)(2)(C), (D). Agencies must also create systems to assign "individualized tracking number[s]" to requests and establish methods for communicating with requesters. § 552(a)(7). And to ensure "efficient and appropriate compliance," each agency must "designate a Chief FOIA Officer." § 552(j)(1), (2). All told, FOIA imposes several statutory requirements on covered agencies so that "citizens" can "know what their Government is up to"—a "structural necessity in a real democracy." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 171–72 (2004) (internal quotation marks and citation omitted).

Until recently, the Department of Health and Human Services ("HHS") complied with its FOIA requirements through a "decentralized" system that "consisted of independently run FOIA offices at eleven [divisions of HHS] including at the Center for Disease Control and Prevention." ECF No. 43-3 ¶ 7. At the top of this system sat the FOIA office for the Office of the Secretary ("OS") which was responsible for processing initial FOIA requests for records that belonged to no one particular division, as well as generally "monitor[ing] FOIA implementation throughout [HHS]." *Id.* ¶ 8; *see also* ECF No. 31 ¶ 25. But FOIA requests made to the Centers for Disease

Control ("CDC") for CDC-specific records were mainly processed and responded to by the CDC FOIA office.  ECF No. 43-3 ¶ 8; *see also* ECF No. 43-1 ¶ 39.

HHS's decentralized FOIA system changed under the current administration.  On February 11, 2025, President Trump issued an Executive Order titled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative," which instructed agency heads to prepare "to initiate large-scale reductions in force." Exec. Order No. 14210, 90 Fed. Reg. 9669 (Feb. 11, 2025).  Under that Executive Order, HHS announced that it planned to "restructure and downsize its workforce by 20,000 employees, from 82,000 to 62,000 full-time employees." ECF No. 43-1 ¶ 2 (citing Press Release, Dep't of Health and Human Servs., *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/press-room/hhs-restructuring-doge.html).

On April 1, 2025, CDC shuttered its FOIA office.  ECF No. 43-1 ¶ 6; ECF No. 31 ¶ 36. All 23 full-time employees in the office were told that day via email that they would be "separated from HHS effective June 2, 2025."  ECF No. 43-1 ¶¶ 3, 4, 6.  Though they did not formally lose employment for another few months, all CDC FOIA employees were immediately placed on administrative leave and lost access to CDC's physical office spaces.  *Id.* ¶ 5.

The same day, CREW submitted five expedited FOIA requests to the CDC.[1]  ECF No. 31 ¶¶ 43–48; ECF No. 43-1 ¶¶ 11–14.  In response to its requests, CREW received automated emails from the CDC FOIA office stating: "Hello, the FOIA office has been placed on admin leave and is unable to respond to any emails."  ECF No. 43-1 ¶ 21; ECF No. 13-3 ¶ 14.  CREW then emailed HHS directly asking whether the CDC was still processing FOIA requests.  ECF No. 43-1 ¶ 23.

---

[1] The specifics of CREW's requests are not relevant to the motions before the Court.  *See* ECF No. 41 (moving to stay the dispute over the CDC's alleged "failure to process [CREW's] five April 1, 2025 FOIA requests"); Minute Order of August 27, 2025 (granting the stay).

Receiving no response, CREW sued the CDC, HHS, and their top officials three days later, on April 4, 2025. ECF No. 1. Later that month, CREW moved for a preliminary injunction and partial summary judgment. *See* ECF No. 13. After a hearing on the preliminary injunction in mid-May, the Court denied CREW's motion. *See* ECF No. 28. The Court explained that CREW had failed to show that it would suffer irreparable injury without immediate relief, because neither of CREW's two alleged harms—the inability to receive specific records regarding the measles out-break, and the hit to its general organizational mission of disseminating information to the public—met the high standard in this Circuit for irreparable harm. *See* ECF No. 29 at 7–8.

In June 2025, CREW filed an amended complaint with three counts. *See* ECF No. 31. In Count I, CREW alleges that Defendants violated FOIA by failing to process its five requests for records. *Id.* ¶¶ 74–81. In Count II, CREW claims that Defendants violated FOIA by "eliminating the CDC FOIA office" and "shift[ing] all its responsibilities to the OS FOIA office," which amounts to a "policy or practice" that violates various FOIA requirements. *Id.* ¶¶ 82–87. And in Count III, CREW claims that the same actions that constitute the policy or practice violate the APA because they are contrary to law. *Id.* ¶¶ 88–94.

In August 2025, the parties agreed upon a disclosure schedule as to the records that are the subject of Count I and jointly moved to stay dispositive motions briefing on that count. *See* ECF No. 41. The Court granted that stay, *see* Minute Order of August 27, 2025, leaving only Counts II and III—the two aimed at the closure of the CDC FOIA office—at issue here. Pending before the Court are CREW's motion for summary judgment on those two counts and Defendants' cross-motion to dismiss and, in the alternative, for summary judgment. *See* ECF Nos. 33, 44, 45.

## II.    Analysis

The FOIA and APA claims at issue share the same core assertion: that the closure of the CDC FOIA office and rerouting of requests to OS FOIA has resulted in violations of various

statutory and regulatory FOIA provisions.  In Count II, CREW brings a claim under FOIA, asserting that Defendants have a policy or practice of violating the FOIA statute and related HHS regulations.  For this alleged policy-or-practice FOIA violation, CREW requests "declaratory" and "prospective injunctive relief" from the Court that "[a]t a minimum . . . require[s] Defendants to augment, temporarily or permanently, CDC FOIA review resources."  ECF No. 35-1 at 43 (internal quotations and citations omitted).  In Count III, CREW brings a claim under the APA, asserting that the aforementioned violations of the FOIA statute and related HHS regulations are "not in accordance with law."  5 U.S.C. § 706(2).  For this tag-along APA violation, CREW asks the Court to "set aside and enjoin [Defendants'] final decision to render the [CDC's] FOIA office 'non-operational.'"  ECF No. 35-1 at 50 (citing ECF No. 31 ¶ 4).

Before the Court are the parties' dueling motions.  Defendants move both to dismiss and for summary judgment for a mix of reasons.  Defendants assert first that CREW lacks standing to bring either count.  ECF No. 43 at 18–19, 45–47.  Then, on the merits of Count II, Defendants argue that CREW's FOIA claim should be dismissed for failure to state a claim, or in the alternative, that summary judgment should be granted in their favor.  ECF No. 43 at 10–12.  And on the merits of Count III, Defendants assert that CREW's APA claim should be dismissed for failure to state a claim.  ECF No. 43 at 20.  CREW, for its part, argues that the Court should reach the merits on both counts and moves for summary judgment in *its* favor on both.  ECF No. 35-1 at 8.

The Court finds that it has jurisdiction over Counts II and III.  It also finds that CREW has stated a FOIA claim upon which relief can be granted in Count II, and so will deny Defendants' motion to dismiss on that count.  But on this record, the Court agrees with neither side's request for summary judgment on Count II.  Thus, it will deny without prejudice both parties' summary-judgment motions on that count.  And as for Count III, the Court agrees with Defendants and will dismiss CREW's APA claim for failure to state a claim.

5

A.    **The Court Will Deny Defendants' Motion to Dismiss to the Extent it Seeks Dismissal of Counts II and III For Lack of Standing**

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A challenge to a plaintiff's standing to bring a claim goes to the limited subject-matter jurisdiction of the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). As the "party invoking federal jurisdiction," the plaintiff bears the burden of establishing standing. *Id.* When standing is contested as part of summary judgment briefing, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* at 561 (quoting Fed. R. Civ. P. 56(e)).

"'[T]he irreducible constitutional minimum of standing contains three elements': injury in fact, causation, and redressability." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (quoting *Lujan*, 504 U.S. 555 at 560). A plaintiff must establish these three elements "for each claim he seeks to press and for each form of relief that is sought," for "standing is not dispensed in gross." *John Doe Co. v. CFPB*, 849 F.3d 1129, 1132 (D.C. Cir. 2017) (internal citation and quotations omitted). "The first requirement, injury in fact, requires the plaintiff to demonstrate an injury that is 'concrete,' 'particularized,' and 'actual or imminent, not speculative.'" *Diamond Alt. Energy*, 606 U.S. at 111 (quoting *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024)). "The second and third requirements, causation and redressability, are usually flip sides of the same coin. Causation requires the plaintiff to show that the injury was likely caused by the defendant, and redressability requires the plaintiff to demonstrate that the injury would likely be redressed by judicial relief." *Id.* (internal citations and quotations omitted).

Defendants move to dismiss Counts II and III for lack of standing. The Court disagrees on

both.  First, with respect to Count III, Defendants argue that CREW cannot use the APA to challenge the closure of the CDC FOIA office because "CREW and its employees were not terminated" by the closure and so did not suffer an injury.  ECF No. 43 at 18–19.  Defendants assert that the only individuals that have standing to challenge the closure itself are the 23 CDC FOIA employees who were terminated, and CREW cannot bring suit on their behalf.  *Id.* at 19 (citing *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991) (listing the requirements for third-party standing)).

But Defendants' argument mistakenly assumes that the closure of the CDC FOIA office can inflict only one injury.  While the office closure injured the office's employees by terminating their jobs, the closure also allegedly "depriv[es] CREW of basic access to agency records" and thereby stymies its mission of "disseminating information about public officials and their actions." ECF No. 47 at 35 (cleaned up).  CREW's suit over the loss of an upstream informational input necessary for its organizational mission is "not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer"—an injury long recognized to afford standing to an organization.  *Alliance for Hippocratic Medicine*, 602 U.S. at 395 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  So CREW has standing to bring an APA claim.

Second, Defendants argue that CREW lacks standing to bring a FOIA claim that Defendants are violating the "reading-room" provision of the FOIA statute, *see* ECF No. 43 at 46–47 (citing 5 U.S.C. § 552(a)(4)(B)), and the "research-data" FOIA regulation, *see id.* at 47 (citing 45 C.F.R. § 75.322(e)).  The Court cannot redress the former, Defendants say, because the D.C. Circuit has held that the FOIA statute "'does not authorize district courts to order publication' of documents subject to the" reading-room provision.  *Id.* at 46 (quoting *CREW v. DOJ*, 846 F.3d

1235, 1243 (D.C. Cir. 2017) ("*CREW II*")).[2]  And the latter is not an injury, Defendants say, because CREW "has not alleged or submitted evidence that it submitted a request for 'research data made available under the provisions of 45 CFR 75.322(e).'"  *Id.* at 47 (quoting ECF No. 31 ¶ 23).

Defendants misread CREW's amended complaint.  While CREW must demonstrate standing "for each claim [it] seeks to press," *John Doe Co.*, 849 F.3d at 1132, CREW has not brought standalone claims for violations of the reading-room provision and research-data regulation.  Rather, these alleged violations support CREW's overarching claim that "eliminating the CDC FOIA office" amounts to a "policy or practice of violating FOIA."  ECF No. 31 ¶ 84; *see also* ECF No. 47 at 33 ("CREW relies on the reading-room and research-data provisions to support its claim that . . . Defendants [must] maintain a functional CDC FOIA office . . . and that Defendants have violated this requirement by shuttering the office.").  CREW has standing to bring this claim, as it has suffered informational injury caused by the closure of the CDC FOIA office in several ways (as explained above), and its injury can be redressed in some way by the Court under the FOIA statute, which affords courts the authority to fashion "broad" and "flexible" equitable remedies.  *CREW II*, 846 F.3d at 1241–42 (internal citation and quotations omitted).  So even assuming the Court could not provide separate redress for these two alleged violations of law CREW identifies, that would not defeat CREW's standing to bring its alleged policy-or-practice FOIA claim.

For these reasons, to the extent Defendants seek to dismiss Counts II or III on standing grounds, the Court will deny their motion.

### B.    The Court Will Neither Dismiss Count II nor Grant Summary Judgment on Count II to Either CREW or Defendants at This Time

As mentioned, in Count II, CREW brings a policy-or-practice FOIA claim that contests

---

[2] The D.C. Circuit has decided many appeals with CREW as a party.  Two of these cases play a large role in the Court's analysis.  To distinguish between them, the Court refers to them "CREW I" and "CREW II" based on the order that they were decided.

Defendants' closure of the CDC FOIA office and rerouting of FOIA requests to OS FOIA.  This policy or practice is alleged to have caused three sets of FOIA violations: (1) delays and lapses when responding to FOIA requests, in violation of 5 U.S.C. §§ 552(a)(3) and (a)(6), *see* ECF No. 31 ¶¶ 84b–c; (2) a failure to comply with the "reading room," "status update," and "system guide" provisions of FOIA, in violation of §§ 552(a)(2), (a)(7), and (g), *see* ECF No. 31 ¶¶ 84a, d, e; and (3) a failure to comply with internal HHS regulations that require that a CDC FOIA office exist in some capacity, in violation of 45 C.F.R. § 5.3 and other related provisions, *see* ECF No. 31 ¶¶ 23, 84f, 85.  CREW moves for summary judgment on this count.  Defendants move to dismiss it for failure to state a claim and cross-move for summary judgment.

### 1.   The Court Will Deny Defendants' Motion to Dismiss Count II Because CREW States a Policy-or-Practice FOIA Claim

Defendants move to dismiss CREW's FOIA claim for failure to state a claim under Rule 12(b)(6).  *See* ECF No. 47.  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  For a motion to dismiss under Rule 12(b)(6), the court takes all facts alleged in the complaint as true.  *Twombly*, 550 U.S. at 556.

The Court finds that CREW has stated a FOIA claim.  Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  FOIA primarily sheds light on administrative agencies through its requirement that an agency "make [] records promptly available" when a member of the public submits a "request for records which (i) reasonably describes

such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). As part of this prompt disclosure regime, FOIA requires that agencies "determine within 20 days . . . after the receipt of any such request whether to comply with such request," extendable only for "unusual circumstances" that must be explained "by written notice" to the requester. *Id.* §§ 552(a)(6)(A)(i), (B)(i). When a request is not addressed promptly, or the requester disagrees with the scope of the agency's disclosures, the requester may bring suit in court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

But FOIA permits a party to sue over more than an agency's response to a specific request for records. The D.C. Circuit has long recognized that, separate from challenging an agency's response to any specific request, a plaintiff may bring "a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enter., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988). This requires a plaintiff to show that the agency engages in an "impermissible practice" when responding to FOIA requests, and that the plaintiff will "suffer continuing injury due to this practice." *Id.* (internal citation and quotations omitted). "That is to say, a plaintiff must plead (1) some policy or practice that (2) results in a repeated violation of FOIA." *Am. Ctr. For L. and Just. v. Dep't of State*, 249 F. Supp. 3d 275, 282 (D.D.C. 2017).

CREW has sufficiently pled both elements of a policy-or-practice claim. First, CREW identifies a concrete policy: that Defendants have "eliminat[ed] the CDC FOIA office and . . . shift[ed] all its responsibilities to the OS FOIA office." ECF No. 31 ¶ 84. To be sure, this is not a singular policy so much as it is a combination of actions taken by Defendants at the agency level, including the initial April 1, 2025 reduction in CDC FOIA staff, as well as later reconfigurations of how HHS electronically routes FOIA requests. But the contours of the policy or practice need not be sharply "articulated in regulations or an official statement of policy." *Payne*, 837 F.2d at

491. In fact, a policy or practice can even be "informal," *Payne*, 837 F.2d at 491, even though many of aspects of the policy or practice alleged here *are* set forth in official statements relating to the President's "Workforce Optimization Initiative" Executive Order—*see, e.g.*, Press Release, Dep't of Health and Human Servs., *HHS Announces Transformation to Make America Healthy Again* (Mar. 27, 2025), https://www.hhs.gov/press-room/hhs-restructuring-doge.html.  The only requirement for an agency's actions to constitute a policy or practice is that they be systemic and "not merely" the result of "isolated mistakes by agency officials."  *Id.*  Defendants' wholesale office closure and routing all CDC FOIA requests to OS FOIA satisfies this requirement, and Defendants do not—and could not—argue otherwise.  *See* ECF No. 43 at 28–32 (moving to dismiss for failure to state a claim only on the grounds that any delay in processing FOIA requests does not violate FOIA).

Second, CREW plausibly alleges that the policy or practice of closing the CDC FOIA office has violated and will continue to violate several FOIA requirements.  Among other violations, CREW asserts that Defendants are "failing to make available for public inspection in an electronic format all up-to-date CDC reading-room records required under 5 U.S.C. § 552(a)(2)," "failing to 'make reasonable efforts to search for' CDC records and make requested CDC records 'promptly available,' as required under 5 U.S.C. § 552(a)(3)," and "failing to make determinations on standard and expedited FOIA requests for CDC records within the time periods required under 5 U.S.C. § 552(a)(6)."  ECF No. 31 ¶¶ 84a–c.  It is "settled law" that "agency conduct resulting in long delays in making requested non-exempt records available may serve as the basis for a policy or practice claim."  *Jud. Watch, Inc. v. United States Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018).  The same is true for agency conduct that violates the "reading-room provision."  *CREW II*, 846 F.3d at 1240.  So CREW need only allege sufficient facts showing that these violations have plausibly occurred.

CREW clears this bar easily.  It alleges that after the closure, several of its FOIA requests to HHS went unanswered for months, ECF No. 33 ¶¶ 57–59; that other organizations that filed FOIA requests at the time were similarly "stonewall[ed]," *id.* ¶ 67 & n.47; that the CDC has ceased updating its online FOIA portal and reading-room web page, *id.* ¶ 67 & n.49; and that OS FOIA does not have the staff, resources, or expertise to process all FOIA requests made to the HHS, *id.* ¶¶ 68–72.  Taking these allegations as true, as the Court must in resolving a motion to dismiss, the Court finds that CREW has plausibly alleged that closing the CDC FOIA office and subsequent rerouting will result in repeated violations of at least some of FOIA's statutory requirements.  *See Jud. Watch*, 895 F.3d at 780.[3]

For these reasons, the Court will deny Defendants' motion to the extent that it seeks to dismiss Count II for failure to state a claim.

### 2.    The Court Will Deny Without Prejudice Both CREW and Defendants' Motions for Summary Judgment on Count II

CREW moves for summary judgment in its favor on Count II because Defendants' closure of the CDC FOIA office violates FOIA.  Defendants cross-move for summary judgment, arguing that Defendants are complying with FOIA and will continue to do so.  "In the FOIA context, a district court reviewing a motion for summary judgment conducts a de novo review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA."  *MacLeod v. DHS*, No. 15-cv-1792, 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017) (Jackson, J.) (citing 5 U.S.C. § 552(a)(4)(B)).  Summary judgment may be granted

---

[3] The D.C. Circuit has not addressed whether a violation of the timelines for determination in 5 U.S.C. § 552(a)(6) standing alone can be the basis for a policy-or-practice claim.  *See Jud. Watch*, 895 F.3d at 786 (Pillard, J., concurring) (confirming that the Circuit's cases "have never so held" on the question one way or the other).  The Court need not answer the question, as CREW has plausibly alleged other FOIA violations, such as the violation of the requirement to make documents "promptly available" and the reading-room requirement, and those violations provide a basis for a policy-or-practice claim.  *See CREW II*, 846 F.3d at 1240–42.

"when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). For the reasons explained below, the Court will deny both parties' motions without prejudice.

### a.      Delay in Processing FOIA Requests

As described above, CREW accuses Defendants of violating FOIA by not timely processing requests for records in several ways. ECF No. 31 ¶¶ 84a–c. When an agency receives a specific request for records under 5 U.S.C. § 552(a)(3), the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of [] such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." § 552(a)(6)(A). The 20-day window can be extended or tolled briefly for several reasons, one of which is when there are "unusual circumstances" present, such as "the need to search for and collect the requested records from . . . other establishments that are separate from the office processing the request," in which case the agency may take an extension of at most "ten working days." §§ 552(a)(6)(B)(i), (iii). "[I]f the agency fails to comply with the applicable time limit provisions," the requester "shall be deemed to have exhausted his administrative remedies with respect to such request." § 552(a)(6)(C)(i). In sum, an agency has 20 working days—extendable to 30 in unusual circumstances—to determine whether to disclose requested records, after which the requester may sue.

After litigation begins, these deadlines no longer control the courts' decision making or the disclosure schedule. "If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from

13

getting into court"—nothing more. *CREW v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("*CREW I*") (Kavanaugh, J.). That is, the plaintiff-requester is not entitled to court-ordered disclosure of non-exempt documents simply because the agency has taken longer than the statutory determination timeline. Indeed, "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Id.* (cleaned up).[4]

Instead, a different standard applies after litigation starts. "Once in court . . . the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court." *CREW I*, 711 F.3d at 185. The phrase "exceptional circumstances"—unlike "unusual circumstances"—is not sharply defined, leaving flexibility for the court to decide case-by-case. *See id.* at 185 n.2. The statute only clarifies that "the term 'exceptional circumstances' does *not* include a delay that results from a predictable agency workload of requests under this section, *unless* the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii) (emphases added). The D.C. Circuit has further fleshed out the standard, finding exceptional circumstances to exist when the agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976). Under such

---

[4] Besides practical realities, the text of the FOIA statute "recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement." *CREW I*, 711 F.3d at 189. For example, each agency is required to submit an annual report that contains "the number of requests for records to which the agency has responded with a determination within a period of greater than 400 days." 5 U.S.C. § 552(e)(1)(G)(iv). Such a reporting requirement would be strange if agencies were required by law to make all determinations within 20 or 30 days. And this is only one of "several statutory provisions [that] acknowledge[s] that some requests may require significant processing time . . . before a 'determination' can be made." *CREW I*, 711 F.3d at 189 n.8.

exceptional circumstances, "the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *CREW I*, 711 F.3d at 185 (quoting § 552(a)(6)(C)(i)).

If, in the end, an agency cannot show that its delay stems from exceptional circumstances, "FOIA section 552(a)(4)(B) vests courts with broad equitable authority" to provide relief to the plaintiff—though not to the public as a whole. *CREW II*, 846 F.3d at 1241, 1243. Yet even the existence of a policy or practice resulting in repeated and unexcused delay will not necessarily entitle the plaintiff to equitable relief beyond a simple production order. "[N]ot all agency delay or other failure to comply with FOIA's procedural requirements will warrant judicial intervention, much less injunctive relief." *Jud. Watch*, 895 F.3d at 782. Before providing equitable relief, the court must assess whether "whether the agency's conduct in failing to conform to FOIA's procedural requirements demonstrates a lack of due diligence and is so delinquent or recalcitrant as to warrant injunctive relief because ordinary remedies, such as a production order, would be inadequate to overcome an agency policy or practice." *Id.* at 783. "Factors to be considered are the *bona fides* of the expressed intent to comply, the effectiveness of the discontinuance [of the violation] and, in some cases, the character of the past violations." *Id.* (alteration in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Ultimately, courts should be sparing with equitable relief, as "only a rare instance of agency delinquency in meeting its duties" under the FOIA statute "will warrant a prospective injunction." *CREW II*, 846 F.3d at 1246.

The Court will deny without prejudice both parties' motions for summary judgment and allow them to renew them on an updated factual record. The record before the Court does not—at least not yet—support any relief that CREW requests to address the processing delays it has shown. No doubt, widespread delay has followed the closure of the CDC FOIA office and subsequent rerouting of requests to the OS FOIA office. But even if that delay does not result from "exceptional circumstances," it appears to show signs of abating as the initial friction from

15

reorganizing HHS's FOIA structure dissipates.  And it is hard to tell how much the closure of the CDC FOIA office has increased delay times at all, given that FOIA processing times even before April 1, 2025, were often far outside of statutory timelines.[5]  Still, the Court recognizes that summary judgment may be warranted for CREW on an updated record, depending on what it shows.[6]

To begin, the record *does* reveal a pattern of delayed response since Defendants' closure of the CDC FOIA office on April 1, 2025.  CREW has amassed a formidable parade of declarations all stating the same thing: that responses to FOIA requests made for CDC records in the wake of April 1 were delayed by months, and that inquiries regarding those FOIA requests have been stonewalled for various technological and staffing reasons.  CREW alleged in a declaration that by July 17, 2025, CREW had received *no* correspondence at all from Defendants on three of their five FOIA requests made on April 1.  ECF No. 33-2 ¶¶ 1–5.  In a supplemental declaration filed on October 21, 2025, CREW added that for subsequent FOIA requests filed on May 21 and June 25, Defendants did not send an acknowledgment until September 2, and the response was merely to

---

[5] There is no dispute that Defendants failed to respond with a determination to CREW's five specific FOIA requests within the statutory timelines, so CREW is properly in court.  *See* ECF No. 43-1 ¶ 29.

[6] Courts in this Circuit regularly deny cross-motions for summary judgment without prejudice in FOIA cases to allow for further factual development.  *See, e.g.*, *Jud. Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 134 (D.D.C. 2014) (Jackson, J.) (denying cross-motions without prejudice "[b]ecause the Court finds that it lacks sufficient information to determine" the contested FOIA issue); *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 393 F. Supp. 86, 93 (D.D.C. 2019) (denying cross-motions without prejudice because "the Court has no basis to determine whether, or to what extent" either party prevails on the contested FOIA issue); *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 67 (D.D.C. 2022) (denying cross-motions without prejudice because "it is premature for the Court to pass on" a contested FOIA issue); *see also Farahi v. FBI*, 153 F.4th 1283, 1285, 1287 (D.C. Cir. 2025) (affirming the district court, which had denied summary judgment without prejudice before later granting summary judgment on a fuller record).  Doing so properly balances the requirements for a grant of summary judgment, *see* Fed. R. Civ. P. 56, with the fact that "FOIA cases typically and appropriately are decided on motions for summary judgment." *Am. Immigr. Council v. DHS*, 30 F. Supp. 3d 67, 72 (D.D.C. 2014) (citations omitted).

ask for more time to respond. *See* ECF No. 47-1 ¶¶ 9–16; *id.* at 52–72. The supplemental declaration also clarified that various CDC FOIA tracker webpages were broken, preventing CREW from "reviewing the status of its pending requests." *Id.* ¶¶ 27–28; *id.* at 84–131.

Other organizations that have submitted FOIA requests to the CDC since April 1 report experiencing similar delays. An employee at the ACLU declared on October 16, 2025 that despite a grant of expedited processing for a FOIA request made on February 7 and a promise that a "final response" could be reasonably anticipated by May 4, the CDC had sent no further correspondence in the eight months since. ECF No. 47-9 ¶¶ 1–8. Counsel at the Sierra Club declared on October 20, 2025 that she had received an acknowledgment of receipt on July 30 for a FOIA request made on April 1, but nothing more. ECF No. 47-5 ¶¶ 6–8. An employee at the Democracy Forward Foundation declared on October 14, 2025 that Defendants had not yet assigned a tracking number to the Foundation's FOIA request to the CDC made on April 25. ECF No. 47-8 ¶ 20. An employee at American Oversight declared on October 17, 2025 that "American Oversight has received only acknowledgment letters from CDC since April 1, 2025, but has had no substantive communications with CDC regarding any submitted FOIA requests"; in fact, "for the 12 requests submitted after April 1, 2025, American Oversight has received . . . no communications at all" for five. ECF No. 47-2 ¶¶ 7, 30. An employee at the Union of Concerned Scientists declared on October 17, 2025 that the Union filed a FOIA request with the CDC on March 11 and received an acknowledgment letter and tracking number on March 27, but then received no further correspondence for months. ECF No. 47-7 ¶¶ 1–5; *see* ECF No. 26-6 ¶ 5. The silence was broken by an August 13 email from the HHS FOIA Public Liaison that informed the Union that the agency "has a backlog of approximately 7,000 requests and limited resources" and that "it will take at least four more months" before a final response could be issued on the Union's March 11th FOIA request; no further update has since been given. ECF No. 47-7 ¶¶ 5–8. Defendants largely do not contest the

contents of most of these declarations.  *See* ECF No. 43-3 ¶¶ 51–54 (confirming Sierra Club, American Oversight, and Union of Concerned Scientists' experiences); ECF No. 44-1 ¶¶ 96–99 (same).

The near silence from Defendants on FOIA requests has been particularly difficult to handle, these organizations say, because other windows for contacting Defendants were apparently boarded up for some time.  "[M]ultiple attempts" from the Democracy Forward Foundation to reach Defendants in the months between April and October failed: emails to the CDC and HHS addresses "received no response"; the CDC FOIA portal could not be used because the Foundation was "unable to access [its] account" and could not reset its password because CDC failed to send the reset "verification email"; and phone calls placed to "the publicly listed phone line for HHS's main FOIA" were rebuffed with "an automated message stating that this phone number has been disconnected."  ECF No. 47-8 ¶¶ 20–25.  An employee at Knowledge Ecology International states that she reached out to both the CDC FOIA email and the HHS FOIA Public Liaison on September 26, 2025, and was met solely with automatic-reply emails.  ECF No. 47-3 ¶¶ 5–8.  The Union of Concerned Scientists reports the same experience of trying and failing to reach someone within the CDC or HHS during these months.  ECF No. 47-7 ¶¶ 4, 6.

This period of unresponsiveness is unsurprising given the apparent turmoil within HHS after April 1, 2025.  Internal emails from William H. Holzerland, the HHS employee "responsible for supervising the handling of all FOIA matters and litigations received by [OS-FOIA]," ECF No. 43-3 ¶ 1, reveal that OS FOIA "received zero advance notice" that various HHS OpDiv FOIA offices would be closing on April 1.  ECF No. 47-1 ¶ 6.  At the time, OS FOIA did "not yet have access to existing CDC/NIH/FDA requests" as a technological matter.  *Id.*  Understandably, then, it was "clear" in early April to HHS FOIA staff that "there will be widespread, significant service delays across nearly every HHS OpDiv FOIA program" in the near term.  *Id.*  Apart from

technological problems, OS FOIA also recognized that without "additional personnel or funding . . . dedicated to the absorption of existing HHS FOIA programs," the new practice of funneling all HHS FOIA requests to OS FOIA would swell the amount of "statutorily-mandated daily work and litigation" to a level "far beyond the capacity of the current OS FOIA team."  *Id.*

That said, what the record does *not* show is that these extensive delays have persisted to the present day.  The last round of declarations from CREW date back to October 2025, about six months ago.  And Defendants provide reasons to think that many delays in the first several months after the closure of the CDC FOIA office resulted from temporary difficulties that have now improved and will continue to improve over time.  For example, Holzerland at OS FOIA declares that "the OS FOIA system that existed as of April 1, 2025 ended on August 30, 2025," and that "as of September 3, 2025," FOIA requests are finally "managed by OS-FOIA personnel" in an integrated "information technology environment."  ECF No. 43-3 ¶ 11.  Defendants are making further technological changes that they believe will streamline access to disclosed records, such as by implementing a "centralized" portal for accessing required disclosures and "incorporat[ing] artificial intelligence (AI) tools into the initial review of FOIA-responsive records."  ECF No. 50-1 ¶¶ 17–18.  Additionally, after the April 1 closure, HHS received authorization to "hire ten (10) additional staff members to strengthen FOIA operations."  *Id.* ¶ 19.  Hiring was temporarily stymied because of the government shutdown that occurred between October 1, 2025 to November 12, 2025, *see id.* ¶ 14, but nothing in the record suggests that OS FOIA has not used this authorization since November.[7]

The current record also does not allow the Court to conclude how much of the delay today

---

[7] The government shutdown also means that any lack of response between October 1, 2025 and November 12, 2025 would not result from Defendants' policies, but the shutdown itself.  ECF No. 50-1 ¶ 14.

is historically abnormal for HHS.  Even *before* the closure of the CDC FOIA office, determinations for requests were delayed for extended periods of time.  A declaration from White Coat Waste, for example, states that it submitted a FOIA request on January 2, 2025, clarified the scope of the request on January 14, 2025—and then did "not receive[] any additional communication from Defendants" through July 2025 despite the fact that the "CDC's deadline to issue an initial determination on this request was January 31, 2025."  ECF No. 33-5 ¶¶ 7–10.  The first four months of that delay cannot be attributed to the closure of the CDC FOIA office, because that portion pre-dates the closure.  More extreme is a FOIA request submitted by Knowledge Ecology International on September 29, 2023, that was apparently ignored for the entire year and a half before April 1, 2025.  ECF No. 33-4 ¶ 14.  To be sure, the Court does not excuse the apparent failure to process that request.  But the point is: whatever happened cannot be blamed on the later-implemented policy of closing the CDC FOIA office.

Finally, the record shows—and CREW does not dispute—that OS FOIA is making progress on some FOIA requests.  For the five FOIA requests submitted by CREW on April 1, 2025, for example, Defendants have "completed processing for four out of the five," sending three "final response[] letters . . . on September 30, 2025, and a fourth on December 8, 2025."  ECF No. 55 at 1.  As for the fifth, Defendants have "processed [1,783] pages" out of an identified 1,800 as of February 27, 2026.  *Id.*  Holzerland adds that between April 1, 2025, and December 5, 2025, "OS-FOIA has issued [135] litigation productions, encompassing [64,835] pages reviewed and [51,797] released," and is "actively reviewing" another "[100,000] pages of records" that are "responsive to approximately [700] pending FOIA requests outside of litigation."  ECF No. 50-1 ¶¶ 16–17.  Of the total 135 litigation productions, 19 are "CDC-related," which required "reviewing at least [3,989] pages and releasing at least [3,462]" of them.  *Id.* ¶ 16.

Considered as a whole, the record depicts an agency at least temporarily diminished last

20

year but plodding on, and holding out the potential for improvement, perhaps even measured against the status quo before April 1, 2025.  To be sure, as CREW points out, any wounds the agency has suffered to its FOIA processing capacity since April 1, 2025, are self-inflicted.  The Court agrees that it would be perverse if a federal agency could "'avoid its obligations under FOIA—including the obligation to process a [records] request in an efficient and prompt manner— by simply implementing a reduction-in-force' . . . [of] its FOIA personnel."  ECF No. 35-1 at 8 (quoting *Ctr. to Advance Sec. in Am. v. U.S. Agency for Int'l Dev.*, No. 24-cv-3505 (RDM), 2025 WL 763735, at *2 (D.D.C. Mar. 11, 2025)).  For this reason, the Court is skeptical of Defendants' argument that any delays stemming from the closure of the CDC FOIA office—to the extent they can be gleaned on this record—are excusable due to the presence of "exceptional circumstances." ECF No. 43 at 29; ECF No. 50 at 12–13.  Defendants' attempt to blame exceptional circumstances that they themselves have created "calls to mind the man sentenced to death for killing his parents, who pleads for mercy on the ground that he is an orphan."  *Glossip v. Gross*, 576 U.S. 863, 898 (2015) (Scalia, J., concurring).

Still, the Court will deny without prejudice both parties' motions for summary judgment, because on the mixed, stale, and incomplete record before it, CREW is not entitled to the sort of injunctive relief to address these delays that it requests.  Even when an agency is "failing to con-form to FOIA's procedural requirements," that failure is not itself enough to "warrant injunctive relief" beyond "ordinary remedies, such as a production order."  *Wash. Lawyers' Comm. for C.R. & Urb. Affs. v. DOJ.*, 145 F.4th 63, 70 (D.C. Cir. 2025) (quoting *Jud. Watch*, 895 F.3d at 783). Instead, the agency's conduct must "demonstrate[] a lack of due diligence" and be "so delinquent or recalcitrant" that judicial intervention is necessary.  *Id.*  The record does not now support that conclusion, although an updated factual record may, depending on what it shows about how

Defendants have met—or failed to meet—their FOIA obligations as more time has passed.[8]

That this standard is not met now is illustrated by the fact that on this record, both sides have some semblance of a story to tell. True, "staffing shortages and work overload"—especially those self-inflicted—"may not render injunctive relief inappropriate." *Jud. Watch*, 895 F.3d at 783. But the Court need not be blind to the "practical impossibility" that agencies face when attempting to comply with FOIA's tight deadlines. *CREW I*, 711 F.3d at 189 (cleaned up). As described above, after the closure of the CDC FOIA office under the President's "Workforce Optimization Initiative" Executive Order, Defendants have shown an intent to comply with FOIA requests, have taken concrete technological and staffing steps to improve response times, and have been working to reduce the backlog, including by processing thousands of pages of records for CREW's requests. Indeed, when the Court denied CREW's motion for a preliminary injunction in June 2025, it remarked that "the record shows that HHS is doing *something* to process FOIA requests as part of its centralization effort," and that "CREW exaggerates when it says that 'Defendants have established *no* alternative system to receive and process FOIA requests.'" ECF No. 29 at 19 (quoting ECF No. 13-1 at 47).

CREW has—justifiably—complained of growing pains as Defendants have tried to consolidate, streamline, and update their FOIA processing system.[9] But as Defendants point out,

---

[8] Defendants overreach when they argue that "[a]n agency's ultimate success on a policy-or-practice claim will turn on whether it can establish 'good faith effort and due diligence' in responding to requests." ECF No. 43 at 53 (quoting *Jud. Watch*, 895 F.3d at 783). "Nothing in FOIA suggests that a plaintiff in a FOIA policy or practice case must affirmatively demonstrate that the agency is acting in bad faith to survive summary judgment. . . . [a]n agency may be 'delinquent or recalcitrant' in meeting its FOIA obligations without rising to the level of bad faith." *Wash. Lawyers' Comm.*, 145 F.4th at 70 (quotations omitted).

[9] An example of a growing pain is Defendants' assertion, at least as of September 2025, that "unusual circumstances" exist for every FOIA request for CDC records, providing them a 10-day extension for all determinations. *See* ECF No. 47-1 ¶ 15. The asserted "unusual circumstance"

"[t]here is no requirement that government be ossified and unchanging."  ECF No. 43 at 15.  One of the lessons from the D.C. Circuit's FOIA precedents is that FOIA's worthy goal of "pierc[ing] the veil of administrative secrecy," *Rose*, 425 U.S. at 361, must be tempered by practical restrictions—a balance recognized within the statute's text, *see, e.g.*, *Open America*, 547 F.2d at 610–12; *CREW I*, 711 F.3d at 189 & n.8.  Another lesson: courts should hesitate to grant relief beyond individual production orders, or else they may cause "the regulation of [FOIA] priorities in all agencies . . . [to] become the function of the courts."  *Open America*, 547 F.2d at 615; *see also CREW II*, 846 F.3d at 1246.  The Court's decision to deny both motions without prejudice reflects those lessons.  That said, the Court will carefully consider any updated information that CREW and Defendants provide to it about Defendants' more recent compliance—or lack thereof—with their FOIA obligations, along with any renewed motions for summary judgment.

### b.    Violations of Additional FOIA Provisions

Along with additional delay in processing specific requests, CREW alleges that the closure of the CDC FOIA office has resulted in violations of the "reading room," "status update," and "system guide" provisions of FOIA.  *See* ECF No. 31 ¶¶ 84a, d, e (citing 5 U.S.C. §§ 552(a)(2), (a)(7), and (g)).  Under these provisions, agencies must "make available for public inspection" certain "administrative staff manuals" and copies of released records likely to be subject to repeat requests.  § 552(a)(2).  Agencies must also create systems to assign "individualized tracking number[s]" to requests and establish methods for communicating with requesters.  § 552(a)(7).  And the "head of each agency shall prepare and make available for public inspection in an electronic

---

is that the requested records "require a search in another office."  ECF No. 43-1 ¶ 33.  While this may be accurate, the reason CDC records are in another office from where FOIA requests are processed is because OS FOIA is now handling the requests for CDC records.  *See* ECF No. 35-1 at 35.  The temporary use of this "unusual circumstances" extension is not necessarily unreasonable as a stopgap.  But if invoked permanently, it could be a sign of the sort of delinquency and recalcitrance that warrants judicial intervention.

format, reference material or a guide for requesting records." § 552(g).  For much the same reasons as above, the Court will also refrain for now from granting relief on the basis of any violations of these requirements.

To begin, CREW appears to have dropped any argument related to the "status update" and "system guide" statutory provisions.  CREW mentions the former once in passing in its motion for summary judgment, *see* ECF No. 35-1 at 41, and never mentions the latter.  Nor do the two come up again in later filings.  In fact, CREW's own filings appear to suggest that OS FOIA's system is now capable of "assign[ing] an individualized tracking number," contrary to what it alleges in the amended complaint, ECF No. 31.  § 552(a)(7).  In a declaration, CREW stated that it submitted two FOIA requests in September 2025 "through the HHS FOIA Public Access Link Portal" and received "automated email[s]" that assigned tracking numbers without any difficulty.  ECF No. 47-1 ¶¶ 18–19.  For these reasons, the Court does not address any possible violation of §§ 552(a)(7) and (g).

That leaves the reading-room requirement under § 552(a)(2).  The record on Defendants' compliance with this provision is muddled.  In October, CREW asserted in a declaration that "[t]he CDC FOIA reading-room website is no longer online."  ECF No. 47-1 ¶ 20.  Defendants counter that § 552(a)(2) only requires the "agency" to have a reading room, and "[b]ecause of the FOIA reorganization" all reading-room disclosures will be through OS FOIA, and "[c]ontent that might otherwise have been posted to the former CDC-FOIA website will be posted to HHS.gov."  ECF No. 43-3 ¶ 95.  Defendants add that HHS is now making "proactive disclosures" per the reading-room requirement and was planning to create a "centralized" portal for all disclosures, including reading-room disclosure, by the "end of December 2025."  ECF No. 50 at 12.  CREW retorts that it is "likely" that most or all of Defendants' reading-room disclosures in the months after April were for "non-CDC records" from other divisions of HHS but cannot say so for sure.  ECF No.

48-1 ¶ 47. Neither party has provided any information what has occurred since the calendar turned to 2026.

Once again, the Court will deny without prejudice both motions for summary judgment as to these other FOIA provisions because CREW has not—at least not yet—shown that any of the relief it seeks is warranted. On this record, no clear picture emerges of the current state of Defendants' webpages and what types of records have been uploaded online. Like the processing delays discussed above, it appears that the difficulties with centralizing and updating HHS's reading room may be abating as OS FOIA's technological capacity grows and CDC records are migrated over. So right now, the Court cannot say that this is the "rare instance of agency delinquency in meeting its duties under the reading-room provision" that warrants equitable relief. *CREW II*, 846 F.3d at 1246.

### c. Violations of FOIA Regulations

The only additional basis for CREW's FOIA policy-or-practice claim is HHS's own regulations. CREW alleges that Defendants' policy of closing the CDC FOIA office and rerouting requests to OS FOIA "violate[s] HHS regulations providing that the department's FOIA operations are intentionally decentralized, and that HHS divisions therefore have separate FOIA offices, operations, programs, and officials, each responsible for their own FOIA work." ECF No. 31 ¶ 85 (citing 45 C.F.R. §§ 5.2(b), 5.3, 5.23(a), 5.25); *see also id.* ¶ 23 (mentioning that 45 C.F.R. § 75.322(e), the "research-data" provision, assumes the existence of separate FOIA divisions).

Although it is unclear if CREW relies on this theory as a basis for summary judgment on Count II, the theory gets it nowhere. A policy-or-practice claim can be raised for an agency's systemic "failure to abide by the terms of *the FOIA*." *Payne*, 837 F.2d at 491 (emphasis added). That is, a policy-or-practice claim must be based on a violation of the FOIA statute itself—not just on a violation of agency FOIA regulations. To be sure, at times a regulation is coextensive with

its statute, making a violation of the regulation and a violation of the statute one and the same.  *See Alexander v. Sandoval*, 532 U.S. 275, 284 (2001).  But often, regulation will require what statute does not, and in those cases, a violation of the former will not suffice to show a violation of the latter.  *See id.* at 285.

The gap between regulation and statute was highlighted in *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160 (D.C. Cir. 2012).  In that case, the plaintiff—Newport—claimed that the Air Force had a policy or practice of "refus[ing] to disclose non-critical information . . . contrary to FOIA."  *Id.* at 163.  In response, the Air Force argued that it was properly withholding under FOIA Exemption 3, which permits agencies to withhold records "specifically exempted from disclosure by statute."  *Id.* at 164 (citing 5 U.S.C. § 552(b)(3)).  The agency relied on 10 U.S.C. § 130(a) as its Exemption 3 statute, which permitted it to withhold "technical data with military or space application," with some caveats.  *Id.* at 165.  Newport argued that whatever the application of § 130(a), it was entitled to judgment on its FOIA policy-or-practice claim because the Air Force's withholding of non-critical records violated Directive 5230.25, an information-disclosure regulation that only permitted the Air Force to withhold "critical technology"— a narrower set of records.  *Id.* at 167.  This regulatory violation, Newport contended, violated FOIA's disclosure requirement.  The D.C. Circuit rejected this argument, explaining that "it is not enough for Newport to show that the Air Force's policy violates 5230.25.  It must also demonstrate that the policy violates FOIA."  *Id.*  This, Newport could not do.  *Id.* at 168.

Much like Newport, CREW claims that, even if HHS has not violated the FOIA statute, the closure of the CDC FOIA office violated agency regulations.  As CREW points out, HHS has indeed promulgated regulations that describe its FOIA operations as "decentralized."  ECF No. 31 ¶ 24 (quoting 45 C.F.R. § 5.3).  As part of that decentralization, the regulations require, among other things, "that each HHS 'Operating Division,' including CDC . . . has its own 'respective'

FOIA 'officials,' 'operations,' and 'programs'" and "maintain[] its own reading-room website." *Id.* ¶¶ 21, 23. But these requirements, like Directive 5230.25 in *Newport*, are found nowhere in FOIA itself, and CREW—rightly—does not argue that HHS's self-imposed decentralization is statutorily required. So "even assuming *arguendo* that [HHS] is violating [45 C.F.R. §§ 5.2(b), 5.3, 5.23(a), 5.25]" in reorganizing its internal FOIA structure, "that practice does not violate FOIA." *Newport*, 684 F.3d at 168. And it is only a "failure to abide by the terms of the FOIA" that will support a policy-or-practice claim. *Payne*, 837 F.2d at 491.

To be sure, an agency must ordinarily comply with its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954). But an agency's compliance with its own regulations is enforceable through the APA, if it is enforceable at all—something CREW appears to recognize, given that for the most part, it houses its regulatory arguments exclusively under the APA section of its motion for summary judgment. *See* ECF No. 35-1 at 45–50.[10]

For all these reasons, the Court will deny without prejudice both CREW and Defendants' motions for summary judgment on Count II.

### C. The Court Will Grant Defendants' Motion to Dismiss Count III Because CREW Fails to State a Claim

CREW seeks relief for all the same reasons under the APA as it does under FOIA. *See* ECF No. 31 ¶¶ 88–94; ECF No. 35-1 at 45–50. But far from needing any fact-intensive review of

---

[10] Moreover, not everything an agency publishes in the Federal Register about its operations are binding regulations. *See Cmty. Nutrition Inst. v. Young*, 828 F.2d 943, 947 n.8 (D.C. Cir. 1987). "It is beyond question that many such statements [about an agency's own operations] are non-binding in nature and would thus be characterized by a court as interpretative rules or policy statements." *Id.* at 949. Here, the provisions that HHS allegedly violated are either lists of definitions, *see* 45 C.F.R. § 5.3 (titled "Definitions"), or appear to be FAQ-style guidance for the public, *see, e.g.*, *id.* § 5.23 (titled "Where do I send my FOIA request?"). Given their language, it is unclear to the Court to what extent HHS could be held liable for violating such provisions—even if it was violating them, and even if CREW could bring a policy-or-practice claim based only on a violation of a regulation.

the record on summary judgment, the Court will dismiss CREW's APA claim for failure to state a claim.

The APA provides judicial review only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Though the APA was meant to "provid[e] a broad spectrum of judicial review of agency action," it "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) (quotation omitted). Thus, "[w]hen considering whether an alternative remedy is 'adequate' and therefore preclusive of APA review," courts must "look for 'clear and convincing evidence' of 'legislative intent' to create a special, alternative remedy and thereby bar APA review." *CREW II*, 846 F.3d at 1244 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 523 (D.C. Cir. 2009)). "Succinctly put, where a statute affords an opportunity for *de novo* district-court review, . . . APA review [is] precluded because 'Congress did not intend to permit a litigant . . . to utilize simultaneously both [the review provision] and the APA.'" *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (quoting *Env't. Def. Fund v. Reilly*, 909 F.2d 1497, 1501 (D.C. Cir. 1990)). Importantly, the other review provision need not provide "identical" relief to be "adequate"; it must only offer relief "of the same genre." *Vilsack*, 563 F.3d at 522 (internal citation and quotations omitted).

The D.C. Circuit has already concluded that FOIA precludes APA review in a similar case with a similar claim. In that other case, CREW brought an APA claim against the Office of Legal Counsel, "challenging as arbitrary, capricious, and contrary to law [the agency's] purported failure to meets its disclosure obligations under FOIA's reading-room requirements." *CREW II*, 846 F.3d at 1240 (citing 5 U.S.C. § 552(a)(2)). It sought an injunction that "would apply prospectively," "impose an affirmative obligation to disclose" certain documents "regardless of whether someone specifically request[ed] a given document," "mandate that the agency make documents available

28

to the *public*, as opposed to just CREW," and "make available to the public an index of all such documents." *Id.* The Circuit determined that CREW's APA claim was precluded, for "FOIA offer[ed] an 'adequate remedy' within the meaning of section 704, as it exhibits all of the indicators . . . [of] Congressional intent." *Id.* at 1245. The statute "contains an express private right of action," provides for de novo review, and permits suits "to enforce the reading-room provision" that was at issue. *Id.* All of this reflected "a carefully balanced scheme of public rights and agency obligations" that would be upset if the APA were added to the scales. *Id.* (quoting *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

Notably, the Circuit held that an APA claim was precluded even though CREW sought an injunction broader in scope than what it could obtain under FOIA. "[C]ourts lack authority under FOIA to order agencies to make records available for public inspection"; they can only issue prospective injunctions ordering disclosure of records to the requester alone. *CREW II*, 846 F.3d at 1246 (cleaned up). But "despite some mismatch," the important part was that under FOIA, "CREW itself [could] gain access to all the records it seeks," and that was adequate in light of what CREW ultimately wanted—for the agency to comply with FOIA's requirements and disclose documents. *Id.*

CREW is in the materially same position here. Like before, it brought an APA claim that piggybacks on an alleged underlying FOIA violation. ECF No. 31 ¶¶ 90a–f. Like before, it did so to compel the agency to comply with FOIA's requirements and disclose documents (as well as, in this case, to disclose them faster). *Id.* at 26–27. Like before, the FOIA statute provides a private right of action for CREW to seek de novo review for the offending agency's alleged legal violations. Indeed, CREW has availed itself of that private right of action here, as reflected above. There is no reason for CREW's second attempt at this argument to go any differently than the first.

In response, CREW contends that "APA review is available because APA relief would

provide CREW with a different 'genre' of remedy from FOIA remedies."  ECF No. 35-1 at 46 (quoting *El Rio Santa Cruz*, 396 F.3d at 1272).  It argues that the APA would permit the Court to "set aside" the closure of the CDC FOIA office, which would be relief that is "distinct from . . . the downstream impact of that APA violation on the processing of CREW FOIA requests."  *Id.* at 47; *see also* ECF No. 47 at 35 ("CREW and Defendants are not disputing whether particular records can be withheld," but are instead disputing "the wholesale elimination of an agency's FOIA function").  And it argues that this "set aside" relief—which would operate upstream of any specific records request—was not present in *CREW II*, making that case distinguishable.  ECF No. 47 at 34–35 (citing *CREW II*, 846 F.3d at 1238–39).

CREW is right that setting aside HHS's CDC FOIA office closure would indeed be a remedy unavailable under FOIA.  But CREW's arguments misunderstand what makes an alternative remedy "adequate."  The question is whether Congress intended claims like CREW's to be channeled into the procedure laid out by FOIA.  *See Bowen*, 487 U.S. at 903.  The answer is yes— because, despite the different wrapper, CREW's APA claim fundamentally seeks to redress the same injury as its FOIA claim.  This is obvious from CREW's own filings.  CREW asserts that the closure of the CDC FOIA office harms CREW "by depriving CREW of basic access to agency records"—precisely what FOIA was meant to address.  ECF No. 47 at 32.  In its amended complaint, CREW pleads the exact same legal violations to support its FOIA and APA claims.  *Compare* ECF No. 31 ¶¶ 84a–f, *with id.* ¶¶ 90a–f.  Unsurprisingly, CREW also represents that its "[FOIA] policy-or-practice and APA claims are linked."  ECF No. 39 at 20 n.8.  And because Congress gave courts "broad equitable authority" to issue "prospective injunctive relief" under FOIA, there is "no yawning gap between the relief FOIA affords and the relief CREW seeks under the APA."  *CREW II*, 846 F.3d at 1241–42, 1246.  If such a gap existed—if, for example, the non-APA statutory remedy offered only monetary relief—it might be inferred that Congress did not

intend such a statute to supplant the APA and its authority to grant broad prospective relief. *See Bowen*, 487 U.S. at 905 & n.42. But no such gap exists. CREW recognizes as much by alleging in its amended complaint that it "seeks relief under the APA" only "[t]o the extent the Court finds that FOIA does not authorize relief." ECF No. 31 ¶ 94. It seems evident, then, that CREW understands that the two statutes offer overlapping relief within the same genre. The remedy offered by FOIA is plainly "adequate" for a plaintiff in CREW's shoes. So as before, CREW cannot sue under the APA.

For these reasons, the Court will grant Defendants' motion to the extent that it seeks to dismiss Count III for failure to state a claim.

## III.  Conclusion

For all these reasons, the Court will deny Defendants' motion to dismiss Count II, deny without prejudice both parties' motions for summary judgment on Count II, and grant Defendants' motion to dismiss Count III for failure to state a claim. The Court will also require the parties to inform the Court how they wish to proceed with respect to Count II in their joint status report due on April 28, 2026. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 31, 2026

31